FILED
2014 Sep-30  PM 04:41
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **JOE NATHAN JAMES, JR.,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| **vs.** ) | **Civil Action No. CV-10-S-2929-S** |
| ) | |
| **GRANT CULLIVER, Warden,** ) | |
| **Holman State Prison; and RICHARD** ) | |
| **F. ALLEN, Commissioner, Alabama** ) | |
| **Department of Corrections,** ) | |
| ) | |
| **Respondents.** ) | |

## MEMORANDUM OPINION AND ORDERS

Petitioner, Joe Nathan James, Jr., seeks *habeas corpus* relief from his state

court conviction for capital murder and resulting death sentence.  *See* 28 U.S.C. §

2254.  The discussion of his claims is arranged as follows.

### Table of Contents

I.    **THE OFFENSE OF CONVICTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

II.   **PROCEDURAL HISTORY** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

III.  **INTRODUCTION TO DISCUSSION OF CLAIMS**:  *The Scope of Federal* Habeas *Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

      A.    The Exhaustion of State Court Remedies Doctrine:  *The First Condition Precedent to Federal* Habeas *Review* .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

      B.    The Procedural Default Doctrine: *The Second Condition Precedent to Federal* Habeas *Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

            1.    *Alternative holdings* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

2.      *Determining the effective basis for the state courts' rulings* . . . . . . . . . 28

3.      *Adequate and independent state grounds for denying relief* . . . . . . . . . 29

    a.      "*Independent of the federal question*" . . . . . . . . . . . . . . . . . . . . . 29

    b.      "*Adequate to support the state court's judgment*" . . . . . . . . . . . 30

4.      *The grounds for obtaining post-conviction relief under Alabama Rule of Criminal Procedure 32* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

5.      *The procedural rules relied upon by the state courts when disposing of some of the present petitioner's post-conviction claims for relief* . . . . . . . . . . 33

    a.      *Alabama Rule of Criminal Procedure* 32.2(a) . . . . . . . . . . . . . . 33

    b.      *Alabama Rule of Criminal Procedure* 32.2(c) . . . . . . . . . . . . . . 34

    c.      *Alabama Rule of Criminal Procedure* 32.3 . . . . . . . . . . . . . . . . . 35

    d.      *Alabama Rule of Criminal Procedure* 32.6(b) . . . . . . . . . . . . . . 37

    e.      *Alabama Rule of Criminal Procedure* 32.7(d) . . . . . . . . . . . . . . 39

    f.      *Alabama Rule of* Appellate *Procedure* 28(a)(1) . . . . . . . . . . . . . 41

    g.      *Alabama Rule of* Appellate *Procedure* 28(a)(10) . . . . . . . . . . . . 42

6.      *Overcoming procedural default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

    a.      *The "cause and prejudice" standard* . . . . . . . . . . . . . . . . . . . . . . 45

        i.      "*Cause for the default*" . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

        ii.      "*Prejudice*" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

    b.      *The "fundamental miscarriage of justice" standard* . . . . . . . . . 48

C.      The Statutory Overlay: *The Effect of "the Antiterrorism and Effective Death Penalty Act of 1996" on* Habeas *Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

1.      *28 U.S.C § 2254(e)(1)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

2. *28 U.S.C § 2254(d)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

    a. *The meaning of § 2254(d)(1)'s "contrary to" clause* . . . . . . . . . 54

    b. *The meaning of § 2254(d)(1)'s "unreasonable application" clause* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

    c. *The meaning of § 2254(d)(2)'s clause addressing an "unreasonable determination of the facts in light of the evidence presented in the state court proceeding"* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

    d. *Evaluating state court factual determinations under 28 U.S.C. §§ 2254(d)(2) and (e)(1)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

D. The Burden of Proof and Heightened Pleading Requirements For *Habeas* Petitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

E. An Introduction To Ineffective Assistance of Counsel Claims . . . . . . . . . . . . . 63

    1. *The performance prong* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65

    2. *The prejudice prong* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69

    3. *Deference accorded state court findings of historical fact and decisions on the merits when evaluating ineffective assistance of counsel claims* . . . . 70

IV. **THE LIST OF PETITIONER'S CLAIMS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 72

V. **PETITIONER'S GUILT-PHASE INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 78

A. The Effect of Grossly Inadequate Compensation on the Effort Devoted to Petitioner's Defense by Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 78

    1. *Procedural default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 78

    2. *Merits* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 81

B. Trial Counsel Labored Under a Debilitating Conflict of Interest Which Led to a Complete Breakdown in the Attorney-Client Relationship and, Thereby, Deprived Petitioner of the Effective Assistance of Counsel . . . . . . . . . . . . . . . . . . . . . . . 85

    1. *Procedural default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 86

        2.     *Merits* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 87

C.     Trial Counsel Failed to Adequately Investigate the Capital Charge. . . . . . . . . . 90

        1.     *Failure to investigate the victim's background — the gateway for pursuit of a self-defense strategy* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 91

        2.     *Failure to investigate James's Atlanta excursion* . . . . . . . . . . . . . . . . . 101

        3.     *Failure to investigate James's mental health* . . . . . . . . . . . . . . . . . . . . . 103

        4.     *Failure to contact, interview, and investigate the State's witnesses* . . . . 110

        5.     *Failure to investigate defense witnesses* . . . . . . . . . . . . . . . . . . . . . . . . . 111

        6.     *Failure to investigate* "the apparent" *contamination of the crime scene* .112

             a.     *Procedural default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 113

             b.     *Merits* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 113

D.     Failure to Procure Expert Assistance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 116

        1.     *Failure to obtain forensic experts* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 116

             a.     *Procedural default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 117

             b.     *Merits* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 118

        2.     *Failure to obtain mental health experts* . . . . . . . . . . . . . . . . . . . . . . . . . 119

E.     Failure to Investigate or Challenge Petitioner's Competence to Stand Trial . . . 126

F.     Deficient Performance During Jury Selection . . . . . . . . . . . . . . . . . . . . . . . . . 131

        1.     *Procedural default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 132

        2.     *Merits* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 132

             a.     *Questionnaires and* voir dire . . . . . . . . . . . . . . . . . . . . . . . . . . . 133

             b.     *Failure to challenge for bias* . . . . . . . . . . . . . . . . . . . . . . . . . . . 134

c.     *Failure to question venire about their past exposure to criminal acts* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 135

d.     *Failure to question prospective juror Bobby Boyer about his prior criminal history* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 137

e.     *Failure to question prospective jurors about their prior experiences as jurors* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 138

f.     *Failure to discover one juror's mental illness* . . . . . . . . . . . . . 139

g.     *Failure to conduct individual, sequestered voir dire* . . . . . . . . 140

h.     *Failure to the object to the State's race-* and *gender-discrimination when exercising peremptory challenges* . . . . . . . . . . . . . . . . . . . 141

G.    Failing to File Adequate Motions *in limine*, Adequate Objections to the Introduction of Prejudicial and Inadmissible Evidence at Trial, Adequate Objections to James's Absence From the Courtroom During Critical Stages of the Trial, and Adequate Objections to Prosecutorial Misconduct During Closing Argument . . . . . . . . 146

1.    *Failing to object* in limine *or during trial to the admission of extraordinarily prejudicial, gruesome, and irrelevant autopsy photographs* . . . . . . . . . 150

2.    *Failing to stipulate that Faith Hall was deceased* . . . . . . . . . . . . . . . . 150

3.    *Failing to object to the testimony of the State's medical examiner as an expert witness* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 150

4.    *Failing to object to lengthy, irrelevant, and extraordinarily prejudicial testimony from the States medical examiner regarding procedures applied to the victim by paramedics and other medical personnel after the shooting* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 150

5.    *Failing to obtain a clear ruling on defendant's motion* in limine *seeking the exclusion of,* and, *failing to object during trial to the admission of, references to James's prior trial* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 164

6.    *Failing to obtain clear rulings on all motions filed by defense counsel during James's first, 1996 trial, which were adopted for purposes of the second trial by Virginia Vinson's December 29, 1998 pretrial motion* . . . . . . . . . . 167

7. *Failing to object* in limine *or during trial to the admission of references to James's arrest in California* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 168

8. *Failing to object to irrelevant, prejudicial testimony by prosecution witnesses* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 171

9. *Failing to object when the trial judge proceeded to take evidence during James's absence from the courtroom* . . . . . . . . . . . . . . . . . . . . . . . . . . . 174

10. *Failing to object to prosecutorial misconduct*: *i.e., the prosecutor's prejudicial references to James during closing argument* . . . . . . . . . . . 176

H. Failing to Present a Coherent or Viable Defense, and, Conceding Petitioner's Guilt During Closing Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 179

I. Failing to Request a Continuance When Counsel Learned that James had been the Victim of an Attempted Sexual Assault in Jail on the Night Prior to the Beginning of Trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 183

1. *Procedural default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 184

2. *Merits* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 185

J. Ineffective Cross-Examination of the State's Witnesses . . . . . . . . . . . . . . . . . . 189

1. *Procedural default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 190

2. *Merits* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 192

K. Failing to Object to the Trial Judge's Improper Instructions at the Conclusion of the Guilt Phase . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 195

1. *Procedural default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 200

2. *Merits* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 201

L. Failing to "Federalize" Objections . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 204

M. Trial Counsel's Peformance was Prejudicially Deficient Because Counsel's Failures to Object, or to Take the Affirmative Actions Detailed in this Claim, Resulted in Procedural Defaults With Respect to Some Issues . . . . . . . . . . . . . . . . . . . . . . . 205

6

N.     The Cumulative Effect of Trial Counsel's Guilt-Phase Errors Prejudiced James, Even If No Single Error, Standing Alone, Did So . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 206

VI.    **PETITIONER'S PENALTY-PHASE INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 209

A.     Failing to Conduct Any Investigation of Petitioner's Background to Obtain Mitigation or Social History Evidence, and, Failing to Present Such Evidence During the Penalty Phase . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 209

B.     Penalty-Phase Closing Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 240

C.     Failing to Object to Prosecutorial Misconduct During Penalty-Phase Closing Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 247

D.     Failing to Request Specific Penalty-Phase Jury Instructions . . . . . . . . . . . . . . 253

E.     Failing to Object to Use of the Presentence Investigation Report and Sentencing Order From the First Trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 259

F.     The Cumulative Effect of Trial Counsels' Penalty-Phase Errors Prejudiced James, Even If No Single Error, Standing Alone, Did So . . . . . . . . . . . . . . . . . . . . . . . 263

VII.   **PETITIONER'S INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL CLAIMS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 264

A.     Failing to Argue That the Trial Judge Erroneously Overruled Defense Counsel's Objection to the Prosecutor's Addition of a New Aggravating Circumstance . . 267

B.     Failing to Raise Some Ineffective Assistance of Trial Counsel Claims in the Opening Brief on Direct Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 270

C.     Failure to Argue That the Trial Judge Did Not Instruct the Jury as Required by Rule 19.3(b), Ala. R. Crim. P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 273

D.     Failure to "Federalize" Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 275

VIII.   **PETITIONER'S SUBSTANTIVE CLAIMS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 276

A.     Petitioner was Deprived of His Constitutional Right to the Assistance at Trial of a Competent Mental Health Professional . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 276

7

B.      The Trial Judge Erred in Failing to Order, *sua sponte*, a Competency Evaluation of Petitioner . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 276

C.      Petitioner Was Not Competent to Proceed to Trial . . . . . . . . . . . . . . . . . . . . . . 276

      1.      *Procedural default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 278

      2.      *Merits* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 280

D.      The Prosecution Failed to Comply With Discovery Obligations Under *Brady v. Maryland*, and Committed Other Misconduct at Trial . . . . . . . . . . . . . . . . . . . . 287

      1.      *Procedural default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 288

      2.      *Merits* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 289

E.      Petitioner Was Deprived of His Right to an Impartial Jury, Due Process of Law, and a Reliable Determination of Guilt and the Penalty to be Imposed When He Was Tried by a Juror Who Suffered From a Mental Illness and Other Impairments . . . . . . 295

F.      The Trial Judge Committed Numerous Prejudicial Errors During the Guilt and Penalty Phases of Trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 298

      1.      *Failing to order a new presentence investigation report*. . . . . . . . . . . . 300

      2.      *Admitting autopsy photographs*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 302

      3.      *Conducting court in James's absence*. . . . . . . . . . . . . . . . . . . . . . . . . . 303

      4.      *Failing to instruct the jury at the end of each trial day*. . . . . . . . . . . . 304

      5.      *Overruling defense objections*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 306

      6.      *Improper jury instructions*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 308

G.      Petitioner Was Deprived of Due Process and Other Constitutional Rights Throughout the Rule 32 Proceedings in the State Circuit Court . . . . . . . . . . . . . . . . . . . . . . . 309

      1.      *The circuit court's procedure of signing orders prepared by respondents, particularly the egregiously self-serving and clearly erroneous final order, denied petitioner of his federal constitutional rights to an impartial tribunal, due process, and a reliable proceeding under the Fifth, Sixth, Eighth, and*

8

*Fourteenth Amendments, and international law* . . . . . . . . . . . . . . . . . . 311

2.   *The circuit court further displayed its bias against James and deprived him of due process, equal protection, an impartial tribunal, and a reliable proceeding when it denied his Motion to Proceed* in forma pauperis . . 319

3.   *The circuit court prevented petitioner from fully developing and presenting his claims by denying him leave to proceed* ex parte *in funding requests and funding for mental health experts and, in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 319

4.   *The circuit court's denial of leave to proceed* ex parte *in funding requests prevented petitioner from fully developing and presenting his claims in violation of petitioner's constitutional rights to due process and a reliable capital proceeding* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 319

5.   *The circuit court's denial of funding for mental health experts prevented petitioner from developing and presenting his claims in violation of his constitutional rights* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 319

6.   *The circuit court's refusal to admit petitioner's proffer of evidence prevented him from fully developing and presenting his claims in violation of his constitutional rights to due process, equal protection, and a reliable capital proceeding* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 319

7.   *The circuit court prevented petitioner from fully developing and presenting his claims by denying him funding for investigators in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments* . . . . . . . . . . . . . . . . . . . . . . 320

H.   The Circuit Court's Denial of Petitioner's Requested Discovery and Motions for Continuance of the Evidentiary Hearing Deprived Petitioner of Due Process, a Fair Trial, and a Reliable Capital Proceeding Under the Fifth, Sixth, Eighth, and Fourteenth Amendments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 322

I.   The Circuit Court's Refusal to Issue a Warrant to Compel Testimony of a Key Exculpatory and Mitigation Witness Prevented Petitioner From Presenting His Defense, in Violation of the Sixth, Eighth, and Fourteenth Amendments . . . . . 324

J.   The Circuit Judge Deprived Petitioner of His Rights to Due Process and a Reliable Capital Decision-Making Process When He Denied Petitioner's Motion to Reopen His *Brady* Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 326

9

K.  Alabama's Capital Sentencing Procedures, Both Facially and As Applied, Run Afoul of the Fourteenth Amendment's Due Process Clause and the Sixth Amendment's Jury Trial Requirement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 329

L.  The Jury Was Unconstitutionally Permitted to "Double Count" the Fact of Burglary, Both as the Predicate for the Capital Charge, and, as an Aggravating Circumstance .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 335

M.  Alabama's Statutory Limitations on Compensation of Appointed Counsel and Other Resources in Death Penalty Cases Violates the Federal Constitution . . . . . . . . 340

N.  The Selective Prosecution of the Death Penalty Violated Petitioner's Rights to Due Process, Equal Protection, Freedom From Cruel and Unusual Punishment, and, a Fundamentally Fair Trial .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 344

O.  Execution by Means of Lethal Injection is a Cruel and Unusual Punishment in Violation of the Eighth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 347

P.  Execution Following Lengthy Confinement Under Sentence of Death Constitutes Cruel and Unusual Punishment in Violation of Petitioner's State and Federal Constitutional Rights, as well as International Law . . . . . . . . . . . . . . . . . . . . . . . 352

Q.  In View of Petitioner's Profound Mental and Emotional Impairments, and the Supreme Court's Decision in *Atkins v. Virginia*, It Would Be Unconstitutional To Execute Him . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 354

R.  Petitioner's Conviction and Death Sentence Must Be Vacated Because of the Cumulative Effect of All of the Errors and Constitutional Violations Alleged in this Petition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 359

S.  Petitioner Was Convicted and Sentenced to Death as a Result of a Process Tainted by Racial Bias . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 362

T.  Petitioner Was Deprived of His Federal Constitutional Right to Compulsory Process At the Evidentiary Hearing in State Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 364

IX.  **CONCLUSION AND ORDERS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 365

# I.  THE OFFENSE OF CONVICTION

Joe Nathan James, Jr. ("petitioner" or "James"), was indicted in the Tenth

Judicial Circuit of the State of Alabama (*i.e.*, Jefferson County) for the August 15, 1994 murder of Faith Hall:  a crime made capital by Alabama Code § 13A-5-40(a)(4) (1975), because it was committed during the course of a burglary in the first degree.[1]

He was tried twice, and found "guilty" both times.  But, as discussed in Part II of this opinion, *infra*, the first conviction was reversed due to prejudicial errors in the admission of hearsay statements.  The State's evidence in both trials tended to show the following facts:

> James was a former boyfriend of Faith Hall's and had a history of harassing her.  On August 15, 1994, Faith and a friend, Tammy Sneed, were returning to Sneed's Birmingham apartment after a day of shopping.  When they reached Sneed's apartment, they hurried inside, having seen James behind them in the rearview mirror of their car. Inside the apartment, Hall, Sneed, and a neighbor, Bridget Gregory, discussed what they should do about James.  Sneed's two children were also in the apartment.  They decided they should notify the police. When Gregory left to telephone the police, James was at the apartment door and forced his way in as Hall and Sneed tried to hold the door closed.  Once inside the apartment, James, armed with a pistol, accused Hall of being unfaithful.  After initially putting the pistol in his waistband, James drew the weapon and, as the women tried to run from the room, shot Faith Hall.  After she fell, James shot Hall again.  Faith Hall died of multiple gunshot wounds to the head, chest, and abdomen.

*James v. State*, 723 So. 2d 776, 778 (Ala. Crim. App. 1998).[2]

---

[1] The statute defines "[m]urder by the defendant during a burglary in the first or second degree or an attempt thereof committed by the defendant" as a capital offense.  Ala. Code § 13A-5-40(a) (4) (1975) (alteration supplied).

[2] The summary of evidence quoted in text was taken from the opinion of the Alabama Court of Appeals on the first appeal, following James's initial conviction.  The trial judge's summary of

## II.  PROCEDURAL HISTORY

The first of James's two trials began on August 26, 1996.  Following a verdict of "guilty," the jury recommended, by a vote of 10-2, that James be sentenced to death.  The trial judge subsequently imposed the death penalty.  James appealed to the Alabama Court of Criminal Appeals, which held that the trial judge had erred to reversal by admitting, pursuant to the "Business Records" exception to the rule against hearsay,[3] four prejudicial "Incident/Offense" reports created by the

the evidence, quoted in the second opinion of the Alabama Court of Criminal Appeals, following James's second conviction, is similar:

> "The [appellant], a former boyfriend of the victim, Faith Hall, had been stalking and threatening Ms. Hall before her death.  On the evening of August 15, 1994, as Ms. Hall and a friend returned to the friend's apartment, they saw the [appellant] following them in his vehicle.  When they saw the [appellant] they began to run to the apartment.

> "Despite their attempts to hold the front door closed, the [appellant] forced his way into the apartment.  Ms. Hall began to scream, as the [appellant] came in with a pistol in his hand.  When she couldn't calm him down, she began to run for the front door.  The [appellant] shot at her, but missed. Ms. Hall turned and ran toward the bathroom as [appellant] followed and shot her in the head, chest, and abdomen.  The [appellant] ran out the back door and left in his automobile. Ms. Hall died from her wounds.  The [appellant] was arrested in California."

*James v. State*, 788 So. 2d 185, 188 (Ala. Crim. App. 2000) (alterations in original).

[3] Alabama Rule of Evidence 803(6) provides that the following documents are not excluded by the rule against hearsay, even if the declarant is available as a witness:

> **(6)  Records of Regularly Conducted Activity**.  A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum,

Birmingham Police Department during the year preceding the offense.  *See James v. State*, 723 So. 2d 776, 778-81 (Ala. Crim. App. 1998).[4]  The State's petition for writ of *certiorari* was denied by the Alabama Supreme Court.  *See Ex parte State of Alabama*, 723 So. 2d 786 (Ala. 1998).  Consequently, the case was remanded for a new trial.

James was represented during the second trial by Birmingham attorneys Virginia A. Vinson and Gordon Herbert Warren.[5]  The jury again convicted James of

---

report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.  The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

Ala. R. Evid. 803(6) (emphasis in original).

[4] Three of the "Incident/Offense" reports resulted from complaints filed during the year preceding the offense by the victim, Faith Hall, also known as "Faith Smith."  *See James v. State*, 723 So. 2d 776, 778 (Ala. Crim. App. 1998).  The fourth report was generated by a complaint lodged by Faith Hall's grandmother, Isabelle Hall, on August 13, 1994 — just two days prior to the offense.  *Id*. at 779.  Ultimately, the Alabama Court of Criminal Appeals held that:

Because the erroneously admitted evidence contained accusations of a prior death threat and threats of harm, and because the prosecutor used those accusations as showing a "paper trail" laid by the declarant to identify James as her murderer, we cannot say beyond a reasonable doubt that the error was harmless.  We also cannot say that those statements did not affect the jury in its sentencing deliberations and in their death penalty verdict.  We find that the erroneous admission of the police reports was prejudicial and that, therefore, the conviction must be reversed.

*Id*. at 784.

[5] Ms. Vinson was subsequently elected to a state judicial position.

13

capital murder on June 16, 1999.[6]  The penalty hearing began the following morning.[7]

Neither the prosecutor nor James's defense attorneys made opening statements or

called witnesses.[8]  Instead, the prosecutor introduced over the objection of defense

counsel two case action summaries for the purpose of demonstrating that James had

been under a sentence of imprisonment on the date of the offense.[9]  Defense counsel

presented a stipulation that James had been 22 years old on the date of the offense.[10]

In closing, defense counsel argued that James had committed the offense while

---

[6] The indictment presented to the jury at James's second trial read as follows:

> The grand jury of said county charge that, Joe Nathan James did intentionally cause the death of Faith Hall, by shooting her with a pistol; and Joe Nathan James caused said death during the time that Joe Nathan James knowingly and unlawfully entered or remained or attempted to enter or remain unlawfully in the dwelling of Tammy Sneed, with the intent to commit the crime of assault therein; and while effecting entry of while in the dwelling or in the immediate flight from the dwelling, the said Joe Nathan James was armed with a pistol." C.R. Vol. 4, Tab 14, pp. 219-220.  The indictment itself clarifies that James was "armed with a pistol, an explosive or deadly weapon, in violation of Section 13A-5-40(a)(4) of the Alabama Criminal Code. . . .

C.R. Vol. 1, Tab 2, at 20.  **NOTE WELL**: *The court will cite any page number associated with court records by reference to the numbers at the bottom of each page* (*i.e.*, the original pagination).  The page numbers stamped at the top of each page by this court's Electronic Case Filing system (*i.e.*, the so-called "Case Management Electronic Case Formatting" system) will NOT be cited.

[7] *Id*. at 4.  **NOTE WELL**:  Two court reporters recorded various portions of the trial.  As a result, the pagination of the Transcript of proceedings is not consecutive, and page 4 within Tab 15 is located after page 243 within the same Tab.

[8] *Id*. at 4-39.

[9] *Id*. at 4-12.

[10] *Id*. at 13.

"under the influence of extreme mental or emotional disturbance."[11]   Following

deliberations, the jury returned a verdict recommending, by a unanimous vote of 12

to 0, that James be sentenced to death.[12]

The trial judge conducted a formal sentencing hearing on July 9, 1999, in

accordance with Alabama Code § 13A-5-47 (1975).[13]   He found the existence of two

---

[11] C.R. Vol.4, Tab 20, at 26-30.

[12] *Id*., Tab 23, at 52.

[13] *Id*., Tab 24, at 55-59.   The statute cited in text reads as follows:

(a) After the sentence hearing has been conducted, and after the jury has returned an advisory verdict, or after such a verdict has been waived as provided in Section 13A-5-46(a) or Section 13A-5-46(g), the trial court shall proceed to determine the sentence.

(b) Before making the sentence determination, the trial court shall order and receive a written pre-sentence investigation report.   The report shall contain the information prescribed by law or court rule for felony cases generally and any additional information specified by the trial court.   No part of the report shall be kept confidential, and the parties shall have the right to respond to it and to present evidence to the court about any part of the report which is the subject of factual dispute.   The report and any evidence submitted in connection with it shall be made part of the record in the case.

(c) Before imposing sentence the trial court shall permit the parties to present arguments concerning the existence of aggravating and mitigating circumstances and the proper sentence to be imposed in the case.   The order of the arguments shall be the same as at the trial of a case.

(d) Based upon the evidence presented at trial, the evidence presented during the sentence hearing, and the pre-sentence investigation report and any evidence submitted in connection with it, the trial court shall enter specific written findings concerning the existence or nonexistence of each aggravating circumstance enumerated in Section 13A-5-49, each mitigating circumstance enumerated in Section 13A-5-51, and any additional mitigating circumstances offered pursuant to Section 13A-5-52.   The trial court shall also enter written findings of facts

15

statutory aggravating circumstances — *i.e.*, the capital offense was committed by a person under a sentence of imprisonment, and, while the defendant was engaged in the commission of a burglary[14] — but no mitigating circumstances, statutory or

---

summarizing the crime and the defendant's participation in it.

(e) In deciding upon the sentence, the trial court shall determine whether the aggravating circumstances it finds to exist outweigh the mitigating circumstances it finds to exist, and in doing so the trial court shall consider the recommendation of the jury contained in its advisory verdict, unless such a verdict has been waived pursuant to Section 13A-5-46(a) or 13A-5-46(g).   While the jury's recommendation concerning sentence shall be given consideration, it is not binding upon the court.

Ala. Code § 13A-5-47 (1975).

[14] The trial judge's December 9, 1999 sentencing order explicated the statutory aggravating circumstances as follows:

1.   ["]The capital offense was committed by a person under sentence of imprisonment.["] [Ala. Code § 13A-5-49(1).] The Court find that at the time of this offense, August 15, 1994[,] the defendant was on probation in Case #CC 91-1404 (Theft of Property - First Degree) and Case #CC 91-1402 (Receiving Stolen Property - First Degree)[,] having been placed on probation for a term of 3 years on 10-31-91.  (See sentencing exhibits 1 & 2).

. . . .

4.   ["]The capital offense was committed where [*sic*] the defendant was engaged or was an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit, rape, robbery, *burglary* or kidnapping.["] [Ala. Code § 13A-5-49(4).]

The Court finds that this aggravating circumstance does exist in that the defendant was engaged in a burglary based on the following facts.

The defendant, a former boyfriend of the victim, Faith Hall, had been stalking and threatening Ms. Hall before her death. On the evening of August 15, 1994, as Ms. Hall and a friend returned to the friend's apartment, they saw the defendant following them in his vehicle. When they saw the defendant they began to run to the apartment.

16

otherwise.[15]  He adopted the jury's recommendation and sentenced James to death.[16]

Following the imposition of sentence, James informed the trial judge that he did not want the attorneys who had served as trial counsel to represent him on appeal.[17]  Consequently, during the subsequent, September 13, 1999 hearing on James's motion for a new trial, and during the direct appeal process, James was represented by a new attorney:  George Babakitis of Montgomery, Alabama.[18]

The second conviction and sentence were affirmed by the Alabama Court of Criminal Appeals on April 28, 2000.  *See James v. State*, 788 So. 2d 185 (Ala. Crim.

---

> Despite their attempts to hold the front door closed, the defendant forced his way into the apartment.  Ms. Hall began to scream, as the defendant came in with a pistol in his hand. When she couldn't calm him down, she began to run for the front door.  The defendant shot at her, but missed. Ms. Hall turned and ran toward the bathroom as defendant followed and shot her in the head, chest, and abdomen.  The defendant ran out the back door and left in his automobile.  Ms. Hall died from her wounds.  The defendant was arrested in California.

C.R. Vol. 5, at 8-9 (Dec. 9, 1999 Sentencing Order) (bracketed alterations and emphasis supplied).

[15] *Id*. at 10-11.  The seven mitigating circumstances recognized by statute are specified in Ala. Code § 13A-5-51.  Non-statutory mitigating circumstances are provided for in § 13A-5-52, which provides that:

> In addition to the mitigating circumstances specified in Section 13A-5-51, mitigating circumstances shall include any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant offers as a basis for a sentence of life imprisonment without parole instead of death, and any other relevant mitigating circumstance which the defendant offers as a basis for a sentence of life imprisonment without parole instead of death.

[16] C.R. Vol. 4, Tab 24, at 58; *see also* C.R. Vol. 5, at 11 (Dec. 9, 1999 Sentencing Order).

[17] C.R. Vol. 4, Tab 24, at 59.

[18] *Id*., Tab 26, at 4.

17

App. 2000). *Certiorari* was denied by the Alabama Supreme Court on December 15, 2000, *Ex parte James*, No. 1991959 (Ala. Dec. 15, 2000), and by the United States Supreme Court on May 21, 2001. *James v. Alabama*, 532 U.S. 1040 (2001) (Table).

James commenced collateral review proceedings in the state court system under Rule 32 of the Alabama Rules of Criminal Procedure by filing a "Petition for Relief from Judgment" in the circuit court on May 7, 2002. His original petition asserted claims for ineffective assistance of trial and appellate counsel.[19]   James was represented throughout the entire state post-conviction review process by Wesley A. Van Winkle, a member of the California Bar, and Ty Alper, who is Clinical Professor of Law and Associate Director of the Death Penalty Clinic at Boalt Hall School of Law of the University of California in Berkeley.

James filed an amended Rule 32 petition on September 16, 2002, and again alleged claims for ineffective assistance of trial and appellate counsel.[20] On that same day, the State also filed motions to dismiss the claims asserted in James's original petition, alleging that they were procedurally barred or not sufficiently pled.[21] The State later filed similar motions addressing the claims asserted in James's amended

---

[19] *See* C.R. Vol. 9, Tab 35, at 233 through Vol. 10, at 410.

[20] *See* C.R. Vol. 10, Tab 36.

[21] C.R. Vol. 11, Tabs 37-38, at 634-640.

petition.[22]  The State additionally moved for dismissal of Claim XVI in the amended

petition as untimely.[23]   Finally, the State filed answers to both the original and

amended petitions.[24]

James filed a second amended Rule 32 petition in the State circuit court on

November 8, 2002,[25] which the State answered on June 16, 2003.[26]

The Rule 32 circuit court relied upon Alabama Rules of Criminal Procedure

32.2(a)(3)–(5), 32.2(c), 32.3, 32.6(b), and 32.7(d) as the basis for dismissing a

number of the claims asserted in the second amended petition, finding that some of

the ineffective assistance of trial counsel claims were either not sufficiently pled, or

procedurally barred.[27]  Additionally, Claim XVI — (based upon the Supreme Court's

opinion in *Atkins v. Virginia*, 536 U.S. 304 (2002), holding that the Eighth

Amendment prohibition against "cruel and unusual punishments" applied to the

execution of mentally retarded offenders) — was dismissed as untimely.[28]

---

[22] *Id*., Tabs 39-40, 42; C.R. Vol 13, Tab 45.

[23] *Id.*, Tab 41.  Claim XVI of James's amended Rule 32 petition alleged that his execution following a period of lengthy confinement under sentence of death would constitute cruel and unusual punishment in violation of both the federal and State constitutions and "international law."

[24] C.R. Vol. 11-13, Tabs 43-44.

[25] C.R. Vol. 14-15, Tab 46.

[26] C.R. Vol. 15-16, Tab 51.

[27] *See* C.R. Vol. 32, Tabs 66-69, and 71-77.  The state procedural rules referenced in the sentence accompanying this marginal note are discussed *infra*, in Part IIB.4 of this opinion.

[28] C.R. Vol. 32, Tab 70.

Following a June 8, 2004 hearing on the remaining claims asserted in the second amended petition, the trial court entered a final order on October 28, 2004, denying post-conviction relief to James.[29]

James appealed the trial court's order to the Alabama Court of Criminal Appeals,[30] which affirmed. *See James v. State*, 61 So. 3d 332 (Ala. Crim. App. 2006). That Court held that, because James had filed a *pro se* motion for a new trial following his second conviction, in which he had claimed ineffective assistance of trial counsel, and because the attorney who had been appointed to represent him on direct appeal (George Babakitis) had filed a similar motion raising the same issue, the ineffective assistance of counsel claims were precluded by Alabama Rules of Criminal Procedure 32.2(a)(2) and (a)(4). *Id.* at 339.[31]

---

[29] *Id.*, Vol. 21-23, Tab 52; Vol 32, Tab 78.

[30] *Id.*, Vol. 34, at 13.

[31] The cited rules provide that:

A petitioner will not be given relief under this rule based upon any ground:

. . .

(2) Which was raised or addressed at trial; or

. . .

(4) Which was raised or addressed on appeal or in any previous collateral proceeding not dismissed pursuant to the last sentence of Rule 32. 1 as a petition that challenges multiple judgments, whether or not the previous collateral proceeding was adjudicated on the merits of the grounds raised; or . . . .

The Supreme Court of Alabama reversed the Court of Criminal Appeals, however, and remanded the decision for additional proceedings, saying:

> Because we hold that the Court of Criminal Appeals erred in sua sponte applying the preclusionary grounds of Rule 32 to the majority of James' [*sic*] ineffective-assistance-of-counsel claims, it follows that the Court of Criminal Appeals erred in not reviewing whether the circuit court prejudiced James by denying his initial motion to proceed in forma pauperis or ex parte on his request for funds, which possibly would have allowed James the funds necessary to develop his claims. Therefore, we remand this case to the Court of Criminal Appeals for review of this issue on the merits.

*Ex parte James*, 61 So. 3d 352, 356 (Ala. 2009).

Following remand, the Alabama Court of Criminal Appeals again affirmed the circuit court's denial of the claims asserted in James's second amended Rule 32 petition, and denied his application for rehearing.  *See James v. State*, 61 So. 3d 357, 384-85 (Ala. Crim. App. 2010). The Supreme Court of Alabama denied James's petition for writ of *certiorari* on October 15, 2010, without opinion.[32]

James filed his *habeas* petition in this court on October 29, 2010,[33] and an amended petition on December 31, 2010.[34]  The same attorneys who represented him during the post-conviction, collateral review process in the State courts — *i.e.*,

---

Ala. R. Crim. P. 32.2(a)(2), (a)(4).

[32] *See* C.R. Vol 32, Tab 82.

[33] *See* doc. no. 1 (Original Habeas Petition).

[34] *See* doc. no. 11 (Amended Habeas Petition).

Wesley A. Van Winkle and Professor Ty Alper — have served as counsel in this court.

### III.  INTRODUCTION TO DISCUSSION OF CLAIMS:
*The Scope of Federal* Habeas *Review*

"The habeas statute unambiguously provides that a federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or law or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S.1, 131 S.Ct. 13, 16 (2010)(pagination not yet available for the U. S. Reports) (quoting 28 U.S.C. § 2254(a)). As such, this court's review of claims seeking *habeas* relief is limited to questions of federal constitutional and statutory law. Claims that turn exclusively upon state law principles fall outside the reach of this court's authority to provide relief under § 2254. *See Alston v. Department of Corrections*, 610 F.3d 1318, 1326 (11th Cir. 2010) (holding that a claim addressing either "an alleged defect in a collateral proceeding," or a state court's "interpretation of its own law or rules," does not provide a basis for federal *habeas* relief) (citations omitted).

**A**.   **The Exhaustion of State Court Remedies Doctrine**: *The First Condition Precedent to Federal* Habeas *Review*

A *habeas* petitioner is required to initially present his federal claims to the state courts, and to exhaust all of the procedures available in the state court system, before seeking relief in federal court. *See* 28 U.S.C. § 2254(b)(1); *see also*, *e.g.*, *Medellin*

22

*v. Dretke*, 544 U.S. 660, 666 (2005) (holding that a petitioner "can seek federal *habeas* relief only on claims that have been exhausted in state court"). The "exhaustion of state court remedies doctrine" is founded upon considerations of comity within our federal system, and serves the policy of reducing friction between state and federal courts by avoiding the "unseemliness" of a federal court overturning a state-court conviction "without the state courts having had an opportunity to correct the constitutional violation in the first instance." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). As the Supreme Court observed, "[a] state prisoner is generally barred from obtaining federal habeas relief unless the prisoner has properly presented his or her claims through one 'complete round of the State's established appellate review process.'" *Woodford v. Ngo,* 548 U.S. 81, 92 (2006) (quoting *O'Sullivan*, 526 U.S. at 845) (alteration supplied). The Eleventh Circuit summarized the doctrine in *Snowden v. Singletary*, 135 F.3d 732 (11th Cir. 1998), saying that:

> In general, a federal court may not grant habeas corpus relief to a state prisoner who has not exhausted his available state remedies. 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ."). "When the process of direct review . . . comes to an end, a presumption of finality and legality attaches to the conviction. . . . The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited. Federal courts are not forums in which to relitigate state trials." *Smith v. Newsome*, 876 F.2d

1461, 1463 (11th Cir. 1989) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983)).

Exhaustion of state remedies requires that the state prisoner "fairly presen[t][35] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard v. Connor*, 404 U.S. 270, 275-76 (1971) (internal quotation marks omitted).  The Supreme Court has written these words:

> [T]hat the federal claim must be fairly presented to the state courts . . . . it is not sufficient merely that the federal habeas applicant has been through the state courts. . . . Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding does it make sense to speak of the exhaustion of state remedies.

*Picard*, 404 U.S. at 275, 92 S. Ct. at 512.  *See also Duncan*, 513 U.S. at 365, 115 S. Ct. at 888 ("Respondent did not apprise the state court of his claim that the evidentiary ruling of which he complained was not only a violation of state law, but denied him the due process of law guaranteed by the Fourteenth Amendment.").

Thus, to exhaust state remedies fully the petitioner must make the state court aware that the claims asserted present federal constitutional issues.  "It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 5-6, 103 S. Ct. 276, 277, 74 L. Ed. 2d 3 (1982) (citations omitted).

*Snowden*, 135 F.3d at 735 (alterations and redactions in original, footnote supplied).

---

[35] The phrases "fairly presented" and "properly exhausted" are synonymous.  *See, e.g.*, *O'Sullivan v. Boerckel,* 526 U.S. 838, 848 (1999) (observing that the question is "not only whether a prisoner has exhausted his state remedies, but also whether he has *properly exhausted* those remedies, *e.*, whether he has *fairly presenting* his claims to the state courts") (the word "properly" was emphasized in the original text, all other emphasis was supplied by this court).

**B.    The Procedural Default Doctrine**: *The Second Condition Precedent to Federal* Habeas *Review*

If a *habeas* petitioner fails to initially present a federal claim to the state courts at the time, and in the manner, dictated by the state's procedural rules, the state courts can decide that the claim is not entitled to review on its merits.  Stated differently, the petitioner will be deemed to have "*procedurally defaulted* on that claim."  *Mason v. Allen*, 605 F.3d 1114, 1119 (11th Cir. 2009) (emphasis supplied).

This so-called "procedural default doctrine" was explained in the following manner by the Supreme Court's opinion in *Woodford v. Ngo,* 548 U.S. 81 (2006):

> In habeas, the sanction for failing to exhaust properly (preclusion of review in federal court) is given the separate name of procedural default, although the habeas doctrines of exhaustion and procedural default "are similar in purpose and design and implicate similar concerns," *Keeney v. Tamayo–Reyes*, 504 U.S. 1, 7 (1992).  See also *Coleman v. Thompson*, 501 U.S. 722, 731–732, 111 S. Ct. 2546 (1991).  In habeas, state-court remedies are described as having been "exhausted" when they are no longer available, regardless of the reason for their unavailability.  See *Gray v. Netherland*, 518 U.S. 152, 161, 116 S. Ct. 2074, 135 L. Ed. 2d 457 (1996).  Thus, if state-court remedies are no longer available because the prisoner failed to comply with the deadline for seeking state-court review or for taking an appeal, those remedies are technically exhausted, *ibid.*, but exhaustion in this sense does not automatically entitle the habeas petitioner to litigate his or her claims in federal court. Instead, if the petitioner procedurally defaulted those claims, the prisoner generally is barred from asserting those claims in a federal habeas proceeding.  *Id.*, at 162, 116 S. Ct. 2074; *Coleman*, *supra*, at 744–751, 111 S. Ct. 2546.

*Woodford,* 548 U.S. at 92-93.

Generally speaking, if the last state court to examine a claim states, clearly and explicitly, that the claim is barred because the petitioner failed to follow state procedural rules, *and* that procedural bar provides an *adequate* and *independent* state ground for denying relief, then federal review of the claim also is precluded by the procedural default doctrine. *See*, *e.g.*, *Cone v. Bell,* 556 U.S. 449, 465 (2009); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991) ("When a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review."); *Harris v. Reed*, 489 U.S. 255, 262-63 (1989); *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988).

The doctrine serves the purpose of ensuring that the *habeas* petitioner will first seek relief in the state court system, in accordance with state procedural rules. *See*, *e.g.*, *Johnson v. Singletary*, 938 F.2d 1166, 1173 (11th Cir. 1991); *Presnell v. Kemp*, 835 F.2d 1567, 1578-79 (11th Cir. 1988). It also serves to "lessen the injury to a State that results through reexamination of a state conviction on a ground that a State did not have the opportunity to address at a prior, appropriate time." *McCleskey v. Zant*, 499 U.S. 467, 493 (1991).

**1**.    *Alternative holdings*

Federal deference to a state court's clear finding of a procedural default based

26

upon the petitioner's failure to raise his federal claim in the state court system at the time, and in the manner, dictated by the state's procedural rules is so strong that the Supreme Court has said that a state court

> need not fear reaching the merits of a federal claim in an *alternative* holding. Through its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.

*Harris v. Reed*, 489 U.S. at 264 n.10 (emphasis in original). *See also Bailey v. Nagle*, 172 F.3d 1299, 1305 (11th Cir. 1999) (same); *Alderman v. Zant*, 22 F.3d 1541, 1549-51 (11th Cir. 1994) (in a case in which a Georgia court had found that a petitioner's federal claim was barred by a state procedural rule as "successive," but also observing in an alternative holding that the claim lacked merit based on the evidence, the Eleventh Circuit held that the alternative ruling "did not have the effect . . . of blurring the clear determination by the [state] court that the allegation was procedurally barred pursuant to O.C.G.A. § 9–14–51"[36]).

---

[36] The provision from the Georgia Code cited in the parenthetical quotation is part of that State's equivalent to Alabama Rule of Criminal 32, and it provides, in pertinent part, that:

> All grounds for relief claimed by a petitioner for a writ of habeas corpus shall be raised by a petitioner in his original or amended petition. Any grounds not so raised are waived unless the Constitution of the United States or of this state otherwise requires or unless any judge to whom the petition is assigned, on considering a subsequent petition, finds grounds for relief asserted therein which could not reasonably have been raised in the original or amended petition.

O.C.G.A. § 9-14-51.

27

**2**.   *Determining the effective basis for the state courts' rulings*

When the last state court entering judgment on a federal claim affirms the ruling of the previous court without explanation, federal district courts are instructed to "presume that [the unexplained ruling] rests on *the reasons given in the last reasoned* [state court] *decision*." *Mason v. Allen*, 605 F.3d 1114, 1118 n.2 (11th Cir. 2009) (alterations and emphasis supplied). The Supreme Court established that interpretative rule in the following passage from its opinion in *Ylst v. Nunnemaker*, 501 U.S. 797 (1991):

> The problem we face arises, of course, because many formulary orders are not meant to convey *anything* as to the reason for the decision. Attributing a reason is therefore both difficult and artificial. We think that the attribution necessary for federal habeas purposes can be facilitated, and sound results more often assured, by applying the following presumption: *Where there has been one reasoned state judgment rejecting a federal claim*, *later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground*. If an earlier opinion "fairly appear[s] to rest primarily upon federal law," *Coleman* [*v. Thompson*, 501 U.S. 722, 740 (1991)], we will presume that no procedural default has been invoked by a subsequent unexplained order that leaves the judgment or its consequences in place. Similarly where, as here, the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits. *See Prihoda v. McCaughtry*, 910 F.2d 1379, 1383 (CA7 1990) (*dicta*); *Harmon v. Barton*, 894 F.2d 1268, 1272 (CA11 1990); *Evans v. Thompson*, 881 F.2d 117, 123, n. 2 (CA4 1989); *Ellis v. Lynaugh*, 873 F.2d 830, 838 (CA5 1989).

*Ylst*, 501 U.S. at 803 (first emphasis ["*anything*"] and alteration ["fairly appear[s]"]

28

in original, all other emphasis and second alteration supplied).

**3**.    *Adequate and independent state grounds for denying relief*

The Supreme Court has said that a state procedural rule relied upon by a state court as a ground for denying relief on a federal claim will bar a federal *habeas* court's subsequent review of the same claim, *if* the state rule "'rests on a state law ground that is *independent* of the federal question and *adequate* to support the judgment.'"  *Lee v. Kemna,* 534 U.S. 362, 375 (2002) (quoting *Coleman v. Thompson,* 501 U.S. 722, 729 (1991)) (emphasis in *Lee*)).  The issues of whether a state procedural rule is both "*independent* of the federal question," as well as "*adequate* to support the [state court's] judgment," so as to have a preclusive effect on federal review of the claim, "'is itself a federal question.'"  *Id.*  (quoting *Douglas v. Alabama*, 380 U.S. 415, 422 (1965)).

**a**.    "*Independent of the federal question*"

A state court's decision is deemed to be "independent of the federal question" *if* it rests "solidly on state law grounds," *and*, it is not "'intertwined with an interpretation of federal law.'"  *Judd v. Haley,* 250 F.3d 1308, 1313 (11th Cir. 2001) (quoting *Card v. Dugger*, 911 F.2d 1494, 1516 (11th Cir. 1990)).  An example of intertwining would be when "the State has made application of the procedural bar depend on an antecedent ruling on federal law, that is, on the determination of

whether federal constitutional error has been committed." *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985).  Stated differently, if "the state court must rule, either explicitly or implicitly, on the merits of the constitutional question" before applying the state's procedural rule to a federal constitutional question, then the rule is *not* independent of federal law.  *Id.*

### b.   "*Adequate to support the state court's judgment*"

To be considered "adequate" to support the state court's judgment, the state procedural rule must be both "'firmly established and regularly followed.'"  *Lee v. Kemna,* 534 U.S. at 375 (quoting *James v. Kentucky*, 466 U.S. 341, 348 (1984)).  In other words, the rule must be "clear [and] closely hewn to" by the state for a federal court to consider it as "adequate."  *James*, 466 U.S. at 346 (alteration supplied).  That does not mean, however, that the state's procedural rule must be rigidly applied in every instance, or that occasional failure to do so will render the rule "inadequate."

 "To the contrary, a [state's] discretionary [procedural] rule can be 'firmly established' and 'regularly followed' — even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others."  *Beard v. Kindler*, 558 U.S. 52, 60-61 (2009) (alterations supplied).  Thus, the "adequacy" requirement means only that the procedural rule "must not be applied in *an arbitrary or unprecedented fashion*."  *Judd,* 250 F.3d at 1313 (emphasis supplied).

30

In summary, if the procedural rule is not firmly established, or if it is applied in an arbitrary, unprecedented, or manifestly unfair fashion, it will not be considered "adequate," and the state court decision based upon such a rule can be reviewed by a federal court. *Card,* 911 F.2d at 1517. Conversely, if the rule is deemed "adequate," the decision will not be reviewed by a federal *habeas* court.

**4**. *The grounds for obtaining post-conviction relief under Alabama Rule of Criminal Procedure 32*

When a criminal defendant exhausts all avenues for relief from a state-court conviction and sentence through the direct appeal process, he or she may still seek post-conviction relief through the collateral review process. In Alabama, that process is controlled in the first instance by the various subsections of Alabama Rule of Criminal Procedure 32. Rule 32.1 defines the grounds for obtaining post-conviction relief, and it reads as follows:

> Subject to the limitations of Rule 32.2, any defendant who has been convicted of a criminal offense may institute a proceeding in the court of original conviction to secure appropriate relief on the ground that:
>
> (a) The constitution of the United States or of the State of Alabama requires a new trial, a new sentence proceeding, or other relief.
>
> (b) The court was without jurisdiction to render judgment or to impose sentence.
>
> (c) The sentence imposed exceeds the maximum authorized by

law or is otherwise not authorized by law.

(d) The petitioner is being held in custody after the petitioner's sentence has expired.

(e) Newly discovered material facts exist which require that the conviction or sentence be vacated by the court, because:

(1) The facts relied upon were not known by the petitioner or the petitioner's counsel at the time of trial or sentencing or in time to file a posttrial motion pursuant to Rule 24, or in time to be included in any previous collateral proceeding and could not have been discovered by any of those times through the exercise of reasonable diligence;

(2) The facts are not merely cumulative to other facts that were known;

(3) The facts do not merely amount to impeachment evidence;

(4) If the facts had been known at the time of trial or of sentencing, the result probably would have been different; and

(5) The facts establish that the petitioner is innocent of the crime for which the petitioner was convicted or should not have received the sentence that the petitioner received.

(f) The petitioner failed to appeal within the prescribed time from the conviction or sentence itself or from the dismissal or denial of a petition previously filed pursuant to this rule and that failure was without fault on the petitioner's part.

A petition that challenges multiple judgments entered in more than a single trial or guilty-plea proceeding shall be dismissed without prejudice.

Ala. R. Crim. P. 32.1.

     **5**.    *The procedural rules relied upon by the state courts when disposing of some of the present petitioner's post-conviction claims for relief*

As noted in the discussion of this case's procedural history, *supra*, the state circuit and appellate courts relied upon the following procedural rules as a basis for dismissing some of the claims asserted in James's second amended Rule 32 petition.[37]

     **a**.    *Alabama Rule of Criminal Procedure* 32.2(a)

Alabama Rule of Criminal Procedure 32.2(a) addresses the subject of "Preclusion of Grounds," and it provides that a petitioner "will not" be provided post-conviction relief upon any ground:

     (1) Which may still be raised on direct appeal under the Alabama Rules of Appellate Procedure or by posttrial motion under Rule 24; or

     (2) Which was raised or addressed at trial; or

     (3) Which could have been but was not raised at trial, unless the ground for relief arises under Rule 32.1(b); or

     (4) Which was raised or addressed on appeal or in any previous collateral proceeding not dismissed pursuant to the last sentence of Rule 32. 1 as a petition that challenges multiple judgments, whether or not the previous collateral proceeding was adjudicated on the merits of the grounds raised; or

     (5) Which could have been but was not raised on appeal, unless the ground for relief arises under Rule 32.1(b).

---

[37] *See* C.R. Vol. 32, Tabs 66-69, and 71-77.

For federal procedural default purposes, the preclusionary provisions enumerated in Rule 32.2(a)(1)–(5) are "adequate and independent state procedural rules" that "Alabama state courts appear fully capable of utilizing . . . to avoid review of federal claims when they wish to do so." *Borden v. Allen*, 646 F.3d 785, 814 (11th Cir. 2011).  *See also*, *e.g.*, *Mason v. Allen*, 605 F.3d 1114, 1121 (11th Cir. 2010); *Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002); *Holladay v. Haley*, 209 F.3d 1243, 1254 (11th Cir. 2000); *Waldrop v. Jones*, 77 F.3d 1308, 1314-15 (11th Cir. 1996).

**b**.   *Alabama Rule of Criminal Procedure 32.2(c)*

Alabama Rule of Criminal Procedure 32.2(c) addresses the subject of "Limitations Period[s]," and provides that:

> Subject to the further provisions hereinafter set out in this section, the court shall not entertain any petition for relief from a conviction or sentence on the grounds specified in Rule 32.1(a) and (f), unless the petition is filed:  (1) In the case of a conviction appealed to the Court of Criminal Appeals, within one (1) year after the issuance of the certificate of judgment by the Court of Criminal Appeals under Rule 41, Ala.R.App.P.; or (2) in the case of a conviction not appealed to the Court of Criminal Appeals, within one (1) year after the time for filing an appeal lapses; provided, however, that the time for filing a petition under Rule 32.1(f) to seek an out-of-time appeal from the dismissal or denial of a petition previously filed under any provision of Rule 32.1 shall be six (6) months from the date the petitioner discovers the dismissal or denial, irrespective of the one-year deadlines specified in the preceding subparts (1) and (2) of this sentence; and provided further that the immediately preceding proviso shall not extend either of those

34

one-year deadlines as they may apply to the previously filed petition. The court shall not entertain a petition based on the grounds specified in Rule 32.1(e) unless the petition is filed within the applicable one-year period specified in the first sentence of this section, or within six (6) months after the discovery of the newly discovered material facts, whichever is later; provided, however, that the one-year period during which a petition may be brought shall in no case be deemed to have begun to run before the effective date of the precursor of this rule, e., April 1, 1987.

The Eleventh Circuit has explicitly held that the limitations periods stated in Rule 32.2(c) are "firmly established and regularly followed for purposes of applying the procedural default doctrine." *Seibert v. Allen*, 455 F.3d 1269, 1271 (11th Cir. 2006) (citing *Hurth v. Mitchem*, 400 F.3d 857, 862-64 (11th Cir. 2005) (holding consistently with the earliest prior panel opinion that "Alabama's Rule 32.2(c) statute of limitations is firmly established and regularly followed in the courts of that state"), and *Franklin v. Hightower*, 215 F.3d 1196, 1199-1201 (11th Cir. 2000) (holding that Rule 32's time bar is entitled to "respect" under "the independent and adequate state ground doctrine") (internal citation omitted)).   *See also*, *e.g.*, *Kuenzel v. Commissioner, Alabama Department of Corrections*, 690 F.3d 1311, 1314 (11th Cir. 2011) (same).

### c.   *Alabama Rule of Criminal Procedure 32.3*

Alabama Rule of Criminal Procedure 32.3 addresses the shifting "Burden[s] of Proof" that must be met by both a petitioner and the State, and it provides that:

> *The petitioner* shall have the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief. *The state* shall have the burden of pleading any ground of preclusion, but once a ground of preclusion has been pleaded, *the petitioner* shall have the burden of disproving its existence by a preponderance of the evidence. [Emphasis supplied.]

Note that *the petitioner* bears two burdens — "pleading *and* proving by a preponderance of the evidence the facts necessary to entitle [him] to relief" — whereas the State respondents only bear "the burden of *pleading* any ground of preclusion." Ala. R. Crim P. 32.3 (emphasis and alteration supplied). Thus, "the ultimate burden is on the petitioner to disprove that a ground of preclusion applies." *Ex parte Martinez*, 75 So. 3d 616, 620 (Ala. 2009) (citing Ala. R. Crim. P. 32.3).

These burdens of pleading and proving entitlement to relief, or raising and disproving affirmative defenses, are procedural rules "independent" of federal law. Historically, these burdens have been applied as a matter of course in Alabama post-conviction proceedings. *See e.g., Bush v. State*, 92 So. 3d 121, 135 (Ala. Crim. App. 2009); *A.G. v. State*, 989 So. 2d 1167, 1172-1173 (Ala. Crim. App. 2007); *Butler v. State*, 942 So. 2d 389, 392 (Ala. Crim. App. 2005); *Hunt v. State*, 940 So. 2d 1041, 1049 (Ala. Crim. App. 2005); *Ford v. State*, 831 So. 2d 641, 644 (Ala. Crim. App. 2001); *Payne v. State*, 791 So. 2d 383, 398-99 (Ala. Crim. App. 1999); *Boles v. State*, 717 So.2d 877, 883 (Ala. Crim. App. 1998); *Rolling v. State*, 673 So. 2d 812, 816

(Ala. Crim. App. 1995); *Whitehead v. State*, 593 So.2d 126, 129 n.1 (Ala. Crim. App.

1991); *Moore v. State*, 502 So. 2d 819, 820-21 (Ala. 1986).

>    **d**.    *Alabama Rule of Criminal Procedure* 32.6(b)

Alabama Rule of Criminal Procedure 32.6(b) addresses the "Specificity"

requirements for a Rule 32 post-conviction petition, and provides that:

> Each claim in the petition must contain a clear and specific
> statement of the grounds upon which relief is sought, including full
> disclosure of the factual basis of those grounds.  A bare allegation that
> a constitutional right has been violated and mere conclusions of law
> shall not be sufficient to warrant any further proceedings.

A rule that requires each claim in a Rule 32 petition to "contain a clear and specific

statement of the grounds upon which relief is sought, including full disclosure of the

factual basis" of each ground, is unquestionably "independent" of federal law.

Even so, the Eleventh Circuit held in *Borden v. Allen*, 646 F.3d 785 (11th Cir.

2011), that a state court's decision denying relief, or dismissing a claim, on the basis

of the petitioner's failure to comply with Rule 32.6(b) "is also a ruling on the merits"

and, therefore, does not *necessarily* foreclose review in a federal *habeas* proceeding.

*Id*. at 812.  That ruling was stated in the following context:

> Reliance on a rule of "procedure" does not foreclose the
> possibility that a court is ruling "on the merits."  The dismissal of a
> claim pursuant to Federal Rule of Civil Procedure 12(b)(6), for example,
> unambiguously constitutes a ruling "on the merits."  *See NAACP v.*
> *Hunt*, 891 F.2d 1555, 1560 (11th Cir. 1990) ("the Supreme Court has

37

clearly stated that '[t]he dismissal for failure to state a claim . . . is a "judgment on the merits."'" (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3, 101 S. Ct. 2424, 2428 n.3, 69 L. Ed. 2d 103 (1981))).  Similarly, a federal district court's dismissal of a claim under Rule 4 of the § 2254 Rules or the § 2255 Rules is a judgment on the merits of the claims stated in the petition or motion — or, stated more accurately, a judgment that the claims presented are nonmeritorious. *See Granberry v. Greer*, 481 U.S. 129, 135 n.7, 107 S. Ct. 1671, 1675–76 n.7, 95 L. Ed. 2d 119 (1987) ("Rule 4 authorizes a district judge summarily to dismiss a habeas petition if 'it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court.' . . .  [T]he District Court's dismissal of a nonmeritorious petition under Rule 4 pretermits consideration of the issue of nonexhaustion."); *see also Plunkett v. Johnson*, 828 F.2d 954, 956 (2d Cir. 1987) ("When 'the applicant does not raise even a colorable federal claim,' [*Granberry*, 481 U.S. at 135, 107 S. Ct.] at 1675, that is a reason for reaching the merits and denying the petition, for this preserves judicial resources." (emphasis added)).

  *A ruling by an Alabama court under Rule 32.6(b) is also a ruling on the merits*.  Here, the Alabama Court of Criminal Appeals, in disposing of claims in the Amended Petition under Rule 32.6(b), necessarily considered the sufficiency of such claims, focusing in on the factors for determining whether the petition presented a case sufficient to warrant relief under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  In short, the Alabama Rules of Criminal Procedure authorize summary dismissal of claims under Rule 32.7(d) for failure to fact plead with sufficient specificity as required by Rule 32.6(b) and the form petition, much as the § 2254 Rules and the § 2255 Rules permit summary dismissal of claims under Rule 4 for failure to fact plead under Rule 2 and the federal form petition.  *Because such dismissals under the federal rules constitute rulings on the merits, we hold that a summary dismissal of a federal claim by Alabama courts for failure to comply with Rule 32.6(b) is similarly a ruling on the merits*.

*Borden v. Allen*, 646 F.3d at 812-13 (alterations and redaction in original, emphasis

supplied).

  **e**. *Alabama Rule of Criminal Procedure* 32.7(d)

  Alabama Rule of Criminal Procedure 32.7(d) addresses the subject of "Summary Dispositions," and provides that:

> If the court determines that the petition is not sufficiently specific, or is precluded, or fails to state a claim, or that no material issue of fact or law exists which would entitle the petitioner to relief under this rule and that no purpose would be served by any further proceedings, the court may either dismiss the petition or grant leave to file an amended petition. Leave to amend shall be freely granted. Otherwise, the court shall direct that the proceedings continue and set a date for hearing.

Ala. R. Crim. P. 32.7(d). An Alabama trial court's authority under this rule to either summarily dismiss, or grant leave to amend, a Rule 32 petition has been firmly established and regularly followed. *See*, *e.g.*, *Ex parte McCall,* 30 So. 2d 400, 403-04 (Ala. 2008); *Apicella v. State*, 87 So. 3d 1155, 1160 (Ala. Crim. App. 2011); *Wilson v. State,* 935 So. 2d 494, 497 (Ala. Crim. App. 2005); *Miles v. State*, 845 So. 2d 930, 832-33 (Ala. Crim. App. 2001); *Makres v. State*, 739 So. 2d 1141, 1143 (Ala. Crim. App. 1998); *Harper v. State*, 676 So. 2d 949, 951 (Ala. Crim. App. 1995).

  It should be noted that state procedural rules, such as Rule 32.7(d), that permit a state court to either dismiss a post-conviction claim for a variety of reasons, or grant leave to amend the petition, are "independent" of federal law. Even so, for federal *habeas* purposes, the state court's reliance on a particular reason to dismiss a claim

might translate into either a procedural default (thereby precluding review in a federal *habeas* proceeding), or an adjudication on the merits (*e.g.*, dismissal of a claim for failure to plead specific facts, or for failure to state a claim on which relief can be granted, or for failure to establish a material issue of fact or law that would entitle the petitioner to relief).  For example, a state court might dismiss a petitioner's claim as procedurally barred pursuant to Rule 32.7(d), because he failed to meet his burden under Rule 32.3 to disprove the state's assertion that he did not raise the claim in the trial court or on direct appeal as required by Rule 32.2(a)(5).[38]  Such a ruling would constitute an explicit state court finding of procedural default pursuant to adequate and independent state procedural rules.  Therefore, such a claim would be precluded from federal *habeas* review.

Nevertheless, as stated in the discussion of the holding in *Borden v. Allen*, *supra*, "[r]eliance on a rule of 'procedure' does not foreclose the possibility that a court is ruling 'on the merits.'"  646 F.3d at 812 (alteration supplied).  For example, if a state court dismissed a claim under Rule 32.7(d), on the grounds that the

---

[38] Ala. R. Crim. P. 32.3 provides that:  "The petitioner shall have the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief.  The state shall have the burden of pleading any ground of preclusion, *but once a ground of preclusion has been pleaded*, *the petitioner shall have the burden of disproving its existence by a preponderance of the evidence* [emphasis supplied]."  Ala. R. Crim. P. 32.2(a)(5), on the other hand, provides that:  "A petitioner will not be given relief under this rule based upon any ground . . . Which could have been but was not raised on appeal, . . . [redactions supplied]."

petitioner either failed to state a claim upon which relief could be granted, or failed to state a material issue of fact or law that would entitle the petitioner to relief, such a ruling would constitute a ruling on the merits that the petitioner failed to meet his burden under Rule 32.3 to either plead or prove by a preponderance of the evidence those facts that would entitle him to relief.  Such rulings can occur when the state court finds that a post-conviction petitioner is not entitled to relief, even if the facts underlying his claim are presumed to be true, or because the petitioner failed to present the evidence supporting his claim at an evidentiary hearing.  Such dismissals are adjudications on the merits of a claim, and are, for that reason, subject to review in federal court under 28 U.S.C. § 2254(d).  Even so, when a petitioner *fails to present evidence* in support of a claim at the Rule 32 hearing, the claim can be deemed abandoned, or procedurally defaulted by the state court.  *See Hooks v. State*, 21 So. 3d 772, 788 (Ala. Crim. App. 2008) (citing *Burgess v. State*, 962 So. 2d 272, 301 (Ala. Crim. App. 2005) (holding that, "when [the appellant] did not present evidence at the evidentiary hearing with regard to [certain] claims . . . , [the state court will] conclude that he has abandoned these claims and . . . *will not review them*'") (all but final alteration and redaction in original, emphasis supplied)).

        **f**.   *Alabama Rule of* **Appellate** *Procedure* 28(a)(1)

The version of Alabama Rule of *Appellate* Procedure 28(a)(1) that was in effect

on the date of the relevant state court decisions discussed in this opinion provided that an appellant's brief "shall" (*e.*, was required to) contain:   "An argument containing the contentions of the appellant/petitioner with respect to the issues presented, and the reasons therefor, with citations to the cases, statutes, other authorities, and parts of the record relief on."   The substance of Rule 28(a)(1) was subsequently relocated to Alabama Rule of Appellate Procedure 28(a)(10), which is discussed in the following subsection.

> **g**.   *Alabama Rule of* **Appellate** *Procedure* 28(a)(10)

Alabama Rule of *Appellate* Procedure 28(a)(10) reads as follows:

> (a)  *Brief of the Appellant/Petitioner*.   The brief of the appellant or the petitioner, if a petition for a writ of certiorari is granted and the writ issues, shall comply with the form requirements of Rule 32.   In addition, the brief of the appellant or the petitioner shall contain under appropriate headings and in the order here indicated:

> . . . .

> (10) *Argument*.   An argument containing the contentions of the appellant/petitioner with respect to the issues presented, and the reasons therefor, with citations to the cases, statutes, other authorities, and parts of the record relied on.   Citations of authority shall comply with the rules of citation in the latest edition of either *The Bluebook*: *A Uniform System of Citation*[,] or ALWD [*e.,*Association of Legal Writing Directors] *Citation Manual*:   *A Professional System of Citation*[,] or shall otherwise comply with the style and form used in opinions of the Supreme Court of Alabama.   Citations shall reference the specific page number(s) that relate to the proposition for which the case is cited; ...

Ala. R. App. P. 28(a)(10) (emphasis and alterations supplied).

If a petitioner fails to comply with this rule, any issue(s) not briefed will be deemed to have been waived. *See Ex parte Borden*, 60 So. 3d 940, 943 (Ala. 2007) ("The purpose of Rule 28, Ala. R. App. P., outlining the requirements for appellate briefs, is to conserve the time and energy of the appellate court and to advise the opposing party of the points he or she is obligated to make.") (citing *United States v. Levy*, 391 F.3d 1327 (11th Cir. 2004) (discussing the principle that issues not briefed are waived and Rule 28, Fed. R. App. P., which sets out the requirements for appellate briefs in the federal courts)).

A procedural rule that requires a petitioner to file a pleading in proper form or suffer waiver is "independent" of federal law.

Moreover, Rule 28(a)(10), as well as its predecessor Rule 28(a)(1), were firmly established and regularly followed. *See, e.g., Jimmy Day Plumbing & Heating, Inc. v. Smith*, 964 So. 2d 1, 9 (Ala. 2007); *Butler v. Town of Argo*, 871 So. 2d 1, 20 (Ala. 2003); *Ex parte Showers*, 812 So. 2d 277, 281 (Ala. 2001); *Dykes v. Lane Trucking, Inc.*, 652 So. 2d 248, 251 (Ala. 1994); *L.K.J. v. State*, 942 So. 2d 854, 869 (Ala. Crim. App. 2005); *Hamm v. State,* 913 So. 2d 460, 486 (Ala. Crim. App. 2002); *O'Neal v. State,* 494 So. 2d 801, 803 (Ala. Crim. App. 1986).

**6**.   *Overcoming procedural default*

There are basically three circumstances in which an otherwise valid state-law procedural ground will *not* bar a federal *habeas* court from considering a constitutional claim that was procedurally defaulted in state court:  *e.,* (*i*) where the petitioner demonstrates that he had good "cause" for not following the state procedural rule, *and*, that he was actually "prejudiced" by the alleged constitutional violation; *or* (*ii*) where the state procedural rule was not "firmly established and regularly followed"; *or* (*iii*) where failure to consider the petitioner's claims will result in a "fundamental miscarriage of justice." *See Edwards v. Carpenter*, 529 U.S. 446, 455 (2000) (Breyer, J., concurring); *see also*, *e.g.*, *Coleman*, 501 U.S. at 749-50 (holding that a state procedural default "will bar federal habeas review of the federal claim, unless the habeas petitioner can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice") (citations and internal quotation marks omitted); *Murray v. Carrier*, 477 U.S. 478, 496 (1986) ("[W]here a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.") (alteration supplied); *Smith v. Murray*, 477 U.S. 527, 537 (1986) (same); *Davis v. Terry*, 465 F.3d 1249, 1252 n.4 (11th Cir. 2006) ("It

would be considered a fundamental miscarriage of justice if 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'") (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (in turn quoting *Murray*, 477 U.S. at 496)).

### a.    The "cause and prejudice" standard

"A federal court may still address the merits of a procedurally defaulted claim if the petitioner can show *cause for the default* and *actual prejudice resulting from the alleged constitutional violation*." *Ward v. Hall*, 592 F.3d 1144, 1157 (11th Cir. 2010) (citing *Wainwright v. Sykes*, 433 U.S. 72, 84-85 (1977)) (emphasis supplied). This so-called "cause *and* prejudice" standard is clearly framed in the conjunctive; therefore, a petitioner must prove both parts.

### i.    "*Cause for the default*"

To show "cause for the default," a petitioner must prove that "some objective factor external to the defense impeded counsel's efforts" to raise the claim in the state courts, either during trial or on direct appeal from the conviction and sentence. *Carrier*, 477 U.S. at 488; *see also Amadeo v. Zant*, 486 U.S. 214, 221-22 (1988).

> Objective factors that constitute cause include "'interference by officials'" that makes compliance with the State's procedural rule impracticable, and "a showing that the factual or legal basis for a claim was not reasonably available to counsel." In addition, constitutionally "[i]neffective assistance of counsel . . . [on direct review] is cause." Attorney error short of ineffective assistance of counsel [on direct review], however, does not constitute cause and will not excuse a

45

procedural default.

*McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991) (citations omitted) (first alteration in original, all other alterations supplied).

While the errors of trial or appellate attorneys that rise to the level of constitutional "ineffective assistance of counsel" have long been accepted as "cause" to overcome a procedural default, the ineffectiveness of *post-conviction counsel on collateral review* generally will not support a finding of cause and prejudice to overcome a procedural default. *See Coleman v. Thompson,* 501 U.S. 722, 754 (1991). That is because "[t]here is no right to counsel in state post-conviction proceedings." *Id.* at 752 (alteration supplied) (citing *Pennsylvania v. Finley*, 481 U.S. 551 (1987); *Murray v. Giarratano*, 492 U.S. 1 (1989)).

Even so, in two recent landmark cases, the Supreme Court extended its prior decision in *Coleman* when it decided that, as a matter of *equity, and, under specific, limited circumstances*, errors by attorneys who represent a petitioner in post-conviction, collateral review proceedings could establish the necessary "cause" to overcome a procedurally defaulted claim.  In the first such case, *Maples v. Thomas*, — U.S. —, 132 S. Ct. 912 (2012), the Supreme Court found that post-conviction counsel's gross professional misconduct (*e.g.* abandonment of the petitioner) severed the agency relationship between counsel and the petitioner and, thus, established the

46

necessary "cause" to overcome a procedural default. *Id.* at 922.

In the second case, *Martinez v. Ryan*, — U.S. —, 132 S. Ct. 1309 (2012), the Supreme Court held that post-conviction counsel's failure to raise an ineffective assistance of trial counsel claim at an initial review collateral proceeding could serve as the necessary "cause" to overcome the procedural default of that type of claim when the state prohibits it from being raised during the direct review process. *Id.* at 1317.[39]

### ii.   *"Prejudice"*

In addition to proving the existence of "cause" for a procedural default, a *habeas* petitioner must show that he was actually "prejudiced" by the alleged constitutional violation. He must show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and *substantial* disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis supplied); *see also McCoy v. Newsome*, 953 F.2d 1252, 1261 (11th Cir. 1992) (*per curiam*).

---

[39] This court finds that an ineffective assistance of *trial counsel* claim must have been procedurally defaulted in the state Rule 32 circuit court before the *Martinez* cause and prejudice standard can be applied. Moreover, the court is aware that the attorneys who represented James in state post-conviction proceedings, Wesley A. Van Winkle and Ty Alper, also represent him in the present *habeas* case. If there is a claim of ineffective assistance of trial counsel that was procedurally defaulted before the Rule 32 circuit court, and further examination shows that resolution of the claim will necessarily create a conflict of interest as to *habeas* counsels' further representation, the court will separately address that matter.

If the "cause" is of the type described in the Supreme Court's 2012 decision in *Martinez v. Ryan, supra* — *i.e.*, the failure of petitioner's post-conviction counsel to raise at an initial review collateral review proceeding an ineffective assistance of trial counsel claim that could not have been raised on direct appeal — then the reviewing court should consider whether the petitioner can demonstrate "that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez*, 132 S. Ct. at 1318-19 (citing for comparison *Miller-El v. Cockrell*, 537 U.S. 322 (2003) (describing standards for certificates of appealability to issue)).

### b.   *The "fundamental miscarriage of justice" standard*

In a "rare," "extraordinary," and "narrow class of cases," a federal court may consider a procedurally defaulted claim in the absence of a showing of "cause" for the default if *either*:  (a) a fundamental miscarriage of justice "has probably resulted in the conviction of one who is actually innocent," *Smith v. Murray*, 477 U.S. 527, 537-38 (1986) (quoting *Carrier*, 477 U.S. at 496); *or* (b) the petitioner shows "by *clear and convincing* evidence that[,] but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty." *Schlup*, 513 U.S. at 323-27 & n.44 (quoting *Sawyer v. Whitley*, 505 U.S. 333, 336 (1992)) (emphasis in *Schlup*, alteration supplied); *see also*, *e.g.*, *Smith*, 477 U.S. at 537-38.

C. **The Statutory Overlay**: *The Effect of* "*the Antiterrorism and Effective Death Penalty Act of 1996*" *on* Habeas *Review*

The ancient writ of *habeas corpus* "has historically been regarded as an extraordinary remedy." *Brecht v. Abrahamson*, 507 U.S. 619, 633 (1993). That policy presumption is especially strong when federal courts are asked to engage in *habeas* review of a state court conviction and sentence pursuant to 28 U.S.C. § 2254.

> Direct review is the principal avenue for challenging a conviction. "When the process of direct review . . . comes to an end, a presumption of finality and legality attaches to the conviction and sentence. The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, *is secondary and limited. Federal courts are not forums in which to relitigate state trials*."

*Id*. (emphasis and redaction supplied) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983)). "Those few who are ultimately successful [in obtaining federal *habeas* relief] are persons whom society has grievously wronged and for whom belated liberation is little enough compensation." *Fay v. Noia*, 372 U.S. 391, 440-41 (1963) (alteration supplied).

"Accordingly, . . . an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *Brecht*, 507 U.S. at 634 (citations, quotation marks, and footnote omitted). That is due to the fact that, under the federal system of governments created by the United States Constitution,

> [t]he States possess primary authority for defining and enforcing the

49

> criminal law.  In criminal trials they also hold the initial responsibility for vindicating constitutional rights.  Federal intrusions into state criminal trials frustrate both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights.

*Engle v. Isaac*, 456 U.S. 107, 128 (1982) (alteration supplied).[40]

The foregoing principles were reinforced by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which amended preexisting *habeas* law.[41] Among other things, AEDPA requires federal courts to give greater deference to state court determinations of federal constitutional claims than before.

**1.**    *28 U.S.C. § 2254(e)(1)*

Section 2254(e)(1) requires district courts to *presume* that a state court's factual determination of a factual issue is correct, unless the *habeas* petitioner rebuts the presumption of correctness with "clear and convincing evidence":

---

[40] According to the Supreme Court, "[t]he reason most frequently advanced in our cases for distinguishing between direct and collateral review is the State's interest in the finality of convictions that have survived direct review within the state court system."  *Brecht*, 507 U.S. at 635 (citing *Wright v. West*, 505 U.S. 277, 293 (1992); *McCleskey*, 499 U.S. at 491; and *Wainwright*, 433 U.S. at 90) (alteration supplied).

[41] The Antiterrorism and Effective Death Penalty Act ("AEDPA") was signed into law by President Clinton on April 24, 1996.  *See* Pub. L. No. 104-132, 110 Stat. 1214 (1996).  The present petition was filed after that date.  Accordingly, the *habeas* statutes as amended by AEDPA apply to the claims asserted in this case.  *See id.* § 107(c), 110 Stat. at 1226; *McNair v. Campbell*, 416 F.3d 1291, 1297 (11th Cir. 2005) (applying AEDPA to *habeas* petitions filed after Act's effective date); *Hightower v. Schofield*, 365 F.3d 1008, 1013 (11th Cir. 2004) (same).  *See also Martin v. Hadix*, 527 U.S. 343, 356 (1999) (discussing retroactivity of AEDPA amendments to § 2254).  *Cf. Lindh v. Murphy*, 521 U.S. 320, 327 (1997) (holding that AEDPA's amendments do not apply to *habeas* petitions filed prior to the Act's effective date); *Johnson v. Alabama*, 256 F.3d 1156, 1169 (11th Cir. 2001) (same); *Thompson v. Haley*, 255 F.3d 1292, 1295 (11th Cir. 2001) (same).

> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1); *see also, e.g., Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001) (observing that § 2254(e)(1) provides "a highly deferential standard of review for factual determinations made by a state court").

Section 2254(e)(1) "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 403-04 (2000)).

The deference that attends state court findings of fact pursuant to Section 2254(e)(1) applies to all *habeas* claims, regardless of their procedural stance. Thus, a presumption of correctness must be afforded to a state court's factual findings, even when the *habeas* claim is being examined *de novo*. *See Mansfield v. Secretary, Department of Corrections*, 679 F.3d 1301, 1313 (11th Cir. 2012) (acknowledging the federal court's obligation to accept a state court's factual findings as correct, *if* unrebutted by clear and convincing evidence, and proceeding to conduct a *de novo* review of the *habeas* claim).

51

The presumption of correctness also applies to *habeas* claims that were adjudicated on the merits by the state court and, therefore, are claims subject to the standards of review set out in 28 U.S.C. § 2254(d)(1) or (d)(2), discussed in the following subsection.

   **2.**   *28 U.S.C. § 2254(d)*

"By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 562 U.S. 86, —, 131 S. Ct. 770, 784 (2011).

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings *unless* the adjudication of the claim [*either*] —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; *or*
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis and alteration supplied).  It does not matter whether the state court decision contains a lengthy analysis of the claim, or is a summary ruling "unaccompanied by explanation." *Id.*

Further, the "backward-looking language" of the statute requires an

examination of the state-court decision *on the date it was made. Cullen v. Pinholster*, — U.S. —, 131 S. Ct. 1388, 1398 (2011). That is, "[s]tate court decisions are measured against [the Supreme] Court's precedents as of 'the time the state court renders its decision.'" *Id.* at 1399 (alterations supplied) (quoting *Lockyer v. Andrade*, 588 U.S. 63, 71-72 (2003)).[42]

Finally, review under either subsection (1) or (2) of § 2254(d) "is limited to the *record* that was before the state court that adjudicated the claim on the merits." *Id.* at 1398, 1400 n.7. Therefore, a federal *habeas* court conducting 2254(d) review should not consider new evidence "in the first instance effectively *de novo*." *Id.* at 1399.

The "contrary to" and "unreasonable application" clauses of § 2254(d) have been interpreted as "independent statutory modes of analysis." *Alderman v. Terry*, 468 F.3d 775, 791 (11th Cir. 2006) (citing *Williams,* 529 U.S. at 405-07).[43] When

---

[42] Section 2254(d)(1)'s reference to "clearly established federal law, as determined by the Supreme Court of the United States[,]" has been interpreted as referencing only "the *holdings*, as opposed to the *dicta*, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000) (O'Connor, J., majority opinion) (emphasis and alterations supplied); *see also*, *e.g.*, *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (same); *Osborne v. Terry*, 466 F.3d 1298, 1305 (11th Cir. 2006) (same); *Warren v. Kyler*, 422 F.3d 132, 138 (3rd Cir. 2005) ("[W]e do not consider those holdings as they exist today, but rather as they existed as of the time of the relevant state-court decision.") (internal quotation marks and citation omitted) (alteration supplied).

[43] *See also Williams*, 529 U.S. at 404 (O'Connor, J., majority opinion) ("Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal *habeas* relief with respect to a claim adjudicated on the merits in state court. Under the statute, a federal court may grant a writ of *habeas* corpus if the relevant state-court decision was either (1) *'contrary to . . .*

considering a state court's adjudication of a petitioner's claim, therefore, the *habeas*

court must not conflate the two modes of analysis.

> **a**.   *The meaning of § 2254(d)(1)'s "contrary to" clause*

A state-court determination can be "contrary to" clearly established Supreme

Court precedent in at least two ways:

> *First*, a state-court decision is contrary to this Court's precedent if the
> state court arrives at a conclusion opposite to that reached by this Court
> on a question of law.  *Second*, a state-court decision is also contrary to
> this Court's precedent if the state court confronts facts that are
> materially indistinguishable from a relevant Supreme Court precedent
> and arrives at a result opposite to ours.

*Williams v. Taylor*, 529 U.S. 362, 405 (2000) (emphasis supplied).  *See also*, *e.g.*,

*Brown v. Payton*, 544 U.S. 133, 141 (2005) (same); *Early v. Packer*, 537 U.S. 3, 8

(2002) (*per curiam*) (same); *Putman v. Head*, 268 F.3d 1223, 1240-41 (11th Cir.

2001) (same).

The Eleventh Circuit has observed that the majority opinion in *Williams* does

not limit the construction of § 2254(d)(1)'s "contrary to" clause to the two examples

set forth above.[44]   Instead, the statutory language "simply implies that 'the state

---

clearly established Federal law, as determined by the Supreme Court of the United States,' or (2)
'*involved an unreasonable application of* . . . clearly established Federal law, as determined by the
Supreme Court of the United States.'") (emphasis supplied).

[44] Indeed, as one commentator has observed, the possible permutations are not just two, but
at least four in number:

> The word "contrary" denotes incompatibility or logical inconsistency.  Two

court's decision must be substantially different from the relevant precedent of [the Supreme] Court.'" *Alderman*, 468 F.3d at 791 (quoting *Williams*, 529 U.S. at 405) (alteration supplied).

> **b**.  *The meaning of § 2254(d)(1)'s "unreasonable application" clause*

A state court's determination of a federal constitutional claim can result in an "unreasonable application" of clearly established Supreme Court precedent in either of two ways:

> *First*, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case.  *Second*, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our

---

propositions are incompatible with one another if both cannot be true or correct. Thus, a state court decision is contrary to federal law if that decision and the applicable federal law cannot both be true or correct.  Given this premise, there appears to be four possible combinations of state court adjudications and resulting decisions that are pertinent to this textual inquiry:

- the state court applies the correct federal standard and arrives at a correct outcome;

- the state court applies an incorrect federal standard and arrives at an incorrect outcome;

- the state court applies an incorrect federal standard and arrives at a correct outcome; and,

- the state court applies the correct federal standard and arrives at an incorrect outcome.

Allan Ides, *Habeas Standards of Review Under 28 U.S.C. § 2254(d)(1):  A Commentary on Statutory Text and Supreme Court Precedent*, 60 WASH. & LEE L. REV. 677, 685 (2003) (footnotes omitted).

> precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Williams*, 529 U.S. at 407 (emphasis supplied).  *See also*, *e.g.*, *Putman*, 268 F.3d at 1240-41 (same).

It is important to notice that "an *unreasonable* application of federal law is different from an *incorrect* application."  *Williams*, 529 U.S. at 410 (emphasis in original).  A federal *habeas* court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law *erroneously* or *incorrectly*.  Rather, that application must also be *unreasonable*."  *Id*. at 411 (emphasis supplied).

In other words, the question that should be asked is *not* whether the state court "correctly" applied Supreme Court precedent when deciding the federal constitutional issue, but whether the state court's determination was "unreasonable."  *Id*. at 409 ("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable.") (alteration supplied).  *See also*, *e.g.*, *Bell*, 535 U.S. at 694 (observing that the "focus" of the inquiry into the reasonableness of a state court's determination of a federal constitutional issue "is on whether the state court's application of clearly established federal law is objectively unreasonable," and stating that "an unreasonable application is different from an incorrect one"); *Harrington v. Richter*,

56

— U.S. —, 131 S. Ct. 770, 785-87 (2011) (same).[45]

In order to demonstrate that a state court's application of clearly established federal law was "objectively unreasonable," the *habeas* petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law *beyond any possibility for fairminded disagreement*." *Id.* at 786-87 (emphasis supplied). Stated another way, if the state-court's resolution of a claim is *debatable among fairminded jurists*, it is *not* "objectively unreasonable."

"By its very language, [the phrase] 'unreasonable application' refers to mixed questions of law and fact, when a state court has 'unreasonably' applied clear Supreme Court precedent to the facts of a given case." *Neelley v. Nagle*, 138 F.3d 917, 924 (11th Cir. 1998) (citation and footnote omitted) (alteration supplied). Mixed questions of constitutional law and fact are those decisions "which require the application of a legal standard to the historical-fact determinations." *Townsend v.*

---

[45] The Eleventh Circuit has observed that § 2254(d)(1)'s "unreasonable application" provision is the proper statutory lens for viewing the "run-of-the-mill state-court decision applying the correct legal rule." *Alderman v. Terry*, 468 F.3d 775, 791 (11th Cir. 2006).

> In other words, if the state court identified the correct legal principle but unreasonably applied it to the facts of a petitioner's case, then the federal court should look to § 2254(d)(1)'s "unreasonable application" clause for guidance. "A federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was *objectively* unreasonable."

*Id.* (quoting *Williams*, 529 U.S. at 409) (emphasis in original).

*Sain*, 372 U.S. 293, 309 n.6 (1963).

        **c**.    *The meaning of § 2254(d)(2)'s clause addressing an "unreasonable determination of the facts in light of the evidence presented in the state court proceeding"*

"28 U.S.C. § 2254(d)(2) imposes a 'daunting standard — one that will be satisfied in relatively few cases.'" *Cash v. Maxwell*, — U.S. —, 132 S. Ct. 611, 612 (2012) (quoting *Maxwell v. Roe*, 628 F.3d 486, 500 (9th Cir. 2010) (internal quotation marks omitted in original)).

> As we have observed in related contexts, "[t]he term 'unreasonable' is no doubt difficult to define." *Williams v. Taylor,* 529 U.S. 362, 410, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). It suffices to say, however, that a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Cf. id.,* at 411, 120 S. Ct. 1495.

*Wood v. Allen,* 558 U.S. 290, 301 (2010) (alteration in original). Therefore, "even if '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's . . . determination." *Id.* (quoting *Rice v. Collins,* 546 U.S. 333, 341-42 (2006)) (alteration in original). Conversely,

> when a state court's adjudication of a habeas claim result[s] in a decision that [i]s based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, this Court is not bound to defer to unreasonably-found facts or to the legal conclusions that flow from them.

*Adkins v. Warden, Holman Correctional Facility*, 710 F.3d 1241, 1249 -1250 (11th

Cir. 2013) (quoting *Jones v. Walker*, 540 F.3d 1277, 1288 n.5 (11th Cir. 2008) (*en banc*) (alterations in original) (quotation marks and citations omitted in original)).

> **d**.    *Evaluating state court factual determinations under 28 U.S.C. §§ 2254(d)(2) and (e)(1)*

As set out in the previous parts of this opinion, 28 U.S.C. § 2254(d)(2) regulates federal court review of state court findings of fact.  That provision limits the availability of federal *habeas* relief on any claims by a state prisoner that are grounded in a state court's factual findings, unless the state court's findings were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).

Moreover, it must be remembered that 28 U.S.C. § 2254(e)(1) provides that factual determinations made by a state court are "presumed to be correct," and that the *habeas* petitioner bears "the burden of rebutting the presumption of correctness by *clear and convincing evidence*."  *See* 28 U.S.C. § 2254(e)(1) (emphasis supplied); *Ward*, 592 F.3d at 1155 (holding that the presumption of correctness attending a state court's findings of fact can be overcome only by clear and convincing evidence).

Nevertheless, there is Eleventh Circuit case authority observing that the manner in which subsections 2254(d)(2) and(e)(1) relate to one another remains an open question.  *See Cave v. Secretary for Department of Corrections*, 638 F.3d 739, 746 (11th Cir. 2011) ("'[N]o court has fully explored the interaction of § 2254(d)(2)'s

'unreasonableness' standard and § 2254(e)(1)'s 'clear and convincing evidence' standard.") (quoting *Gore v. Secretary for Department of Corrections*, 492 F.3d 1273, 1294 n.51 (11th Cir. 2007)) (alteration supplied).

Even so, the Eleventh Circuit's earlier opinion in *Ward v. Hall*, 592 F.3d 1144 (2010), clearly held that federal *habeas* courts "must presume the state court's factual findings to be correct *unless the petitioner rebuts that presumption by clear and convincing evidence.*" *Id.* at 1177 (citing § 2254(e)(1); *Parker v. Head*, 244 F.3d 831, 835-36 (11th Cir. 2001)) (emphasis supplied). That same opinion also observed that "28 U.S.C. § 2254(e)(1) commands that for a writ to issue because the state court made an 'unreasonable determination of the facts,' the petitioner must rebut 'the presumption of correctness [of a state court's factual findings] by clear and convincing evidence.'" *Ward*, 592 F.3d at 1155 (alteration in original).

**D.     The Burden of Proof and Heightened Pleading Requirements for *Habeas* Petitions**

Two fundamental propositions govern *habeas* review of state court convictions by federal courts. First, *habeas* relief "exists only to review errors of constitutional dimension." *McFarland v. Scott*, 512 U.S. 849, 856 (1994); *see also* 28 U.S.C. § 2254(a).[46] Second, when the direct appeal process "comes to an end, a presumption

---

[46] The statute cited in text provides that: "The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody *in violation of the Constitution or laws or treaties of the United States.*"  28 U.S.C. § 2254(a) (emphasis supplied). It follows that claims pertaining solely to questions of state law fall outside the

of finality and legality attaches to the conviction and sentence." *Barefoot v. Estill*, 463 U.S. 880, 887 (1983).

Two consequences flow from those propositions. For one, the *habeas* petitioner bears the burden of overcoming the presumption of "legality" that attaches to the state court conviction and sentence, and of establishing a factual basis demonstrating that federal post-conviction relief should be granted. *See*, *e.g.*, 28 U.S.C. §§ 2254(d) and (e)(1);[47] *Hill v. Linahan*, 697 F.2d 1032, 1036 (11th Cir. 1983) ("The burden of proof in a habeas proceeding is always on the petitioner.") (citing *Henson v. Estelle*, 641 F.2d 250, 253 (5th Cir. 1981)).

For another, the *habeas* petitioner must meet "heightened pleading requirements." *McFarland v. Scott*, 512 U.S. 849, 856 (1994) (citations omitted); *Borden v Allen*, 646 F.3d 785, 810 (11th Cir. 2011) (Section 2254 requires "fact pleading," and not merely "notice pleading"). The mere assertion of a ground for relief, without concomitant allegation of sufficient factual detail, does not satisfy

---

parameters of this court's authority to provide relief under § 2254.

[47] As discussed in Part IV.C of this opinion, *supra*, Section 2254(d) provides that the state courts' adjudication of a *habeas* petitioner's claims can be overturned only if the petitioner carries the burden of demonstrating that a particular determination *either* (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," *or* (2) that the ruling "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Further, § 2254(e)(1) provides that:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

61

either the petitioner's burden of proof under 28 U.S.C. § 2254(e)(1), or the requirements of Rule 2(c) of the *Rules Governing Section 2254 Cases in the United States District Courts*, which states that a state prisoner must "specify all the grounds for relief available to the petitioner," and then "*state the facts supporting each ground.*" 28 U.S.C. § 2254 app. Rule 2(c), *Rules Governing Section 2254 Cases in the United States District Courts* (emphasis supplied).[48] *See also* 28 U.S.C. § 2242 (stating that an application for writ of *habeas corpus* "shall allege *the facts* concerning the applicant's commitment or detention") (emphasis supplied).

In short, a *habeas* petitioner must include in his statement of *each* claim sufficient supporting facts to justify a decision in favor of the petitioner, *if* the alleged facts are proven to be true. *See*, *e.g.*, *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (observing that a *habeas* petition must "state facts that point to a 'real possibility of constitutional error'") (quoting Advisory Committee Notes to Rule 4 of the *Rules Governing Section 2254 Cases in the United States District Courts*). *Cf. Diaz v. United States*, 930 F.2d 832, 835 (11th Cir. 1991) (holding in a case premised upon 28 U.S.C. § 2255 that, despite the liberal construction due a *pro se* petitioner's allegations, dismissal was appropriate because the movant did not allege "facts that, if proven, would entitle him to relief").[49]

---

[48] *Accord* Rule 2(b) of the *Rules Governing Section 2255 Proceedings for the United States District Courts*.

[49] *Cf. Hill v. Lockart*, 474 U.S. 52, 60 (1986) ("Petitioner did not allege in his habeas petition

In addition, "[c]itation of the controlling constitutional, statutory, or other bases for relief for each claim also should be stated."  1 Randy Hertz & James S. Liebman, *Federal Habeas Corpus Practice and Procedure* § 11.6, at 654 (5th ed. 2005) (alteration supplied).  As another district judge has stated:

> It is not the duty of federal courts to try to second guess the meanings of statements and intentions of petitioners.  Rather the duty is upon the individual who asserts a denial of his constitutional rights to come forth with a statement of sufficient clarity and sufficient supporting facts to enable a court to understand his argument and to render a decision on the matter.

*Nail v. Slayton*, 353 F. Supp. 1013, 1019 (W.D. Va. 1972).

### E.   An Introduction to Ineffective Assistance of Counsel Claims

An introduction to ineffective assistance of counsel claims is included here because of the relationship between such claims — which are governed by a highly deferential standard of constitutional law — and 28 U.S.C. § 2254(d), which is itself an extremely deferential standard of *habeas* review.  A general discussion also provides a central reference point, because James has divided his allegations that trial counsel provided ineffective assistance into three separate *habeas* claims.

Ineffective assistance of counsel claims are specifically limited to the performance of attorneys who represented a state prisoner at trial, or on direct appeal

---

that, had counsel correctly informed him about his parole eligibility date, he would have pleaded not guilty and insisted on going to trial.  *He alleged no special circumstances that might support the conclusion that he placed particular emphasis on his parole eligibility in deciding whether or not to plead guilty.*") (emphasis supplied).

63

from the conviction. *See* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."). *See also Coleman v. Thompson*, 501 U.S. 722, 752 (1991) ("There is no constitutional right to an attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings.") (citations omitted).

The Supreme Court's "benchmark" standard for judging any claim that a trial or appellate attorney provided representational assistance to a state prisoner that was so professionally incompetent as to create issues of federal constitutional proportions is the question of "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). If an objective answer to that question is "yes," then counsel was constitutionally ineffective. Even so, *Strickland* requires that the issue be approached in two steps: *i.e.,*

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. *First*, the defendant must show that counsel's *performance* was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Second*, the defendant must show that the deficient performance *prejudiced the defense*. This requires showing that counsel's errors were so serious as to deprive the

64

> defendant of a fair trial, a trial whose result is reliable.   Unless a
> defendant makes both showings, it cannot be said that the conviction or
> death sentence resulted from a breakdown in the adversary process that
> renders the result unreliable.

*Id*. at 687 (emphasis supplied); *see also*, *e.g.*, *Williams*, 529 U.S. at 390 (same);

*Grayson v. Thompson*, 257 F.3d 1194, 1215 (11th Cir. 2001) (same).

Both parts of the *Strickland* standard must be satisfied:  that is, a *habeas*

petitioner bears the burden of proving, by "a preponderance of competent evidence,"

that the performance of his trial or appellate attorney was *deficient*, *and*, that such

deficient performance *prejudiced his defense*.  *Chandler v. United States*, 218 F.3d

1305, 1313 (11th Cir. 2000) (*en banc*).   Thus, a federal court is not required to

address both parts of the *Strickland* standard when the *habeas* petitioner makes an

insufficient showing on one of the prongs.   *See*, *e.g.*, *Holladay v. Haley*, 209 F.3d

1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order

to  show  a  violation  of  the  Sixth  Amendment,  the  court  need  not  address  the

performance prong if the defendant cannot meet the prejudice prong, or vice versa.")

(citation to *Strickland* omitted).

  1.    *The performance prong*

"The burden of persuasion is on the petitioner to prove by a preponderance of

the evidence that counsel's performance was unreasonable."  *Stewart v. Secretary,*

*Department of Corrections*, 476 F.3d 1193, 1209 (11th Cir. 2007) (citing *Chandler*,

65

218 F.3d at 1313).   To satisfy the performance prong of the *Strickland* test, a defendant must prove that counsel made errors so serious that he or she was not functioning as the counsel guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687.   The standard for gauging attorney performance is "reasonableness under prevailing professional norms." *Id*. at 688; *see also*, *e.g.*, *Williams*, 529 U.S. at 390-91 (same); *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (same); *Chandler*, 218 F.3d at 1313 (same).   "The test of reasonableness is not whether counsel could have done something more or different," but whether counsel's performance "fell within the broad range of reasonable assistance at trial." *Stewart*, 476 F.3d at 1209 (citing *Chandler*, 218 F.3d at 1313).   Furthermore, courts must "recognize that 'omissions are inevitable, but, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Id.* (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).   The Sixth Amendment does not guarantee a defendant the very best counsel or the most skilled attorney, but only an attorney who performed reasonably well within the broad range of professional norms.   "The test has nothing to do with what the best lawyers would have done.   Nor is the test even what most good lawyers would have done.   We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial." *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992).

66

The reasonableness of counsel's performance is judged from the perspective of the attorney at the time of the alleged error, and in light of all the circumstances. *See*, *e.g.*, *Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001) (giving lawyers "the benefit of the doubt for 'heat of the battle' tactical decisions"); *Mills v. Singletary*, 161 F.3d 1273, 1285-86 (11th Cir. 1998) (noting that *Strickland* performance review is a "deferential review of all of the circumstances from the perspective of counsel at the time of the alleged errors").

> Under this standard, there are no "absolute rules" dictating what reasonable performance is or what line of defense must be asserted. [*Chandler*, 218 F.3d] at 1317. Indeed, as we have recognized, "[a]bsolute rules would interfere with counsel's independence — which is also constitutionally protected — and would restrict the wide latitude counsel have in making tactical decisions." *Putman v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001).

*Michael v. Crosby*, 430 F.3d 1310, 1320 (11th Cir. 2005) (first alteration supplied, second alteration in original). Judicial scrutiny of counsel's performance must be "highly deferential," because representation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another. *See Strickland*, 466 U.S. at 697. Indeed, reviewing courts are instructed that they "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689.

It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for

a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; *that is*, *the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy*.  There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way.

*Strickland*, 466 U.S. at 689 (emphasis supplied) (citations and internal quotation marks omitted); *see also*, *e.g.*, *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994) ("When reviewing whether an attorney is ineffective, courts should always presume strongly that counsel's performance was reasonable and adequate.") (internal quotation marks omitted).

"Based on this strong presumption of competent assistance, the petitioner's burden of persuasion is a heavy one: '*petitioner must establish that no competent counsel would have taken the action that his counsel did take*.'"  *Stewart*, 476 F.3d at 1209 (quoting *Chandler*, 218 F.3d at 1315) (emphasis supplied).  "Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds *unless it is shown that no reasonable lawyer*, *in the circumstances*, *would have done so*."  *Rogers*, 13 F.3d at 386 (emphasis

68

supplied).

**2**.   *The prejudice prong*

"A petitioner's burden of establishing that his lawyer's deficient performance prejudiced his case is also high." *Van Poyck v. Florida Department of Corrections*, 290 F.3d 1318, 1322 (11th Cir. 2002). *See also*, *e.g.*, *Gilreath v. Head*, 234 F.3d 547, 551 (11th Cir. 2000) (holding that a *habeas* petitioner "must affirmatively prove prejudice, because '[a]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.'") (quoting *Strickland*, 466 U.S. at 693)) (alteration in original). "It is not enough for the [*habeas* petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693 (alteration supplied); *see also Harrington*, 131 S. Ct. at 791-92 (citing *Strickland*, 466 at 693) ("The likelihood of a different result must be *substantial*, not just conceivable.")) (emphasis supplied).

Instead, to prove prejudice, the *habeas* petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also Williams*, 529 U.S. at 391 (same).  When that standard is applied in the context of the death sentence itself, "'the question is whether there is a reasonable probability

that, absent the errors, the sentencer [*i.e.*, in Alabama, the trial court judge] . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.'" *Stewart*, 476 F.3d at 1209 (quoting *Strickland*, 466 U.S. at 695) (alteration supplied).

That is a high standard, and in order to satisfy it a petitioner must present competent evidence proving "that trial counsel's deficient performance deprived him of 'a trial whose result is reliable.'" *Brown v. Jones*, 255 F.3d 1272, 1278 (11th Cir. 2001) (quoting *Strickland*, 466 U.S. at 687). In other words, "[a] finding of prejudice requires proof of unprofessional errors so egregious that the trial was rendered unfair and the verdict rendered suspect." *Johnson*, 256 F.3d at 1177 (quoting *Eddmonds v. Peters*, 93 F.3d 1307, 1313 (7th Cir. 1996) (in turn quoting *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986))) (internal quotation marks omitted) (alteration supplied).

**3**.    *Deference accorded state court findings of historical fact and decisions on the merits when evaluating ineffective assistance of counsel claims*

State court findings of historical fact made in the course of evaluating a claim of ineffective assistance of counsel are subject to a presumption of correctness under 28 U.S.C. §§ 2254(d)(2) and (e)(1). *See, e.g.*, *Thompson v. Haley*, 255 F.3d 1292, 1297 (11th Cir. 2001). To overcome a state-court finding of fact, the petitioner bears a burden of proving contrary facts by "clear and convincing evidence."

Additionally, under the AEDPA, a federal *habeas* court may grant relief a

70

claim of ineffective assistance of counsel *only if* the state-court determination involved an "unreasonable application" of the *Strickland* standards to the facts of the case. *Strickland* itself, of course, also requires an assessment of whether counsel's conduct was professionally unreasonable. Those two assessments cannot be conflated into one. *See Harrington v. Richter*, 562 U.S. 86, —,131 S. Ct. 770, 786 (2011). Thus, *habeas* relief on a claim of ineffective assistance of counsel can be granted with respect to a claim actually decided by the state courts *only if* the *habeas* court determines that it was "objectively unreasonable" for the state courts to find that counsel's conduct was not "professionally unreasonable." The *Richter* Court explained:

> "Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. [356], [371-372], 130 S. Ct. 1473, 1485, 176 L. Ed. 2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S. Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.*, at 689, 104 S. Ct. 2052; see also *Bell v. Cone*, 535 U.S. 685, 702, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993). The question is whether an attorney's representation

> amounted to incompetence under "prevailing professional norms," not
> whether it deviated from best practices or most common custom.
> *Strickland*, 466 U.S., at 690, 104 S. Ct. 2052.
>
>      Establishing that a state court's application of *Strickland* was
> unreasonable under § 2254(d) is all the more difficult.  The standards
> created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at
> 689, 104 S. Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S.
> Ct. 2059, 138 L. Ed. 2d 481 (1997), and when the two apply in tandem,
> review is "doubly" so, *Knowles* [*v. Mirzayance*], 556 U.S., at [125], 129
> S. Ct. at 1420 [(2009)].  The *Strickland* standard is a general one, so the
> range of reasonable applications is substantial.  556 U.S., at [123], 129
> S. Ct. at 1420.  Federal habeas courts must guard against the danger of
> equating unreasonableness under *Strickland* with unreasonableness
> under § 2254(d).  When § 2254(d) applies, the question is not whether
> counsel's actions were reasonable.  The question is whether there is any
> reasonable argument that counsel satisfied *Strickland's* deferential
> standard.

*Richter*, 131 S. Ct. at 787-88 (alterations supplied); *see also Premo v. Moore*, 562

U.S. 115, —, 131 S. Ct. 733, 739-40 (2011).

## IV.  THE LIST OF PETITIONER'S CLAIMS

The amended *habeas* petition filed by petitioner, Joe Nathan James, Jr., alleges

numerous grounds for relief, many of which contain distinct subclaims.  Except where

otherwise noted, the claims stated in James's amended petition are either identical or

substantially similar to those that were alleged in his Rule 32 petition.  The claims,

as stated by him, are listed below.

I.    Trial counsel was prejudicially ineffective in the guilt/innocence phase of

James's trial and thereby deprived James of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments:  ¶¶ 33-35, at 9-10.

A.   Counsel was ineffective in part because of grossly inadequate compensation:  ¶¶ 36-41, at 10-13.

B.   Trial counsel labored under a debilitating conflict of interest which led to a complete breakdown in the attorney-client relationship and deprived James of the effective assistance of counsel:  ¶¶ 42-53, at 13-17.

C.   Trial counsel failed to adequately investigate the State's capital murder charges against Mr. James:  ¶¶ 54-77, at 17-26.

D.   Trial counsel failed to procure necessary expert assistance:  ¶¶ 78-84, at 26-29.

E.   Trial counsel failed to investigate or challenge James's competence to stand trial:  ¶¶ 85-90, at 29-31.

F.   Trial counsel performed deficiently during the selection of James's jury:  ¶¶ 91-100, at 31-34.

G.   Trial counsel performed deficiently in failing to make adequate *in limine* motions, adequate objections to the introduction of prejudicial and inadmissible evidence at trial, adequate objections to Mr. James's absence during critical proceedings, or adequate objections to prosecutorial misconduct in argument:  ¶¶ 101-108, at 34-36.

H.   Trial counsel performed inadequately in failing to present a coherent or viable defense of James and in effectively conceding guilt in closing argument:  ¶¶ 109-111, at 36-37.

I.   Trial counsel performed deficiently in failing to request a continuance when they learned that James had been the victim of an attempted sexual assault in the jail on the night prior to the trial:  ¶¶ 112-114, at 37.

J.   Trial counsel performed ineffectively in cross-examining the State's witnesses:  ¶¶ 115-120, at 37-40.

K.  Trial counsel failed to object to the trial court's improper jury instructions at the guilt phase: ¶¶ 121-127, at 40-44.

L.  Trial counsel performed deficiently in failing to "federalize" objections: ¶¶ 128-129, at 44.

M.  Counsel's performance was prejudicially deficient because counsel's failures to object or take the affirmative actions detailed in this claim resulted in procedural defaults with respect to some issues: ¶¶ 130-131, at 44-45.

N.  The cumulative effect of trial counsel's guilt-phase errors prejudiced James, even if no single error, standing alone, did so: ¶¶ 132-136, at 45-46

II.  Trial counsel was ineffective during the sentencing stage of Mr. James's trial and thereby deprived James of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments: at 46.

A.  Trial counsel performed deficiently by failing to conduct any investigation of James's background to obtain mitigation or social history evidence and by failing to present that evidence at the sentencing phase: ¶¶ 137-218, at 46-76.

B.  Trial counsel performed ineffectively in closing argument at the sentencing phase: ¶¶ 219-224, at 76-78.

C.  Trial counsel performed deficiently in failing to object to prosecutorial misconduct in argument at the sentencing phase: ¶¶ 225-227, at 78-79.

D.  Trial counsel performed deficiently in failing to request specific jury instructions at the sentencing phase: ¶¶ 228-231, at 79-80.

E.  Trial counsel performed ineffectively in failing to object to the use of the Presentence Report and Written Sentencing Order at the time of the original trial in 1996: ¶¶ 232-236, at 80-81.

F.  The cumulative effect of counsel's deficient performance prejudiced

James even if no single act, standing alone, did so:  ¶¶ 237-242, at 81-83.

III.   James was deprived of his constitutional right to the assistance of a competent mental health professional at his capital trial: ¶¶ 243-247, at 83-84.

IV.   The trial court erred in failing to order a competency evaluation of James *sua sponte*:  ¶¶ 248-252, at 84-85.

V.   James was not competent to proceed at trial and the judgment must accordingly be reversed:  ¶¶ 253-257, at 86-87.

VI.   The prosecution failed to comply with its discovery obligations under *Brady v. Maryland* and also committed other misconduct at trial:  ¶¶ 258-267, at 87-89.

VII.   Mr. James was deprived of his right to an impartial jury, due process of law, and a reliable determination of guilt and penalty when he was tried by a jury which included a juror who suffered from mental illness and other impairments:  ¶¶ 268-272, at 89-90.

VIII.   The trial court committed numerous prejudicial errors during both the guilt phase and the sentencing phase of James's trial:  ¶¶ 273-285, at 90-93.

IX.   James was deprived of the effective assistance of appellate counsel:  ¶¶ 286-295, at 94-95.

X.   James was deprived of due process and other constitutional rights throughout the Rule 32 proceedings in the circuit court:  ¶¶ 296-298, at 96.

A.   The circuit court's procedure of signing orders prepared by Respondent, particularly the egregiously self-serving and clearly erroneous final order, denied James his federal constitutional rights to an impartial tribunal, due process, and a reliable proceeding under the Fifth, Sixth, Eighth, and Fourteenth Amendments, and international law:  ¶¶ 299-322, at 96-103.

B.   The circuit court further displayed its bias against James and deprived

him of due process, equal protection, an impartial tribunal, and a reliable proceeding when it denied his *Motion to Proceed in Forma Pauperis*: ¶¶ 323-334, at 104-107.

C. The circuit court prevented James from fully developing and presenting his claims by denying him leave to proceed *ex parte* in funding requests and funding for mental health experts and, in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments: ¶ 335, at 107.

    1. The circuit court's denial of leave to proceed *ex parte* in funding requests prevented James from fully developing and presenting his claims in violation of James's constitutional rights to due process and a reliable capital proceeding:  ¶¶ 336-343, at 107-109.

    2. The circuit court's denial of funding for mental health experts prevented James from developing and presenting his claims in violation of his constitutional rights:  ¶¶ 344-348, at 109-11.

    3. The circuit court's refusal to admit James's proffer of evidence prevented James from fully developing and presenting his claims in violation of his constitutional rights to due process, equal protection, and a reliable capital proceeding: ¶¶ 349–350, at 111-12.

D. The circuit court prevented James from fully developing and presenting his claims by denying him funding for investigators in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments:  ¶¶ 351-357, at 112-13.

E. The circuit court's denial of requested discovery and James's Motions for Continuance of the Evidentiary Hearing deprived him of due process, a fair trial, and a reliable capital proceeding under the Fifth, Sixth, Eighth, and Fourteenth Amendments:  ¶¶ 358-368, at 113-17.

F. The circuit court's refusal to issue a warrant to compel testimony of a key exculpatory and mitigation witness prevented James from presenting his defense, in violation of the Sixth, Eighth, and Fourteenth

Amendments:  ¶¶ 369-375, at 117-19.

G.    The circuit court deprived James of his rights to due process and a reliable capital decision-making process when it denied his Motion to Reopen the *Brady* claim:  ¶¶ 376-384, at 119-21.

XI.    Alabama's capital sentencing procedures, both as written and as applied in this case, run afoul of the due process clause of the Fourteenth Amendment and the Sixth Amendment trial-by-jury requirement:  ¶¶ 385-392, at 121-23.

XII.    The jury was unconstitutionally permitted to "double count" the fact of burglary both as the predicate to capital murder and as an aggravating factor:  ¶¶ 393-398, at 123-24.

XIII.    Alabama's statutory limits on compensation of counsel and other resources in death penalty cases violated the federal constitution:  ¶¶ 399-409, at 125-27.

XIV.    The selective prosecution of the death penalty violated James's constitutional rights to due process, equal protection, freedom from cruel and unusual punishment, and a fundamentally fair trial:  ¶¶ 410-418, at 127-30.

XV.    Execution by means of lethal injection is a cruel and unusual punishment in violation of the Eighth Amendment.  ¶¶ 419-437, at 130-35.

XVI.    Execution following lengthy confinement under sentence of death would constitute cruel and unusual punishment in violation of Mr. James's state and federal constitutional rights and international law:  ¶¶ 438-451, at 135-37.

XVII.    In view of Mr. James's profound mental and emotional impairments and the U.S. Supreme Court's decision in *Atkins v. Virginia*, it would be unconstitutional to execute Mr. James:  ¶¶ 452-456, 137-39.

XVIII.    Mr. James's convictions and death sentence must be vacated because of the cumulative effect of all the errors and constitutional violations alleged in this petition and on his automatic appeal: ¶¶ 457-463, at 139-40.

XIX.    Mr. James was convicted and sentenced to death as a result of a process

77

tainted by racial bias:  ¶¶ 464-467, at 140-41.

XX.     Mr. James was deprived of his federal constitutional right to compulsory
        process at the evidentiary hearing in the state court:  ¶¶ 468-476, at 142-
        43.

## V.  PETITIONER'S GUILT-PHASE INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

### A.   The Effect of Grossly Inadequate Compensation on the Effort Devoted to Petitioner's Defense by Counsel[50]

James's *habeas* petition alleges that, on the date of his second trial, Alabama

Code § 15-12-21 limited the compensation payable by the State to court-appointed

attorneys for defendants charged with capital offenses to

> a maximum of $1,000 for out-of-court trial preparation for each phase
> of the capital trial, based on a $20 per hour rate.  *See Ex parte Grayson*,
> 479 So. 2d 76, 79-80 (Ala.), *cert. denied sub nom*, *Grayson v. Alabama*,
> 747 U.S. 865 (1985).  Because of the state-imposed limitations upon
> counsel's compensation, counsel did not spend sufficient time preparing
> for the case, did not devote adequate time or resources to investigation,
> did not retain experts, consultants, or other professional assistance, and
> generally attempted to keep their expenditure of time to a minimum to
> James's prejudice.

Doc. no. 11 (Amended Habeas Petition), at 24-25.

### 1.   *Procedural default*

Respondents contend that this claim was procedurally defaulted, because it was

not raised at trial or on direct appeal.[51]  Instead, James raised it for the first time in his

---

[50] Claim I.A:  *see* doc. no. 11 (Amended Habeas Petition), ¶¶ 36-41, at 10-13.

[51] Doc. no. 19 (Respondents' Answer), at 5-6.

Rule 32 petition, and it was summarily dismissed as procedurally barred by Alabama

Rules of Criminal Procedure 32.2(a), and 32.7(d).[52]

Respondents also state that, because James failed to exhaust his state court

remedies with respect to this claim, he may not raise it in his § 2254 petition.

Dismissal to allow James to present this subclaim in state court would be futile, as he

is now precluded from raising it under Alabama Rules of Criminal Procedure 32.2(b)

and 32.2(c).[53]

The last state court to issue a reasoned opinion on this claim was the Rule 32

circuit court.  That court dismissed the claim as procedurally barred under Alabama

Rules of Criminal Procedure 32.2(a)(3) and (5).[54] The pertinent parts of that rule state

---

[52] C.R. Vol. 32, Tab 74, Tab 77, and Tab 78, at 54-55.  In this instance, the court is citing the page numbers in the top right hand corner of the record.

[53] Alabama Rule of Criminal Procedure 32.2(b) addresses "Successive Petitions," and provides that:

> If a petitioner has previously filed a petition that challenges any judgment, all subsequent petitions by that petitioner challenging any judgment arising out of that same trial or guilty-plea proceeding shall be treated as successive petitions under this rule.  The court shall not grant relief on a successive petition on the same or similar grounds on behalf of the same petitioner.  A successive petition on different grounds shall be denied unless (1) the petitioner is entitled to relief on the ground that the court was without jurisdiction to render a judgment or to impose sentence or (2) the petitioner shows both that good cause exists why the new ground or grounds were not known or could not have been ascertained through reasonable diligence when the first petition was heard, and that failure to entertain the petition will result in a miscarriage of justice.

Alabama Rule of Criminal Procedure 32.2(c) addresses "Limitations Periods," and it is quoted in Part III.B.5.b, *supra*.

[54] C.R. Vol. 32, Tab 78, at 3.

that:  "A petitioner will not be given relief under this rule based upon any ground: (3) Which could have been but was not raised at trial . . .; or . . . (5) Which could have been but was not raised on appeal . . . ."  Ala. R. Crim. P. 32.2(a)(3), (5).

James did not dispute the Rule 32 circuit court's ruling on this claim during his post-conviction appeal.  The Alabama Supreme Court explicitly held that the claim had been properly precluded.  *Ex parte James,* 61 So. 3d 352, 354 (Ala. 2009).[55]

Accordingly, the procedural default doctrine prevents James from raising this claim in federal court, so long as the state court's ruling was based on adequate and independent state grounds.  *See*, *e.g*., *Ward v. Hall*, 592 F.3d 1144, 1156-57 (11th Cir. 2010).

If an Alabama court has denied post-conviction relief based on the

---

[55] The pertinent portion of the Alabama Supreme Court's opinion in *Ex parte James* observed that:

> The parties agree that the Court of Criminal Appeals sua sponte applied the preclusionary grounds of Rule 32, Ala.R.Crim.P., to the majority of James's ineffective-assistance-of-counsel claims.  The State alleges that it raised the preclusionary grounds in regard to the following three ineffective-assistance-of-counsel claims James raised:
>
> > "I(A), which alleged [ineffective assistance of counsel] due to inadequate compensation, and claims I(G) ¶¶ 82 & 83 which alleged [ineffective assistance of counsel] regarding the admission of photographs and medical testimony."
>
> (State's brief, at 9.)  James does not dispute that the State raised the preclusionary grounds in regard to the above-mentioned claims and that those claims were properly precluded.

*Ex parte James*, 61 So. 3d 352, 354 (Ala. 2009) (alteration in original).

> petitioner's failure to raise a claim at trial or on direct appeal, a federal
> court cannot review that claim unless it determines either (1) that the
> petitioner had cause for his failure to raise the claim and suffered
> prejudice as a result, or (2) that denying federal habeas review of the
> claim would result in a fundamental miscarriage of justice — namely the
> conviction and punishment of one who is actually innocent.

*Brownlee v. Haley*, 306 F.3d 1043, 1065-66 (11th Cir. 2002).  James has not argued

any exception to the procedural default doctrine.  Thus, this claim is procedurally

defaulted.

**2.**    *Merits*

Even though the Rule 32 circuit court determined that this claim had been

procedurally defaulted, that court alternatively dismissed it pursuant to Alabama Rule

of Criminal Procedure 32.7(d).[56]  Even so, as discussed in Part III.B.1, *supra*, federal

deference to a state court's finding of a procedural default is so strong that the state

court "need not fear reaching the merits of a federal claim in an *alternative* holding."

*Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) (emphasis in original).  Nevertheless,

there remains some friction between, on the one hand, procedural defaults based upon

---

[56] C.R. Vol. 32, Tab 78, at 27-28.  As noted in Part III.B.5.e, *supra*, the cited rule provides
that:

> If the court determines that the petition is not sufficiently specific, or is
> precluded, or fails to state a claim, or that no material issue of fact or law exists
> which would entitle the petitioner to relief under this rule and that no purpose would
> be served by any further proceedings, the court may either dismiss the petition or
> grant leave to file an amended petition.

Ala. R. Crim. P. 32.7(d).

a petitioner's failure to raise his federal claim in the state court system at the time, and in the manner, dictated by the state's procedural rules and, on the other hand, an alternative ruling dismissing a claim under Rule 32.7(d) for failing to state a claim, or failing to establish a material issue of fact or law upon which relief might be granted.  As noted in Part III.B.5.d, *supra*, the Eleventh Circuit's opinion in *Borden v. Allen*, 646 F.3d 785, 816, 822 n.44 (11th Cir. 2011), held that such dismissals amounted to rulings "on the merits" and, hence, were subject to review in *habeas* proceedings.

Out of an abundance of caution, therefore, this court will examine the merits of the present claim, despite the state court's determination that it was procedurally defaulted.  In order to achieve *habeas* relief, James must show that no fairminded jurist would have rejected this claim.

As previously discussed in Part III.E of this opinion, *supra*, the standard established by the Supreme Court's opinion in *Strickland v. Washington*, 466 U.S. 668 (1984), requires *habeas* petitioners to show two things in order to prevail on a claim of constitutionally ineffective assistance of counsel:  *first*, "that 'counsel's performance was deficient' because it 'fell below an objective standard of reasonableness'"; and *second*, "that 'the deficient performance prejudiced the defense.'"  *Fugate v. Head*, 261 F.3d 1206, 1216 (11th Cir. 2001) (quoting

*Strickland*, 466 U.S. 687–88).

This court must presume that counsel's performance was reasonable, and James bears the "heavy — but not insurmountable — burden of persuading the court that no competent counsel would have taken the action that his counsel did take." *Haliburton v. Secretary for the Department of Corrections*, 342 F.3d 1233, 1243 (11th Cir. 2003) (internal quotation marks and citation omitted). The test for determining the reasonableness of an attorney's performance "is not whether counsel could have done something more or different"; instead, the court must consider whether counsel's performance "fell within the broad range of reasonable assistance at trial." *Stewart v. Secretary, Department of Corrections*, 476 F.3d 1193, 1209 (11th Cir. 2007).

An attorney's failure to raise *non-meritorious issues* does not constitute ineffective assistance of counsel. *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir.1994) (observing that an attorney's act of "raising every single frivolous point on appeal is not a sign of effective counsel and indeed often has the effect of diluting the import of stronger points").

James offers no argument as to how a higher rate of compensation would, more likely than not, have induced his attorneys to unearth, or present, evidence that had a reasonable probability of changing the outcome of his proceedings. *See*, *e.g.*,

83

*Strickland*, 466 U.S. at 694.  Instead, his argument is based upon the *assumption* that defense counsel must have been inadequate, because Alabama did not adequately compensate his court-appointed trial attorneys.

Such a claim is neither novel nor new.  Other capital defendants have lodged similar claims based upon Alabama's statutory compensation limits.  *See*, *e.g.*, *Hallford v. Culliver*, 379 F. Supp. 2d 1232, 1279 (M.D. Ala. 2004) ("The essence of [petitioner's] argument becomes simply that the court ought to presume counsel could not provide constitutionally adequate representation because of the inadequate compensation.") (alteration supplied), *aff'd,* 459 F.3d 1193 (11th Cir. 2006).  Even assuming that Alabama's compensation scheme for court-appointed attorneys in capital cases was woefully inadequate on the date of James's second trial, "that fact is insufficient as a matter of law to overcome the presumption of effectiveness which attends the performance of counsel."  *Id.*   Indeed, "attorneys are expected to competently represent indigent clients," regardless of how much or how little they are paid, *id.* (citing *Waters v. Kemp*, 845 F.2d 260, 263 (11th Cir.1988)), and James has pled no facts to overcome that presumption.[57]

For all of the foregoing reasons, fairminded jurists could disagree as to the reasonableness of the state court's rejection of James's inadequate compensation

---

[57] The affidavit executed by lead defense attorney (now Judge) Virginia Vinson states that: "The statutory limit on compensation did not affect my representation of Joe in any way."  C.R. Vol. 24, at 161.

claim.  Hence, he is not entitled to *habeas* relief.

**B.**  **Trial Counsel Labored Under a Debilitating Conflict of Interest Which Led to a Complete Breakdown in the Attorney-Client Relationship and, Thereby, Deprived Petitioner of the Effective Assistance of Counsel**[58]

James next alleges that his lead trial attorney, Virginia Vinson,

labored under an actual conflict of interest throughout her representation of Petitioner because she was occupied in political campaigning throughout the case and was therefore unable to devote adequate time to this case, and because her political ambitions required her to take public positions which conflicted with her duty to render zealous representation to her client.[59]

James also asserts that, "[i]n addition to the conflict of interests created by lead counsel's political campaigning, it is clear that at an early stage in the case the relationship between counsel and their client had become so toxic that counsel had an ethical duty to seek to withdraw from the case."[60]

James contends that, as a result of those two problems, his attorneys committed several errors throughout the trial of his case — errors that are detailed throughout the various sub-parts of Claims I and II of his amended *habeas* petition (and errors which are, in turn, discussed in the various subdivisions of Parts V and VI of this opinion).  He contends that counsel's "deficient performance prejudiced [him] because it is at least reasonably probable that a more favorable outcome would have

---

[58] Claim I.B:  *see* doc. no. 11 (Amended Habeas Petition), ¶¶ 42-53, at 13-17.

[59] Doc. no. 11 (Amended Habeas Petition), ¶ 43, at 13.

[60] *Id.*, ¶ 50, at 15 (alteration supplied).

85

resulted had counsel performed competently."[61]

### 1. *Procedural default*

Respondents argue that this subclaim is procedurally defaulted, because it was dismissed pursuant to Alabama Rule of Criminal Procedure 32.3.[62] Respondents also argue that James raised this subclaim in his Rule 32 petition, but then abandoned it on collateral appeal and, thus, failed to exhaust his state-court remedies.[63] Respondents contend that any attempt to again present this claim in state court would be futile, as it would now be barred under both the statute of limitations and successive petition bars of Rules 32.2(b) and (c).[64]

Finally, respondents contend that this claim is conclusory in nature, and fails to state a valid claim for relief under Rule 2(c) of the *Rules Governing Section 2254 Cases in the United States District Courts*.[65]

---

[61] *Id.*, ¶ 53, at 17.

[62] Doc. no. 19 (Respondents' Answer), at 9.

[63] *Id.*

[64] *Id.* at 10.

[65] *Id. at* 12-13 (citing *Mayle v. Felix*, 545 U.S. 644, 655 (2005) ("Habeas Corpus Rule 2(c) is more demanding.  It provides that the petition must 'specify all the grounds for relief available to the James's and 'state the facts supporting each ground.'"))  The rule cited in text and referenced by the Supreme Court in the *Mayle* opinion addresses the "Form" of *habeas* petitions, and states that:

> The petition must:  (1) specify all the grounds for relief available to the petitioner; (2) state the facts supporting each ground; (3) state the relief requested; (4) be printed, typewritten, or legibly handwritten; and (5) be signed under penalty of perjury by the petitioner or by a person authorized to sign it for the petitioner under 28 U.S.C. § 2242.

86

James's brief on his collateral appeal to the Alabama Court of Criminal Appeals argued, however, that "[t]he Circuit Court granted a hearing with respect to subclaims B, C, D, E, G, H, I, J, and K."[66]  Assuming, without deciding, that such a passing reference to the present claim would be sufficient to refute respondents' contention that James abandoned it on collateral appeal and, thus, failed to exhaust his state court remedies, this court will treat the present claim as not procedurally barred and, therefore, subject to review of its merits.

Furthermore, respondents' contention that, when arguing this subclaim, James failed to comply with Rule 2(c) of the *Rules Governing Section 2254 Cases in the United States District Courts*, is misplaced.[67]  Regardless of the merits of this subclaim, James provides over three pages of factual support for it.[68]  His argument has been sufficiently presented, so this court may reach its merits.

**2**.  *Merits*

The last state court to issue a reasoned opinion on this subclaim was the Rule 32 circuit court, which held that:

> At the Rule 32 evidentiary hearing, [James's lead trial defense attorney, Virginia Vinson,] testified that she spent very little time campaigning and [the fact that she was] seeking a judgeship did not

---

Rule 2(c) of the *Rules Governing Section 2254 Cases in the United States District Courts*.

[66] C.R. Vol. 27, Tab 53, at 7 (alteration supplied).

[67] *See* doc. no. 19 (Respondents' Answer), 12-13.

[68] *See* doc. no. 11 (Amended Habeas Petition), ¶¶ 42-53, at 13-17.

effect [*sic*] her representation of James in any manner. (RTR. 207, 263). James failed to present any evidence contradicting Judge Vinson's testimony or supporting his claim at the evidentiary hearing.  As such, this Court finds that James has *failed to meet his burden of proof* on this claim.  Therefor [*sic*], this Court denies any relief based on this claim.

C.R. Vol. 32, Tab 78, at 61 (bracketed alterations and emphasis supplied).

A finding of failure to establish a material issue of fact or law (*i.e.*, James's failure "to meet his burden of proof on this claim") is a ruling on the merits that is subject to review by this court under AEDPA.  Hence, this court must first consider whether the Rule 32 circuit court reasonably applied the *Strickland* standards when it found that James had failed to prove that his counsel's performance "fell within the broad range of reasonable assistance at trial."  *Stewart v. Secretary, Department of Corrections*, 476 F.3d 1193, 1209 (11th Cir. 2007).

James alleged in his Rule 32 petition in state court, and again in the amended *habeas* petition filed in this court, that Virginia Vinson was appointed to represent him "*shortly after* her 1998 general election loss, and she continued to represent him until his conviction and sentencing in June, 1999."[69]  He also argued that "Vinson immediately began to campaign for another newly created criminal judgeship," and he cites an October 2000 newspaper article as support for that contention.[70]  Wholly

---

[69] Rule 32 Petition, C.R. Vol. 9, Tab, 35, at 241 (emphasis supplied).  This page citation refers to the number in the top right hand corner of the document.

[70] *Id.* at 240.  Identical arguments are made in this court.  *See* doc. no. 11 (Amended Habeas Petition) ¶¶ 45-46, at 14.

missing from James's argument, however, is *any* explanation of how an election loss *predating* the appointment of Vinson to represent him, followed by her campaigning for another judgeship in *the year following his trial and sentencing*, created a conflict of interest, or adversely affected her ability to devote adequate time to his case. Moreover, as noted by the Rule 32 circuit court, James did not contradict Vinson's testimony that she spent very little time campaigning during the period from appointment through trial, and that her ambition to seek election to another judicial position during the year following the trial and sentencing did not adversely affect her representation of James.[71]

When a petitioner asserts that counsel labored under a conflict of interest, the court is not always required to conduct the two-step *Strickland* analysis. *See*, *e.g*., *Howell v. Secretary, Florida Department of Corrections,* 730 F.3d 1257, 1264 (11th Cir. 2013) (citing *Burger v. Kemp*, 483 U.S. 776, 783 (1987)). Instead, proof of the prejudice prong can be presumed, "*if* a defendant demonstrates that his attorney actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance." *Id.* (emphasis supplied, internal quotation marks omitted). Although James asserts that Vinson's political ambitions affected her performance as trial counsel, his "evidence" amounts to nothing more

---

[71] C.R. Vol. 32, Tab 78, at 61.

89

than his naked assertion — speculation that was rebutted by Vinson's *testimony*. *Habeas* relief would be warranted only if James "demonstrate[d] that an actual conflict of interest existed that adversely affected [Vinson's] performance." *Burger*, 483 U.S. at 783 (alterations supplied).   At best, James has alleged only "the possibility of conflict," and that is "insufficient to impugn a criminal conviction." *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980).

Thus, the Rule 32 circuit court reasonably applied *Strickland* when determining that James had failed to meet his burden of proof on this subclaim, and that he, accordingly, had failed to state a claim of ineffective assistance of counsel upon which relief could be granted.   It follows, therefore, that *habeas* relief is not warranted either.

## C.     Trial Counsel Failed to Adequately Investigate the Capital Charge[72]

This subclaim is actually comprised of several distinct contentions:   namely, that trial counsel "did virtually no work on the case at all"[73] and, thereby, "failed to adequately investigate and prepare a defense for Mr. James, in violation of his Sixth, Eighth, and Fourteenth Amendment rights,"[74] as well as a contention that counsel failed to investigate the "apparent contamination" of the crime scene.[75]   James also

---

[72] Claim I.C: *see* doc. no. 11 (Amended Habeas Petition), ¶¶ 54-77, at 17-26.

[73] *Id.,* ¶ 57, at 17.

[74] *Id.*, ¶ 54, at 17.

[75] *Id.*, ¶ 76, at 25.

90

provides statistics on how many hours his attorneys billed the State in an attempt to demonstrate that counsel did not spend enough time investigating his case.[76]

Respondents contend that this subclaim was raised in James's Rule 32 petition and on collateral appeal, and was denied on the merits by the Alabama Court of Criminal Appeals.[77]  Respondents argue that James cannot demonstrate that the state court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings, as required by 28 U.S.C. § 2254(d).[78]

1.     *Failure to investigate the victim's background — the gateway for pursuit of a self-defense strategy*

James asserts that his trial attorneys failed to investigate the victim's background, and that, if they had done so, they would have discovered that she had a history of violence — a gate that, James *presumes*, would have opened the way to pursuit of a meritorious self-defense argument.[79]  The Alabama Court of Criminal Appeals addressed this facet of the present subclaim in its final opinion on collateral appeal, following remand from the Alabama Supreme Court, saying that:

---

[76] *See id.*, ¶ 59, at 18, and doc. no. 25 (Petitioner's Brief), at 32-33.

[77] Doc. no. 19 (Respondents' Answer), at 13.

[78] *Id.* at 14.

[79] *See* doc. no. 11 (Amended Habeas Petition), ¶ 60, at 18.

James first argues that counsel was ineffective for failing to investigate the background of the victim. Specifically, he asserts that counsel failed to discover that Hall had been arrested for attacking James's girlfriend, Mara Ruffin. This evidence was vital, he asserts, because it would have led counsel to pursue a claim of self-defense.

When denying relief on this claim, the circuit court stated:

"In his petition, James alleged that trial counsel was ineffective for failing to investigate the background of the victim, Faith Hall. James contends that[,] had counsel done so, they would have learned that Ms. Hall had been previously arrested for attacking James's girlfriend, Mara Ruffin. James also claimed that the victim actively stalked his girlfriend and filed false police reports against him. James further alleged that he only shot Ms. Hall after she charged him with a knife. James contended that[,] had trial counsel adequately investigated[,] they would have learned these facts and been able to present either a self-defense theory, imperfect self-defense theory, or reduced capability.

"At the evidentiary hearing, James introduced a case action summary from Jefferson County district court that was not discovered by trial counsel. The summary indicated that Ms. Hall had been charged with assault in the third degree in 1990, five years before her murder. The case action summary also indicated that the case was nolle prossed. The Court finds this document irrelevant and immaterial. The arrest occurred five years before her murder and Ms. Hall was never prosecuted. Further, James did not show how the arrest was related to either himself or his girlfriend. Moreover, James has not shown how a five-year old arrest would have supported any self-defense claim.

"James also introduced a complaint against Ms. Hall filed by his then girlfriend, Mara Ruffin, that trial counsel

92

failed to discover.  In the complaint, Ms. Ruffin alleged that Ms. Hall broke a windshield with a car jack that caused glass to shatter and cover her.  It appears from the documents that the case was later dismissed at Ms. Ruffin's request.  In any event, such evidence concerning the victim would not have been relevant at trial and would have been inadmissible.

"The Court of Criminal Appeals has held that the 'deceased's violent nature may be proved only by evidence of reputation and not by specific acts.' *Quinlivan v. State*, 627 So. 2d 1082, 1084 (Ala. Crim. App. 1992).  Moreover, any evidence of the victim's violent character, including opinion or reputation testimony, is not admissible in a criminal proceeding where the accused is the aggressor. *Bankston v. Alabama*, 358 So. 2d 1040, 1042 (Ala. 1978) ('It is well understood that evidence of the deceased's turbulent, violent, and bloodthirsty character is not competent absent some evidence tending to show that the killing was in self defense; that is, some overt act or hostile demonstration on the part of the deceased.').  *See also Smith v. State*, 466 So. 2d 1026, 1031 (Ala. Crim. App. 1985) (holding that evidence of the victim's character is not admissible where the accused is the aggressor).

"The evidence is overwhelming that James was the aggressor.  As this Court found in its sentencing order, James, armed with a pistol, forced his way into the apartment occupied by the victim and shot her three times. Without some showing that James acted in self defense, evidence concerning the victim's character is not admissible.  James did allege in his petition that the victim charged at him with a knife.  However, James did not present any testimony or evidence at the Rule 32 hearing that supported this allegation.  Moreover, the witnesses at trial never indicated that the victim charged James with a knife.  Instead, they testified that she was trying to escape when shot.  As the aggressor in this case, James cannot

93

demonstrate any facts that would establish a viable theory of self defense, imperfect self defense, or reduced capability.  As such, James cannot demonstrate that trial counsel was ineffective. . . ."

(C.R. 114–18.)

At the evidentiary hearing, Warren [*i.e.*, *Gordon Herbert Warren*, *one of the two attorneys appointed to represent James at his second trial*,] testified that he had no recollection of James telling him about Hall's prior arrest for assault, nor did he recall the complaint Mara Ruffin had filed against Hall.  He testified that he looked at the court records for all the people involved in the case and scanned the statewide database for all circuit court and district court records related to the victim.   Warren said that he found nothing he considered to be significant.  He said that he would not have found the assault charge to be significant because, he said, it had been nol-prossed and was five years old and the complaint Ruffin filed against Hall had been dismissed.  Vinson [*i.e.* Virginia A. Vinson, lead trial defense attorney] testified that she did not recall James telling her about Ruffin's assault charge against Hall but that James was "very uncommunicative."  She said that James told her that he shot Hall after she charged him but that James never referred to Hall's having a weapon.  Both Vinson and Warren stated in their affidavits that James never told them that he acted in self-defense or that Hall had a weapon.

Initially, counsel had no reason to believe that the shooting was in self-defense because James did not tell his attorneys that he acted in self-defense.  "Depending on the defendant's statement to counsel, the need for further investigation may be considerably diminished or eliminated all together."  *Levan v. United States*, 128 F. Supp. 2d 270, 280 (E.D. Pa. 2001), citing *Strickland*, 466 U.S. at 691, 104 S. Ct. 2052.

Moreover, all the evidence showed that James was the aggressor and that he pushed his way into Sneed's apartment and shot Hall multiple times, even after she fell to the floor.  There was no evidence from the two eyewitnesses to the shooting indicating that James acted in self-defense.[FN5]  Nor did James present any evidence at the Rule 32

proceedings that he acted in self-defense.  Based on James's statements to his attorneys and the facts of the case, we cannot say that counsels's [*sic*] actions were unreasonable.

> [FN5.  Rule 32 counsel asserts in his brief to this Court that evidence of Hall's specific prior acts of violence would have been admissible at James's trial if he had relied on self-defense.  However, in *Quinlivan v. State*, 627 So. 2d 1082, 1084 (Ala. Crim. App. 1992), we stated:  "Alabama follows the rule that the deceased's violent nature may be proved only by evidence of reputation and not by specific acts."]

*James*, 61 So. 3d 357, 365-367 (Ala. Crim. App. 2010) (alterations and emphasis supplied).

When assessing the reasonableness of an attorney's investigation, "a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Williams v. Allen*, 542 F.3d 1326, 1337 (11th Cir. 2008) (quoting *Wiggins v. Smith*, 539 U.S. 510, 527 (2003)).  James asserts that his attorneys' performance was deficient due to their failure to investigate the victim, Faith Hall.[80]  James asserts that her "history of violence" and her criminal background were important, because he told his attorneys that Faith Hall "had come at him with a knife after he had turned to leave the apartment, and that he had initially fired the gun instinctively in order to defend himself."[81]  James states that "Vinson's own affidavit sworn under oath

---

[80] Doc. no. 11 (Amended Habeas Petition), ¶ 60, at 18.

[81] *Id.*

establishes that she was on notice of facts requiring investigation of possible self-defense or, at a minimum, facts which might have reduced the gravity of the offense or provided mitigation evidence at the penalty phase,"[82] and that "the facts regarding Ms. Hall's conduct conclusively demonstrate prejudice at both the guilt and penalty phases."[83]

Faith Hall's history of violence included: an arrest for third degree criminal assault in May of 1990; two arrests for assault of James's girlfriend, Mara Ruffin; an incident in which Ms. Hall smashed the window of an automobile in which James and Mara Ruffin were riding; Ms. Hall's stalking of Ms. Ruffin; and, reports that Ms. Hall filed false police reports against James in retaliation for him dating another woman.[84] James describes Ms. Hall as "a jealous, spiteful, volatile, and assaultive perpetrator of domestic violence against others, who sought to intimidate and control Mr. James, and to sabotage his relationship with his girlfriend."[85] James asserts that any of these facts could have been readily discovered through "competent investigation," including checking public records and interviewing people in James's life, including

---

[82] *Id.*, ¶ 61, at 19.

[83] *Id.*, ¶ 67, at 21-22.

[84] *Id.*, ¶¶ 60, 62, 63-65, at 18-20.

[85] *Id.*, ¶ 66, at 21. Given this description of the victim, James offered no coherent explanation as to why he went to Sneed's apartment in search of the victim.

Ms. Ruffin.[86]

This court finds that the state courts' application of the *Strickland* standards was reasonable. James has failed to demonstrate how his trial attorneys' behavior fell below the professional conduct expected of reasonable attorneys, given the alleged evidence concerning the victim, Faith Hall. The evidence was not enough to render counsel's failure to investigate further a professionally unreasonable error. Because much of the evidence cited by James was, more than likely, inadmissible, trial counsel could not have acted unreasonably in failing to present it. As the circuit court explained, evidence of the victim's violent character, even evidence of her reputation for such, is not admissible in a criminal proceeding in which *the accused* was *the aggressor. See Bankston v. Alabama*, 358 So. 2d 1040, 1042 (Ala. 1978) (holding that "evidence of the deceased's turbulent, violent, and bloodthirsty character is not competent absent some evidence tending to show . . . some overt act or hostile demonstration on the part of the deceased"); *see also*, *e.g.*, *Smith v. State*, 466 So. 2d 1026, 1031 (Ala. Crim. App. 1985) (holding that evidence of a victim's character is not admissible when the accused was the aggressor).

The Rule 32 circuit court noted James's allegation that Faith Hall "charged at him with a knife," but observed that he

---

[86] *Id.*, ¶ 67, at 21.

did not present any testimony or evidence at the Rule 32 hearing that supported this allegation.   Moreover, the witnesses at trial never indicated that the victim charged James with a knife.  Instead, they testified that she was trying to escape when shot.  As the aggressor in this case, James cannot demonstrate any facts that would establish a viable theory of self-defense, imperfect self-defense, or reduced capability.  As such, James cannot demonstrate that trial counsel was ineffective under *Strickland v. Washington* for failing to introduce arrest records of Ms. Hall.

C.R. Vol. 32, Tab 78, at 65.

In the reply brief filed by James in this court, he asserts that "the legal question before the [Rule 32 circuit] court was not whether [such] documents were admissible. Rather, the question . . . was whether it was reasonably probable that a more positive result would have been obtained had counsel conducted the required investigation."[87] Given that such evidence would not have been admissible under Alabama law, however, James cannot prove prejudice under *Strickland*, regardless of the amount of time counsel spent investigating the victim's past violent acts.

James argues, nevertheless, that the evidence of Ms. Hall's past violent acts *would* have been admissible; he asserts that, "[u]nder Alabama law, evidence of specific acts of violence is in fact admissible to show the accused's knowledge of such acts and his reasonable apprehension of peril."[88] As an abstract proposition of

---

[87] Doc. no. 25 (Petitioner's Response), at 39 (alterations supplied).

[88] *Id.* at 41 (citing *Wright v. State*, 641 So. 2d 1274, 1280 (Ala. Crim. App. 1994)) (alteration supplied).

Alabama law, that may be so. But, the eyewitness testimony from trial cannot be undone with later theories for justification. The state court found that the evidence unequivocally demonstrated that James forced his way into the apartment in which Hall had sought refuge, that he was armed with a gun, and that he shot her while she was attempting to escape.[89] In other words, *he* was the aggressor. Furthermore, there was no evidence from the two eyewitnesses to the shooting indicating that James acted in self-defense. Significantly, James also did not present any evidence at the Rule 32 hearing that he acted in self-defense. *See James*, 61 So. 3d at 366-67.

As the Supreme Court noted in *Lockhart v. Fretwell,* 506 U.S. 364 (1993), "[i]neffective-assistance-of-counsel claims will be raised only in those cases where a defendant has been found guilty of the offense charged, and from the perspective of hindsight there is a natural tendency to speculate as to whether a different trial strategy might have been more successful." *Id*. at 372 (alteration supplied). Even assuming that a different trial strategy would have resulted *if* trial counsel had investigated the victim's background more thoroughly, and even assuming that counsel had, somehow, managed to place that evidence in front of the jury, James still suffered no prejudice as required by *Strickland. See* 466 U.S. at 693 ("[A]ctual ineffectiveness claims alleging a deficiency in attorney performance are subject to a

---

[89] C.R. Vol. 32, Tab 78, at 65.

general requirement that the defendant affirmatively prove prejudice.") (alteration supplied).  The two eye-witnesses to the murder completely refuted any claim of self-defense.  Thus, no basis in fact exists to support a finding that, but for counsel's alleged errors, the outcome of the proceeding would have been different.  *Id*. at 694; *see also Lockhart*, 506 U.S. at 372 (1993) ("Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him.").

Given the totality of the evidence presented to the Rule 32 circuit court, this court concludes that the determination of the Alabama Court of Criminal Appeals that James did not raise a reasonable probability of a different result is neither contrary to, nor an unreasonable application of, clearly established federal law, as determined by the Supreme Court's opinion in *Strickland v. Washington*, *supra*.  28 U.S.C. § 2254(d)(1).  As the Eleventh Circuit has explained,

> "no absolute duty exists to investigate particular facts or a certain line of defense." *Chandler* [*v. U.S.*], 218 F.3d [1305] 1318 [(11th Cir. 2000)].  Instead, a court's assessment of an attorney's investigation hinges on whether that investigation — or the decision to limit it — was reasonable. *Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066.  Finally, "[a] decision to limit investigation is 'accorded a strong presumption of reasonableness,'" *Mills v. Singletary*, 63 F.3d 999, 1021 (11th Cir. 1995) (internal quotation marks omitted), and "to be effective a lawyer is not required to 'pursue every path until it bears fruit or until all hope withers.'" *Williams v. Head*, 185 F.3d 1223, 1237 (11th Cir. 1999) (quoting *Foster v. Dugger*, 823 F.2d 402, 405 (11th Cir. 1987)).

*Puiatti v. Secretary, Florida Dept. of Corrections,* 732 F.3d 1255, 1279-1280 (11th Cir. 2013) (alteration in original).  The decision of the Alabama Court of Criminal Appeals also was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(2).  For all of those reasons, James is not entitled to *habeas* relief on this subclaim.

**2**.    *Failure to investigate James's Atlanta excursion*

James includes in this section of his *habeas* petition an argument that "[t]rial counsel was also deficient in failing to investigate James's activities prior to, during, and after the homicides, including, but not limited to, his whereabouts on the day preceding the homicide incident."[90]  James alleges that a proper investigation would have led to evidence proving that "prosecution witness Bridget Gregory either lied or was mistaken when she testified she saw Mr. James sitting on the steps of Faith Hall's apartment building with a gun[,] waiting for Hall to arrive home[,] on the afternoon of Sunday, August 14," because he had been in Atlanta over the weekend, and did not return to Birmingham until late on the evening of August 14, 1994.[91]

The last state court to render a reasoned opinion on this subclaim was the Alabama Court of Criminal Appeals in its second opinion on collateral appeal, entered following remand from the Supreme Court's reversal of the intermediate

---

[90] Doc. no. 11 (Amended Habeas Petition), ¶ 68, at 22 (alteration supplied).

[91] *Id.*, ¶ 69, at 22 (alterations supplied).

appellate court's original opinion on collateral appeal.  *See James v. State*, 61 So. 3d

357 (Ala. Crim. App. 2010).[92]

The Court of Criminal Appeals first observed that Gordon Herbert Warren, one

of the attorneys who represented James during his second trial, testified that James

had told him and lead defense counsel, Virginia Vinson, that

> he went on a trip with a girlfriend.  *But, it was for some period of time
> other than the time around the crime.*  Because of the timing it was not
> helpful so we did not pursue it.  *He was talking about a trip the week
> before the crime.*  They were in no way connected.

*Id*. at 367 (emphasis supplied).  The intermediate appellate court then held that:

> Based on the information James furnished to his attorneys,
> *information that was not contradicted in the Rule 32 proceedings*,
> counsel's conduct in not pursuing this line of defense was not
> unreasonable.
>
> Furthermore, James cannot satisfy the prejudice prong of the
> *Strickland* test.  Two eyewitnesses testified that James shot Hall.
> Several other witnesses, one a police officer, testified that they saw
> James near Hall's apartment complex at around the time of the shooting.
> The evidence against James was overwhelming.  Accordingly, any
> failure to investigate and to present evidence about where James was on
> the day before the shooting resulted in no prejudice to James.

*Id*. (emphasis supplied).

This court finds that the state court's application of *Strickland* was reasonable.

Mr. Warren's uncontradicted summary of James's description of his whereabouts

---

[92] The state intermediate appellate court's original opinion was reported as *James v. State*,
61 So. 3d 332 (Ala. Crim. App. 2006), *rev'd*, *Ex parte James*, 61 So.3d 352 (Ala. 2009).

does not demonstrate that his actions, or those of his co-counsel, were objectively deficient.  Trial counsel had a valid reason for not pursuing this line of inquiry.  Even if James could demonstrate deficient performance, he still has failed to demonstrate prejudice:  *i.e.*, that presentation of this evidence — if such evidence even exists — would likely have made a difference in the outcome of the proceedings.[93]  James is not entitled to *habeas* relief on this subclaim.

**3**.   *Failure to investigate James's mental health*

James next contends that he was prejudiced by counsel's failure to investigate and present evidence that he suffers from various mental issues (principally, a "dissociative reaction"),[94] because it "would have destroyed the prosecution's theory that [he] entered the apartment with the intent to commit an assault on Ms. Hall.  This was a death penalty case solely because the jury concluded that [he] committed

---

[93] James asserts that "the appellate court went a step farther and held in the alternative that James could not satisfy the prejudice prong of the *Strickland* test because two witnesses testified they saw James shoot Hall."  Doc. no. 25 (Petitioner's Response) at 46.  He argues that "the appellate court misses the point.  One of those two witnesses testified she had seen James outside the apartment . . . the day before the shootings."  *Id.*  Thus, according to James, if trial counsel had established that James was in Atlanta the day before the shootings, it would have undermined the testimony of witness Bridget Gregory.  *Id.*  It is *James* who "misses the point," however.  Even if he could have shown that Gregory was mistaken in that aspect of her testimony, it remains the fact that two eyewitnesses testified that he shot the victim while she was running away.  Thus, James cannot show prejudice under *Strickland* concerning the failure to search for evidence regarding his whereabouts the day prior to the shooting.

[94] *See* doc no. 11 (Amended Habeas Petition), ¶¶ 70-71, at 22-23.  James alleges that the existence of his mental problems was readily available to defense counsel, and they could have discovered it by interviewing people in James's life, medical experts, and reviewing medical records. *Id.*

103

burglary-felony murder."[95]

Specifically, James alleges that a competent investigation by counsel would have shown that, even though he carried a .38 caliber revolver into the apartment of Tammy Sneed on August 15, 1994, he had no intent to assault or shoot Faith Hall. Instead, he just wanted to talk about their relationship, as demonstrated by the fact that he, *allegedly*, "promptly put the gun away." It was only when he turned to leave the apartment that

> Ms. Hall then attacked him with a knife; that Mr. James reacted instinctively to this assault by firing his weapon at Ms. Hall; that . . . Mr. James suffered a dissociative reaction and lost contact with reality; that Mr. James did not intend to kill Ms. Hall and did not even realize he had done so until he went to the back door to leave. . . .[96]

The Rule 32 circuit court addressed the foregoing contentions by emphasizing that James's trial attorneys had attempted to do exactly what he now contends they should have done: that is, negate the burglary element of the capital murder charge by demonstrating that, when James forced his way into the apartment in which Faith Hall had sought refuge, he did not do so with the intent to harm her.

> In light of the evidence presented at trial and the evidentiary hearing, the Court finds that trial counsel's performance during the guilt phase portion of the trial was reasonable. *At trial, trial counsel's strategy was to show that James had not committed a burglary and therefore, was not guilty of capital murder.* (RTR. 194-195) *Trial*

---

[95] Doc. no. 25 (Petitioner's Response), at 46-47 (alterations supplied).

[96] *Id.*, ¶ 70, at 22-23.

104

*counsel attempted to show that after entering the apartment, James put his gun away*. (RTR. 145) *Essentially, trial counsel's strategy was to negate the burglary element of the capital murder charge by demonstrating that at the time James entered the apartment he did not have the intent to harm Ms. Hall*.  In light of the evidence, such a strategy was reasonable.  Furthermore, because witnesses identified James as the initial aggressor and the shooter, any self-defense theory would have been futile.  In sum, the Court finds that James has failed to demonstrate that trial counsel's performance was deficient as required by *Strickland.*

C.R. Vol. 32, Tab 78, at 67-68 (emphasis supplied).

However, the Alabama Court of Criminal Appeals was the last state court to issue an opinion on the present claim.  That Court's second opinion on collateral appeal, following remand from the State Supreme Court, focused upon James's contention that he suffered from "a dissociative reaction" that negated an intent to kill the victim.  The intermediate appellate court's discussion of that contention began with quotations from the Rule 32 circuit court's findings.

"James also alleges that trial counsel should have investigated and presented evidence that he suffered [from] a dissociative reaction and did not intend to kill the victim. James contended that such information could have been gleamed from friends and family members, medical records; and/or by mental health professionals.  James presented testimony from several family members at the Rule 32 hearing.  However, none of the family members ever testified that Mr. James suffered from mental health problems or dissociative reactions.

". . . Moreover, a psychological report conducted by Dr. Wendy Rebert prior to the first trial indicated that Mr.

> James exhibited 'no signs or symptoms associated with a major psychiatric disorder such as psychosis, a thought disorder, or a major effective disorder."

(C.R. 118.)

Apparently, postconviction counsel relied on a written notation in [Virginia] Vinson's case file.  In the margin of one of her documents, Vinson wrote, "In a trance."  However, the following occurred during her examination:

> "[Postconviction counsel]:  In the left-hand margin, there are three words.
>
> "[Vinson]:  I am sorry.  'In a trance.'
>
> "[Postconviction counsel]:  'In a trance.'
>
> "[Vinson]:  Yes.
>
> "[Postconviction counsel]:  So was he stating that he was in a trance or an associated state at the time of the crime?
>
> "[Vinson]:  I don't know if that refers to him or her."

(R. 214–15.)

James did not testify at the postconviction hearing.  Also, neither James's aunt, nor his brother, nor his sister testified that James had any mental problems.  *There was no evidence that James was in a* "trance" *at the time of the shooting*[,] *or that he had any type of mental disorder. Accordingly, James failed to meet his burden of proof in regard to this claim.  See* Rule 32.3, Ala. R.Crim. P.

Also, the record shows that in 1995[,] before James's first trial[,] he was evaluated by Dr. Wendy M. Rebert, a clinical psychologist.  Dr. Rebert performed the Competency to Stand Trial Assessment Instrument ("CAI") and the Wechsler Adult Intelligence Scale–Revised test

106

("WAIS–R").  James scored a verbal IQ of 102.[FN7]  *It was Dr. Rebert's opinion* that James was competent to stand trial and *that James was not suffering from any mental defect at the time he shot and killed Hall*. Vinson also testified that she was familiar with Dr. Rebert, that she had never found any reason to doubt her judgment, and that she always found Dr. Rebert to be fair and unbiased.  Vinson testified she did not think it was necessary to consult another expert based on Dr. Rebert's examination.  "Counsel is not ineffective for relying on an expert's opinion."  *Smith v. State*, [Ms. CR–05–0561, September 26, 2008] — So. 3d —, — (Ala. Crim. App. 2008).

> FN7. The scores on this test were consistent with an IQ test that had been administered to James when he was approximately 10 years of age.  James's performance IQ when he was 10 years old was 102. (C.R. 2111.)

*James appears to argue in his brief that he is retarded*.  The record clearly shows that James does not meet the most liberal definition of mental retardation adopted by the Alabama Supreme Court in *Ex parte Perkins*, 851 So. 2d 453, 455–56 (Ala. 2002).

> "[T]rial counsel had no reason to retain another psychologist to dispute the first expert's findings.  'A postconviction petition does not show ineffective assistance merely because it presents a new expert opinion that is different from the theory used at trial.'  *State v. Combs*, 100 Ohio App. 3d 90, 103, 652 N.E.2d 205, 213 (1994).  *See also State v. Frogge*, 359 N.C. 228, 244–45, 607 S.E.2d 627, 637 (2005).  'Counsel is not ineffective for failing to shop around for additional experts.'  *Smulls v. State*, 71 S.W.3d 138, 156 (Mo. 2002).  'Counsel is not required to "continue looking for experts just because the one he has consulted gave an unfavorable opinion." *Sidebottom v. Delo*, 46 F.3d 744, 753 (8th Cir. 1995).' *Walls v. Bowersox*, 151 F.3d 827, 835 (8th Cir. 1998)."

*Waldrop v. State*, 987 So. 2d 1186, 1193 (Ala. Crim. App. 2007).

Furthermore, both Vinson and Warren testified that in their

dealings with James they had no reason to doubt his mental health.   In both James's first trial and his second trial he filed numerous *pro se* motions and often spoke with the circuit court.   James was articulate and clearly had a grasp of the legal system and his situation.   There is no indication in the numerous documents authored by James and his oral dealings with the circuit court that James had any mental-health issues.   In fact, after James's first capital-murder conviction he requested that the circuit court allow him to represent himself on appeal.[FN8]   He informed the court that he was familiar with the appeal process because he had handled two of his previous appeals and one had resulted in a remand.   The circuit court allowed James to represent himself and appointed advisory counsel.   (R. 597.)   Sometime later in the appeal process James did move that counsel be appointed.

> FN8. We take judicial notice of our records related to the appeal of James's first capital-murder conviction in CR–96–0405.   *See Nettles v. State*, 731 So. 2d 626 (Ala. Crim. App. 1998).

> "[N]either [of defendant's attorneys] witnessed anything in their frequent and extensive dealings with [the defendant] to indicate that he was afflicted with any mental disorder that might have been relevant to the murder.   *Cf. Housel v. Head*, 238 F.3d 1289, 1296 (11th Cir. 2001) (counsel not ineffective for failing to pursue mental health investigation where counsel knew the defendant had suffered a head injury in an automobile accident, but observed nothing unusual about the defendant's behavior, testifying that he was one of counsel's 'most intelligent' clients); *Holladay v. Haley*, 209 F.3d 1243, 1252 (11th Cir. 2000) (counsel not ineffective for failing to pursue mental health investigation where the petitioner did not tell counsel of his stay at a mental hospital and counsel found the petitioner to be cooperative, articulate, and affable); *Williams* [*v. Head*], 185 F.3d [1223] at 1239 [(11th Cir. 1999)] (counsel not ineffective for failing to pursue mental health investigation where counsel had no problems communicating with the petitioner, found the petitioner to be intelligent, attentive, cooperative, polite, and interested

in what was happening, to ask intelligent questions and to respond intelligently to counsel's questions)."

*Jefferson v. Hall*, 570 F.3d 1283, 1304–05 (11th Cir. 2009). *See also Breland v. State*, 285 Ga. App. 251, 253, 648 S.E.2d 389, 391–92 (2007). "[T]here is nothing in the record to suggest that [the defendant's] trial counsel ignored matters that should reasonably have alerted them to [the defendant's] mental health or to the value of contacting persons who might have information about [the defendant's] background that might aid in his defense." *Jones v. State*, 753 So. 2d 1174, 1197 (Ala. Crim. App. 1999). Accordingly, James failed to prove by a preponderance of the evidence that his attorneys were ineffective for failing to investigate and present evidence of his alleged "dissociative reaction."

*James v. State*, 61 So. 3d 357, 368-70 (Ala. Crim. App. 2010) (alterations and emphasis added).

This court finds that the application of the *Strickland* standards by the Rule 32 circuit court and the Alabama Court of Criminal Appeals was reasonable. The state courts found an utter lack of real evidence to support this claim. The determination that trial counsel could not have been deficient in failing to present evidence that did not exist was entirely reasonable. Stated differently, James has not demonstrated that either state court's adjudication of this claim resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d)(2). Consequently, he is not entitled to *habeas* relief.

**4**.   *Failure to contact, interview, and investigate the State's witnesses*

James next claims that his trial attorneys provided constitutionally ineffective assistance by failing to contact, interview, and investigate the State's principal witnesses.[97] "As a consequence, the defense was unable to effectively cross-examine these witnesses at trial or challenge their credibility."[98] He also alleges that the state's witnesses were "biased" against him and, therefore, "untrustworthy."[99]

The last state court to issue a reasoned decision on this allegation was the Rule 32 circuit court, which found that "James did not call any of the State's principal witnesses at the evidentiary hearing. James also failed to question trial counsel regarding this claim. In sum, James did not present any evidence that supports his claim."[100]

Because the state court found a complete lack of evidence to support James's allegations, the decision denying the claim was reasonable. At most, James argues that an adequate investigation would have revealed credibility issues with the State's witnesses, implying that, perhaps, the jury would have been less inclined to accept their testimony. Such speculation is not sufficient to support the prejudice prong of the *Strickland* standard. Instead, a *habeas* petitioner has the burden of affirmatively

---

[97] Doc. no. 11 (Amended Habeas Petition), ¶ 72, at 23.

[98] *Id*.

[99] *Id*.

[100] C.R. Vol. 32, Tab 78, at 67.

demonstrating that "there is a reasonable probability, but for counsel's unprofessional errors, the results of the proceeding would have been different." *Strickland*, 466 U.S. at 694. When considering the totality of the evidence against James, the likelihood that the outcome would have been different is not great. *See Brownlee v. Haley*, 306 F.3d 1043, 1060 (11th Cir. 2002).[101]

**5**.   *Failure to investigate defense witnesses*

James also alleges that his trial attorneys failed to contact, interview, and investigate numerous defense witnesses.[102] Such an investigation, he claims, would have uncovered evidence establishing "the volatile nature of the relationship between Mr. James and Ms. Hall," as well as James's various, ill-defined, mental "problems."[103] Those allegations have been sufficiently addressed in the previous Parts of this opinion.

That is not the end of discussion, however, because James also asserts in this same subclaim that his trial attorneys rendered constitutionally ineffective assistance by failing to gather relevant mitigating evidence, including evidence that he "had no history of violence, was unusually mild-mannered, avoided arguments, and had never

---

[101] It also should be noted that James does not allege at any point in his petition or briefs that he is actually innocent of the crime of conviction.

[102] Doc. no. 11 (Amended Habeas Petition), ¶ 73, at 24.

[103] *Id.*, ¶ 73.

111

previously struck a woman or been in a fistfight, even as a child."[104]  According to

James, "[t]his evidence would not only have shown that the killing of Faith Hall was

out of character, but would also have underscored the fact that the killing resulted

from the volatile nature of Mr. James's relationship with Ms. Hall and his underlying

mental impairments."[105]  Even if those allegations are true, James still has failed to

show that the Rule 32 circuit court unreasonably applied the prejudice prong of the

*Strickland* standard when it determined that he failed to prove there was a reasonable

probability that, *if* his attorneys *had* investigated, developed, and presented such

evidence at trial, the jury would have returned a verdict other than "guilty."

**6**.    *Failure to investigate* "the apparent" *contamination of the crime scene*

James next asserts that his trial attorneys provided constitutionally ineffective

assistance by "failing to investigate or challenge *the apparent* contamination of the

crime scene by law enforcement officers and technicians following the homicide."[106]

"Such an investigation," James argues, "would have shown that important evidence

was not collected or preserved for testing, that evidence which was obtained was not

properly collected or preserved, and that the chain of custody of that evidence could

not properly be established."[107]

---

[104] *Id*., ¶ 75, at 25.

[105] *Id*. (alteration supplied)

[106] *Id*. ¶ 76, at 25 (emphasis supplied).

[107] *Id*.

Respondents assert that this subclaim was procedurally defaulted: *i.e.*, it was dismissed by the Rule 32 circuit court for failing to comply with the specificity and full factual pleading requirements of Alabama Rules of Criminal Procedure 32.3 and 32.6(b). Moreover, say respondents, the contention was not fairly presented as a federal claim in state court, and fails to state a claim for relief under Rule 2(c) of the *Rules Governing Section 2254 Cases in the United States District Courts*.[108]

### a.    *Procedural default*

As previously discussed in Part III.B.5.d of this opinion, *supra*, the Eleventh Circuit has ruled that a state court's dismissal of a claim under Alabama Rule of Criminal Procedure 32.6(b) is a ruling "on the merits," which entitles James to a 28 U.S.C. § 2254(d) review of his contentions.[109]

### b.    *Merits*

AEDPA precludes *habeas* relief on a claim previously adjudicated in state court, *unless* it is determined that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or it is found that the decision "was based on an unreasonable determination of the facts in light of the

---

[108] Doc. no. 19 (Respondents' Answer), at 15-17.

[109] *See Borden v. Allen*, 646 F.3d 785, 812 (11th Cir. 2011) (holding that an Alabama court's decision denying relief, or dismissing a claim, on the basis of the petitioner's failure to comply with Ala. R. Crim P. 32.6(b) "is also a ruling on the merits" and, therefore, does not *necessarily* foreclose review in a federal *habeas* proceeding).

evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also*, *e.g.*, *Kormondy v. Secretary, Florida Department of Corrections*, 688 F.3d 1244, 1273-74 (11th Cir. 2012).

Given the brevity of James's statement of this subclaim, the fact that he couches it in terms of an "*apparent* contamination of the crime scene," the fact that no evidence of *actual contamination* was presented at the hearing on his Rule 32 petition, and the Rule 32 circuit court's dismissal of the claim for James's failure to comply with the specificity and full factual pleading requirements of Alabama Rules of Criminal Procedure 32.3 and 32.6(b), this court can find no prejudice from the alleged failure of trial counsel to investigate "apparent contamination."

The last state court to issue a reasoned decision on this allegation was the Rule 32 circuit court, which held that

> James did not allege what evidence should have been collected and preserved, what evidence was improperly collected and preserved, or what evidence for which the chain of custody could have been established.  James also failed to show how he was prejudiced by counsel's deficiencies.  Accordingly, this part of the claim is summarily dismissed because it was not pleaded with the factual specificity required by Ala. R. Crim. P. 32.6(b).

C.R. Vol. 32, Tab. 78, at 10.

The Eleventh Circuit held in *Powell v. Allen*, 602 F.3d 1263 (11th Cir. 2010), that

AEDPA limits our review to whether the state court's determination that [the *habeas* petitioner] failed to plead sufficient facts in his Rule 32 petition to support a claim of ineffective assistance of counsel was contrary to or an unreasonable application of Supreme Court precedent. Thus, we look only to the allegations in [the petitioner's] Rule 32 petition and whether those allegations sufficiently state a claim for ineffective assistance of counsel.

*Id* at 1273 (footnote omitted, alterations supplied). The Rule 32 circuit court's determination of a lack of evidence to support James's claim of "apparent contamination" of the crime scene was reasonable in light of the evidence presented in the state court proceedings. Even if James had shown specific evidence of actual contamination of the crime scene, he still failed to show that his trial attorneys' failure to investigate the issue prejudiced him. *See*, *e.g.*, *Reed v. Secretary, Florida Department of Corrections*, 593 F.3d 1217, 1240 (11th Cir. 2010).

In summary, none of the allegations discussed in Parts V.C.1 through 6 of this opinion, regardless of whether they are considered individually or collectively, is sufficient to establish a claim of constitutionally ineffective assistance of counsel under the *Strickland* standards. The state courts' application of *Strickland* was reasonable in each instance, and *habeas* relief on each facet of the claims discussed above is due to be denied.

115

**D**.     **Failure to Procure Expert Assistance**[110]

James next alleges that his trial attorneys "performed deficiently in failing to procure the assistance of any experts in forensic issues, such as a criminalist or ballistics expert, or of any mental health professional, such as a psychiatrist, psychologist, neuropsychologist, or social history expert."[111]

**1**.     *Failure to obtain forensic experts*

James argues that "a criminalist should have been retained to examine the crime scene, the photographs of the crime scene taken by police technicians, and the evidence itself to analyze and explain to the jury the defects in the collection and preservation of evidence."[112]  He contends that photographs of the crime scene might have depicted the knife that Faith Hall purportedly used when allegedly attacking him.[113]

James also contends that an expert in firearms, ballistics, and tool marks should have been retained to analyze the bullets found at the scene, or in the victim's body, and to explain to the jury certain discrepancies relating to those bullets, as well as discrepancies relating to the weapon that Bridget Gregory testified she had seen

---

[110] Claim I.D:  *see* doc. no. 11 (Amended Habeas Petition), ¶¶ 78-84, at 26-29.

[111] Doc. no.11 (Amended Habeas Petition), ¶ 78, at 26.

[112] *Id.*, ¶ 79.

[113] *Id.*

James holding prior to the homicide.[114]  James asserts that such forensic testimony might have assisted in establishing a case for self-defense, imperfect self-defense, or reduced culpability, and may have undermined the prosecution's theory that he was stalking Hall prior to the homicide.[115]

### a.   *Procedural default*

Respondents contend that these forensic expert claims were procedurally defaulted, because the Rule 32 circuit court held that James failed to comply with the specificity and full factual pleading requirements of Alabama Rules of Criminal Procedure 32.3 and 32.6(b).[116]  Respondents also argue this claim is procedurally defaulted because James failed to fairly present it as a federal claim in the state court proceedings, and he should be barred from raising it now due to the statute of limitations and successive petition bars of state law.  Finally, respondents argue this claim "is conclusory in nature and fails to state a valid claim for relief under 28 U.S.C. § 2254."[117]  As this court has previously noted, however, *Borden v. Allen,* 646 F.3d at 816, disposes of respondents' arguments concerning procedural default, and requires this court to consider the merits of this claim.

---

[114] *Id.*, ¶ 80, at 26.

[115] *Id.*, ¶¶ 79-80, at 26.

[116] Doc. no. 19 (Respondents' Answer), at 18-19.

[117] *Id.* at 21.

117

**b**.   *Merits*

The last state court to issue a reasoned decision on this subclaim was the Rule 32 circuit court, which held that James's claim was

> insufficiently pleaded because he failed to state what the significance of the conclusion that these bullets did not match would be or how the credibility of witness Gregory would have been undermined.  James has not met his burden of pleading under Rule 32.6(b).  Moreover, James failed to provide any facts indicating that trial counsel could have had an expert appointed by the trial court.

C.R. Vol. 32, Tab 78, at 12.  In addition, that court dismissed the subclaim pursuant to Alabama Rule of Criminal Procedure 32.7(d), because the subclaim was deemed to be "without merit."  *Id*. at 29.  This court finds those rulings to be reasonable.

James failed to demonstrate prejudice under *Strickland* in either the Rule 32 proceedings, or in the briefs and materials submitted here, in support of his amended *habeas* petition.  He merely speculates that a forensic expert's examination of the crime scene photographs *might have* revealed that Faith Hall possessed a knife, or some similar object, but such speculation is not enough to establish, as *Strickland* requires, that the outcome of the trial, more likely than not, would have been different, but for the error of his trial attorneys.

In addition, James failed to demonstrate prejudice with respect to Bridget Gregory's testimony about guns.  He argues that a ballistics expert could have explained the difference between a 9 millimeter and a .38 caliber round to the jury,

118

which "would have undermined the prosecution's case by creating a reasonable doubt as to [his] culpability."[118]  Missing from that argument, however, is any supposition that such evidence would have had any likelihood of changing the outcome of the trial.  Put simply, the issue of whether James had a different caliber weapon in his possession *on the day before the murder* is akin to the question of whether James was actually in Atlanta on some date prior to the crime:  that is, it fails to negate the eyewitness testimony concerning the murder itself.  The Rule 32 circuit court's finding that these allegations did not meet James's burden under Rule 32.6(b) of the Alabama Rules of Criminal Procedure, therefore, is not "so lacking in justification" that "there was an error . . . beyond any possibility for fairminded disagreement." *Anderson v. Secretary, Florida Department of Corrections*, 752 F.3d 881, 903 (11th Cir. 2014) (quoting *Harrington v. Richter*, 562 U.S. 86, —, 131 S. Ct. 770, 786-87 (2011)).

**2**.    *Failure to obtain mental health experts*

James next argues that his trial attorneys also rendered constitutionally deficient performance by

> failing to request funds for or retain the services of a forensic psychiatrist, a clinical psychologist, a neuropsychologist, or a social history expert.  Counsel was actually aware or should have been aware of significant information suggesting that Mr. James suffered from post-

---

[118] Doc. no. 11 (Amended Habeas Petition), ¶ 80, at 26 (alteration supplied).

> traumatic stress disorder and a combination of other mental and emotional problems which rendered him unable to form and prevented him from actually forming the mental states required for capital murder.

Doc. no. 11 (Amended Habeas Petition),¶ 81, at 26-27.

Respondents contend that the Alabama Court of Criminal Appeals denied this subclaim on the merits, and that James cannot demonstrate that the Court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, or that it was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.[119] *See* 28 U.S.C. § 2254(d).

The last state court to issue a reasoned decision on this subclaim was the Rule 32 circuit court, which reviewed the Rule 32 hearing testimony of Counsuela James (James's aunt) and Yosandra Yvette Craig (James's sister) and noted that neither of those witnesses claimed that James had any mental illness or problems.[120]  That court also reviewed the testimony of trial attorney Gordon Herbert Warren, who stated that he had no reason to suspect that James suffered from any form of mental disease or defect.[121]  In addition, the Rule 32 court reviewed two documents that James presented at the Rule 32 hearing on this issue.  The first — a psychological review conducted in April 1998 by Richard Holbrook, a Licensed Professional Counselor —

---

[119] Doc. no. 19 (Respondents' Answer), at 21-22.

[120] C.R. Vol. 32, Tab 78, at 70-71.

[121] *Id.* at 71.

120

concluded that James did not suffer from any significant mental health problems, but did reference that he exhibited "schizoid characteristics," and "was withdrawn."[122] James did not call Mr. Holbrook to testify, however.[123]   The court noted that "numerous other psychological reviews conducted before and after [Mr. Holbrook's] April 30, 1998 review indicated that James did not suffer from any mental health problems."[124]

James introduced copies of two "MMPI-2" tests that had been administered to him, but did not present any testimony or evidence demonstrating that the results obtained by administration of those assessment instruments were valid, and did not call the test administrators to testify.  Instead, he relied upon an isolated passage in one of the text documents that indicated he "may exhibit a thought disorder."[125]

Finally, the Rule 32 circuit court noted the testimony of lead trial attorney Virginia Vinson, to the effect that she had relied on the psychiatric evaluation of Dr. Wendy Rebert, concluding that James showed no signs of mental illness, when making her decision to not develop evidence of mental illness for presentation at trial.[126]

---

[122] *Id*. at 72.

[123] *Id*.

[124] *Id*. at 73 (alteration supplied).

[125] *Id*.

[126] C.R. Vol. 32, Tab 78, at 74.

After taking all of the foregoing considerations into account, the Rule 32 circuit court held that "the evidence and testimony presented during the evidentiary hearing does not support [James's] allegation that trial counsel was ineffective in investigating and presenting evidence of mental illnesses."[127]   The court concluded that James had failed to satisfy either prong of the *Strickland* standard.[128]   The court also held that the decision of trial counsel to forgo the presentation of mental health evidence was reasonable under the circumstances, because Virginia Vinson was

> not required to search for a psychiatrist or psychologist until she [was] able to find one who [would] testify favorably.   Nor was her performance deficient because she failed to discover the two MMPI-2's, and the thirty-day psychological review introduced by Mr. James's [*sic*]. Based on her review of the psychological report prepared by Dr. Rebert and her own observations of Mr. James, it was entirely reasonable for her not to pursue other possible sources of mental health evidence.

C.R. Vol. 32, Tab 78, at 74-75 (alterations supplied).   The Rule 32 circuit court concluded by saying that, even if James could satisfy *Strickland's* deficient *performance* prong, he still could not establish *prejudice*, because he failed to present any expert testimony that he actually suffered from a mental illness.[129]

This court finds the decision of the Rule 32 circuit court to be a reasonable application of *Strickland*.   When evaluating a *Strickland* claim, a reviewing court

---

[127] *Id.*

[128] *Id*. at 74-75.

[129] *Id*. at 76.

122

must consider whether the evidence would have prompted a reasonable attorney to investigate further. *Williams v. Allen*, 542 F.3d 1326, 1337 (11th Cir. 2008). The evidence placed before the Rule 32 circuit court which suggested that James may have had mental problems, if any, was not sufficiently significant to lead a reasonable attorney to retain mental health experts. Accordingly, trial counsel could not have been deficient in failing to do so.

Nevertheless, James states in his amended *habeas* petition that his attorneys testified about his erratic behavior, and he then asserts that such behavior was "symptomatic of front lobe brain damage and a number of psychiatric disorders ranging from depression to schizophrenia."[130]

He also states that Virginia Vinson testified that she was aware that James suffered childhood physical abuse, and then asserts: "[I]t has long been recognized that childhood physical abuse and maltreatment are closely associated with post-traumatic stress disorder."[131] James adds that his attorneys' alleged knowledge of his parents' substance abuse and other problems "practically screamed that further mental health investigation needed to be done."[132]

Such rampant speculation is not a rational basis for contending that his trial

---

[130] Doc. no. 11 (Amended Habeas Petition), ¶ 82, at 27.

[131] *Id*. (alteration supplied).

[132] *Id*. at 28.

attorneys were ineffective for not running down this rabbit hole. "Importantly, for a federal habeas court to find a state court's application of Supreme Court precedent 'unreasonable,' it is not enough that the state court's adjudication be only 'incorrect or erroneous'; it must have been 'objectively unreasonable.' *Borden v. Allen*, 646 F.3d 785, 817 (11th Cir. 2011) (quoting *Wiggins v. Smith*, 539 U.S. 510 520-21 (2003)).

*Strickland* required the Rule 32 circuit court to evaluate the behavior of petitioner's trial attorneys in comparison to the manner in which reasonable attorneys, not reasonable mental health professionals, would have acted under the same or similar circumstances. In that regard, the Eleventh Circuit has said:

> When, however, "strategic choices [are] made after less than complete investigation [they] are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id*. at 690–91, 104 S. Ct. [at 2066]. Thus, at bottom, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances . . . ." *Id*. at 691, 104 S. Ct. [at 2066]. This means that when we assess the attorney's decision not to investigate, we "must consider . . . whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins v. Smith*, 539 U.S. 510, 527, 123 S. Ct. 2527, [2538,] 156 L. Ed. 2d 471 (2003).

*Borden v. Allen*, 646 F.3d at 818-19 (quoting *Powell v. Allen*, 602 F.3d 1263, 1273) (11th Cir. 2010)) (first alteration in original, all other alterations supplied).

124

The Rule 32 circuit court considered the "known evidence" when assessing whether the decision of petitioner's trial attorneys was reasonable.  Gordon Herbert Warren testified that, despite James's erratic behavior at trial, he did not think that behavior was due to any mental health problems, but that James was, instead, angry and agitated about the trial, and the prospect of his punishment.[133]  Similarly, Virginia Vinson acted reasonably when relying upon the psychiatric report of Dr. Wendy Rebert, conducted prior to James's first trial, and which concluded that he showed "no signs or symptoms associated with a major psychiatric disorder such as a psychosis, a thought disorder, or a major effective disorder."[134]

Given the known evidence, and the fact that all indicia before James's trial attorneys refuted any claim of a mental disease or defect, their decision to not expend scarce resources in an investigation of their client's mental health was not objectively unreasonable.  *See e.g., Terrell v. GDCP Warden*, 744 F.3d 1255, 1264 (11th Cir. 2014) (holding that trial counsel's failure to engage the services of an expert did not prejudice defendant, because the "likelihood of a different result [was not] substantial") (citations omitted).  This claim does not merit *habeas* relief.

---

[133] *See* C.R. Vol. 32, Tab 78, at 71.

[134] *Id*. at 66-67.

125

## E.   Failure to Investigate or Challenge Petitioner's Competence to Stand Trial[135]

James next asserts that his trial attorneys "knew or should have known that [he] was not competent to stand trial."[136]   In addition to citing various alleged mental problems, James asserts that his attorneys were aware that he had been involved in an altercation at the jail during the weekend prior to the beginning of trial; specifically, he alleges that he was the victim of an attempted sexual assault.[137] James also argues that counsel should have known that he was not competent to stand trial based upon his erratic behavior, and the bizarre statements he made prior to and at the beginning of trial.[138] "Accordingly," argues James, "it was incumbent upon counsel to retain expert assistance to determine whether [he] was *unable* to assist in his own defense due to mental disease or defect."[139]

Respondents contend that this subclaim was denied on the merits by the Alabama Court of Criminal Appeals, and that James cannot demonstrate that its decision was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States, or that the decision was an unreasonable determination of the facts in light of the

---

[135] Claim I.E:  *see* doc. no. 11 (Amended Habeas Petition), ¶¶ 85-90, at 29-31.

[136] *Id.,* ¶ 86, at 29 (alteration supplied).

[137] *Id.*

[138] *Id.*

[139] *Id.* ¶ 88, at 30 (alteration supplied, emphasis in original).

evidence presented in the state court proceedings.[140]  28 U.S.C. § 2254(d).

The last state court to issue a reasoned decision on this claim was the Alabama Court of Criminal Appeals, which held in its original opinion on collateral appeal that:

> In this case, although the appellant alleged that he had several mental problems, he did not allege any specific facts in his petition to indicate that he did not have the ability to assist in his defense and that he was not able to consult with his trial counsel to a reasonable degree of rational understanding of the facts of his case and the legal proceedings against him.  Therefore, he has not satisfied his burden of pleading and proof as to this claim pursuant to Rules 32.3 and 32.6(b), Ala. R. Crim. P.

> Moreover, we have diligently examined the record from the appellant's previous appeals.  In 1996, before his first trial, the appellant was evaluated by Dr. Wendy Rebert, a clinical psychologist, who administered the Competency to Stand Trial Assessment Instrument ("CAI") and the Wechsler Adult Intelligence Scale–Revised ("WAIS-R").  She noted that the appellant exhibited "no signs or symptoms associated with a major psychiatric disorder such as psychosis, a thought disorder, or a major affective disorder" and that he scored a verbal IQ of 102 on the WAIS–R. (C.R. 1696–97.)  She also concluded that the appellant was competent to stand trial, specifically finding that he "appears to be bright enough and motivated enough to do a good job of assisting his attorney in his own defense." (C.R. 1699.)

> Also, the record from his 1999 direct appeal indicates that he was keenly aware of what was occurring during the trial and was most definitely an active participant in the trial proceedings.  In fact, he filed several relevant pro se motions during the proceedings.

> Finally, both of the appellant's trial attorneys executed affidavits.

---

[140] Doc. no. 19 (Respondents' Answer), at 23-24.

In her affidavit, Virginia Vinson stated, in part:

> "Joe seemed to understand the charges against him and possible penalty.  He knew that he was charged with capital murder and that he could get the death penalty again.  He understood that I was his attorney and what my job was.  He understood the job of the prosecutors.  I was never concerned about his mental competency. . . .
>
> ". . . .
>
> "I discussed Joe's mental competency with Brower [the appellant's attorney at his first trial] and Brower had no concerns either.  That's something I routinely look at—to see whether a defendant needs a psychological evaluation.  One of the reasons I did not seek a competency evaluation was that there was one from the first trial and Joe was found competent then."

(C.R. 1172–73.)  In his affidavit, Gordon Warren stated, in part:

> "I never saw any evidence of mental health problems in Joe.  I never had any actions or words from Joe that made me feel uneasy about his competence.  I simply saw him as an angry individual who wanted to control everything.  The lawyer has to be in control.  I think Joe thought he was going to manipulate Judge Vinson.  But, she did not allow that.  She had a lot more contact with Joe than I did and, at times, there was 'head butting' because Joe wanted to do everything himself.  No one else ever indicated they thought Joe had any mental health problem.  Sometimes, the judge will say 'get your client evaluated' or will order an evaluation of the defendant him or herself.  Nothing like that occurred here."

(C.R. 1186.)

Despite his bare allegations to the contrary, there was not any

128

indication that the appellant was not competent at the time of his second trial. Rather, as set forth herein, the records from his previous appeals directly refute his claim.

For these reasons, the appellant is not entitled to relief on this claim.

*James v. State*, 61 So. 3d 332, 345-46 (Ala. Crim. App. 2006), *rev'd on other grounds sub nom. Ex parte James*, 61 So. 3d 352 (Ala. 2009) (alteration in original).

The Alabama Court of Criminal Appeals also noted that the Rule 32 circuit court had found, based on the testimony of James's attorney, Gordon Herbert Warren, that he "never saw any indication that James was mentally ill or incompetent to stand trial."[141] Further, both trial attorneys had relied on the psychiatric evaluation conducted by Dr. Wendy Rebert prior to the first trial, which concluded that James was not mentally incompetent.[142] Following remand from the Alabama Supreme Court, the Alabama Court of Criminal Appeals concluded that there "is nothing in the record to suggest that [the defendant's] trial counsel ignored matters that should have reasonably alerted them to [the defendant's] mental health. . . " *James*, 61 So. 2d 357, 369 (Ala. Crim. App. 2010) (alterations in original) (quoting *Jones v. State,* 753 So. 2d 1174, 1197 (Ala. Crim. App. 1999)).

---

[141] C.R. Vol. 32, Tab 78, at 71.

[142] *Id*. at 75 (observing that lead defense attorney Virginia Vinson had testified that she "did not challenge James's competency or pursue any mental health defenses or mitigating evidence based on her discussions with James and the psychological evaluation conducted by Dr. [Wendy] Rebert"), (alteration supplied).

James states in paragraph number 90 of his amended *habeas* petition that he was prejudiced by his attorneys' failure to investigate and question his competency to stand trial, "because it is at least reasonably probable that a more favorable outcome would have resulted had counsel performed competently."[143] That assertion amounts to nothing more than a restatement of *Strickland's* prejudice standard, and does not satisfy that prong of the rule.

> To be found deficient, capital counsel's performance must be "outside the wide range of professionally competent assistance." [*Strickland v. Washington*, 466 U.S.] at 690, 104 S. Ct. 2052. Professionally competent assistance includes a duty to conduct a reasonable investigation. *Id*. at 690-91, 104 S. Ct. 2052. The Court has emphasized that only when counsels' choices are made after a "thorough investigation of law and facts relevant to plausible options" are those choices "virtually unchallengeable." *Id*. at 691, 104 S. Ct. 2052. When, however, "strategic choices [are] made after less than complete investigation [they] are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id*. at 690-91, 104 S. Ct. 2052. Thus, at bottom, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances . . . ." *Id*. at 691, 104 S. Ct. 2052. This means that when we assess the attorney's decision not to investigate, we "must consider . . . whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins v. Smith*, 539 U.S. 510, 527, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003). To establish prejudice, "[t]he defendant must show that there is a reasonable

---

[143] Doc. no. 11 (Amended Habeas Petition), ¶ 90, at 31. James inserts this identical assertion at the end of many of his subclaims. In order to avoid repetition, this court finds that such a statement is not a viable argument for prejudice, and will subsequently disregard the assertion whenever it appears in the remainder of James's *habeas* petition. The court will only consider actual arguments concerning prejudice under *Strickland* as they appear in James's petition.

> probability that, but for counsel's unprofessional errors, the result of the
> proceeding would have been different.  A reasonable probability is a
> probability sufficient to undermine confidence in the outcome."
> *Strickland*, 466 U.S. at 694, 104 S. Ct. 2052.

*Powell v. Allen*, 602 F.3d 1263, 1273-74 (11th Cir. 2010) (first alteration supplied,

all others in original).  The state court's decision was reasonable under the *Strickland*

standards, and *habeas* relief on this subclaim is due to be denied.

## F.  Deficient Performance During Jury Selection[144]

James cites numerous errors allegedly committed by his trial attorneys during

the jury selection process.  Specifically, he contends that his attorneys:

> [**1**] failed to move for preparation and use of juror questionnaires or
> conduct adequate voir dire to obtain background information on the
> jurors relevant to bias . . . ; [**2**] failed to challenge for cause,
> peremptorily challenge, or even adequately voir dire jurors regarding
> bias against James . . . ; [**3**] failed to adequately voir dire or challenge
> jurors regarding their past experiences as relatives of victims of violent
> crimes, or as victims of crimes themselves . . . ; [**4**] [failed] to question
> juror Bobby Boyer regarding his prior criminal history when Boyer
> revealed in a note to the court that he had previously been convicted and
> served time in Indiana for a juvenile offense . . . ; [**5**] failed to question
> jurors regarding their prior experiences as jurors . . . ; [**6**] failed to
> discover [through adequate voir dire] that one of the jurors suffered from
> mental illness and other impairments so disabling that he received
> government assistance for his illness . . . ; [**7**] failed to conduct
> individual, sequestered voir dire of all the jurors . . . ; [**8**] [failed] to
> object to the state's gender discrimination in its use of peremptory
> challenges . . . ; [**9**] [and failed] to object to the state's racial
> discrimination in its use of peremptory challenges . . . .

---

[144] Claim I.F:  *see* doc. no. 11 (Amended Habeas Petition), ¶¶ 91-100, at 31-34.

Doc. no. 11 (Amended Habeas Petition), at 31-33 (alterations supplied).

**1**.    *Procedural default*

Respondents contend that all facets of this claim were procedurally defaulted, and note that the Rule 32 circuit court denied relief on the various elements of the claim due to James's failure to comply with the specificity and full factual pleading requirements of Alabama Rules of Criminal Procedure 32.3 and 32.6(b).[145] Respondents also argue that this claim was not fairly presented as a federal claim in state court, that it is conclusory in nature, and that it fails to state a valid claim for relief under 28 U.S.C. § 2254.[146]

This court finds, contrary to respondents' contention, that James did present these claims of deficient performance by trial counsel during jury selection as a federal claim in the state court proceedings, and this court accordingly finds that James exhausted this claim before the state court.  Also, as previously noted in Part III.B.5.d, *supra*, the Eleventh Circuit's holding in *Borden v. Allen,* 646 F.3d at 816, disposes of respondents' procedural default contentions, and requires this court to consider the merits of the various parts of this claim.

**2**.    *Merits*

The Rule 32 circuit court was the last state court to issue reasoned decisions

---

[145] Doc. no. 19 (Respondents' Answer), at 25.

[146] *Id*. at 25-26.

on the various parts of this claim.  That court considered each alleged deficiency of counsel during the jury selection process and dismissed all nine for failure to meet the factual specificity requirements of Alabama Rule of Criminal Procedure 32.6(b).[147] In addition, the circuit court dismissed the subclaim enumerated as "[**7**]" pursuant to Alabama Rule of Criminal Procedure 32.7(d), saying that there was no material issue of fact or law because "the underlying issue is without merit."[148]  It then cited Alabama cases holding that there was no requirement that a defendant be allowed to question each prospective juror individually during *voir dire*.

> **a**.    *Questionnaires and voir dire*

James contends that his trial attorneys should have used questionnaires in conjunction with the oral questions they addressed to the jury *venire* during *voir dire* in order to obtain information that would better enable them to ascertain whether individual members of the *venire* were biased against him.[149]  "For example," James states in his *habeas* petition, "counsel failed to determine the degree to which jurors had been exposed to or prejudiced by pretrial exposure to media coverage of this case."[150]  As the Rule 32 circuit court observed, however, James "did not claim that

---

[147] *See* C.R. Vol. 32, Tab 78, at 12-17.

[148] *Id.* at 31.  The text of Ala. R. Crim. P. 32.7(d) is quoted in Part III.B.5.e, *supra*.

[149] Doc. no. 11 (Amended Habeas Petition),¶ 91, at 31.

[150] *Id.*

any juror was actually exposed to media coverage."[151]   Moreover, as that court observed, "'[e]ven in capital cases, there is no requirement that a defendant be allowed to question each prospective juror individually during voir dire examination.'"[152]

The *habeas* petition filed in this court also does not claim that any juror was exposed to prejudicial media coverage, or even assert that there was any media coverage of the offense or petitioner's trial.[153]   Therefore, this court finds that the Rule 32 circuit court did not enter a conclusion of law that was either contrary to, or an unreasonable application of, clearly established Supreme Court precedent.   That court's findings were not based upon an unreasonable determination of the allegations contained in James's Rule 32 petition.   James has failed to make even a *prima facie* showing of deficient performance of counsel, or resulting prejudice under the *Strickland* standards.

**b**.   *Failure to challenge for bias*

James also argues that his trial attorneys should have questioned prospective jurors about connections with law enforcement, in order to ascertain whether any

---

[151] C.R. Vol. 32, Tab 78, at 12.

[152] *Id*. at 31 (quoting *Acklin v. State*, 790 So. 2d 975, 986 (Ala. Crim. App. 2000)) (alteration supplied).

[153] Lead defense attorney Virginia Vinson states in her affidavit that she "did not question jurors about pre-trial publicity because there wasn't any."  C.R. Vol. 24, p. 163.

harbored a bias against him.[154]  James alleges that four jurors had connections to law enforcement, but were permitted to remain on the jury without being questioned about their respective connections, or challenged for cause.[155]

The Rule 32 circuit court found that "James failed to plead how he was prejudiced by counsel's alleged deficiencies.  James did not allege that any specific juror on his case disregarded his or her oath and acted based on impermissible biases, specifically a bias for law enforcement."[156]  Fairminded jurists could disagree as to whether James failed to satisfy *Strickland's* prejudice prong, by failing to show that "there [was] a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  466 U.S. at 694 (alteration supplied).  *See also Lee v. Commissioner, Alabama Department of Corrections*, 726 F.3d 1172, 1193 (11th Cir. 2013).  Accordingly, the Rule 32 circuit court's rejection of the claim was a reasonable application of *Strickland*.

> **c**. *Failure to question venire about their past exposure to criminal acts*

James next alleges that his attorneys were constitutionally ineffective when they failed to intensively question those prospective jurors who revealed that they (or

---

[154] Doc. no. 11 (Amended Habeas Petition),¶ 92, at 31.

[155] *Id*.

[156] C.R. Vol. 32, Tab 78, at 13.

that members of their family) had been victims of burglaries.[157]  James asserts that "counsel conducted no further questioning of any of these jurors to determine whether their own experiences as victims of crimes would color their view of James or affect their ability to be fair in his case."[158]  He postulates that, since many of the crimes experienced by the jurors went unsolved, that "raised the clear danger that these jurors might seek a form of vindication against James for offenses committed against them."[159]

The Rule 32 circuit court held, however, that "James failed to present a single specific allegation suggesting that an alleged failure to adequately voir dire or challenge jurors has caused him to actually suffer prejudice at trial.  Accordingly, this part of his claim is summarily dismissed."[160]

James states in his *habeas* petition, however, that "[c]ounsel's ineffectiveness in this regard was underscored by the fact that the prosecutor questioned all these jurors to ensure that the jurors who had suffered unsolved crimes would have no bias against *law enforcement*."[161]  Not only is the prosecutor's behavior not relevant to the

---

[157] Doc. no. 11 (Amended Habeas Petition),¶ 93, at 31-32 .

[158] *Id*. at 32.

[159] *Id*.

[160] C.R. Vol. 32, Tab 78, at 13.

[161] Doc. no. 11 (Amended Habeas Petition), ¶ 93, at 32 (emphasis and alteration supplied).

question of whether James's counsel was deficient, but James makes no attempt to show prejudice, as held by the Rule 32 circuit court.  Applying *Strickland* in the context of juror bias, the Eleventh Circuit has stated that a petitioner "must show that at least one juror was biased," because, "if no juror [was] biased, then there is no 'reasonable probability that . . . the result of the proceeding would have been different.'"  *Owen v. Florida Department of Corrections*, 686 F.3d 1181, 1201 (11th Cir. 2012) (alteration supplied).  James's failure to point to any particular juror who may have been biased forecloses 28 U.S.C. § 2254(d) relief on this subclaim.

> **d**.   *Failure to question prospective juror Bobby Boyer about his prior criminal history*

James next contends that his attorneys should have questioned juror Bobby Boyer about his conviction and time served for a juvenile offense.[162]  He asserts

> Counsel had no way of knowing how Boyer's prior experience in the criminal justice system had shaped his views regarding others, like Mr. James, who had juvenile and adult criminal convictions.  Boyer's experience may have left him with a sense of superiority over others who have repeated contacts with the system and may have disposed him unfavorably toward Mr. James as a result.

Doc. no. 11 (Amended Habeas Petition), ¶ 94, at 32.

The Rule 32 circuit court held that "James failed to plead how he was prejudiced by counsel's alleged deficiencies.  James did not even allege that Boyer

---

[162] Id., ¶ 94, at 32.

137

himself was biased, only that his experiences '*may* have left him with a sense of superiority over others.'"[163] The Rule 32 court reasonably determined that such a speculative argument is not sufficient to show a "reasonable probability" that, but for the alleged juror bias, the result of the proceeding would have been different. *See, e.g., Owen v. Florida Department of Corrections*, 686 F.3d 1181, 1201 (11th Cir. 2012) (citing *Strickland*, 466 U.S. at 694). This allegation fails to satisfy James's burden to establish entitlement to 28 U.S.C. § 2254(d) relief.

> **e**. *Failure to question prospective jurors about their prior experiences as jurors*

James argues that counsel should have questioned prospective jurors about their past experiences as jurors, since three prospective jurors revealed they had previously served on juries, and two of those said that they had reached verdicts in criminal cases.[164]

The Rule 32 circuit court held that "James failed to state how he was prejudiced by counsel's alleged deficiencies."[165] Once again, James fails to show that any juror was biased and, thus, he fails to show prejudice as a result of counsel's actions. Therefore, the ruling of the Rule 32 circuit court was reasonable, and this

---

[163] C.R. Vol. 32, Tab 78, at 14 (emphasis in original).

[164] Doc. no. 11 (Amended Habeas Petition), ¶ 95, at 32.

[165] C.R. Vol. 32, Tab 78, at 14.

allegation fails to support a claim for *habeas* relief.

> **f**.     *Failure to discover one juror's mental illness*

James argues that his trial attorneys failed to discover that one juror "suffered from mental illness and other impairments so disabling that he received government assistance for his illness.  This illness prevented this juror from understanding or applying the law as instructed by the court."[166]

The Rule 32 circuit court held that, because "James failed to provide the name of the allegedly mentally ill juror," as well as the nature of the "mental illness" from which the unnamed juror allegedly suffered, the claim was due to be summarily dismissed for failure to plead it with the required specificity.[167]  Those same pleading deficiencies prevent a finding of a reasonable probability of a different result.  As the *Owen* court commented, "there was no doubt [that the defendant] committed the crime. . . .  The presence [of specific named jurors] on [the defendant's] jury does not undermine our confidence in the outcome."  *Owen*, 686 F.3d at 1201 (citing *Rose v. McNeil*, 634 F.3d 1224, 1241-42 (11th Cir. 2011) (alterations supplied).  The state court's application of *Strickland* to James's allegations was reasonable, and he is not entitled to *habeas* relief on this subclaim.

---

[166] Doc. no. 11 (Amended Habeas Petition), ¶ 96, at 32-33 .

[167] C.R. Vol. 32, Tab 78, at 15.

**g**.    *Failure to conduct individual, sequestered voir dire*

James argues that individual *voir dire* is important because, on one hand, some jurors are embarrassed to speak up in front of the other prospective jurors, and on the other hand, a juror who is not shy about speaking his or her mind on a difficult topic may chill further questioning on that subject.[168]   James alleges that individual *voir dire* would have revealed one juror's mental illness, and other jurors' biases against him.[169]   The Rule 32 circuit court addressed this claim and held that James failed

> to plead how he was prejudiced by counsel's alleged deficiencies. James failed to state the name of the juror who allegedly was mentally ill, as well as fails to state what the alleged mental illness was.  James also failed to state what the other "harbored biases" were, much less who harbored them . . . or whether they acted on them during deliberation.

C.R. Vol. 32, Tab 78, at 15 (redaction supplied).   The court also held that this subclaim was due to be dismissed pursuant to Alabama Rule of Criminal Procedure 32.7(d), saying that there was no material issue of fact or law because "the underlying issue is without merit."[170]   The Rule 32 court then cited Alabama cases holding that there was no requirement that a defendant be allowed to question each prospective juror individually during *voir dire*.

---

[168] Doc. no.11 (Amended Habeas Petition), ¶ 97, at 33.

[169] *Id*.

[170] C.R. Vol. 32, Tab 78, at 31.   The text of Ala. R. Crim. P. 32.7(d) is quoted in Part III.B.5.e, *supra*.

The ruling of the Rule 32 circuit court was reasonable for the reasons set forth in previous sections. This claim is nothing more than a cumulative summary of the already discussed alleged deficiencies of trial counsel in jury selection.

**h**.     *Failure to object to the State's race- and gender-discrimination when exercising peremptory challenges*[171]

James argues that his trial attorneys should have objected to the prosecutor's alleged pattern of gender discrimination in his use of peremptory challenges: specifically, he alleges that the State's attorney utilized nine peremptory challenges against women, but only four to remove men.[172] James states: "This pattern clearly reflects that the prosecutor assumed women as a group would be biased against the prosecution and the imposition of the death penalty" and, as such, constitutes a *prima facie* case of gender discrimination.[173]

This claim was rejected by the Rule 32 circuit court because James did not provide the names of the nine women allegedly removed by the prosecutor with peremptory challenges.[174] Moreover, the court held that "James did not allege facts

---

[171] The Rule 32 circuit court considered James's allegation that "Trial Counsel also failed to make a record of the racial composition of the jury and the prosecution's use of peremptory strikes" as a tenth ground under subclaim I.F. *See* C.R. Vol. 32, Tab 78, at 17. However, as that allegation is only one sentence within the *Batson*-challenge paragraph, this court has considered it within petitioner's *Batson*-based challenge. *See* Doc. no. 11 (Amended Habeas Petition), ¶ 99, at 33.

[172] *Id.,* ¶ 98, at 33.

[173] *Id.*

[174] C.R. Vol. 32, Tab 78, at 15-16.

that raise an inference of discrimination" as required under Alabama case law.[175]

In addition to his gender discrimination contention, James argues in his *habeas* petition that his trial attorneys were deficient for failing to object to the state prosecutor's racially-discriminatory use of peremptory challenges, especially in view of the fact that James is an African-American.[176]   James asserts that the State used peremptory challenges against three black jurors:  a fact that, James asserts, makes out a *prima facie* case of racial discrimination.

The Supreme Court's seminal opinion in *Batson v. Kentucky,* 476 U.S. 79 (1986)*,* devised a three-part test to evaluate equal protection challenges to a prosecutor's use of peremptory challenges.  First, the defendant must make a *prima facie* showing of discrimination.  *Id*. at 96.  Next, the State must provide a race neutral explanation for challenging black jurors.  *Id*. at 97.  Finally, the trial court has the duty to determine whether the defendant has established purposeful discrimination.  *Id*. at 98.  The Supreme Court extended *Batson* to prohibit gender discrimination in the prosecution's use of peremptory strikes in *J.E.B. v. Alabama*, 511 U.S. 127, 143 (1994).

---

[175] *Id*. at 16 (citing *Ex parte Branch*, 526 So. 2d 609 (Ala. 1987); *Stokes v. State*, 648 So. 2d 1179, 1180 (Ala. Crim. App. 1994); *Duke v. State*, No. CR-98-1218,  2002 WL 1145829, *10 (Ala. Crim. App. May 31, 2002).

[176] Doc. no. 11 (Amended Habeas Petition), ¶ 99, at 33.

While James alleges that the prosecutor used peremptory challenges against three black jurors, and that "no conceivable reason" existed for at least two of those strikes, that is all that he argues.[177]  He does not state how many African-Americans were on the *venire* prior to peremptory challenges.  He also provides no allegations tending to show that three black jurors were struck because of their race.[178]  Such a pleading is insufficient to support a *Batson* claim.  *See, e.g., Powell v. Allen*, 602 F.3d 1263, 1270 (11th Cir. 2010).

In regard to James's gender discrimination claim, he contends only that the prosecutor's use of peremptory challenges against nine women and only four men "clearly reflects that the prosecutor assumed women as a group would be biased against the prosecution and the imposition of the death penalty."[179]  James provides no allegations to support his conclusory interpretation of the prosecutor's mental processes.  James also fails to describe the final racial or gender composition of the jury, or the percentage of African Americans residing within Jefferson County who are qualified for jury service.[180]

---

[177] *Id*.

[178] The defendant and the prosecution were each given thirteen preemptory strikes.  C.R. Vol. 2, at 120.  Five members of the *venire* were excused for cause.  *Id*. at 116.

[179] Doc. no. 11 (Amended Habeas Petition), ¶ 98, at 33.

[180] The possibility exists that a vast majority of the jury as seated was African-American.  *See, e.g. Lee v. Commissioner, Alabama Department of Corrections*, 726 F.3d 1172, 1224 (11th Cir. 2013), where the Court said that:

143

The need to allege the racial composition of the resulting jury after the exhaustion of peremptory challenges was succinctly stated by the Eleventh Circuit in *United States v. Ochoa-Vasquez*, 428 F.3d. 1015 (11th Cir. 2005), where the Court said:

> In order to determine whether a *Batson* objector like Ochoa has established a prima facie case of discrimination, courts must consider all relevant circumstances. *Batson*, 476 U.S. at 96–97, 106 S. Ct. at 1723; [*United States v.*] Novaton, 271 F.3d [968,] 1002 [(11th Cir. 2001)]; [*Central Alabama Fair Housing Center, Inc. v. Lowder Realty, Inc.,*] 236 F.3d [629,] at 636 [11th Cir. 2000)] . This Court has cautioned that "the mere fact of striking a juror or a set of jurors of a particular race does not necessarily create an inference of racial discrimination." *Lowder,* 236 F.3d at 636; *Novaton*, 271 F.3d at 1002. While statistical evidence may support an inference of discrimination, it can do so "only" when placed "in context." *Lowder*, 236 F.3d at 638; [*United States v.*] *Allen-Brown*, 243 F.3d [1293,] at 1298 [(11th Cir. 2001)]. For example, "the number of persons struck takes on meaning *only* when coupled with other information such as the racial composition of the venire, the race of others struck, or the voir dire answers of those who were struck compared to the answers of those who were not struck." *Lowder,* 236 F.3d at 636–37 (emphasis added); see also *Novaton*, 271 F.3d at 1002 (same); *Allen–Brown*, 243 F.3d at 1298 (evaluating the strike pattern in light of the racial composition of remaining potential jurors); *Stewart,* 65 F.3d at 925 (stating that "no particular number of strikes against blacks automatically indicates the existence of a prima facie case," and

---

The racial composition of the venire and the selected jury should also be considered. Before peremptory strikes began, 32 of the 53 remaining venire members were black or 60.3% of the venire. Yet on Lee's jury, 9 of the 12 jurors were black or 75% of the jury. That a predominantly black jury was selected cuts in favor of the state appellate court's conclusion that no *Batson* violation occurred. *See United States v. Puentes*, 50 F.3d 1567, 1578 (11th Cir. 1995) ("Although the presence of African–American jurors does not dispose of an allegation of race-based peremptory challenges, it is a significant factor tending to prove the paucity of the claim.").

considering, inter alia, the number of struck black jurors as a percentage of the black venire members).

In determining whether the totality of the circumstances shows a "pattern" that creates an inference of discrimination, this Court has considered a number of factors. First, whether members of the relevant racial or ethnic group served unchallenged on the jury. *See Lowder,* 236 F.3d at 638 ("[T]he unchallenged presence of jurors of a particular race on a jury substantially weakens the basis for a prima facie case of discrimination in the peremptory striking of jurors of that race."). . . .

Similarly, we have considered whether the striker struck all of the relevant racial or ethnic group from the venire, or at least as many as the striker had strikes. . . .

Second, we have considered whether there is a substantial disparity between the percentage of jurors of a particular race or ethnicity struck and the percentage of their representation on the venire. *Lowder*, 236 F.3d at 637. For example, in *Lowder*, we concluded that there was no prima facie case of discrimination where the plaintiffs used both of their peremptory strikes against white jurors. In so holding, we stated that there was no significant disparity between the plaintiffs' 100% rate of challenging white jurors and the 80% representation of white jurors on the venire. *Id.* On the other hand, in *Stewart*, we upheld a finding of a prima facie case based in part on the fact that, in exercising three peremptory challenges against black jurors, the defense struck 75% of black venire members. 65 F.3d at 925.

Third, this Court has considered "whether there is a substantial disparity between the percentage of jurors of one race [or ethnicity] struck and the percentage of their representation on the jury." *Lowder,* 236 F.3d at 637; *Novaton*, 271 F.3d at 1002.

*Ochoa-Vasquez,* 428 F.3d at 1044-45 (some internal citations omitted) (emphasis in original) (alterations in first paragraph supplied; other alterations in original).

Referring to both the race and gender claims, the Rule 32 circuit court held that James failed to allege facts that raised an inference of discrimination as required to make a *Batson* challenge.[181]   The ruling of the Rule 32 circuit court was reasonable. The utter lack of allegations establishing nothing more than the fact that the State's prosecutor struck three African Americans and nine women is wholly insufficient to meet either the performance or prejudice prong of the *Strickland* standard.   This evidentiary void is what distinguishes the present claim from cases such as *Jackson v. Herring*, 42 F.3d 1350 (11th Cir. 1995), where the racial composition of the entire *venire*, the percentage of blacks remaining on the resulting jury after peremptory strikes, and evidence concerning the historical use of peremptory strikes by the District Attorney's office was all in evidence.  *Id.* at 1355-58 (applying *Swain v. Alabama*, 380 U.S. 202 (1965)).

**G**.   **Failing to File Adequate Motions *in limine*, Adequate Objections to the Introduction of Prejudicial and Inadmissible Evidence at Trial, Adequate Objections to James's Absence From the Courtroom During Critical Stages of the Trial, and Adequate Objections to Prosecutorial Misconduct During Closing Argument**[182]

Claim "G" actually is a conglomeration of at least the following ten subclaims,

---

[181] C.R. Vol. 32, Tab 78, at 16-17.  In fact, the only evidence concerning the racial composition of the jury is found in the affidavit of Virginia Vinson, which states that she "was never concerned about racial discrimination in jury selection.  Nor was I concerned about gender discrimination.  There was nothing suspicious about the prosecutor's peremptory strikes."  C.R. Vol. 24, at 164.

[182] Claim I.G: *see* doc. no. 11 (Amended Habeas Petition), ¶¶ 101-108, at 34-36.

mixed within the sentences of paragraphs 101 through 107 of James's amended

*habeas* petition:  *i.e.*,

1.  *Failing to object* in limine *or during trial to the admission of extraordinarily prejudicial, gruesome, and irrelevant autopsy photographs* (doc. no. 11 (Amended Habeas Petition), ¶ 101, sentences 1-4);

2.  *Failing to stipulate that Faith Hall was deceased*, "thereby removing from the case the element requiring the prosecution to prove that the victim died of a homicide and obviating any conceivable need for [the autopsy] photographs" (*id.*, sentence 5);

3.  *Failing to object to the testimony of the State's medical examiner as an expert witness* (*id.*, ¶ 102, sentences 1-3);

4.  *Failing to object to lengthy, irrelevant, and extraordinarily prejudicial testimony from the State's medical examiner regarding procedures applied to the victim by paramedics and other medical personnel after the shooting* (*id.*, sentence 4);

5.  *Failing to obtain a clear ruling on defendant's motion* in limine *seeking the exclusion of*, and, *failing to object during trial to the admission of, references to James's prior trial* (*id.*, ¶ 103, first sentence);

6.  *Failing to obtain clear rulings on all motions filed by defense counsel during James's first, 1996 trial, which were adopted for purposes of the second trial by Virginia Vinson's December 29, 1998 pretrial motion* (*id.*, second sentence);

7.  *Failing to object* in limine *or during trial to the admission of references to James's arrest in California* (doc. no. 11 (Amended Habeas Petition), ¶ 104);

8.  *Failing to object to irrelevant, prejudicial testimony by prosecution witnesses* (*id.*, ¶ 105);

147

9.     *Failing to object when the trial judge proceeded to take evidence during James's absence from the courtroom* (*id*., ¶ 106); and,

10.    *Failing to object to prosecutorial misconduct*: *i.e.*, *the prosecutor's prejudicial references to James during closing argument* (*id*., ¶ 107).

James asserts in paragraph 108 of his amended petition that his trial attorneys' alleged "defective performance" in each of the foregoing instances prejudiced him, "because it is at least reasonably probable that a more favorable outcome would have resulted had counsel performed competently."[183]

Respondents contend that subclaims V.G.1 through 4 were addressed by the Alabama Court of Criminal Appeals on direct appeal from James's second conviction and sentence, and denied on their merits. *See James v. State*, 788 So. 2d 185 (Ala. Crim. App. 2000). As to those subclaims, respondents argue that James cannot show that the Court's rulings were either contrary to, or involved an unreasonable application of, clearly established federal law, or resulted in decisions that were based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.[184]

Respondents also contend that some subparts of claim V.G were procedurally

---

[183] The complete text of this assertion reads as follows: "Counsels' deficient performance, detailed in this subclaim and throughout the other subclaims in this Claim I and the subsequent Claim II, all of which are incorporated herein by reference, prejudiced Petitioner because it is at least reasonably probable that a more favorable outcome would have resulted had counsel performed competently." Doc. no. 11 (Amended Habeas Petition), ¶ 108, at 36.

[184] Doc no. 19 (Respondents' Answer), at 28-29.

defaulted,[185] some were not fairly presented as federal claims in the state courts, some

are conclusory in nature and fail to state a valid claim upon which relief can be

_____

[185] For example, respondents contend that *habeas* subclaims V.G.1, G.9, and G.10 were procedurally defaulted, because they were addressed by the second opinion of the Alabama Court of Criminal Appeals on collateral appeal, *James v. State*, 61 So. 3d 357 (Ala. Crim. App. 2010), and dismissed pursuant to an independent and adequate state procedural rule:  *i.e.*,

> James next argues that the circuit court erred in denying his subclaims G, I, J, and K in his Rule 32 petition.  [Subclaim "G" in James's First Amended Rule 32 Petition alleged that:  "*Trial counsel performed deficiently in failing to make adequate in limine motions, adequate objections to the introduction of prejudicial and inadmissible evidence at trial, adequate objections to Mr. James' [sic] absence during criminal proceedings, or adequate objections to prosecutorial misconduct in argument*" (C.R. Vol. 10, Tab 36, ¶¶ 57-63, at 31-35).]  This argument in James's brief consists of approximately one and one-half pages and fails to comply with the requirements of Rule 28(a)(1), Ala. R. App. P.[FN9]  As we stated in *Franklin v. State*, 23 So. 3d 694, 703 (Ala. Crim. App. 2008):
>
> > FN9  Rule 28(a)(1), Ala. R. App. P., states, in part, that an appellant's brief shall contain:  "An argument containing the contentions of the appellant/petitioner with respect to the issues presented, and the reasons therefor, with citations to the cases, statutes, other authorities, and parts of the record relief on."  [**NOTE**:  The foregoing language was subsequently placed in Alabama Rule of Appellate Procedure 28(a)(10).]
>
> > "It is well settled that '[r]ecitation of allegations without citation to any legal authority and without adequate recitation of the facts relied upon has been deemed a waiver of the arguments listed.' *Hamm v. State*, 913 So. 2d 460, 486 (Ala. Crim. App. 2002). 'An appellate court will consider only those issues properly delineated as such as will not search out errors which have not been properly preserved or assigned. This standard has been specifically applied to briefs containing general propositions devoid of delineation and support from authority or argument.' *Ex parte Riley*, 464 So. 2d 92, 94 (Ala. 1985) (citations omitted)."

*James*, 61 So. 3d at 370 (quoting *Franklin v. State*, 23 So. 3d at 703) (first and second alterations supplied, other alterations in original).

149

granted under 28 U.S.C. § 2254, and some should be denied on the merits.

Rather than attempting to parse discussion of the ten parts of Claim V.G in the manner argued by respondents, this court chooses, instead, to address each on its merits.  The first four subclaims are intertwined, and will be considered as a group.

1. *Failing to object* in limine *or during trial to the admission of extraordinarily prejudicial, gruesome, and irrelevant autopsy photographs* (doc. no. 11, ¶ 101, sentences 1-4);

2. *Failing to stipulate that Faith Hall was deceased*, "thereby removing from the case the element requiring the prosecution to prove that the victim died of a homicide and obviating any conceivable need for [the autopsy] photographs" (*id.*, sentence 5);

3. *Failing to object to the testimony of the State's medical examiner as an expert witness* (*id.* ¶ 102, sentences 1-3); and,

4. *Failing to object to lengthy, irrelevant, and extraordinarily prejudicial testimony from the States medical examiner regarding procedures applied to the victim by paramedics and other medical personnel after the shooting* (*id.*, sentence 4).

Subclaims V.G.1 through 4 were addressed in the following portions of the opinion of the Alabama Court of Criminal Appeals on direct appeal from James's second conviction and sentence:  *James v. State*, 788 So. 2d 185, 189-94 (Ala. Crim. App. 2000).   The discussion begins in Part "II," addressing the substantive admissibility of gruesome photographs in criminal trials, and then proceeds in Part "III" to address James's claims of ineffective assistance of trial counsel.

## II.

The appellant's second argument is that the trial court erroneously admitted what he alleges was irrelevant, unfairly prejudicial evidence that did not have any probative value. (Issue IV in the appellant's brief to this court.) Specifically, he contends that the trial court erroneously admitted:

"1. Photographs which contained graphic depictions of wounds not caused by [him].

"2. Testimony of the medical examiner about surgical or medical treatment of the victim, needle puncture sights, puncturing the jugular vein, puncture sites on the wrists, a Foley catheter, a colostomy site, etc.

"3. Photographs that were admitted and then magnified 10 or more times in a slide projection on a screen.

"4. Testimony of the medical examiner of a tube that entered the victims nostril when said tube was not introduced by [him].

"5. Testimony of the medical examiner of a sewn surgical incision where [doctors] have explored.

"6. Testimony of the medical examiner that a wound might have been incapacitating if it was left untreated.

"7. Evidence of drug tests performed on the victim."

(Appellant's brief at p. 18.) The appellant did not object to the admission of any of this evidence during his trial. Therefore, we review the admission of this evidence for plain error. *See* Rule 45A, Ala. R. App. P.

The gist of the appellant's argument is that the trial court should not have admitted photographs and slides of the victim that depicted wounds caused by medical treatment and should not have allowed the medical examiner to testify about that medical treatment.  In reviewing the photographs and slides, we are guided by the following principles:

"Appellant's final contention of error is that the trial court erred in allowing the prosecutor, during the testimony of the medical examiner, to illustrate the nature of the victim's wounds by use of 17 photographic slides of the victim's body.  Appellant argues that these slides were irrelevant, inflammatory, inaccurate, misleading, and cumulative, and that the trial court should not have allowed the medical examiner to use them as an aid to his testimony.

"Generally, photographs are admissible into evidence in a criminal prosecution 'if they tend to prove or disprove some disputed or material issue, to illustrate or elucidate some other relevant fact or evidence, or to corroborate or disprove some other evidence offered or to be offered, and their admission is within the sound discretion of the trial judge.' *Magwood v. State*, 494 So. 2d 124, 141 (Ala. Cr. App. 1985), aff'd, 494 So. 2d 154 (Ala. 1986), *cert. denied*, 479 U.S. 995, 107 S. Ct. 599, 93 L. Ed. 2d 599 (1986). *See also Woods v. State*, 460 So. 2d 291 (Ala. Cr. App. 1984); *Washington v. State*, 415 So. 2d 1175 (Ala. Cr. App. 1982); C. Gamble, *McElroy's Alabama Evidence* § 207.01(2) (3d ed. 1977).

"It has long been the law in Alabama that '[p]hotographs which show external wounds in the body of a deceased victim, even though they are cumulative and based on undisputed matters, are admissible. The fact that they are gruesome is not grounds to exclude them so long as they shed light on the issues being tried.' *Burton v. State*, 521 So. 2d 91, 92 (Ala. Cr. App. 1987). *See also*

152

*Kinder v. State*, 515 So. 2d 55 (Ala. Cr. App. 1986). The fact that a photograph is gruesome and ghastly is no reason to exclude it from the evidence, so long as the photograph has some relevancy to the proceedings, even if the photograph may tend to inflame the jury. *Magwood v. State*, *supra*, 494 So. 2d at 141. *See also Hutto v. State*, 465 So. 2d 1211 (Ala. Cr. App. 1984); *Jones v. State*, 439 So. 2d 776 (Ala. Cr. App. 1983); *Godbolt v. State*, 429 So. 2d 1131 (Ala. Cr. App. 1982).

"This rule of law applies not only to photographs, but to photographic slides as well. *Goffer v. State*, 430 So. 2d 896 (Ala. Cr. App. 1983). In *Goffer*, we wrote as follows:

> "'. . . .
>
> "'. . . The slides were just enlargements of photographs and the wounds were shown in relation to the deceased. The slides gave the jury a better understanding of the nature and gravity of the deceased's injuries, and we do not believe the slides distorted the injuries or misled the jury in any way.'

"430 So. 2d at 898–99.

> "'. . . .

"Appellant also contends that the slides were misleading to the jury because they revealed postmortem sloughing of skin and other signs of decomposition. Specifically, he argues that the slides revealed 'circumstances of death that had nothing to do with the defendant's character, the nature of the crime, or an appropriate sentence.' However, this evidence of decomposition was entirely separate from the stab wounds

153

to which the jury's attention was focused, and the medical examiner carefully pointed out to the jury these other factors and identified them as being due to post-mortem deterioration of the body.  Thus, we see no reason for the jury to have been misled by this aspect of the slides.

"Appellant further argues that, because several slides showed wounds into which probes had been inserted, the slides did not accurately depict the wounds.  The State argues, and we agree, that while probes were shown in some wounds, they were inserted for the sole purpose of illustrating the depth and nature of the wounds, relevant factors in determining whether the crime was especially heinous, atrocious, or cruel.  The probes were consistently pointed out to the jury, and their function was explained.  Moreover, the use of the probes did not distort the size of the wounds so that they appeared larger than they actually were; thus, this case is distinguished from *Wesley v. State*, 32 Ala. App. 383, 26 So. 2d 413 (1946).  Therefore, the jury could not have been misled by the insertion of probes into certain of the wounds.

"Finally, appellant argues that the slide presentation should not have been allowed because the slides were cumulative of the photographs, which were received into evidence.  As we stated above, however, such evidence is 'admissible even though they are cumulative evidence based on an undisputed matter.'  *Kinder v. State*, *supra*, 515 So. 2d at 64."

*Bankhead v. State*, 585 So. 2d 97, 109–11 (Ala. Crim. App. 1989) (footnote omitted), *aff'd in relevant part*, 585 So. 2d 112 (Ala. 1991), *rev'd on other grounds*, 625 So. 2d 1146 (Ala. 1993).  Additionally, autopsy photographs, although gruesome, are admissible to show the extent of a victim's injuries.  *See Dabbs v. State*, 518 So. 2d 825 (Ala. Crim. App. 1987).  Finally, the fact that photographs depict medical equipment used to treat the victim does not necessarily render them

inadmissible.  *See Scroggin v. State*, 529 So. 2d 1025, 1028 (Ala. Crim. App. 1988).

After reviewing the photographs that were admitted into evidence in this case, we conclude that they were relevant to show the injuries the victim suffered.  Because the victim had undergone extensive medical treatment before she died, the photographs of the wounds also show the results of some of that treatment.  *See Lee v. State*, 562 So. 2d 657 (Ala. Crim. App. 1989).  However, in discussing the victim's wounds, the medical examiner carefully distinguished the wounds caused by the appellant from those caused as a result of medical treatment.  *See Bankhead*, *supra*.  The medical examiner's testimony regarding the medical treatment the victim received and the photographs showing the results of that treatment were relevant to show the condition of the victim's body when the medical examiner received it.  *See Lee*, *supra*. Finally, the fact that the prosecution projected slides of the photographs onto a screen did not unfairly prejudice the appellant.  Rather, it merely made it possible for the jury to view the photographs while the medical examiner explained the wounds.  *See Bankhead*, *supra*.  Therefore, we do not find any error, much less plain error, in this regard.

## III.

The appellant's third argument is that his attorneys rendered ineffective assistance during his trial.  (Issue III in the appellant's brief to this court.)  Specifically, he contends that his attorneys rendered ineffective assistance because they:

1) did not object to the admission of photographs that allegedly contained extraneous, irrelevant evidence;

2) did not object to the testimony of the medical examiner on the ground that he had not been recognized as an expert witness;

3) did not object to the medical examiner's testimony about medical procedures to which the victim was subjected after she

was shot;

4) did not object when the prosecution projected slides of photographs of the victim's wounds onto a screen;

5) did not object when the medical examiner introduced evidence regarding a nasogastric tube that had been used to treat the victim;

6) did not object when the medical examiner introduced evidence regarding an intravenous line or vascular catheter that had been used to treat the victim;

7) did not object when the medical examiner introduced evidence regarding a needle mark associated with an intravenous line that was used to treat the victim;

8) did not object when the medical examiner introduced evidence regarding a surgical incision on the victim's abdomen;

9) did not object when the medical examiner introduced evidence that showed "'some large bowel on the upper-right aspect of the abdomen . . . where the surgeons had put a colostomy site in position'" while treating the victim;

10) did not object when the medical examiner commented that one of the appellant's wounds might not have been incapacitating "'unless it were just not treated'";

11) did not object when the medical examiner introduced evidence regarding drug tests that had been performed on the victim;

12) did not object to the narrative form of the medical examiner's testimony; and

13) did not object to "rampant hearsay testimony."

156

(Appellant's brief at p. 13–17.)[FN2]

> FN2.  In his reply brief to this court, the appellant attempts to raise additional ineffective-assistance-of-counsel claims.  An appellant may not raise new issues for the first time in a reply brief.  *See McCall v. State*, 565 So. 2d 1163 (Ala. Crim. App. 1990).  Nevertheless, we have searched the record for plain error, and we conclude that the appellant's allegations in this regard are without merit.

The appellant raises many of these claims for the first time on appeal.  Ordinarily, those claims would be procedurally barred because he did not first present them to the trial court.  *See Brown v. State*, 701 So. 2d 314 (Ala. Crim. App. 1997); *Ex parte Ingram*, 675 So. 2d 863 (Ala. 1996).  However, because the appellant was sentenced to death, we will review those claims under the plain error rule.  *See* Rule 45A, Ala. R. App. P.; *Bush v. State*, 695 So. 2d 70 (Ala. Crim. App. 1995), *aff'd*, 695 So. 2d 138 (Ala.), *cert. denied*, 522 U.S. 969, 118 S. Ct. 418, 139 L. Ed. 2d 320 (1997).

> "[T]o prevail on an ineffective assistance of counsel claim, a defendant must meet the two-pronged test set out by *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).
>
>> "'First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary

157

process that renders the result unreliable.'

"*Id*. at 687, 104 S. Ct. at 2064.

"'The performance component outlined in *Strickland* is an objective one:  that is, whether counsel's assistance, judged under "prevailing professional norms," was "reasonable considering all the circumstances."'  *Daniels v. State*, 650 So. 2d 544, 552 (Ala. Cr. App. 1994) (quoting *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2065).  Once a defendant has identified the specific acts or omissions that allegedly were not the result of reasonable professional judgment on counsel's part, the court must determine whether those acts or omissions fall outside the wide range of professionally competent assistance.  *Id.*

"When reviewing a claim of ineffective assistance of counsel, we indulge a strong presumption that counsel's conduct was appropriate and reasonable. *Hallford v. State*, 629 So. 2d 6 (Ala. Cr. App. 1992), *cert. denied*, 511 U.S. 1100, 114 S. Ct. 1870, 128 L. Ed. 2d 491 (1994); *Luke v. State*, 484 So. 2d 531 (Ala. Cr. App. 1985).

"'Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from

counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way.'

"*Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065 (citations omitted).  *See Ex parte Lawley*, 512 So. 2d 1370, 1372 (Ala. 1987).

"And, even if an attorney's performance is determined to be deficient, the petitioner is not entitled to relief unless it is also established that 'there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.' *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

"In an ineffective assistance of counsel claim, the burden is on the claimant to show that his counsel's assistance was ineffective. *Ex parte Baldwin*, 456 So. 2d 129 (Ala. 1984), *aff'd*, 472 U.S. 372, 105 S. Ct. 2727, 86 L. Ed. 2d 300 (1985)."

*McNair v. State*, 706 So. 2d 828, 839 (Ala. Crim. App. 1997), *cert. denied*, 523 U.S. 1064, 118 S. Ct. 1396, 140 L. Ed. 2d 654 (1998).

> We have reviewed the appellant's allegations concerning his trial counsel's performance, and we conclude that he has not satisfied his burden of proof under *Strickland* with respect to any of his ineffective-assistance-of-counsel claims. Even though the trial court did not specifically recognize the medical examiner as an expert, he was clearly qualified to be an expert witness. Also, the appellant has not shown that he was prejudiced by the form of the medical examiner's testimony. Further, as we stated in Part II of this opinion, the photographs and slides of the victim's body and the medical examiner's testimony about medical treatment the victim received after she was shot were relevant. Finally, even though the appellant does not specify what testimony he contends constituted "rampant hearsay," we have reviewed the record and have not found any error in this regard. The appellant has not shown that his counsel's performance was deficient and that that allegedly deficient performance prejudiced his defense. *See Strickland*, *supra*; *McNair*, *supra*. Rather, he has simply made bare allegations that he has not supported factually. Therefore, he is not entitled to relief on his ineffective-assistance-of-counsel claims.

*James v. State*, 788 So. 2d 185, 189-94 (Ala. Crim. App. 2000) (alterations in original).[186]

---

[186] Later in the same year, but in an unrelated case, the Alabama Court of Criminal Appeals again addressed the admissibility of autopsy photographs in a criminal trial. *See Acklin v. State*, 790 So. 2d 975 (Ala. Crim. App. 2000). The pertinent portions of that opinion provided that:

> Photographic evidence is admissible in criminal prosecutions if it tends to prove or disprove some disputed or material issue, to illustrate some relevant fact or evidence, or to corroborate or dispute other evidence in the case. Photographs that tend to shed light on, to strengthen, or to illustrate other testimony presented may be admitted into evidence. *Kuenzel v. State*, 577 So. 2d 474 (Ala. Cr. App. 1990), *aff'd*, 577 So. 2d 531 (Ala.), cert. denied, 502 U.S. 886, 112 S. Ct. 242, 116 L. Ed. 2d 197 (1991) . . .

> "The courts of this state have repeatedly held that photographs

In addition to the foregoing holdings in the direct appeal opinion of the Alabama Court of Criminal Appeals, the Rule 32 circuit court addressed James's subclaim V.G.2: *i.e.*, the contention that his trial attorneys should have stipulated that Faith Hall was deceased, "thereby removing from the case the element requiring the prosecution to prove that the victim died of a homicide and obviating any conceivable need for [the autopsy] photographs."[187]   As the Rule 32 circuit court aptly observed, "the State is not required to stipulate to a material element of a capital murder charge," and "[t]here is no evidence that the State would have ever agreed to such a stipulation." C.R. Vol. 32, Tab 78, at 77-78 (citing *Peraita v. State*, No. CR-01-0298,

---

that accurately depict the crime scene and the nature of the victim's wounds are admissible despite the fact that they may be gruesome or cumulative." *Land v. State*, 678 So. 2d 201, 207 (Ala. Cr. App. 1995). Photographic exhibits are admissible even though they are demonstrative of undisputed facts. *Williams v. State*, 506 So. 2d 368, 371 (Ala. Cr. App. 1986), cert. denied, 506 So. 2d 372 (Ala. 1987).

"Gruesomeness becomes objectionable in a photograph only where there is distortion of either of two kinds; first, distortion of the subject matter as where necroptic or other surgery caused exposure of nonprobative views, e.g., 'massive mutilation,' *McKee v. State*, 33 Ala. App. 171, 31 So. 2d 656 [ (Ala. Ct. App. 1947)]; or second, focal or prismatic distortion where the position of the camera vis-a-vis the scene or object to be shown gives an incongruous result, e.g., a magnification of a wound to eight times its true size, *Wesley v. State*, 32 Ala. App. 383, 26 So. 2d 413 [ (Ala. Ct. App. 1946) ]."

*Braswell v. State*, 51 Ala. App. 698, 701, 288 So. 2d 757 (1974).

*Acklin,* 790 So. 2d at 997-98 (alterations in original).

[187] *Id.*, sent. 5.

2003 WL 21246440 (Ala. Crim. App. May 30, 2003), subsequently reported at 897 So. 2d 1161) (alteration supplied).

Moreover, James did not question his trial attorneys about their failure to stipulate the victim's death during the evidentiary hearing held in the Rule 32 circuit court.   Accordingly, this court holds that James failed to establish that the performance of either attorney was deficient.  *See*, *e.g.*, *Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) ("[W]here the record is incomplete or unclear about [counsel]'s actions, [federal courts] will presume that [the attorney] did what he should have done, and that he exercised reasonable professional judgment.") (second alteration in original, all other alterations supplied) (citing *Williams v. Head*, 185 F.3d 1223, 1228 (11th Cir. 1999)).

Subclaim V.G.3 — based upon the failure of the State's prosecutor to specifically request that the trial judge recognize the State's medical examiner, Dr. Robert Brissie, as an "expert witness" — was addressed by the Alabama Court of Criminal Appeals in a portion of the direct appeal opinion quoted above:  *i.e.*, "Even though the trial court did not specifically recognize the medical examiner as an expert, *he was clearly qualified to be an expert witness*."  *James,* 788 So. 2d at 194 (emphasis supplied).  That finding was supported by the affidavit of James's lead trial attorney, Virginia Vinson, who explained that, even though she did not recall that the

prosecutor failed to tender Dr. Brissie as an expert witness, she would not have lodged an objection to his testimony, because she knew that he was qualified to testify as such. "If I had objected, then he would have just been properly tendered."[188] Furthermore, Alabama courts have held that it is not necessary to formally tender a witness as an expert, so long as the evidence supports that the witness is qualified by education, training, and experience to give the particular testimony at issue. *See Hodges v. State*, 856 So. 2d 875, 918 (Ala. Crim. App. 2001). The evidence here certainly supported such a finding. *See, e.g.,* C.R. Vol. 2, Tab 9, at 151-53.

Finally, with regard to subclaim V.G.4 — the contention that James's trial attorneys were ineffective for failing to object to "lengthy, irrelevant, and extraordinarily prejudicial testimony from the State's medical examiner regarding procedures applied to the victim by paramedics and other medical personnel after the shooting"[189] — it should be noted that James failed to identify those portions of Dr. Brissie's testimony that he claims to be "irrelevant, and extraordinarily prejudicial." In contrast, the Alabama Court of Criminal Appeals held on direct appeal that "the medical examiner's testimony about medical treatment the victim received after she was shot [*was*] relevant." *James,* 788 So. 2d at 194 (alteration and emphasis

---

[188] C.R. Vol. 24, at 164 (redactions supplied).

[189] Doc. no. 11 (Amended Habeas Petition), ¶ 102 (fourth sentence), at 34.

supplied).

In summary, when subclaims V.G.1 through 4 are juxtaposed to the well-established principles of Alabama law discussed above, it becomes clear that James's arguments are not sufficient to demonstrate that the state courts unreasonably applied either prong of the *Strickland* standard in connection with his trial attorneys' purported failure to either file motions *in limine*, or to object at trial, to the contested photographs and testimony.  He also has not demonstrated that the state courts' rulings were contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1).

> **5**. *Failing to obtain a clear ruling on defendant's motion* in limine *seeking the exclusion of*, and, *failing to object during trial to the admission of, references to James's prior trial*.

James alleges in subclaim V.G.5 that, even though his trial attorneys properly filed a motion *in limine*

> to prevent the prosecution or its witnesses from referring to the fact that James had been previously tried on these charges, counsel failed to obtain a clear ruling on this motion and then failed to object when prosecution witnesses, such as Mohammed Helu, openly referred to the prior trial.

Doc. no. 11 (Amended Habeas Petition), ¶ 103 (first sentence), at 34.  The merits of that claim were considered in two ways by the Alabama Court of Criminal Appeals

following remand from the Alabama Supreme Court during the collateral review process. *See James v. State*, 61 So. 3d 357 (Ala. Crim. App. 2010). On the one hand, the Court first observed that neither of James's trial attorneys had been questioned about their strategy in relation to this claim during the evidentiary hearing held in the Rule 32 circuit court. Thus, "[W]here the record is incomplete or unclear about [counsel's] actions, we will presume that he did what he should have done, and that he exercised reasonable professional judgment." *Id.* at 370 (quoting *Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000), in turn quoting *Williams v. Head*, 185 F.3d 1223, 1228 (11th Cir. 1999)) (internal quotation marks omitted) (alterations in original).

On the other hand, the Court of Criminal Appeals also noted that James's trial attorneys *had stated* that they did not object to Mohammed Helu's comment because they did not want to call further attention to the matter. *James*, 61 So. 3d at 370.[190] The Court then quoted the Rule 32 circuit court's finding that the trial lawyers' reasons for not objecting constituted "a reasonable strategic choice," and that, if counsel had objected, "it certainly would have alerted the jury to the remark and reinforced that James had been previously tried and convicted." *James*, 61 So. 3d at

---

[190] As noted by the Alabama Court of Criminal Appeals, "[t]here was not [a] direct reference to [the] previous trial in Helu's testimony." *James*, 61 So. 3d at 371 (alterations supplied).

370 (quoting C.R. Vol. 32, Tab 78, at 78).

Also, in regard to James's claim that counsel failed to object when a witness mentioned his first trial, the record shows that Mohammed Helu stated the following during his testimony at James's second trial: "I don't know if it's the same person or not.  But at this present time, honestly speaking, I cannot recognize the person *or even three years ago when I was testifying the first time*."  (Trial record, p. 9.)  Vinson stated in her affidavit that she did not object to Helu's reference about prior testimony because, she said, she did not want to call attention to the matter.  Warren stated in his affidavit that "I didn't object to Helu's slip that he had testified before because I did not want to call any more attention to the remark.  That was one of those 'don't wake the sleeping dog' issues."  (C.R. 1188.)

The circuit court made the following findings concerning this claim:

> "The Court finds that Judge [Virginia] Vinson's reason for not objecting was a reasonable strategic choice. If she had objected, it certainly would have alerted the jury to the remark and reinforced that James had been previously tried and convicted.  James cannot demonstrate either deficient performance or prejudice as required by *Strickland*.  This claim is denied."

(C.R. 131.)  There was no direct reference to a previous trial in Helu's testimony.  Understandably Vinson did not want to call attention to this matter by objecting.  Thus, we cannot say that counsel's performance was ineffective in regard to this claim.

> "Objections are a matter of trial strategy, and an appellant must overcome the presumption that 'counsel's conduct falls within the wide range of reasonable professional assistance,' that is, the presumption that the challenged action 'might be considered sound trial strategy.' *Strickland*, 466 U.S. at 687–88, 104 S. Ct. at 2064, 80 L.

166

Ed. 2d at 693 (1984)."

*Moore v. State*, 659 So. 2d 205, 209 (Ala. Crim. App. 1994).

*James*, 61 So. 3d at 370-71 (emphasis and alteration supplied).

This court agrees with the rulings of both state courts. Since objections are a matter of trial strategy, James has failed to overcome "the presumption that 'counsel's conduct falls within the wide range of reasonable professional assistance,' that is, the presumption that the challenged action 'might be considered sound trial strategy.'" *Moore v. State*, 659 So. 2d 205, 209 (Ala. Crim. App. 1994) (quoting *Strickland*, 466 U.S. at 687-688).

Moreover, James also has failed to demonstrate that the rulings of the state courts resulted in decisions that were contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, *or* decisions that were based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. 28 U.S.C. § 2254(d). For all of those reasons, he is not entitled to *habeas* relief on this subclaim.

**6**. *Failing to obtain clear rulings on all motions filed by defense counsel during James's first, 1996 trial, which were adopted for purposes of the second trial by Virginia Vinson's December 29, 1998 pretrial motion.*

James next contends that his trial attorneys provided constitutionally

167

ineffective assistance when failing to obtain clear rulings on the record with respect to any of the motions filed by defense counsel during his first, 1996 trial, which Virginia Vinson had adopted for the purposes of his second trial by means of a pretrial motion filed on December 29, 1998.[191]   In the process of denying this claim, the Rule 32 circuit court observed that "James did not even state what motions counsel failed to obtain rulings to.  Accordingly, . . . his claim is summarily dismissed because it was not pleaded with the factual specificity required by Ala. R. Crim. P. 32.6(b)."[192]   James also fails to state in this court how such alleged errors by his attorneys prejudiced him.   Accordingly, the rulings of the state courts were reasonable, and this court holds that James has failed to overcome the 28 U.S.C. § 2254(d) deference owed to the state courts' application of the *Strickland* standard as to this subclaim.  He is not entitled to *habeas* relief.

> **7**.   *Failing to object* in limine *or during trial to the admission of references to James's arrest in California*.

James argues in subclaim V.G.7 that his trial attorneys provided constitutionally ineffective assistance by failing

> to seek an *in limine* ruling prohibiting reference to, or to object to, prejudicial evidence and prosecutorial argument indicating that James had been apprehended in California for this offense and brought back to

---

[191] Doc. no. 11 (Amended Habeas Petition), ¶ 103 (second sentence), at 34.

[192] C.R. Vol. 32, Tab 78, at 18.

> Alabama to stand trial. This evidence was extremely prejudicial because
> it plainly suggested conduct from which a consciousness of guilt could
> be inferred.   In addition, such evidence is particularly prejudicial in
> capital cases because it suggests that James may have been a flight risk,
> a factor the jurors might consider during sentencing phase deliberations
> as an argument for imposition of the death penalty.

Doc. no. 11 (Amended Habeas Petition), ¶ 104, at 35.[193]  In response to those same

allegations in James's Rule 32 petition, the state circuit court observed that he had

> not stated what specific testimony from who should have been objected
> to or what prosecutorial argument should have been objected to.
> Accordingly, this part of his claim is summarily dismissed because it
> was not pleaded with the factual specificity required by Ala. R. Crim. P.
> 32.6(b).  *See* [*also*] Ala. R. Crim. P. 32.7(d).

C. R. Vol. 32, Tab 78, at 18 (alterations supplied).

Lead defense attorney Virginia Vinson noted in her affidavit that evidence of

flight is admissible.[194]  Indeed, the Alabama Supreme Court so held in the case of *Ex*

*parte Weaver*, 678 So. 2d 284 (Ala. 1996), observing that:

> "The basic rule for the introduction of evidence of flight was set
> forth in the early Alabama case of *Bowles v. State*, 58 Ala. 335, 338
> (1877):

---

[193] Fairminded jurists could disagree as to whether the Rule 32 circuit court's rejection of this claim for lack of specificity was a reasonable application of *Strickland*.  On that basis, James would not be entitled to *habeas* relief.  Even so, as noted in Part III.B.5.d of this opinion, *supra*, the Eleventh Circuit has held that a state court's dismissal of a contention in a convict's collateral appeal for failure to state a claim upon which relief can be granted, or for failure to establish a material issue of fact or law, are rulings "on the merits" that are subject to review under AEDPA's standards in a federal *habeas* proceeding.  *Borden v. Allen*, 646 F.3d 785, 816 and 822 n.44 (11th Cir. 2011).  Hence, this court addresses the present claim on its merits.

[194] *See* C.R. Vol. 24, at 164.

"'All evasions, or attempts to evade justice, by a person suspected or charged with crime, are circumstances from which a consciousness of guilt may be inferred, if connected with other criminating facts.  Of themselves, they may not warrant a conviction, but they are relevant as evidence, and the weight to which they are entitled, it is the province of the jury to determine, under proper instructions from the court.  [Citations omitted.]  *Flight, for which no proper motive can be assigned, and which remains unexplained, is a circumstance all authorities agree it is proper to submit to the jury, in connection with other evidence tending to show the guilt of the accused*.  In the old common law, the rule which passed into a maxim, was, that flight was equivalent to a confession of guilt:  *fatetur facinus qui judicium fugit*.  At the present day it is regarded as a mere criminative circumstance, indicative of a consciousness of guilt, and of an attempt to evade justice, which is subject to infirmative considerations that may deprive it of all force.'

"*This basic statement about evidence of flight has remained intact and basically unchanged in the law of Alabama up until this time.  It is still the law*.  Later cases dealing with flight often state little more than the main proposition that such evidence is admissible.  *See Kelley v. State*, 226 Ala. 80, 145 So. 816 (1933); *Carden v. State*, 84 Ala. 417, 4 So. 823 (1887); *Sylvester v. State*, 71 Ala. 17 (1881)."

*Ex parte Weaver*, 678 So. 2d at 289 (emphasis supplied) (quoting *Ex parte Jones*, 541 So. 2d 1052, 1053-47 (Ala. 1989) (bracketed alteration in original)).  In other words, even if defense counsel had filed a motion *in limine*, or lodged a motion to exclude this evidence during trial, James cannot show that it would have been granted.

Moreover, James has not demonstrated that the state court's adjudication of the

170

claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, *or* that it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  28 U.S.C. § 2254(d).  Accordingly, he is not entitled to *habeas* relief on subclaim V.G.7.

**8**.     *Failing to object to irrelevant, prejudicial testimony by prosecution witnesses.*

James next contends that trial counsel rendered constitutionally ineffective assistance by failing to object to the following "irrelevant, prejudicial testimony by prosecution witnesses":

    (a)     "Bridget Gregory's gratuitous statement regarding whether she was concerned for her safety when she returned to the apartment after she head the gunshots, 'if he wanted to shoot me and kill me, he would kill me anyway.'"

    (b)     Bridget Gregory's "irrelevant hearsay" — that when Faith Hall entered the apartment, she said "He's going to kill me."

    (c)     The "lengthy and prejudicial narratives of the events leading up to the killing of Faith Hall" provided by Tammy Sneed and Trenicha Holyfield.

    (d)     The narrative responses to questions of Ada and Isabelle Hall.[195]

---

[195] Doc. no. 11 (Amended Habeas Petition), ¶ 105, at 35.

The Rule 32 circuit court summarily dismissed James's objections to the narrative testimonies of Tammy Sneed, Trenicha Holyfield, Ada Hall, and Isabelle Hall referenced in subparagraphs (c) and (d) above, "because it was not pleaded with the factual specificity required by Ala. R. Crim. P. 32.6(b). *See* [*also*] Ala. R. Crim. P. 32.7(d). Mr. James does not identify any 'narratives' in the record."[196]

Virginia Vinson testified that she "was never concerned about narrative testimony. It would have been a useless objection. Moreover, it's often beneficial for someone to give a narrative answer because they tend to give too much information and hang themselves."[197]  As previously discussed in connection with claim V.G.5, *supra*, since objections are a matter of trial strategy, James has failed to overcome "the presumption that 'counsel's conduct falls within the wide range of reasonable professional assistance,' that is, the presumption that the challenged action 'might be considered sound trial strategy.'" *James*, 61 So. 3d at 371 (quoting *Moore v. State*, 659 So. 2d 205, 209 (Ala. Crim. App. 1994) (in turn quoting *Strickland*, 466 U.S. at 687-88)).  Accordingly, he is not entitled to *habeas* relief on his objections to

---

[196] *See* C.R. Vol. 32, Tab 78, at 19 (alteration supplied).  As noted in a marginal note at the beginning of discussion in the previous part of this opinion, fairminded jurists could disagree as to whether the Rule 32 circuit court's rejection of this claim for lack of specificity was a reasonable application of *Strickland*.  On that basis, James would not be entitled to *habeas* relief.  Even so, *Borden v. Allen*, 646 F.3d 785, 816 and 822 n.44 (11th Cir. 2011), dictates a merits review of this subclaim.

[197] C.R. Vol. 24, at 164.

the narrative testimony of the four witnesses identified above.

Turning to James's objection to the failure of his attorneys to object to various comments by Bridget Gregory — *i.e.*, her "gratuitous statement" (a) "if he wanted to shoot me and kill me, he would kill me anyway,"[198] and (b) her "irrelevant hearsay" testimony about Faith Hall's exclamation, "He's going to kill me" — the Rule 32 circuit court initially observed that James did not question his trial attorneys about their failure to object to either utterance during the evidentiary hearing held on his Rule 32 petition.  The court then stated that, when a record is "ambiguous or silent," or "incomplete or unclear" about the basis for an attorney's action (or failure to act), then it "is not sufficient to disprove the strong and continuing presumption" that the attorney "did what he should have done, and that he exercised reasonable professional

---

[198] It should be observed that this allegedly objectionable utterance was elicited by *defense counsel* during cross-examination of Bridget Gregory in response to the following questions:

> Q.    But you came rushing back so you could look through that window and be a witness to all this?
>
> A.    (Witness nodded head).
>
> Q.    You weren't concerned for your safety; you just wanted —
>
> A.    The door was closed.
>
> Q.    The door was closed.  And you weren't concerned for your safety?
>
> A.    And I felt like if he wanted to shoot me and kill me, he would kill me anyway.

C.R. Vol. 3, at 63.

judgment." C.R. Vol. 32, Tab 78, at 79 (quoting *Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (in turn citing *Bolender v. Singletary*, 16 F.3d 1547, 1557 (11th Cir. 1994)).  Finally, the Rule 32 circuit court observed that "James did not demonstrate that he was prejudiced by trial counsel's failure to object.  As such, James cannot demonstrate either deficient performance or prejudice as required by *Strickland*." *Id*.[199]  For those reasons as well, Rule 32 relief was denied.

James has failed to demonstrate in this court that the state court's adjudication of these two aspects of subclaim V.G.8 resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  *See* 28 U.S.C. § 2254(d).  Consequently, *habeas* relief also is due to be denied on this subclaim.

**9**.    *Failing to object when the trial judge proceeded to take evidence during James's absence from the courtroom.*

Paragraph 106 of James's amended *habeas* petition asserts that: "Counsel also failed to object when the court proceeded with the taking of evidence when Mr. James

---

[199] In this same regard, even though this point was not stated by the Rule 32 circuit court, it should be noted that Faith Hall's statement was admissible under Alabama Rule of Evidence 803(2) as an "excited utterance," or as a statement made by the declarant while believing that her death was imminent, as permitted by Rule 804(b)(2).  Under either construction of the exclamation, James has not shown, and cannot show, that he was prejudiced by counsels' failure to object to the statement.

was absent from the courtroom."[200]

James does not allege what particular evidence was taken in his absence.  The state circuit court observed that James had *alleged*, both at trial and in his Rule 32 petition, that the trial judge had *sworn witnesses* while James was absent from the courtroom,[201] but the circuit court judge explicitly denied that assertion, saying that all witnesses, as well as the jurors, were sworn *en masse*, in the presence of James, at the beginning of trial.[202]  The Rule 32 circuit court's written opinion, summarily dismissing this claim, relied on *Gibby v. State*, 753 So. 2d 1206, 1207-08 (Ala. Crim. App. 1999), noting that a post-conviction claim that is refuted by the record on direct appeal is without merit.  James provides no other legal or factual support for this

---

[200] Doc. no. 11 (Amended Habeas Petition), ¶ 106, at 35.

[201] C.R. Vol. 32, Tab 78, at 39.

[202] *Id.  See also* C.R. Vol. 2, Tab 9, at 220-21, where the following colloquy is recorded:

DEFENDANT:   Excuse me, Your Honor.

THE COURT:   Yes, sir.

DEFENDANT:   Could all the witnesses be sworn in before they testify?

THE COURT:   I have sworn in every witness who has testified, Mr. James.  I always do.  That's the reason they are raising their right hand. Anything else?

DEFENDANT:   I wasn't in here when the first witness.  I was in the restroom.

THE COURT:   *I swore them all in your presence*, *as well as the jurors*. . . . [Emphasis supplied.]

contention, and also no explanation of how he was prejudiced by his counsel's actions under *Strickland*.  This allegation, therefore, is without merit, and James is not entitled to *habeas* relief.  *See* 28 U.S.C. § 2254(d).

> **10**.    *Failing to object to prosecutorial misconduct*:  i.e., *the prosecutor's prejudicial references to James during closing argument.*

Finally, James asserts that his trial attorneys provided constitutionally ineffective assistance by failing to object to six "highly prejudicial" acts of "misconduct" committed by the prosecutor in closing argument:  *i.e.*,

> [*a*] The prosecutor attempted to demean and denigrate Petitioner and inflame the passions and prejudices of the jurors by referring to Petitioner as a "clown," a "cowboy," and a "coward."  R. Hicks 210, 213, 216.  [*b*] Worst of all, counsel failed to object when the prosecutor resorted to an appeal to racial prejudice by referring to Mr. James, who is African-American, with the racist epithet "hambone," a racial slur that was originally used to describe a rhythmic hand-clapping, body-slapping[,] song-and-dance routinely employed by slaves in the antebellum south.  R. Hicks 181.  [*c*] Counsel also failed to object when the prosecutor argued facts not in evidence by suggesting that Petitioner owned a second gun, [*d*] when he vouched for the credibility of prosecution witnesses, [*e*] when he blamed Petitioner for inconveniencing the jurors and the court by requiring a trial, or [*f*] when he improperly referred to his own experience as a prosecutor to imply that this was one of the worst crimes he had ever encountered.  R. Hicks 215.

Doc. no. 11 (Amended Habeas Petition) ¶ 107 (alterations supplied).

The Alabama Court of Criminal Appeals addressed these allegations on the merits in its second opinion on collateral appeal, following remand from the Alabama

Supreme Court.  *See James v. State*, 61 So. 3d 357 (Ala. Crim. App. 2010).  The relevant portion of that Court's discussion began with the quotation of two paragraphs from the Rule 32 circuit court's opinion:

> "James claimed that trial counsel was ineffective for failing to object to several instances of prosecutorial misconduct.  Specifically, James alleged that trial counsel should have objected to the prosecutor's preference to him as a 'clown,' 'cowboy,' 'hambone,' and 'coward,' James also alleged that trial counsel should have objected to the prosecutor suggesting that he owned two guns, for blaming him for inconveniencing the jury, and stating that it was one of the worst crimes he had ever encountered.  As an initial matter, the Court notes that James did not question either Mr. Warren or Judge Vinson [*i.e.*, Virginia Vinson, James's lead defense attorney] about this claim at the evidentiary hearing or present any evidence that he was prejudiced by counsel's actions.  Therefore, James failed to meet his burden of proof.

> "Moreover, Judge Vinson stated in her affidavit that she did not object to the prosecutor's remarks because she found 'nothing legally objectionable,' and did not want to alienate the jury by objecting.  Judge Vinson also stated that she believed that the prosecutor's statement suggesting that James may have owned two guns was a reasonable inference from the evidence presented at trial.  The Court finds that Judge Vinson's reasons for not objecting were the result of reasonable strategic choices and analysis of the legal issues involved.  As such, James has failed to demonstrate either deficient performance or prejudice as required by *Strickland*.  This claim is denied."

C.R. 131-132.

Vinson stated in her affidavit that she did not object to the prosecutor's remarks because, she said, she did not want to "alienate the jury." "'[C]ounsel's failure to object to the prosecutor's summation represents his tactical decision to avoid underscoring the prosecutor's statements so as to draw the jury's attention to them.' *Gatto v. Hoke*, 809 F.Supp. 1030, 1039 (E.D.N.Y.1992)." *Davis v. State*, 9 So. 3d 539, 552 (Ala. Crim. App. 2008). Clearly, counsel's actions were reasonable; thus, James failed to satisfy the *Strickland* test.

*James*, 61 So. 3d at 371 (first alteration supplied, second alteration in original).

The standard employed by federal courts when reviewing alleged acts of prosecutorial misconduct is "whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristofo*, 416 U.S. 637, 645 (1974)). A prosecutor's remarks do not rise to that level merely by being "offensive" or "improper"; indeed, "it is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Id*. at 180-81 (internal quotation marks omitted). Instead, the standard is the "narrow one of due process, and not the broad exercise of supervisory powers." *Donnelly*, 416 U.S. at 642. The statements singled out by James in this subclaim do not rise to the level contemplated by the Supreme Court in *Darden* and *Donnelly*.

Moreover, as Virginia Vinson testified, her decision to not object to the prosecutor's statements was a strategic choice by counsel to not draw further attention

to the remarks.

In any event, James has not demonstrated that the rulings of the Rule 32 circuit court and the Alabama Court of Criminal Appeals on this claim were contrary to, or an unreasonable application of, clearly established federal law.  *See* 28 U.S.C. § 2254(d)(1).   Fairminded jurists could disagree as to whether the state courts reasonably found that James failed to demonstrate either deficient performance or prejudice, as required by *Strickland*, as he wholly failed to show "that there is a reasonable probability that, but for counsels' unprofessional errors, the result of the proceeding would have been different."  466 U.S. at 694.

## H.   Failing to Present a Coherent or Viable Defense, and Conceding Petitioner's Guilt During Closing Argument[203]

James next alleges that his trial attorneys provided ineffective assistance by failing to argue self-defense, unreasonable self-defense, or reduced culpability for the offense of conviction, because — according to James — *Faith Hall* initially attacked *him* with "a knife or similar object":

> 109.  Trial counsel also performed deficiently in failing to present a viable or coherent defense of Petitioner.   Counsel presented no witnesses in Mr. James' behalf and failed to argue either self-defense, unreasonable self-defense, or reduced culpability for the offenses on the grounds of Ms. Hall's conduct in approaching Petitioner with a knife or similar object on the grounds that Petitioner suffered post-traumatic

---

[203] Claim I.H:  *see* doc. no. 11 (Amended Habeas Petition), ¶¶ 109-111, at 36-37.

179

stress disorder and other mental problems affecting his ability to form the mental states required for capital murder. Counsel also failed to argue these points in closing argument. The basis for this argument has been set forth in detail in the previous subclaims of this Claim I and in Claim II, Subclaim A, which are incorporated as if fully set forth herein.

110. Counsel also performed deficiently in effectively conceding Petitioner's guilt of capital murder, stating matter-of-factly that if the jury believed the prosecution's witnesses, they could conclude that Petitioner *intended* to shoot Ms. Hall when he entered the apartment and had no other intent. In view of the fact that the prosecution's capital murder theory rested entirely upon the theory that Petitioner had technically burglarized the apartment by entering with the intent to commit an assault on Ms. Hall, this line of argument was worse than no defense at all and effectively conceded guilt of the charged offense. Unsurprisingly, the prosecutor's rebuttal argued that the defense had conceded Petitioner entered with the intent to commit an assault and that "that's your burglary right there." Counsel's concession was particularly prejudicial in view of the fact that the jury's request for additional instructions and explanation of the law during deliberations focused primarily upon this issue, demonstrating that the jury viewed this issue as pivotal in determining Petitioner's guilt.

Doc. no. 11 (Amended Habeas Petition), ¶¶ 109, 110, at 36.[204]

The Rule 32 circuit court addressed the subclaim stated in paragraph 109 when

it discussed claim I(c) of James's Rule 32 petition — *i.e.*, the contention that trial

---

[204] Lead defense attorney Virginia Vinson testified that she

was very disturbed when I read in Joe's Rule 32 petition that he alleged the victim pulled a knife on him and he acted in self-defense. *He never told me anything about a knife. He never even told me he acted in self-defense.* I desperately tried to get Joe to talk to me about the facts of the crime, but Joe would not tell me anything.

C.R. Vol. 24, at 160 (emphasis supplied).

counsel failed to adequately investigate the capital murder charge[205] — because of their similarity.[206]  That subclaim, and the state court's findings, were discussed in Part V.C of this opinion, *supra,* and found to be without merit.

The subclaim stated in paragraph 110 asserts that trial counsel were ineffective for conceding James's guilt of capital murder, "[i]n view of the fact that the prosecution's capital murder theory rested entirely upon the theory that James had technically burglarized the apartment by entering with the intent to commit an assault on Ms. Hall."[207]  James alleges that his attorney's "concession was particularly prejudicial in view of the . . . jury's request for additional instructions and explanation of the law during deliberations focused primarily upon this issue, demonstrating that the jury viewed this issue as pivotal in determining James's guilt."[208]

Respondents observe that this subclaim was raised in James's Rule 32 petition and again on collateral appeal, but was denied on the merits by both the circuit court and Alabama Court of Criminal Appeals.[209]  The Rule 32 circuit court held:

> In light of the evidence presented at trial and the evidentiary hearing, the Court finds that trial counsel's performance during the guilt

---

[205] In like manner, this same claim is alleged in this court as James's *habeas* claim I(C):  *see supra* Part IV of this opinion ("The List of Petitioner's Claims").

[206] *See* C.R. Vol. 32, Tab 78, at 62-65.

[207] Doc. no. 11 (Amended Habeas Petition), ¶ 110, at 36 (alteration supplied).

[208] *Id.* (redaction supplied).

[209] *See* doc. no. 19 (Respondents' Answer), at 38-39.

phase portion of the trial was reasonable.  At trial, trial counsel's strategy was to show that James had not committed a burglary and[,] therefore, was not guilty of capital murder.  Trial counsel attempted to show that[,] after entering the apartment, James put his gun away.  Essentially, trial counsel's strategy was to negate the burglary element of the capital murder charge by demonstrating that[,] at the time James entered the apartment[,] he did not have the intent to harm Ms. Hall.  In light of the evidence, such a strategy was reasonable.  Furthermore, because witnesses identified James as the initial aggressor and the shooter, any self-defense theory would have been futile.

> . . . .

When trial counsel's closing argument is read and reviewed in its entire context, it is clear that trial counsel was not conceding guilt.  Instead, trial counsel was emphasizing all the different aspects of the testimony that the jurors must believe in order to convict the defendant.  Clearly, trial counsel was attempting to establish reasonable doubt in the minds of the jurors.  . . .

C.R. Vol. 32, Tab 78, at 67, 68-69 (alterations supplied).

This court agrees with the circuit court's assessment of trial counsels' strategy. James mischaracterizes his trial attorney's closing argument and subjective intention in his *habeas* petition, and he fails to demonstrate that the attorney who uttered the allegedly prejudicial statements was guilty of professionally unreasonable error under *Strickland*.[210]  Further, James failed to demonstrate that the outcome could have been

---

[210] Virginia Vinson states in her affidavit that:

My guilt phase strategy was to show the jury that the facts did not support capital murder and that they should only convict on a lesser charge.  I was focusing on the burglary element not being met.  I did not consider any other guilt phase strategy because I did not see any available.

different because, as the Rule 32 circuit court found, "the evidence overwhelmingly demonstrates that James intentionally forced his way into the apartment while armed with a handgun."[211]   In summary, James has failed to demonstrate that the state court's adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, *or* that it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.   *See* 28 U.S.C. § 2254(d).   Hence, he is not entitled to *habeas* relief.

I.   **Failing to Request a Continuance When Counsel Learned that James had been the Victim of an Attempted Sexual Assault in Jail on the Night Prior to the Beginning of Trial**[212]

James next contends that his trial attorneys rendered constitutionally ineffective assistance by failing to move for a continuance after learning that he, allegedly, had been the victim of an attempted sexual assault in the jail on the night prior to the beginning of trial.   He asserts that he was "traumatized, frightened[,] . . . disoriented[,] and incapable of assisting rationally in his own defense."[213]   James

---

C.R. Vol. 24, at 160.

    [211] *See* C.R. Vol. 32, Tab 78, at 68.

    [212] Claim I.I:   *see* doc. no. 11 (Amended Habeas Petition), ¶¶ 112-114, at 37.

    [213] *Id.,* ¶ 112, at 37 (alterations and redaction supplied).

suggests that *a* reason he decided on the morning of trial to reject the State's offer of a plea bargain in which the prosecutor would have recommended the imposition of a sentence of life without parole in return for James's plea of "guilty" to the capital offense *may have been* "the prospect of future sexual assaults in prison"; indeed, he *suggests* that he needed "time to recover from the effects of this assault before he would be able to make a rational decision regarding any plea bargain."[214]

James's trial attorneys testified that they were unaware of the alleged sexual nature of the jail assault. Even so, James states that, when his attorneys were informed by a bailiff that James had been in an "altercation" or "fistfight" during the weekend, counsel should have taken steps to investigate further.[215]

**1**.     *Procedural default*

The last state court to enter a reasoned opinion on this subclaim was the Alabama Court of Criminal Appeals, which addressed it in the second opinion on collateral appeal, following remand from the Alabama Supreme Court. That Court dismissed the claim for failing to comply with the requirements of Alabama Rule of Appellate Procedure 28(a)(10). *See James v. State*, 61 So. 3d 357, 370 (Ala. Crim. App. 2010). Respondents argue, therefore, that this subclaim was procedurally

---

[214] *Id.*

[215] *Id.*

184

defaulted.[216]

This court quoted extensively from the opinion of the Court of Criminal Appeals at the beginning of the discussion of subclaims V.G.1 through 4, *supra*. As this court found in relation to the four subclaims discussed in that part of the opinion, the present subclaim also is barred from review because the last state court to render judgment on it found that the claim was procedurally defaulted under applicable state procedural rules. *See Atkins v. Singletary*, 965 F.2d 952, 956 (11th Cir. 1992) ("Federal review of a petitioner's claim is barred by the procedural-default doctrine if the last state court to review the claim states clearly and expressly that its judgment rests on a procedural bar, and that bar provides an adequate and independent state ground for denying relief.") (citations omitted).

**2.    *Merits***

Even so, this claim also lacks merit.  The Rule 32 circuit court found that "James did not allege that the [*putative*] attempted sexual assault *actually* led him to refuse the plea bargain.  Rather, James claims that 'the prospect of further sexual assaults . . . *may have influenced* [his] decision-making.'"[217]  That court also found that, because "James did not show that there is a reasonable probability that a motion

---

[216] Doc. no. 19 (Respondents' Answer), at 41.

[217] C.R. Vol. 32, Tab 78, at 81 (emphasis and alterations supplied).

185

for a continuance would have caused the result of the trial to be different by causing

him to accept the plea agreement," the claim was due to be summarily dismissed.[218]

That court then concluded its analysis by observing that it had allowed James

> the opportunity to present evidence on this claim for an alternative
> ruling on the merits.  At the evidentiary hearing, James did not present
> any witnesses. testimony, or evidence to support his assertion that he
> had been the victim of an attempted sexual assault.  Furthermore, James
> failed to produce any evidence indicating that trial counsel knew or
> should have known of the attempted sexual assault.  If any attempted
> sexual assault did occur, there is no evidence that James or anyone else
> ever informed trial counsel.  Moreover, James did not present any
> evidence that the alleged sexual assault attempt actually affected his
> decision to reject a plea bargain or that a continuance would have
> changed his mind.  As James has not established deficient performance
> or prejudice, this claim is denied.

C.R. Vol. 32, Tab 78, at 81-82.

James has not demonstrated that the state court's adjudication of this subclaim

resulted in a decision that was contrary to, or involved an unreasonable application

of, clearly established Federal law, as determined by the Supreme Court of the United

States.  28 U.S.C. § 2254(d)(1).  Further, according to trial counsel Gordon Herbert

Warren, he "heard through the grape-vine that [James] had an altercation one night

in the Jefferson County jail.  *But, he never said anything to me about it*. . . .  I heard

it was a fistfight.  *I never heard any sexual connotations about it*."[219]  As the Rule 32

---

[218] *Id.*

[219] C.R. Vol. 24, at 173 (emphasis and alteration supplied).

circuit court observed, James did not present any evidence casting doubt upon that testimony.  Accordingly, James has not demonstrated that the state court's adjudication of the subclaim resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(2).  In light of that, this court finds that it was not professionally unreasonable for counsel to fail to investigate the incident.

Under *Strickland*, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690-91. "Therefore, [i]n assessing the reasonableness of an attorney's investigation . . . a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Williams v. Allen,* 542 F.3d 1326, 1337 (11th Cir. 2008) (citation omitted, alteration in original).  It was entirely reasonable for defense counsel to not investigate the jail altercation *which their client did not mention*, *and from which their client bore no visible injuries*.

James also has failed to provide a logical nexus between his suggestion that the alleged sexual assault left him so traumatized that he was unwilling to accept a plea deal that would return him to prison for life without the possibility of parole, and how

a more thorough investigation of the incident, or additional time, would have caused

him to reconsider the plea proposal.   The following quotation from the second

opinion of the Alabama Court of Criminal Appeals on collateral appeal was stated in

the context of a discussion of a different claim.   Even so, it is quoted here for the

purposes of noting that James initially had planned to plead "guilty," but on the first

day of his second trial he

> changed his mind and informed [trial attorney Gordon Herbert] Warren
> that he was not going to enter a guilty plea.  Warren said that he spoke
> at length to James about this decision:
>
>> "I talked to him for a long time and the thing he kept
>> coming back to was that he had it pretty good where he
>> was on death row.  He said he had his own television set
>> that he could control and watch what he wanted.  He didn't
>> have to deal with twenty other guys voting on whether to
>> watch football or baseball.  He had plenty of reading
>> material.  He didn't have to watch his back and worry
>> about someone sneaking up behind him and clubbing him
>> or stabbing him because he was handled one on one
>> exclusively on death row.  The only drawback he said was
>> not getting as much exercise — an hour a day or whatever
>> it was.  Otherwise, he was in his cell.  He did not want to
>> move in with the general population.
>
> (C.R. 1192-1193).  In conclusion, Warren stated in his affidavit that he
> felt James was trying to sabotage his case.

*James v. State*, 61 So. 3d 357, 373-374 (Ala. Crim. App. 2010) (alteration supplied).

No evidence was presented to the Rule 32 circuit court that, if James's

attorneys had asked for and been granted a continuance, James *would have* changed his mind yet again, and entered a plea of "guilty" in exchange for a sentence of life without parole.[220]   Section 2254(e)(1) mandates that district courts presume the factual determinations of state courts to be correct, unless the *habeas* petitioner rebuts the presumption of correctness with clear and convincing evidence.  James has failed to do so.  Therefore, he has not shown any basis for *habeas* relief on this claim.

**J**.   **Ineffective Cross-Examination of the State's Witnesses**[221]

This subclaim is actually an aggregation of contentions that the cross-examination of several prosecution witnesses by James's trial attorneys was constitutionally ineffective.  Specifically, James alleges that his trial attorneys failed to adequately cross-examine:  (1) *Officer Lawrence Billups* about his ability to perceive James driving away from the scene; (2) *Isabelle Hall*, (3) *Ada Hall*, (4) *Trenicha Holyfield*, (5) *Bridget Gregory*, and (6) *Tammy Sneed* about their (*a*) history of abusing drugs and alcohol, (*b*) their criminal background, (c) their biases against James, and (*d*) their ability to perceive the events to which they testified; and (7) *expert witness William Moran* about the difference between the gun Bridget Gregory claimed that she had seen James holding the day before the crime, and the gun that

---

[220] *See* C.R. Vol. 32, Tab 78, at 82.

[221] Claim I.J:  *see* doc. no. 11 (Amended Habeas Petition), ¶¶ 115-120, at 37-40.

was used to kill Faith Hall.[222]

James also argues that trial counsel failed to properly cross-examine prosecution witnesses (5) *Bridget Gregory* and (6) *Tammy Sneed* about "obvious inconsistencies in their statements."[223]   He contends that both gave conflicting statements and testimony regarding the sequence of events at the time of the homicide, as well as James's location prior to and after the shooting.[224]   He argues that, *if* his trial counsel had probed on cross-examination the numerous, alleged inconsistencies, the jurors' confidence in the credibility of those two witnesses would have been undermined, and the strength of the prosecution's theory that James had "stalked" Faith Hall prior to the homicide would have been weakened.[225]

**1**.   *Procedural default*

The last state court to issue an opinion on these claims was the Alabama Court of Criminal Appeals following remand.   That Court found the claims to have been procedurally defaulted under Alabama Rule of Appellate Procedure 28(a)(10). *James*, 61 So. 3d at 370.   Respondents argue, based upon that opinion, that the various subparts of this claim are precluded from review by federal procedural default

---

[222] *Id.,* ¶ 115, at 38.

[223] *Id.,* ¶ 116, at 38.

[224] *Id.,* ¶ 117 at 38-39.

[225] *Id.,* ¶¶ 117-118, at 38-39.

principles.[226]  For the reasons previously discussed in Part III.B.5.g of this opinion, *supra*, this court agrees.

Additionally, the Rule 32 circuit court observed that "James did not call any of these witnesses to testify at the Rule 32 evidentiary hearing.  Nor did James question either [Virginia] Vinson or Mr. Warren about their cross-examination of these witnesses. . .  In short, it appears that James completely abandoned this claim at the evidentiary hearing."  C.R. Vol. 32, Tab 78, at 82-83.  Accordingly, that court then concluded that:

> An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption . . . where the record is incomplete or unclear about [counsel]'s actions, [the court] will presume that he did what he should have done, and that he exercised reasonable professional judgment.

*Id*. at 83 (citing, *e.g.*, *Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000)) (alterations supplied, other citations omitted).  *See also*, *e.g.*, *Hooks v. State*, 21 So. 3d 772, 788 (Ala. Crim. App. 2008) (quoting *Burgess v. State*, 962 So. 2d 272, 301 (Ala. Crim. App. 2005) (holding that, when an appellant does not present evidence addressing certain claims at an evidentiary hearing on a Rule 32 petition, the state court can conclude that he has abandoned the claims, and is not required to review them)).

---

[226] Doc. no. 19 (Respondents' Answer), at 43.

2.    *Merits*

Even if the various parts of this claim had not been procedurally defaulted, the fact that there is no evidence in the record to counter the strong presumption that trial counsel exercised reasonable professional judgment means that James cannot demonstrate that their performance was deficient, or prove prejudice under *Strickland*. James provides no proof that the Alabama Rules of Evidence would have permitted his attorneys to cross-examine several witnesses about their alleged "criminal histories" (not further defined) and "alcohol abuse." James also failed to provide any support for his contention that some of the witnesses might have been "biased" against him. Furthermore, the prosecutor questioned Bridget Gregory and Tammy Sneed about their ability to perceive the events about which they testified, and their responses would not have provoked a reasonable attorney to cross-examine their ability to do so.[227]

James also has not explained how any difference between the gun identified by Bridget Gregory as the one she saw him holding during the day preceding the homicide, and the gun actually used in the homicide, would have substantially

---

[227] For example, the prosecutor asked Bridget Gregory: "Okay. And was it a bright day or could – was there light outside?" Gregory responded: "A sunny day. Broad daylight." C.R. Vol. 3, Tab 9, at 51. The prosecutor then asked her: "All right. And the face of the man that you saw break into that apartment, did his face have a lot of light on it?" Gregory responded: "Yes." *Id*. at 51-52.

weakened her credibility.  Clearly, James could have owned, borrowed, or otherwise possessed two different guns on two different days.  Similarly, James does not demonstrate how cross-examination to establish that Gregory was mistaken as to the type of handgun she observed would have had any reasonable possibility of changing the outcome of the jury's verdict.

Further, none of the alleged "inconsistencies" in the testimony of Bridget Gregory and Tammy Sneed would have compelled a reasonable attorney to cross examine either of them on such matters.  Even if, as James now asserts, Gregory and Sneed claimed to have seen James in two different places immediately prior to the homicide, he is unable to show prejudice from counsel's failure to cross-examine the witnesses as to those inconsistencies.  While one of them may have been mistaken, or even lying, about James's whereabouts prior to the murder, James offers no evidence or argument as to how highlighting such a discrepancy would have "severely undercut the prosecution's argument that Mr. James was stalking Faith Hall."[228]  Regardless of where those two witnesses claimed to have seen James immediately prior to the homicide, their accounts of the actual homicide were consistent and uncontradicted by any other evidence.

Moreover, James fails to establish the relevance of Gregory's and Sneed's

---

[228] Doc. no. 11 (Amended Habeas Petition), ¶ 116, at 38.

193

slightly different accounts as to exactly *when* Faith Hall ran towards the bathroom after James forced his way into the apartment.

Likewise, nothing about Gregory's testimony that she saw James jump into a running automobile after the homicide would have compelled a reasonable attorney to cross-examine her on that matter. Regardless of whether she was mistaken when testifying that the automobile's engine was running when James entered the vehicle, that inconsequential detail has no bearing upon the issue of whether James committed the crime.

As the Eleventh Circuit observed in another case, a *habeas* petitioner bears the burden of

> affirmatively proving prejudice, and aided by new counsel, he still has not suggested any evidentiary basis for attacking either the chain of custody or the credibility of the five employees . . . who testified. . . . Counsel cannot manufacture evidence, and the Constitution does not require the presentation of evidence that does not exist. Nor does counsel have a duty to ask questions implying facts that he knows are not true. *See Nix v. Whiteside*, 475 U.S. 157, 175–76, 106 S. Ct. 988, 998–99, 89 L. Ed. 2d 123 (1986) (holding "as a matter of law" that federal habeas petitioner could not show prejudice by his counsel's refusal to allow him to perjure himself at trial "[e]ven . . . assum[ing] that the jury might have believed his perjury"); *Van Poyck v. Fla. Dep't of Corr.*, 290 F.3d 1318, 1323 (11th Cir. 2002) ("[A] lawyer need not embrace his client's fraud."); *Putman v. Head*, 268 F.3d 1223, 1246 (11th Cir. 2001) ("Although an attorney has an ethical duty to advance the interest of her client, that duty is limited by an equally solemn duty to comply with the law and standards of professional conduct.") (internal quotation marks, alteration, and citation omitted); *Davis v.*

*Singletary*, 119 F.3d 1471, 1475 (11th Cir. 1997) ("The duty to render effective assistance of counsel does not include the duty to present false or misleading testimony."); *Bush v. Singletary*, 988 F.2d 1082, 1092–93 (11th Cir. 1993) ("We agree with the district court that 'Strickland does not compel an attorney to urge an argument which he reasonably finds to be futile, let alone one he finds to be false.'") (quoting district court opinion). . . .

    . . . .

Nor has the [*habeas* petitioner] convinced us that pulling the letter off the pile of evidence against him would have resulted in a reasonable probability of a different verdict or sentence. Our confidence in the outcome of the trial and sentence proceeding is not undermined in the least by this asserted failure of trial counsel. *See Strickland*, 466 U.S. at 695–96, 104 S. Ct. at 2069 (instructing that in determining prejudice a court should consider all of the evidence unaffected by the failure of trial counsel).

*Schwab v. Crosby,* 451 F.3d 1308, 1321-1322 (11th Cir. 2006) (alterations supplied).

For all of the reasons discussed, James is not entitled to *habeas* relief on this claim.

## K. Failing to Object to the Trial Judge's Improper Instructions at the Conclusion of the Guilt Phase[229]

James complains that his trial attorneys provided ineffective assistance by failing to object to three of the trial judge's instructions at the conclusion of the guilt phase. The first instruction he contends was objectionable provided that:

[T]he only determination you are to make at this time is whether the

---

[229] Claim I.K:  *see* doc. no. 11 (Amended Habeas Petition), ¶¶ 121-127, at 40-44.

> state has proven beyond a reasonable doubt that the Defendant is guilty
> of the capital offense in which he's charged, or a lesser included offense
> in which I'm about to instruct you in a few minutes.

Doc. no. 11 (Amended Habeas Petition), ¶ 121, at 40 (alteration in original).  James

argues that this instruction only gave the jurors the option of choosing between

capital murder and a lesser included offense, but did not emphasize that they also

could find him "not guilty" of all offenses.  *Id*.  James states that his attorneys' failure

to object to the instruction deprived him of a fair trial and due process of law.  *Id*.

That portion of the record cited by James in connection with this subclaim does

not reflect the issues or conclusions he asks the court to draw from it.  Instead, when

read in context, the quoted portion of the trial judge's instruction was made to

emphasize that, at that initial phase of the trial, the jury was to focus solely upon the

question of whether the State had proven the defendant guilty, beyond a reasonable

doubt, of the charged offense of capital murder, or some lesser-included offense, and

that, when making that decision, *the jurors should not be influenced by the issue of

punishment*.[230]  That is why the initial stage of a capital murder trial is aptly referred

to as "the guilt phase."  Later in the same instructions, the trial judge explained each

of the possible verdicts the jury could return:  *i.e*., guilty of capital murder, as charged

---

[230] *See* C.R. Vol. 4, Tab 14, at 218.

in the indictment; guilty of the lesser-included offense of murder; and not guilty.[231]

James next alleges that his trial attorneys were constitutionally ineffective when failing to object to the trial judge's instruction on "reasonable doubt."  His amended petition contends that instruction was delivered as follows:

> [T]he term reasonable doubt means just what it says.  It means a reasonable doubt, a doubt for which a good sensible reason can be given.  It does not mean a mere possible doubt, imaginary doubt, or a speculative doubt.
>
> When we say the burden is on the State to convince you from the evidence beyond a reasonable doubt of the guilt of the defendant, that doesn't mean that the State must convince you to a mathematical certainty, because that could never be done when you depend on the testimony from other human beings.
>
> Reasonable doubt may arise from all of the evidence, a lack of evidence, or from any part of the evidence in this case.
>
> In other words, after considering all the evidence in this case, if you have a doubt about the defendant's guilt and that doubt has a reason based on the evidence, a lack of evidence, or from any part of the evidence, then you should acquit the defendant or find him not guilty. However, if after considering all the evidence in this case, *if you do have a doubt for which you can assign a good, sensible reason, then you should convict the defendant.*

Doc. no. 11 (Amended Habeas Petition), ¶ 122, at 40-41 (alteration and emphasis in James's amended petition).  *James misrepresents the wording of the final, emphasized sentence.*  As actually delivered to the jury, the trial judge said:

---

[231] *Id*. at 231.

"However, if after considering all of the evidence in this case, if you do **_not_** have a doubt for which you can assign a good, sensible reason, then you should convict the defendant."[232]

James's third contention is that his trial attorneys rendered constitutionally ineffective assistance by failing to object when the trial judge "gave confusing and improper instructions when responding to some jurors' questions regarding the most critical element in the case — the burglary element of capital murder."[233]   James quotes the following colloquy in his amended *habeas* petition:

> THE COURT:  All right.  [L]et's make sure I understand your question.  [L]et me just rephrase it a little bit.
>
> Element four says the defendant knowingly and unlawfully . . . and this is in regard to the burglary . . . that the defendant knowingly and unlawfully entered or remained unlawfully in the dwelling of Ms. Sneed.
>
> That in doing so, that is, in entering unlawfully or remaining unlawfully in the dwelling of Ms. Sneed, that he acted with intent.  It was his intent to commit an assault.
>
> In other words, while entering her dwelling unlawfully, he intended to commit the assault, or while remaining in the dwelling unlawfully, he intended to commit the assault.
>
> JUROR:  Your Honor, the assault – could it be any other crime or just it has to be – in this case it just has to be assault?  I guess I'm confused.

---

[232] *Id.* at 227 (all emphasis supplied).

[233] Doc. no. 11 (Amended Habeas Petition), ¶ 123, at 41.

THE COURT:  Well, in this case - well, let me just read the definition of burglary again.  And I'll read it slow.

A person commits a burglary in the first degree if he knowingly and unlawfully enters or remains unlawfully in a dwelling, and he does so, he does those things, with the intent to commit, in this case, an assault.  The State has the burden of proving beyond a reasonable doubt that it was his intent at the time that he unlawfully entered or remained unlawfully in the dwelling.

And of course the rest of that definition is that while effecting entry or while in the dwelling or in the immediate flight from the dwelling, he was armed with a deadly weapon.

Does that answer your question, sir?

JUROR:  Yes, sir.

THE COURT:  Well, don't be afraid to ask me questions if you have one.  I don't want there to be any doubt about what the law states.

A JUROR:  Can I ask a question?

THE COURT:  Yes sir.

A JUROR:  If you enter a building with a weapon unlawfully, without permission, at any time, is that an assault?

THE COURT:  Well, in this case the State has to prove that the defendant entered or remained unlawfully in the building with the intent to commit an assault.

Does that answer your question?

[No response.]

THE COURT:  There seems to be a little confusion.  Now, I want to

make sure that we have this cleared up.

A JUROR:  Is everybody satisfied?

THE FOREMAN:  Okay.

A JUROR:  All satisfied.

THE COURT:  All right.  Okay.

A JUROR:  Thank you.

Doc. no. 11 (Amended Habeas Petition), ¶ 123, at 41-42 (quoting C.R. Vol. 4, Tab 13, at 237-39) (alterations supplied, redactions in original).

**1**.   *Procedural default*

The last state court to issue an opinion on these subclaims was the Alabama Court of Criminal Appeals.  That Court's second opinion on collateral appeal, following remand from the Alabama Supreme Court, found the claims to be procedurally defaulted under Alabama Rule of Appellate Procedure 28(a)(10).  *See James v. State*, 61 So. 3d 357, 370 (Ala. Crim. App. 2010).  Hence, respondents argue that these subclaims are procedurally defaulted based on the state court's ruling.[234] For the reasons previously discussed in Part III.B.5.g of this opinion, *supra*, this court agrees with respondents.  These claims are procedurally barred.

---

[234] *See* doc. no. 19 (Respondents' Answer), at 46.

**2.**   *Merits*

Even assuming these claims had not been procedurally defaulted, James still cannot demonstrate that he is entitled to *habeas* relief.  The state circuit court found that James had not produced any evidence at the Rule 32 hearing supporting either prong of the *Strickland* standard, but went on to state that, "[d]espite James's failure to pursue [these claims] at the evidentiary hearing," it would "briefly address[] the merits[.]"[235]  The circuit court then stated that it had

> reviewed the entire charge to the jury at the close of the guilt phase.  In the context of the entire jury charge, the instructions sufficiently directed the jurors to the evidence in such a manner that there is no reasonable likelihood that they arrived at a finding of guilt based on factors other than the evidence presented in the case.
>
> The trial court's jury charge defining reasonable doubt repeatedly emphasized the jury's obligation to base its findings on the evidence introduced at trial.  It instructed the jury that a reasonable doubt is "a doubt for which a good, sensible reason can be given."  This Court further explained that a reasonable doubt "may arise from all of the evidence, a lack of evidence, or from any part of the evidence in this case."  This Court has found no reasonable likelihood, nor has James provided one, that the jurors applied the instruction concerning reasonable doubt in an improper manner.  Moreover, this jury charge was in substantial compliance with Alabama's pattern jury instructions.  The Supreme Court of Alabama has held that it is not plain error for the trial court to instruct the jury pursuant to an approved pattern jury instruction.  *Ex parte Harrell*, 470 So. 2d 1309 (Ala. 1985).  As such, this claim is denied.

---

[235] C.R. Vol. 32, Tab. 78 at 83-84 (alterations supplied).

James also alleged that trial counsel was ineffective for failing to object to the Court's instruction of the burglary element of the capital murder charge.  The Court has reviewed its instructions on the matter and finds that James's claim is without merit.  Moreover, James has not provided any evidence or testimony that any juror failed to understand the Court's instructions.  As such, the claim is denied.

Finally, James alleged at "a minimum, counsel should have requested an instruction which defined the confusing "unlawful remaining" element.  Rule 32 petition at paragraph 107.  The Court notes that it did define "*unlawfully remaining" to the jury*.  The Court instructed the jury that "The law says a person enters or remains unlawfully in a dwelling when he is not licensed, invited, or privileged to do so." (R. 224)  Moreover, James did not present any evidence that he was prejudiced by counsel's failures.  As such, this Court finds that this claim is without merit and is denied.

C.R. Vol. 32, Tab. 78 at 84-86.

Fairminded jurists could disagree with the Rule 32 circuit court's conclusions. Given the totality of the trial judge's instructions, however, the jurors were clearly told that they had the option of finding James "not guilty."  The basis for an acquittal was contained within the explanation of the reasonable doubt standard.[236] Additionally, the jurors were instructed that,

The defendant is presumed to be innocent of the charge against him. This presumption follows him throughout the trial and is not overcome unless you are convinced beyond a reasonable doubt that he is guilty. This presumption of innocence has to be considered a fact in the case and cannot be disregarded by you.

---

[236] *See* C. R. Vol. 4, Tab 13, at 237-39.

C. R. Vol. 4, Tab 13, at 220-21.  After explaining each of the elements that had to be proved by the State, by evidence, beyond a reasonable doubt, in order to convict the defendant of either the capital offense charged in the indictment, or some lesser-included offense, the trial judge reminded the jury that *if*,

> after considering all of the evidence in this case, if you have a doubt about the defendant's guilt and that doubt has a reason based on the evidence, a lack of evidence, or from any part of the evidence, then you should acquit the defendant or find him not guilty.  However, if after considering all of the evidence in this case, *if you do not have a doubt for which you can assign a good sensible reason*, then you should convict the defendant.

*Id*. at 226-27 (emphasis supplied).

The trial judge also instructed the jury that, in order to find the defendant guilty of burglary and, thus, capital murder, the State had to prove beyond a reasonable doubt that the defendant entered Tammy Sneed's apartment without permission, and with the intent to assault the victim, Faith Hall, once inside that apartment.  The court asked the jurors if they were "satisfied," and they responded that they were.[237]

James has not demonstrated that the state courts' rejection of these claims was an unreasonable application of the *Strickland* standard.  Thus, none of the claims provide a basis for *habeas* relief.

---

[237] *See id.*

**L.      Failing to "Federalize" Objections**[238]

James next alleges that "[t]rial counsel performed inadequately in failing to federalize their objections by referencing the provisions of the United States Constitution which were violated by the various errors noted above."[239]  According to James:  "Trial counsel's omission potentially prejudiced Petitioner by waiving or procedurally defaulting this federal claim, thereby preventing federal review of a meritorious issue."[240]

Respondents argue that the claim is procedurally defaulted due to its dismissal by the Rule 32 circuit court under an independent and adequate state procedural rule.[241]  They also note that the circuit court held that this subclaim presented no material issue of law or fact.[242]

The last state court to issue a reasoned opinion on this claim was the Rule 32 circuit court, which dismissed it for failure to comply with the requisite pleading requirements of Alabama Rules of Criminal Procedure 32.3 and 32.6(b).[243]  The court explained that "James did not state what objections should have been federalized . .

---

[238] Claim I.L:  *see* doc. no. 11 (Amended Habeas Petition), ¶¶ 128-129, at 44.

[239] *Id.,* ¶ 128, at 44 (alteration supplied).

[240] *Id.*

[241] Doc. no. 19 (Respondents' Answer), at 49.

[242] *Id.*

[243] *See* C. R. Vol. 32, Tab 78, at 20-21.

. [and] did not plead how counsel's alleged deficiencies prejudiced him"; instead, he only alleged that "[t]rial counsel's omission *potentially* prejudiced [him]."[244] Furthermore, the court dismissed the claim pursuant to Rule 32.7(d), saying that "[t]here is no reasonable probability that the outcome of the trial would have been different had counsel 'federalized' any issue raised," so "there is no material issue of fact or law presented by this claim."[245]

This court finds that the Rule 32 circuit court reasonably found that James did not demonstrate how he was allegedly prejudiced. It was reasonable for the state court to determine that James failed to show that the outcome of the proceedings would have been different if his trial lawyers if his trial lawyers had "federalized" all of their objections. This claim provides no basis for *habeas* relief.

## M. Trial Counsel's Performance was Prejudicially Deficient Because Counsel's Failures to Object, or to Take the Affirmative Actions Detailed in this Claim, Resulted in Procedural Defaults With Respect to Some Issues[246]

The last state court to issue an opinion on this subclaim was the Rule 32 circuit court, which dismissed the claim for failure to comply with the specificity and full factual pleading requirements of Alabama Rules of Criminal Procedure 32.3 and

---

[244] *Id*. at 20-21 (emphasis in original) (first alteration supplied, other alterations in original).

[245] *Id*. at 35.

[246] Claim I.M: *see* doc. no. 11 (Amended Habeas Petition), ¶¶ 130-131, at 44-45.

32.6(b).[247]   That court explained that "James merely alleges that any and all of the claims in his petition that are procedurally barred were barred because of ineffective assistance of counsel.  James did not state which specific claims he believes could have been raised at trial by counsel but were not."[248]

Respondents argue that this subclaim was procedurally defaulted pursuant to the circuit court's ruling.[249]  Under the holding in *Borden v. Allen*, 646 F.3d 785 (11th Cir. 2011), however, this court must reach the merits.  Even when doing so, this court finds no basis for 28 U.S.C. § 2254(d) relief.  As the Rule 32 circuit court explained, an ineffective assistance of counsel claim requires the *habeas* petitioner to identify *specific acts* or *specific omissions* of counsel that allegedly prejudiced him.  *See Strickland*, 466 U.S. at 690.  James did not do so.  Even so, and because this court finds the present claim to actually amount to only an assertion of the "cumulative effects of errors," it will be considered more thoroughly in Part V.N, immediately below.

## N.   The Cumulative Effect of Trial Counsel's Guilt-Phase Errors Prejudiced James, Even If No Single Error, Standing Alone, Did So[250]

James next argues that "[j]ustice demands that [his] conviction be reversed

---

[247] C.R. Vol. 32, Tab 78, at 21-22.

[248] *Id.*

[249] *See* doc. no. 19 (Respondents' Answer), at 51-52.

[250] Claim I.N:  *see* doc. no. 11 (Amended Habeas Petition), ¶¶ 132-136, at 45-46.

because the cumulative effect of all the errors and violations alleged in this claim 'was so prejudicial as to strike at the fundamental fairness of the trial.'"[251]   When James raised this claim during collateral review, the Rule 32 circuit court dismissed it for failing to state a claim under Rule 32.7(d), ruling as a matter of law that it could not be evaluated under *Strickland*, which requires that "specific instances of ineffective assistance of counsel be alleged, and a claim that the cumulative effect of alleged errors equal ineffective assistance of counsel is insufficient."[252]

The Eleventh Circuit was presented with a similar claim alleging the cumulative effect of attorney errors in *Hunt v. Commissioner, Alabama Department of Corrections*, 666 F.3d 708 (11th Cir. 2012).  In that case, the *habeas* petitioner complained about the fact that the Alabama Court of Criminal Appeals had "refused to consider whether the cumulative effect of counsel's alleged errors amounted to ineffective assistance, and, in doing so, unreasonably applied clearly established federal law." *Id.* at 731.  The Eleventh Circuit rejected the claim, saying that, "[e]ven if we were to determine that clearly established federal law mandates a cumulative-effect analysis of ineffective-assistance claims, Hunt would not be entitled to relief: he has not shown that in this case the cumulative effect of counsel's alleged errors

---

[251] *Id.*, ¶ 132, at 45 (alterations supplied) (quoting *United States v. Parker*, 997 F.2d 219, 222 (6th Cir. 1993) (citation omitted)).

[252] C.R. Vol. 32, Tab. 78 at 35-37.

amounted to ineffective assistance." *Id*. at 731-32 (alteration supplied).[253]

In like manner, James has utterly failed to demonstrate that the actions or omissions of his trial attorneys, regardless of whether they are considered individually or cumulatively, prejudiced him under *Strickland*. It is incumbent upon him to do so because,

> [u]nlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." [*Strickland*, 466 U.S.] at 689; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom.

*Premo v. Moore*, 562 U.S. 115, 131 S. Ct. 733, 740 (2011) (alterations supplied). The fact that James's present *habeas* attorneys may have tried his case differently is not sufficient to meet both prongs of the *Strickland* standard: that is, that a professionally unreasonable act or omission by counsel caused sufficient prejudice to James's

---

[253] *See also Borden v. Allen*, 646 F.3d 785 (11th Cir. 2011), in which the Eleventh Circuit also addressed the question of "whether a claim of ineffective assistance of counsel may be based on the 'cumulative effect' of multiple non-prejudicial errors by counsel when no individual error standing alone would warrant a finding of prejudice under *Strickland*." *Id*. at 823. Because the petitioner in that case, like James in the present proceeding, had not sufficiently pled facts that would establish prejudice, regardless of whether the actions of the petitioner's attorneys were considered cumulatively, the Court declined "to elaborate further on the concept of 'cumulative effect' for fear of issuing an advisory opinion on a hypothetical issue." *Id*.

defense to undermine confidence in the outcome of the proceeding. *Strickland*, 466 U.S. at 687.

Having now reviewed each of the alleged errors and omissions of counsel during the guilt phase of trial about which James complains in his amended *habeas* petition, this court finds no "cumulative effect" that reasonably could satisfy the prejudice prong of the *Strickland* standard.

## VI. PETITIONER'S PENALTY-PHASE INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

**A.    Failing to Conduct Any Investigation of Petitioner's Background to Obtain Mitigation or Social History Evidence, and, Failing to Present Such Evidence During the Penalty Phase[254]**

Following a defendant's conviction of capital murder in Alabama, state statutes require that a separate "sentence hearing" be conducted before a jury,[255] preferably the same jury that determined the defendant's guilt,[256] which is charged with returning "an advisory verdict," recommending the sentence to be imposed by the trial court

---

[254] Claim II.A: *see* doc. no. 11 (Amended Habeas Petition), ¶¶ 137-218, at 46-76.

[255] The participation of a jury may be waived by a defendant, but a waiver also requires both the consent of the State's prosecutor and approval of the trial judge. *See* Ala. Code § 13A-5-44(c) (1975). *See also id.* § 13A-5-46(a) ("If both parties with the consent of the court waive the right to have the hearing conducted before a jury, the trial judge shall proceed to determine sentence without an advisory verdict from a jury. Otherwise, the hearing shall be conducted before a jury as provided in the remaining subsections of this section.").

[256] *See* Ala. Code § 13A-5-46(b) ("If the defendant was tried and convicted by a jury, the sentence hearing shall be conducted before that same jury unless it is impossible or impracticable to do so. . . .").

judge:[257]  the ultimate sentencing authority under Alabama law.  *See*, *e.g.*, Ala. Code

§ 13A-5-47(a) ("After the sentence hearing has been conducted, and after the jury has

_____

[257] The pertinent subsections of Alabama Code § 13A-5-46 provide that:

(a)  Unless both parties with the consent of the court waive the right to have the sentence hearing conducted before a jury as provided in Section 13A-5-44(c), it shall be conducted before a jury which shall return an advisory verdict as provided by subsection (e) of this section.  . . .

. . . .

(d)  After hearing the evidence and the arguments of both parties at the sentence hearing, the jury shall be instructed on its function and on the relevant law by the trial judge.  The jury shall then retire to deliberate concerning the advisory verdict it is to return.

(e) After deliberation, the jury shall return an advisory verdict as follows:

(1) If the jury determines that no aggravating circumstances as defined in Section 13A-5-49 exist, it shall return an advisory verdict recommending to the trial court that the penalty be life imprisonment without parole;

(2) If the jury determines that one or more aggravating circumstances as defined in Section 13A-5-49 exist[,] but [that the aggravating circumstances] do not outweigh the mitigating circumstances, it shall return an advisory verdict recommending to the trial court that the penalty be life imprisonment without parole;

(3) If the jury determines that one or more aggravating circumstances as defined in Section 13A-5-49 exist and that they outweigh the mitigating circumstances, if any, it shall return an advisory verdict recommending to the trial court that the penalty be death.

(f) The decision of the jury to return an advisory verdict recommending a sentence of life imprisonment without parole must be based on a vote of a majority of the jurors.  The decision of the jury to recommend a sentence of death must be based on a vote of at least 10 jurors.  The verdict of the jury must be in writing and must specify the vote.

Ala. Code § 13A-5-46(a), (d)–(f) (1975) (alterations supplied).

returned an advisory verdict, . . . the trial court shall proceed to determine the sentence.").

James contends that his trial attorneys provided constitutionally ineffective assistance of counsel during the second, "penalty phase" of trial before the same jury that determined his guilt.  He alleges that counsel

> presented no witnesses in mitigation at the sentencing phase, presented no documentary evidence of petitioner's medical, academic, and employment history, consulted no mental health or social history experts, and during closing argument revealed a fundamental misunderstanding of the purpose of mitigation evidence during the sentencing phase of a capital trial.  Even if James had been convicted of capital murder at the guilt phase, a competent investigation and the presentation of powerful mitigation evidence at the sentencing phase would have saved petitioner's life. . . .
>
> Counsel's deficient performance at this phase of the trial was so egregious as to completely fail to subject the prosecution's case to a meaningful adversarial testing, thereby compelling relief without a showing of prejudice.  *United States v. Cronic*, 466 U.S. 648, 658-660 (1984).  Moreover, counsel's deficient performance clearly prejudiced James and violated his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. *Strickland v. Washington*, *supra*, 466 U.S. at 693-694; *Williams v. Taylor*, 529 U.S. 362, 394-395 (2000).

Doc. 11 (Amended Habeas Petition), ¶¶ 137-138, at 46.  James argues that, even if it is determined that his trial attorneys performed competently during the guilt phase of trial, their performance at the penalty phase fell "below the standard of reasonable competence and thereby compel[s] reversal of the [state court's] judgment."  *Id*. ¶

211

139, at 46 (alterations supplied).

According to James, the Supreme Court's decision in *Wiggins v. Smith*, 539 U.S. 510 (2003), requires trial counsel in a capital case to "conduct a complete and thorough investigation sufficient to discover 'all reasonably available mitigating evidence.'"[258]   Furthermore, "[f]ailure to investigate the possibility of mitigating evidence is, *per se*, deficient performance."[259]   James argues that,

> [e]ven if the new evidence [would not be] entirely favorable to the defendant[,] or would leave some aggravating evidence (*e.g.*, future dangerousness) unrebutted, evidence of a defendant's difficult childhood, poverty, mental problems, and similar background and character evidence will be sufficient to establish prejudice from counsel's failure to perform effectively if that evidence 'might well have influenced the jury's appraisal of his moral culpability.'

Doc. no. 11, ¶ 144, at 49 (quoting *Williams v. Taylor*, 529 U.S. at 398) (alterations supplied).   James then provides a lengthy overview of evidence he deems to be mitigating, including

> evidence of Petitioner's chaotic upbringing and family background; Petitioner's genetic predisposition for mental illnesses and other mental deficits; Petitioner's medical, psychiatric and neurological impairments, including but not limited to, schizophrenia, mood disorder, depression, and debilitating head and brain trauma; Petitioner's childhood history of profound neglect, abandonment, abuse and instability, isolation and imprisonment; and Petitioner's childhood exposure to neurotoxins, substance abuse and severe racial and ethnic discrimination, all of which

---

[258] Doc. no.11 (Amended Habeas Petition), ¶ 139, at 47 (quoting *Wiggins*, 539 U.S. at 524).

[259] *Id.* (citing *Ex parte Land*, 775 So. 2d 847, 853 (Ala. 2000)) (alteration supplied).

> have direct bearing on Petitioner's character, mental functioning and disabilities and numerous other factors in mitigation.

*Id.*, ¶ 145, at 49-50.

Respondents argue that this subclaim was denied on the merits by the Alabama Court of Criminal Appeals, which relied on *Strickland* and its progeny when reviewing James's contentions.[260]   Respondents also contend that James cannot demonstrate that the state court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.[261]

James contends that his trial attorneys performed so deficiently during the penalty phase that they "fail[ed] to subject the prosecution's case to a meaningful adversarial testing, [thus] compelling relief without a showing of prejudice."[262]   The Supreme Court has held that, "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." *United States v. Cronic*, 466 U.S. 648, 659 (1984).   To the extent that the Court's

---

[260] Doc. no. 19 (Respondents' Answer), at 57.

[261] *Id.*

[262] Doc. no. 11 (Amended Habeas Petition), ¶ 138, at 46 (citing *United States v. Cronic*, 466 U.S. 648, 659 (1984)) (alterations supplied).

holding in *Cronic* applies, the burden of proof under that standard is "a very heavy one." *Smith v. Wainwright*, 777 F.2d 609, 620 (11th Cir. 1985) ("[W]e have yet to find that a petitioner received ineffective assistance of counsel under the *Cronic* standard based solely on his counsel's performance, without regard to some interference attributable to the state"). Indeed, the Eleventh Circuit has held that a claim of counsel's failure "to investigate and pursue all avenues of defense is best characterized as a failure by counsel in the performance of his investigative duties, which is to be analyzed under [*Strickland* ], rather than as a fundamental breakdown of the adversarial process such that prejudice is presumed under *Cronic*." *Chadwick v. Green*, 740 F.2d 897, 901 (11th Cir. 1984) (alteration supplied). Because James's ineffective assistance of counsel claims during the penalty phase of trial pertain solely to counsel's failure to investigate various avenues of mitigation evidence, they do not fall within that "very narrow spectrum of cases where the circumstances leading to counsel's ineffectiveness are so egregious that the defendant was in effect denied any meaningful assistance at all." *Id*. Accordingly, James is not entitled to rely upon a presumption of prejudice, and he must instead affirmatively meet the *Strickland* standard to be entitled to *habeas* relief on this claim.

The last state court to issue a reasoned opinion on this subclaim was the Alabama Court of Criminal Appeals. That Court's second opinion on collateral

214

appeal, following remand from the Alabama Supreme Court, ruled that James had

failed to demonstrate that his trial attorneys' representation in the penalty phase was

deficient under *Strickland* and its progeny.  *See James v. State*, 61 So. 3d 357, 373

(Ala. Crim. App. 2010).   That Court's analysis of the same deficiencies cited by

James in his Rule 32 petition — and then again here, in his *habeas* petition — reads

as follows:

> Next, James argues that his counsel were ineffective at the
> sentencing phase of his trial because, he asserts, they failed to
> investigate and present mitigation evidence.

> In addressing this claim, the circuit court made the following
> findings:

>> "Judge Vinson [*i.e.,* Virginia Vinson, who became a
>> state judicial officer following her representation of James
>> during his second trial] testified that shortly after her
>> appointment to represent James, she spoke with his
>> grandmother and mother regarding possible mitigation
>> evidence.   Neither provided her with any information
>> regarding possible mitigation evidence. It appears that
>> James's own mother was completely unwilling to help in
>> his defense.   Judge Vinson stated that when James's
>> mother surprisingly attended one day of the trial, she again
>> asked her to testify on James's behalf.  Despite her pleas,
>> James's mother refused.

>> "Judge Vinson also stated that she spoke with
>> James's sister, Yosandra Craig, after she too attended one
>> day of the trial.  Judge Vinson stated that Ms. Craig related
>> several incidents involving her brother, James. Ms. Craig
>> told her that James was aggressive, violent and

overprotective. Ms. Craig also told Judge Vinson that James had broken a former girlfriend's arm, beat a man at Job Corps, and threatened her stepfather with a gun. Based on her conversation with Ms. Craig, Judge Vinson would not have called her as a mitigation witness. Judge Vinson testified that she believed that Ms. Craig would have done more damage than good. This Court finds that a reasonable tactical decision based on the information that Ms. Craig had provided.

"In addition to speaking with James's mother and grandmother prior to trial, Judge Vinson also spoke with James about possible mitigating evidence. Judge Vinson asked James about his family and possible witnesses that could testify during the penalty phase. Judge Vinson also asked if his father had ever abused him. James denied that any abuse ever occurred. Judge Vinson also asked James for permission to put family members on the stand during the penalty phase for mitigation purposes. James, however, refused to provide any names or possible witnesses that could be used for mitigation during the penalty phase of the trial. In fact, James specifically instructed counsel not to involve his family and not to call anyone during the penalty phase. After learning that Judge Vinson spoke with his mother and sister at trial, James became angry and again instructed trial counsel not to call anyone on his behalf. James also refused to testify on his own behalf. Throughout their representation of James, both Mr. Warren [*i.e.* Gordon Herbert Warren, the other attorney representing James during the second trial] and Judge Vinson testified that James was uncooperative and often uncommunicative.

"It is obvious from the record at trial and the evidentiary hearing that trial counsel conducted a limited investigation and did not present any nonstatutory mitigation evidence during the penalty phase. However, in

216

view of the unique circumstances faced by trial counsel, this Court does not find that their investigation or failure to present nonstatutory mitigation evidence constitutes deficient performance under *Strickland* or as interpreted by the United States Supreme Court in *Wiggins v. Smith* [, 539 U.S. 510 (2003) ]. Unlike the trial counsel in *Wiggins*, Mr. Warren and Judge Vinson were faced with a defendant's family that was unwilling to help and a client who refused to provide counsel with any information. Moreover, James ordered his counsel not to involve his family and not to present any witnesses on his behalf during the penalty phase.   The absence of nonstatutory mitigation is attributable not to trial counsel, but to James and his family.

"A competent defendant can waive the presentation of mitigating evidence during the penalty phase. *See Nelson v. State,* 681 So. 2d 252, 255 (Ala. Crim. App. 1995).   In *Adkins v. State*, the defendant waived the presentation of mitigating evidence at trial, only to later claim on Rule 32 that trial counsel was ineffective for failing to present mitigating evidence. [930 So. 2d 524] (Ala. Crim. App. 2004).  The Court of Criminal Appeals upheld the denial of the defendant's ineffectiveness claim stating, 'a defendant is estopped from raising a claim of ineffective assistance of counsel for counsel's failure to present mitigating evidence when the defendant waived the presentation of mitigating evidence.' *Id.*  The Court of Criminal Appeals explained that '[to] punish Adkins's attorneys for following his wishes would conflict with the doctrine of invited error.' *Id.*

"James refused to provide counsel with any assistance in procuring mitigating evidence.  His family was also unable or refused to assist trial counsel in obtaining mitigating evidence.  Finally, James specifically instructed his counsel not to present any mitigation

217

witnesses on his behalf.  At trial, James told this Court that he did not wish to present any witnesses on his behalf at the penalty phase.  Essentially, James knowingly and voluntarily waived his right to present mitigating evidence on his own behalf.  A 'defendant will not be permitted to allege as error an action at trial that was invited by him or that was a natural consequence of his own actions.'  *Duke v. State*, [889 So. 2d 1] (Ala. Crim. App. 2002).

"Clearly, James wished that no mitigating evidence be presented on his behalf.  James told Mr. Warren that he would rather be on death row than in the general prison population.  James explained that he is treated better on death row, has his own cell and television, and does not have to deal with other people.  James cannot now blame trial counsel for failures that were the result of his own actions and desires.  In light of James and his family's unwillingness or inability to assist trial counsel, this Court finds that trial counsel's investigation and presentation of mitigating evidence was not deficient.  As such, this claim is denied for failing to meet the first prong of *Strickland*. Specifically, James has failed to demonstrate that trial counsel's representation fell below an objective standard of reasonableness.  *Chandler [v. United States]*, 218 F.3d [1305] at 1312–1313 [(11th Cir. 2000)] (citing, *Darden v. Wainwright*, 477 U.S. 168 (1986))."

(C.R. 140–44.)

Warren testified that Vinson was lead counsel, that he was in charge of investigating the facts surrounding the murder, and that Vinson was in charge of mitigation.  Vinson's law partner represented James in his first capital-murder trial.  Vinson gave the case file to Warren, he said, and told him to familiarize himself with the case. Warren testified that he could not locate his file on the case, that he did not know the exact number of hours he had spent on the case, and that he did not submit a bill for his work on the case.  He said that he had

difficulty communicating with James because James often would "not convey any information" and would not talk about the events leading to Hall's murder.  Warren further testified that James did not want to discuss his family and did not want his family in the courtroom.  Warren stated in his affidavit that he and Vinson met "50 to 100 times prior to trial," and that when he met with James for the first time, James said, "I am going to plead guilty, you guys don't need to do anything." (C.R. 1182.)  Warren also stated that before trial he discovered that James had been speaking to another attorney and that that attorney had arranged for James to plead guilty in exchange for a life sentence. However, on the first day of trial James changed his mind and informed Warren that he was not going to enter a guilty plea.  Warren said that he spoke at length to James about this decision:

> "I talked to him for a long time and the thing he kept coming back to was that he had it pretty good where he was on death row.  He said he had his own television set that he could control and watch what he wanted.  He didn't have to deal with twenty other guys voting on whether to watch football or baseball.  He had plenty of reading material.  He didn't have to watch his back and worry about someone sneaking up behind him and clubbing him or stabbing him because he was handled one on one exclusively on death row.  The only drawback he said was not getting as much exercise—an hour a day or whatever it was.  Otherwise, he was in his cell.  He did not want to move in with the general population."

(C.R. 1192–93.) In conclusion, Warren stated in his affidavit that he felt that James was trying to sabotage his case.

Vinson testified that she spoke to James's grandmother, his mother, and one of his sisters, and encouraged them to testify on James's behalf in the penalty phase.  James, she said, got angry when he found out that she had spoken to his family and instructed her not to call witnesses on his behalf at his sentencing hearing.  Vinson stated in her affidavit that she spoke to James's mother several months before trial

and that she did not want to get involved.  Vinson testified that James's sister did tell her that James had been abused but that when she asked James about it he denied that he had suffered any abuse.  Vinson also said that she thought it would hurt James to call his sister to testify because she could also testify about violent acts James had committed in the past.

The record of James's trial shows that the following occurred before his sentencing hearing:

> "[Vinson]: And also, Your Honor, just to put on the record, we have talked with Mr. James yesterday and Mr. Warren has talked with him this morning, we have talked with his mother and sister who are here, and it has been our decision not to present any witnesses as testimony during the sentencing.

> "[Prosecutor]: Does he agree to that?

> "The Court: Is that correct, Mr. James?

> "Defendant: (Nods.)

> "[Vinson]: Mr. James agrees with that."

(Supplemental trial record, p. 9.)

James asserts that the United States Supreme Court's decisions in *Wiggins v. Smith*, 539 U.S. 510, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003), and *Rompilla v. Beard*, 545 U.S. 374, 125 S. Ct. 2456, 162 L. Ed. 2d 360 (2005), require that counsel conduct and present mitigation evidence even when their client is uncooperative or instructs them not to present such evidence.  The United States Supreme Court in *Schriro v. Landrigan*, 550 U.S. 465, 127 S. Ct. 1933, 167 L. Ed. 2d 836 (2007), held otherwise and stated:

> "Neither *Wiggins* nor *Strickland* addresses a

220

situation in which a client interferes with counsel's efforts to present mitigating evidence to a sentencing court. *Wiggins, supra*, at 523 ('[W]e focus on whether the investigation supporting counsel's decision not to introduce mitigating evidence of Wiggins' background was itself reasonable' (emphasis added and deleted)). Indeed, we have never addressed a situation like this. In *Rompilla v. Beard*, 545 U.S. 374, 381 (2005), on which the Court of Appeals also relied, the defendant refused to assist in the development of a mitigation case, but did not inform the court that he did not want mitigating evidence presented. In short, at the time of the Arizona postconviction court's decision, it was not objectively unreasonable for that court to conclude that a defendant who refused to allow the presentation of any mitigating evidence could not establish *Strickland* prejudice based on his counsel's failure to investigate further possible mitigating evidence."

550 U.S. at 478, 127 S. Ct. 1933. In applying the Supreme Court's decision in *Schriro v. Landrigan*, the United States Court of Appeals for the Eleventh Circuit in *Cummings v. Secretary, Department of Corrections*, 588 F.3d 1331 (11th Cir.2009), stated:

"[W]hen a competent defendant clearly instructs counsel not to investigate or present mitigation evidence, the scope of counsel's duty to investigate is significantly more limited than in the ordinary case. *See Knight v. Dugger*, 863 F.2d 705, 750 (11th Cir. 1988) ('Although a capital defendant's stated desire not to use character witnesses does not negate the duty to investigate, it limits the scope of the investigation required.'); *Tafero v. Wainwright,* 796 F.2d 1314, 1320 (11th Cir. 1986) ('[A] defendant's decision communicated to his counsel as to who he wants to leave out of the investigation, while not negating the duty to investigate, does limit the scope of the investigation.'). Indeed, *Strickland* tells us that the reasonableness of counsel's investigation 'depends

critically' on the defendant''s statements or actions. *Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066; see also *Porter* [*v. McCollum*, – U.S. — , 130 S. Ct. 447], at 453 [(2009)] (noting that 'although Porter instructed [counsel] not to speak with Porter's ex-wife or son, Porter did not give him any other instructions limiting the witnesses he could interview').

    "*. . . .*

    "A competent defendant's clear instruction not to investigate or present mitigation evidence also impacts the prejudice prong of the ineffective assistance test.   In *Schriro v. Landrigan*, 550 U.S. 465, 127 S. Ct. 1933, 167 L. Ed. 2d 836 (2007), the Supreme Court held that the capital defendant Landrigan could not demonstrate prejudice '[b]ecause the Arizona postconviction court reasonably determined that Landrigan instructed his attorney not to bring any mitigation to the attention of the [sentencing] court.'   *Id*. at 477, 127 S. Ct. at 1941–42 (quotation marks and citations omitted); *see also id.* at 475, 127 S. Ct. at 1941 (stating that '[i]f Landrigan issued such an instruction [to his counsel not to offer any mitigating evidence], counsel's failure to investigate further could not have been prejudicial under *Strickland*').   Indeed, 'the judge presiding on postconviction review was ideally situated to make [the] assessment [about what Landrigan instructed his counsel] because she is the same judge that sentenced Landrigan and discussed these issues with him.'   *Id*. at 476, 127 S. Ct. at 1941.   The Supreme Court emphasized that in denying Landrigan's § 2254 petition, the 'District Court was entitled to conclude that regardless of what information counsel might have uncovered in his investigation, Landrigan would have interrupted and refused to allow his counsel to present any such evidence.' *Id*. at 477, 127 S. Ct. at 1942.

"' . . . .

"Our earlier decision in *Gilreath v. Head*, 234 F.3d 547 (11th Cir.2000) is consistent with *Landrigan*. There, the defendant Gilreath instructed his counsel to present no mitigation evidence during the penalty phase. *Id*. at 549–50. This Court denied Gilreath's ineffective assistance claim on prejudice grounds, stating Gilreath 'actually must make two showings.' *Id*. at 551. 'First, James must show a reasonable probability that – if James had been advised more fully about character evidence or if trial counsel had requested a continuance – James would have authorized trial counsel to permit such evidence at sentencing.' *Id.* 'Second, James must establish that, if such evidence had been presented at sentencing, a reasonable probability exists that the jury would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.' *Id.* at 551–52 (quotation marks omitted).

"In *Gilreath*, this Court explained that, '[i]n other words, to show prejudice, James must show that – but for his counsel's supposedly unreasonable conduct – helpful character evidence actually would have been heard by the jury. If James would have precluded its admission in any event, James was not prejudiced by anything that trial counsel did.' *Id*. at 551 n. 12. This rule follows naturally from *Strickland's* formulation of the prejudice prong, for there cannot be a reasonable probability of a different result if the defendant would have refused to permit the introduction of mitigation evidence in any event. *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068 (defining prejudice for ineffective-assistance purposes as a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different')."

223

588 F.3d at 1358–60. *See Adkins v. State*, 930 So. 2d 524 (Ala. Crim. App. 2001) (holding that a defendant is estopped from raising a claim of ineffective assistance of counsel when he has instructed his attorney not to present any mitigation evidence on his behalf); *Whitehead v. State*, 955 So. 2d 448 (Ala. Crim. App. 2006) (holding that a defendant may raise the validity of the waiver of the presentation of mitigating evidence) (footnote omitted).

> "'We have . . . emphasized the importance of a mentally competent client's instructions in our analysis of defense counsel's investigative performance under the Sixth Amendment.' *Newland* [*v. Hall*], 527 F.3d [1162] 1202 [(11th Cir. 2008)]. Significant deference is owed to failure to investigate made under a client's specific instructions not to involve his family. *Id*. at 1203. Assuming [counsel] did not know the details of his client's background, [the defendant's] admonishment to him not to contact his family cannot be ignored. We cannot say it would be unreasonable for [counsel] not to discuss [the defendant's] background with his sisters and mother if [the defendant] indeed instructed him not to contact them out of a sense of protection."

*Blankenship v. Hall*, 542 F.3d 1253, 1277 (11th Cir. 2008). *See Tafero v. Wainwright*, 796 F.2d 1314, 1320 (11th Cir. 1986) ("[A] defendant's decision communicated to his counsel as to who he wants to leave out of the investigation, while not negating the duty to investigate, does limit the scope of the investigation.").

Vinson, in contradiction to her client's wishes, talked to members of James's family and asked them to testify on James's behalf. Vinson testified that James became angry when he discovered that she had talked to his mother and sister. Counsel also had the competency report completed by Dr. [Wendy] Rebert, the presentence report from the first trial, the attorney case file from James's first trial, and other evidence that had been admitted at James's first trial. This is not a case where the attorneys conducted no investigation. Given the unique circumstances

224

> presented in this case we cannot say that counsel's actions were
> unreasonable. *See Schriro v. Landrigan, supra.*

*James v. State*, 61 So. 3d 357, 371-77 (Ala. Crim. App. 2010) (alterations supplied).

James does not argue in his *habeas* pleadings that the Alabama Court of Criminal Appeals' determination on the merits of this claim was either an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States, *or* an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *See* 28 U.S.C. § 2254(d). Instead, his *habeas* petition merely reiterates the identical arguments made to the Rule 32 circuit court. *Compare* James's amended *habeas* petition (doc. no. 11), at 46-76, with James's second amended Rule 32 petition for relief from judgment (C.R. Vol. 14, Tab 46, at 1281-1325).

Moreover, James's only argument addressing the opinion of the Alabama Court of Criminal Appeals is relegated to a long footnote in his reply brief, in which he contends that:

> The Court of Criminal Appeals badly misread *Schiro v. Landrigan*, 550 U.S. 465 (2007)[,] as compelling its decision to uphold the Attorney General's absurd finding that petitioner was to blame for counsel's failure to present mitigating evidence. *Porter v. McCollum,* [558 U.S. 30, 130 S. Ct. 447 (2009),] decided two years after *Landrigan,* again reiterated the many precedents holding that counsel may not fail to conduct any meaningful mitigation investigation and then blame it on the defendant for being uncooperative or fatalistic. *Id.*, [558 U.S. at —,]

225

130 S. Ct. [at] 453.

Moreover, *Landrigan* was clearly distinguishable. First of all, *Landrigan* applies only to the prejudice analysis of *Strickland*, and any reliance on the case for purposes of determining counsel's competence is inherently unreasonable. Furthermore, the case is factually and obviously distinguishable from this one. Trial counsel in *Landrigan* had actually conducted an investigation and was prepared to present as witnesses the defendant's mother to testify that she had use drugs and alcohol, his ex-wife to testify that the defendant was a good father, and to introduce other evidence about the defendant's good employment history and the self-defense elements involved in the killing for which the defendant had been convicted. He had also explained to the defendant the purpose of mitigating evidence and urged him to permit counsel to present the evidence. However, Landrigan himself repeatedly interrupted counsel, interfered with his attempts to present mitigating evidence, forbade his mother and ex-wife to testify, and repeatedly attempted to offer aggravating evidence in an effort to obtain a death penalty. *Landrigan, supra,* 550 U.S. at 469.

*Landrigan* thus stands for the proposition that when an attorney has conducted a mitigation investigation and presented the results to the defendant, and the defendant has then refused to permit the presentation of that mitigating evidence, the defendant cannot later assert ineffective assistance of counsel on that basis. However, *Landrigan* does not address the situation in this case where counsel has failed to conduct any meaningful mitigation investigation. A defendant cannot be said to have "interfered" with the presentation of mitigating evidence, as Landrigan did, when counsel has done no investigation and has no such evidence to present. Indeed, *Landrigan* itself cited with approval the language of *Wiggins v. Smith* emphasizing that counsel cannot make a tactical judgment or competently advise the client regarding the evidence to be presented with first conducting an investigation. *Landrigan, supra,* 550 U.S., at p. 478. As *Wiggins* stated:

> [S]trategic choices made after thorough investigation of
> law and facts relevant to plausible options are virtually

226

unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

466 U.S., at 690-691.

Counsel here announced to the court that she and her co-counsel had spoken to petitioner and, on the morning of the penalty phase, with his mother and sister (who had come to court voluntarily) and that it was "our decision" not to present any witnesses at the penalty phase. Asked if that was correct, the record states that petition nodded. *James v. State, supra,* 61 So.2d at p. 374. That is not even remotely like the situation in *Landrigan.* Here counsel did no meaningful investigation. Her statement in court was that it was "our decision," not petitioner's decision, not to present witnesses. Petitioner then said nothing but, according to the court reporter, nodded when asked if that was correct. Assuming that the court reporter's conclusion that petitioner nodded is to be taken as a sign of assent, it is still not at all clear from the context whether petitioner was simply agreeing that counsel had spoken to him, whether he was agreeing that it was counsel's decision, or whether he was agreeing with the decision itself. However, even taking every conceivable inference in the final order's favor — an assumption that is wholly unjustified — this was at best acquiescence in counsel's decision; it was certainly not inference in the presentation of mitigating evidence counsel had uncovered, such as occurred in *Landrigan.*

*Thus,* neither the final order nor the appellate court's citation of *Landrigan* can use petitioner's acquiescent nod to shield slothful counsel from a finding of ineffectiveness when counsel did no investigation and had no mitigating evidence to present. The appellate

227

court's reliance on *Landrigan* was accordingly not merely misplaced but grossly unreasonable.

Doc. no. 25, 72-74 & n.27 (final alteration in original, other alterations supplied).

Even assuming that the foregoing contentions were intended to be an argument that the second opinion of the Alabama Court of Criminal Appeals on collateral appeal was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding, this court is limited by AEDPA to the question of whether the state court's determination was *unreasonable*, and *not* whether that decision was incorrect — "a substantially higher threshold." *Landrigan*, 550 U.S. at 473-74 (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

Specifically, *habeas* relief is available only if this court finds that the decision of the Alabama Court of Criminal Appeals was unreasonable in light of the evidence presented in the Rule 32 state court proceedings. *See*, *e.g.*, *Alderman v. Terry*, 468 F.3d 775, 791 (11th Cir. 2006) (quoting 28 U.S.C. § 2254(d)(2)).  Of course, James bears the burden of rebutting "the presumption of correctness [of a state court's factual findings] by clear and convincing evidence." *Ward v. Hall*, 592 F.3d 1144,

1155-56 (11th Cir. 2010) (alterations in original, quoting § 2254(e)(1)).

This court finds that the decision of the Alabama Court of Criminal Appeals was reasonable in light of the evidence presented in the Rule 32 proceedings. Both attorneys testified at the Rule 32 hearing that James was uncooperative and uncommunicative. *See James v. State*, 61 So. 3d 357, 372 (Ala. Crim. App. 2010), and C.R. Vol. 22, at 141 (testimony of Gordon Herbert Warren). Lead trial attorney Virginia Vinson testified that she had been involved in more than thirty capital murder trials by the date on which she represented James, and that in her experience "it did not appear that the jury was sympathetic toward people who had some type of difficulty growing up or a bad home environment or did not do well in school."[263] Given Ms. Vinson's extensive experience, "the presumption that [her] conduct was reasonable is even stronger." *Chandler*, 218 F.3d at 1316 (alteration supplied).

James argues in his *habeas* petition that the Supreme Court's decision in *Rompilla v. Beard*, 545 U.S. 374, 381 (2005), stands for the proposition that "counsel must investigate mitigating evidence even if [the] defendant refuses to cooperate or is actively obstructive."[264] That same argument was presented to the Alabama Court of Criminal Appeals, which found that *Schriro v. Landrigan*, decided two years after

---

[263] C.R. Vol. 23, at 253, 257.

[264] Doc. no. 11 (Amended Habeas Petition), ¶ 160, at 56.

229

*Rompilla*, held otherwise.  Thus, this court first considers whether the Alabama Court of Criminal Appeals's decision (*i.e.*, that *Landrigan* was controlling) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  *See* 28 U.S.C. § 2254(d)(1).

In *Landrigan*, the Supreme Court considered a situation, similar to the facts before this court, in which the defendant had not only refused to assist counsel in obtaining mitigating evidence, but actually interfered with counsel's efforts to do so. *Schriro v. Landrigan*, 550 U.S. at 478 ("Neither *Wiggins* nor *Strickland* addresses a situation in which a client interferes with counsel's efforts to present mitigating evidence to a sentencing court.").  The *Landrigan* court held that, under such circumstances, defense counsel did not act in an objectively unreasonable manner when failing to present mitigating evidence during the penalty phase of the defendant's trial.  *Id*. at 478.

The Alabama Court of Criminal Appeals did not venture out on its own in applying *Landrigan*, as James suggests.  Rather, as quoted above, that Court turned to Eleventh Circuit precedent:  specifically, the decision in *Cummings v. Secretary, Department of Corrections*, 588 F.3d 1331 (11th Cir. 2009).  Like James here, the defendant in *Cummings* wanted no mitigation evidence to be presented.  In fact, he said that he would rather be dead than serve a life term in prison.  *Compare id.* at

1361 *with* C. R. Vol 24, at 187-88 ("[H]e said he had a better life on death row even if it meant he would have a shorter potential life span than he would in the general population.") (alteration supplied).  Again, like the facts of this case, defense counsel in *Cummings* tried to convince the defendant to provide them with information about his family and background for mitigation purposes, but Cummings refused to cooperate.  *Compare Cummings*, 588 F.3d at 1361 *with* C.R. Vol. 22, at 141-43.[265]

---

[265] Gordon Herbert Warren testified at the Rule 32 hearing as follows:

> Q. In your affidavit, if I recall correctly, you indicated that you had difficulty conducting a mitigation investigation in this case because of your relationship with the client.  Is that correct?

> A. I wouldn't want to put it in those terms.  We had difficulty communicating with the client because oftentimes he would not convey any information.

> And again, my experience, both while working for the criminal attorneys as I interned and in the pre-practice of law, I was an aircraft accident investigator for a good portion of my time in the service.  And I was very comfortable and very used to investigating – or conducting investigations – and questioning people concerning events that they had witnesses and things that had occurred in the context of investigating a aircraft accident.

> And my contact with Mr. James was that he would not respond sometimes to some of my questions.  I wanted to get pointedly things like: What happened?  Tell me the events and the occurrences.  And he wouldn't talk about them.  . . .

> But I would ask Mr. James a straight question and I would never get a straight answer.  And most of the time it was like: I don't want to talk about it.  I don't want to talk about it.  And every time I went back to the events of that day, it was: I don't want to talk about it.  And so that made it a little but difficult.

C.R. Vol. 22, at 141-143.  Later in his testimony, Warren added that:

> In fact, [James] on more than one occasion during our conversations, he indicated to me – let me rephrase that.  *He instructed me*, *not indicated*.  He

According to James's lead defense attorney, Virginia Vinson, James became angry when he found out she had spoken to his family, and instructed her *not* to call witnesses on his behalf during the penalty phase hearing before the jury.[266]

"When a competent defendant clearly instructs counsel not to investigate or present mitigation evidence, the scope of counsel's duty to investigate is significantly more limited than in the ordinary case." *Cummings*, 588 F.3d at 1358-59. Defendant's "clear, affirmative instructions as to the penalty phase made [trial counsel]'s conduct objectively reasonable." *Id*. at 1361 (alteration supplied).

As the Alabama Court of Criminal Appeals found, lead defense attorney Virginia Vinson,

> in contradiction to her client's wishes, talked to members of James's family and asked them to testify on James's behalf. Vinson testified that James became angry when he discovered that she had talked to his

---

instructed me not to get his family involved. . . . *And he was quite adamant about that. He did not want them in the courtroom. He did not want them anywhere near him*.

*Id.* at 163 (emphasis and alteration supplied). Mr. Warren later reiterated that James said the same things

> more than once and less than a dozen times. But we had more than one comment or conversation about it where he did not want — in fact, we were at one point I remember Judge Vinson asking him about some of his family, to put them on the stand . . . . And I know her purpose would have been for mitigating testimony . . . . And he was not happy with that idea . . . . *He did not want her to do it.*

*Id.* at 181 (emphasis supplied).

[266] *See* C.R. Vol. 24, at 374.

232

> mother and sister. Counsel also had the competency report completed
> by Dr. [Wendy] Rebert, the presentence report from the first trial, the
> attorney case file from James's first trial, and other evidence that had
> been admitted at James's first trial. This is not a case where the
> attorneys conducted no investigation.

*James*, 61 So. 3d at 376-77 (alteration supplied).

When James's family members proved to be unhelpful in unearthing possible

mitigating evidence, defense counsel turned to James himself, who proved equally

unhelpful. Ms. Vinson asked James if he had been abused as a child, but he denied

that had occurred. *See James*, 61 So. 3d at 374. James now contends, however, that

his trial attorneys were ineffective for, among other things, not discovering and

presenting evidence of just such abuse. But, as the Rule 32 circuit court stated,

"James cannot now blame trial counsel for failures that were the result of his own

actions and desires."[267]

Finally, this court notes that James failed to present any evidence during the

Rule 32 proceedings in the circuit court that, if his trial attorneys had prepared

mitigating evidence, such as testimony from his various relatives, he would have

consented to presentation of such evidence. Because James did not testify at his Rule

32 hearing, this court has nothing to support a finding that he would have "authorized

trial counsel to permit such evidence at sentencing." *Gilreath v. Head*, 234 F.3d 547,

---

[267] C.R. Vol. 32, Tab 78, at 92.

551 (11th Cir. 2000).

Thus, this court concludes that the determination of the Alabama Court of Criminal Appeals that James's trial attorneys' performance was not deficient in the investigation and presentation of mitigating evidence was neither contrary to, nor an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.[268] Even if James had established during his Rule

---

[268] The Eleventh Circuit surveyed the law in this area in the opinion entered in *Cummings v. Sec., Dept. of Corr.*, 588 F.3d 1331 (11th Cir. 2009), and held that:

> In affirmative-instruction [not to present mitigation evidence] cases, the duty to investigate "does not include a requirement to disregard a mentally competent client's sincere and specific instructions about an area of defense and to obtain a court order in defiance of his wishes." *Rutherford v. Crosby*, 385 F.3d 1300, 1313 (11th Cir. 2004). A mentally competent defendant's instruction not to investigate or present mitigation evidence may make counsel's decision not to investigate or present mitigation evidence reasonable. *See Blankenship v. Hall*, 542 F.3d 1253, 1276-77 (11th Cir. 2008) (stating that even if counsel "did not know about Blankenship's background . . . Blankenship himself instructed them not to contact his family"; "[s]ignificant deference is owed to failures to investigate made under a client's specific instructions not to involve his family"; and "[a]ssuming [counsel] did not know the details of his client's background, Blankenship's admonishment to [counsel] not to contact his family cannot be ignored"); *Newland v. Hall*, 527 F.3d 1162, 1202-05 (11th Cir. 2008), cert. denied, [555] U.S. [1183], 129 S. Ct. 1336, 173 L. Ed. 2d 607 (2009) ("We have . . . emphasized the importance of a mentally competent client's instructions in our analysis of defense counsel's investigative performance"; "when limited by his client's instructions not to contact his family or otherwise delve into his background, a reasonably competent attorney standing in Manning's shoes would have gone no further than Manning did to seek mitigating evidence from the client's past"; and "we follow the [Supreme] Court in drawing a distinction between a defendant's passive non-cooperation and his active instruction to counsel not to engage in certain conduct"); *Johnston v. Singletary*, 162 F.3d 630, 642 (11th Cir. 1998) (concluding counsel's failure to present expert mental health testimony at penalty phase was not unreasonable where counsel tried to have defendant evaluated but defendant "was steadfast in his resistance to meeting with [the] expert"); *Dobbs v. Turpin*, 142 F.3d 1383, 1388 (11th Cir. 1998) ("[T]he

32 proceedings that the performance of trial counsel was deficient for failing to present mitigating evidence, he still would have to prove that such deficient performance prejudiced him, as required by *Strickland*.   As to that prong, the Alabama Court of Criminal Appeals found that, when

> assessing claims of ineffective assistance of counsel in the penalty phase of a capital trial, we apply the standard discussed in *Wiggins v. Smith*, 539 U.S. 510, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003):
>
>> "In *Strickland* [*v. Washington*, 466 U.S. 668 (1984)], we made clear that, to establish prejudice, a 'defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' *Id.*, at 694, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674.   In assessing prejudice, we reweigh the evidence in aggravation against the totality of available mitigating evidence."
>
> 539 U.S. at 534, 123 S. Ct. 2527.
>
> Here, the circuit court found that the omitted mitigating evidence would not have outweighed the aggravating circumstances.   The circuit court stated:

---

decision whether to use mitigating evidence is for the client."); *Hance v. Zant*, 981 F.2d 1180, 1183-84 (11th Cir. 1993) (counsel's agreeing to capital defendant's wishes not to contact his family did not amount to ineffective assistance under the circumstances); *Mitchell v. Kemp*, 762 F.2d 886, 889-90 (11th Cir. 1985) (Counsel's investigation consisting of speaking with defendant and defendant's father held to be reasonable, when defendant did not provide any information about troubled childhood and told counsel to "leave [his family] out of it.").

*Cummings,* 588 F.3d at 1357-58 (first alteration supplied, other alterations in original).

"Even assuming that trial counsel's performance was deficient, James would not be entitled to relief on his penalty phase ineffectiveness because he has failed to demonstrate that he was prejudiced.

"In an effort to demonstrate prejudice, James called the following persons to testify at the evidentiary hearing: Randy Bernstein, Consuela James, Brandon James, and Yosandra Craig.  Even if this Court had found that trial counsel's performance was deficient, the mitigating testimony of these individuals would not have been enough to outweigh the aggravating circumstances in this case.

". . . .

"In light of the testimony presented at the evidentiary hearing, the Court finds that James did have a difficult childhood, marked by the instability of constant moves, poverty, a frequently absent mother, and a completely absent father.  However, the Court notes that many people who experience similar or even worse childhoods do not grow up and commit capital murder.  In fact, Ms. [Yosandra] Craig [James's sister], herself, managed to graduate community college and obtain a degree, despite growing up under the same circumstances as James.   The Court finds that this non-statutory mitigating evidence should be afforded little weight.

"The Court previously found that two aggravating circumstances existed in this case.  First, the capital offense was committed by James while he was under the sentence of imprisonment.   Second, the capital offense was committed by James during the course of a burglary. The Court finds that the statutory aggravating circumstances outweigh the non-statutory mitigating circumstances presented at the Rule 32 evidentiary hearing.

"As such, even assuming counsel's performance was deficient, James has not shown that a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Chandler*, 218 F.3d at 1312–1313 (citing, *Darden v. Wainwright*, 477 U.S. 168 (1986)). As a result, this claim is denied."

(R. 145–51.)

The circuit court's findings are supported by the record. At the Rule 32 evidentiary hearing, James presented the testimony of four individuals. Randy Bernstein, owner of a scrap-metal business, testified that James's father, Joe Johnson, worked for him on and off for seven years and that he thought that Johnson was mentally ill. He also said that he had never met James. Consuela James, James's maternal aunt, testified that James had five siblings, that James and his family moved at least 18 times when James was a child, that James's mother drank when she was pregnant with him, that James was born with droopy eyelids that were corrected through surgery, that James's mother was married to his father for only about two years, and that when she left James's father she had many different relationships with men. Brandon Lewis, James's younger brother, testified that he was 10 years old at the time of the murder, that James was upset on the day of the murder because Brandon had put his bike on some of James's clothes, and that James has two daughters. Yosandra Craig, James's sister, testified that she spoke with an attorney during James's trial and told the attorney that James was always aggressive and that he had broken a girlfriend's arm. Craig further testified that James frequently took care of his younger siblings and that their childhood was unstable.

In sentencing James to death, the circuit court found two aggravating circumstances: (1) that the murder was committed by a person under sentence of imprisonment, see § 13A–5–49(1), Ala.Code 1975, and (2) that the murder was committed during the course of a burglary, see § 13A–5–49(4), Ala. Code 1975. We agree with the Rule 32 court that the potential mitigating evidence that was presented at the

> Rule 32 hearing was not compelling and would not have affected the
> verdict if it had been presented at James's sentencing hearing.  See
> *Wiggins v. Smith, supra.*

*James* v. State,  61 So. 3d 357, 377-78 (Ala. Crim. App. 2010) (alterations in

original).

The advisory verdict rendered by the jury at the conclusion of the penalty phase

hearing was unanimous:  twelve votes for death, none for life.  To have changed the

jury sentencing recommendation to life imprisonment without the possibility of

parole rather than death, James would have to establish that the presentation of

mitigation evidence, more likely than not, would have changed the minds of at least

seven jurors.[269]

Thus, even if the jury had heard the mitigation evidence that James now faults

his trial attorneys for not presenting, James still has not shown that, but for his

attorneys' deficiency, there is a reasonable probability he would have received a

different sentence.  *See*, *e.g.*, *Strickland*, 466 U.S. at 694.

Further, the Supreme Court has held that, when assessing prejudice, federal

courts should "reweigh the evidence in aggravation against the totality of available

mitigating evidence."  *Wiggins v. Smith,* 539 U.S. 510, 534 (2003); *see also*, *e.g*,

---

[269] *See* Ala. Code § 13A-5-46(f) ("The decision of the jury to return an advisory verdict
recommending a sentence of life imprisonment without parole must be based on a vote of a majority
of the jurors.  . . ."). *Cf. Woodward v. Alabama*, — U.S. —, 134 S. Ct. 405, 406 (2013) (Sotomayor,
J., dissenting from denial of *certiorari*).

*DeBruce v. Commissioner, Alabama Department of Corrections*, 758 F.3d 1263, 1267 (11th Cir. 2014) ("In making the determination about whether there is a reasonable probability that [the petitioner] would have received a different sentence, a reviewing court must 'consider the totality of the available mitigation evidence — both that adduced at trial, and the evidence adduced in the habeas proceeding — and reweigh it against the evidence in aggravation.'") (quoting *Porter v. McCollum*, 558 U.S. 30, 41 (2009) (alteration supplied)).  Applying that standard, the Rule 32 circuit court and the Alabama Court of Criminal Appeals both found that, even if James's trial attorneys had presented mitigating evidence, that evidence would not have outweighed the aggravating circumstances present in the case. *James,* 61 So. 3d at 377.  As the Rule 32 circuit court stated:

> In light of the testimony presented at the evidentiary hearing, this Court finds that James did have a difficult childhood, marked by the instability of constant moves, poverty, a frequently absent mother, and a completely absent father.  However, the Court notes that many people who experience similar or even worse childhoods do not grow up and commit capital murder.  In fact, Ms. Craig [James's sister], herself, managed to graduate community college and obtain a degree, despite growing up under the same circumstances as James.  The Court finds that this non-statutory mitigating evidence should be afforded little weight.

C.R. Vol. 32, Tab 78, at 98.  The state's intermediate appellate court observed that, in James's case, there were two aggravating circumstances: "(1) that the murder was

committed by a person under sentence of imprisonment. . . and (2) that the murder was committed during the course of a burglary . . . ." *James*, 61 So. 3d at 378.

This court finds that the state courts reasonably concluded that, in light of the evidence against James, the types of mitigating evidence he claims counsel should have presented had no reasonable probability of producing a different result.[270]  *See Wiggins v. Smith,* 539 U.S. at 534.  Thus, James is not entitled to 28 U.S. § 2254(d) relief.

**B**.   **Penalty-Phase Closing Argument**[271]

James next argues in his amended *habeas* petition that,

[b]ecause of their lack of investigation and fundamental misconceptions regarding the law as it pertains to the sentencing phase of a capital trial, trial counsel performed so inadequately in closing argument at the

---

[270] *See* doc. no. 11 (Amended Habeas Petition), ¶ 166-218, at 59-76.  Moreover, with regard to the allegations of childhood abuse and neglect, the Eleventh Circuit has specifically held that "'[a]n attorney does not render ineffective assistance by failing to discover and develop childhood abuse that his client does not mention to him.'"  *Puiatti v. Secretary, Florida Dept. of Corrections,* 732 F.3d 1255, 1281 (11th Cir. 2013) (alteration supplied) (quoting *Williams*, 185 F.3d at 1237); and citing *DeYoung*, 609 F.3d at 1287–88 (holding that counsel's investigation was reasonable in light of the fact that there was "no evidence that DeYoung mentioned to his trial or appellate counsel or to any mental health experts (before trial or even afterward) . . . that there was significant internal strife or dysfunction in his family"); *Newland v. Hall*, 527 F.3d 1162, 1202 (11th Cir. 2008) (noting that "[b]ecause information about childhood abuse supplied by a defendant is extremely important in determining reasonable performance, '[w]hen a petitioner . . . does not mention a history of physical abuse, a lawyer is not ineffective for failing to discover or to offer evidence of abuse as mitigation'" (alterations in original) (additional internal quotation marks omitted)); *Stewart v. Sec'y, Dep't of Corrections*, 476 F.3d 1193, 1210–11 (11th Cir. 2007) ("The Constitution imposes no burden on counsel to scour a defendant's background for potential abuse given the defendant's contrary representations or failure to mention the abuse.").

[271] Claim II.B: *see* doc. no. 11 (Amended Habeas Petition), ¶¶ 219-22, at 76-78.

> sentencing phase that they effectively argued against their client, falsely informed the jury that there was substantially no mitigating evidence, and doomed James's chances for a life verdict.

Doc. no. 11 (Amended Habeas Petition), ¶ 219, at 76-77 (alteration supplied).  James claims that Gordon Herbert Warren undermined his case by telling the jury they should not have any sympathy for James, and by emphasizing the gruesome nature of the crime.[272]  Furthermore, James asserts that Mr. Warren told the jury that James did not have any mental problems, which James states is an "argument for which he had no evidence," and one which demonstrates counsel's misunderstanding of the legal role of mental disease or defect at the sentencing phase, because the issue goes beyond mere questions of competency.[273]

Respondents contend that James raised this subclaim in his Rule 32 petition and on collateral appeal, and that the Alabama Court of Criminal Appeals denied it on the merits.[274]  Respondents argue that, because James cannot demonstrate that the ruling of the state court constituted either an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States,  or an unreasonable determination of facts in light of the evidence presented in the state

---

[272] *Id.,* ¶ 220, at 77.

[273] *Id.*, ¶ 221 at 77.

[274] Doc. no. 19 (Respondents' Answer), at 59.

241

court proceedings, federal *habeas* relief should be denied.[275]

The Rule 32 circuit court grouped this subclaim with the one discussed in the immediately preceding Part of this opinion (*i.e.*, Part VI.A), but did not make independent findings.[276]   Consequently, this court will treat the disposition of the subclaim as a merits decision.

James's *habeas* petition does not accurately portray the actual closing arguments of trial counsel at the conclusion of the penalty phase.   Accordingly, this court quotes the relevant portions from the trial transcript:

> [Gordon Herbert Warren]:  I am not going to sit here and insult your intelligence about having sympathy for the defendant.   He is an accused capital murderer, convicted of capital murder at this point.   I am not going to insult your intelligence.
>
> There is sympathy for the victim certainly.   You have heard it from her own daughter.  . . .  She is a sympathetic victim.
>
> I am not going to ask you not to consider that.   I am not going to tell you that Mr. James is a sympathetic defendant.   Again, not to insult your intelligence, he is not the Civitan citizen of the year.
>
> But I would like you to think about some things as you consider this case.   First of all is the consideration of his emotional environment, his positioning on the day of the crime, certainly leading up to the crime.
>
> There is testimony — we are not talking about whether or not Mr. James is mentally stable or mentally unstable.   If we thought he was

---

[275]  *Id.*

[276]  *See* C.R. Vol. 32, Tab 78, at 86-99.

mentally unstable and we had proof that he was, in fact, not able to tell right from wrong or form intent, you would have heard that....

Again, we are not going to insult you and tell you he is not mentally stable. I am here to submit to you that his actions — you have heard it from the stand from other witnesses — his actions leading up to this event were not ones that you would normally think a person would do.

You have heard about the arguments. You have heard about the yelling and screaming, the constant contact as Ms. Hall tried to break off the relationship. He wanted to continue the relationship. Certainly those are not actions of someone who is emotionally what I call mature....

Does it give him a pass? Does it give him a right to commit a crime and receive no punishment? Absolutely not. I am not asking you not to punish him.

This is a truly terrible thing that has occurred. This is a murder of a young woman left with a family. It's a terrible, terrible crime....

But there are some circumstances under which you need to view the entire story here.

. . . .

This is not a burglary in the sense . . . that you think about in the nighttime, in your dwelling, you are asleep in your bed at night, and an intruder comes in and puts a knife to your throat; this is a crime of passion. This is really what this is. This is a crime of passion. That's the perspective I would like for you to look at this and view this. This is a crime of passion.

This is a young man. Again, not a juvenile, but this is a young man that may not be emotionally mature, who let his emotions run away from him. He couldn't handle this relationship. He didn't know what

243

to do and how to do it, how to handle those things.

He is angry. We have seen that. The day of the crime, at some point he came into the apartment, technically completing the act required for burglary. But I am telling you I don't think he was thinking about burglary when he walked through that door. . . .

But I submit to you that he came through that door to talk with Ms. Hall, to have an argument with Ms. Hall. Yes, he did have a gun with him. Maybe he did intend to harm her. Maybe he did. The act of putting away the gun tells me that at some point he was having second thoughts.

There were other people around. Common sense says that if he were coming into that house to kill her, he probably wouldn't do it with a bunch of witnesses standing around. This is a young man who lost control of his emotions that day, lost control of his ability to think correctly for that split second. That's what he did. He snapped.

. . . .

Is the fact that technically he committed a burglary by crossing that threshold of that doorway sufficient to bring this to the crime of capital murder where he must be put to death because he was angry and he lost control and he snapped?

. . . .

I submit to you that we should reserve the imposition of the ultimate punishment, the death penalty, to those crimes that are truly capital in nature. This is a crime of passion. But for the fact that he crossed that threshold, we may not even be here.

. . . .

I would ask you, I would plead with you do not give him the death penalty. Impose a sentence of life without parole. . . .

C.R. Vol. 4, Tab 20, at 25-31 (redactions supplied).

For the reasons stated in previous parts of this opinion concerning strategic choices made by counsel during trial, this court finds neither performance deficiencies nor proof of prejudice from trial counsel's closing arguments. Further, James has not demonstrated that the state court's determination that he failed to establish deficient performance or prejudice resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, *or* that it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d).

Considered in context, Gordon Herbert Warren presented a coherent plea for the jury to vote for life imprisonment without the possibility of parole. As the Supreme Court has noted,

> the gravity of the potential sentence in a capital trial and the proceeding's two-phase structure vitally affect counsel's strategic calculus. Attorneys representing capital defendants face daunting challenges in developing trial strategies, not least because the defendant's guilt is often clear. Prosecutors are more likely to seek the death penalty, and to refuse to accept a plea to a life sentence, when the evidence is overwhelming and the crime heinous. In such cases, "avoiding execution [may be] the best and only realistic result possible."
>  . . .

*Florida v. Nixon*, 543 U.S. 175, 190-191 (2004) (alteration in original, citations and

footnote omitted).  The *Nixon* Court also observed that, given the various realities of jurors who serve in capital cases, "counsel cannot be deemed ineffective for attempting to impress the jury with his candor and his unwillingness to engage in a 'useless charade.'"  *Id.* at 192.

In addition to taking his trial attorney's closing argument on sentencing out of context, James incorrectly cites a Tenth Circuit opinion as authority for the proposition that an attorney's argument that the jury should disregard sympathy for the defendant violates the defendant's Eight Amendment rights.  *See Parks v. Brown*, 860 F. 2d 1545, 1558 (10th Cir. 1988), *rev'd sub nom Saffle v. Parks,* 494 U.S. 484 (1990).  That case concerned a *jury charge* on sentencing which included this statement:  "You must avoid any influence of sympathy, sentiment, passion, prejudice, or other arbitrary factor when imposing sentence."  Although the Tenth Circuit found the inclusion of "the admonition to avoid any influence of sympathy" to be a violation of the Eighth Amendment, the Supreme Court reversed the Circuit holding on those very grounds, finding that such an instruction was not a violation of the Eighth Amendment.  *Saffle v. Parks*, 494 U.S. at 493-94.

In sum, James has not overcome the presumption that, under the circumstances, the challenged argument might be considered sound trial strategy.  *See, e.g.*, *Darden v. Wainwright,* 477 U.S. 168, 186-87 (1986); *Strickland*, 466 U.S. at 689; *Michel v.*

246

*Louisiana*, 350 U.S. 91, 101 (1955).  Absent evidence to the contrary, this court finds that trial counsel's remarks demonstrated a reasoned strategy.  *See Chandler*, 218 F.3d at 1314 n.5.  Thus, James is not entitled to *habeas* relief on this subclaim.

## C.   Failing to Object to Prosecutorial Misconduct During Penalty-Phase Closing Argument[277]

James next contends that the prosecutor "engaged in a pattern of abusive misconduct in closing argument," including:  improperly appealing to the passions and prejudices of the jury; improperly referring to the defendant's failure to testify; denigrating James's character; and, arguing facts not in evidence.[278]  James asserts that his trial "counsel's deficient performance in failing to object to these arguments permitted the jury to be improperly influenced by false, irrelevant, and prejudicial matters[,] rather than a dispassionate consideration of James's background and character, as the law requires."[279]

Respondents contend that this subclaim is procedurally defaulted because the Rule 32 circuit court determined that James had failed to meet his burden of proof.[280]  Alternatively, respondents contend that this subclaim was raised in James's Rule 32 petition and was denied on the merits, and James cannot demonstrate that the state

---

[277] Claim II.C:  *see* doc. no. 11 (Amended Habeas Petition), ¶¶ 225-227, at 78-79.

[278] *Id*, ¶ 226, at 78-79.

[279] *Id*. at 79 (alterations supplied).

[280] *See* doc. no. 19 (Respondents' Answer), at 61.

court ruling was contrary to, or involved an unreasonable application of, clearly established federal law, or an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.[281]

The last state court to issue a reasoned opinion on this subclaim was the Rule 32 circuit court, which noted that James "did not question either Mr. Warren or Judge [Virginia] Vinson about this claim or their failure to object to certain statements by the prosecutor during the closing argument of the penalty phase."[282] The circuit court then cited *Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000), as support for the proposition that an "ambiguous or silent record," or a record that is "incomplete or unclear" about a trial attorney's actions, is not sufficient to rebut the "strong and continuing presumption" that counsel "did what he should have done, and that he exercised reasoned professional judgment."[283] Consequently, this subclaim

---

[281] *Id*. at 61-62.

[282] R. Vol. 32, Tab 78, at 99 (alteration supplied).

[283] *Id*. The complete text of the *Chandler* footnote relied upon by the Rule 32 circuit court as authority for the proposition stated in text reads as follows:

> The presumption impacts on the burden of proof and continues throughout the case, not dropping out just because some conflicting evidence is introduced. "Counsel's competence . . . is presumed, and the [petitioner] must rebut this presumption by proving that his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 106 S. Ct. 2574, 2588, 91 L. Ed. 2d 305 (1986) (emphasis added) (citations omitted). An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption. Therefore, "where the record is incomplete or unclear about [counsel]'s actions, we will presume that he did what he should have done, and that he exercised reasonable professional judgment."

has not been procedurally defaulted as the respondents initially argued.

The Rule 32 circuit court went on to say that the record did not support James's factual assertions.  For example, even though he argued that the prosecutor had stated in closing that "Faith Hall was 'praying to God' just before she was shot," the prosecutor actually stated that she "may have been" doing that.[284]  In fact, that was just one of several speculative hypotheses posed by the prosecutor:

*Williams* [*v. Head*], 185 F.3d [1223,] 1228 [(11th Cir. 1999)]; *see also Waters* [*v. Thomas*], 46 F.3d [1506,] 1516 [(11th Cir. 1995)] (*en banc*) (noting that even though testimony at habeas evidentiary hearing was ambiguous, acts at trial indicate that counsel exercised sound professional judgment).

The presumption about which we write here is not some presumption that the particular defense lawyer in reality focused on and, then, deliberately decided to do or not to do a specific act.  Instead, the presumption to which we refer is the presumption that what the particular defense lawyer did at trial-for example, what witnesses he presented or did not present – were acts that some reasonable lawyer might do.

The Supreme Court has instructed that there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 104 S. Ct. at 2065.  This presumption is like the "presumption of innocence" in a criminal trial, in which "the defendant is not required to come forward with proof of his innocence once evidence of guilt is introduced to avoid a directed verdict of guilty." *Black's Law Dictionary* 823 (6th. ed. 1991).  This presumption of competence must be disproved by a petitioner.  Petitioner continually bears the burden of persuasion on the constitutional issue of competence and further, (adding the prejudice element) on the issue of ineffective assistance of counsel.  *See Strickland*, 104 S. Ct. at 2064 (stating that "defendant must show that counsel's performance was deficient" and that defendant must also show prejudice).  Never does the government acquire the burden to show competence, even when some evidence to the contrary might be offered by the petitioner.

*Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (alterations supplied).

[284] C.R. Vol. 32, Tab 78, at 100.

249

But the physical injuries were too great, and it caused her to collapse. *What is she thinking when she is sitting there and looks over and she sees Joe Nathan James's feet in front of her?*

> *She may have been praying to God. She may have been talking to Tony or Terry. She may have been talking to her mama.* But what is she thinking? And then bam, that last shot? Did she have any thoughts after that even for a split second, or did it just go like a blank screen?

C.R. Vol. 4, Tab 21, at 36 (emphasis supplied).

While James also faults trial counsel for not objecting to the prosecutor's comment concerning the victim's "two little girls that are left motherless," the Rule 32 circuit court noted that a "victim impact argument is not prohibited at the penalty phase of the trial."[285]

The Eleventh Circuit considered a similar issue in *Reese v. Secretary, Florida Department of Corrections*, 675 F.3d 1277 (11th Cir. 2012), which observed that "[t]he fundamental problem with Reese's claim of prosecutorial misconduct is that none of the prosecutor's comments in closing argument were improper. 'A permissible argument, no matter how "prejudicial" or "persuasive," can never be unconstitutional.'" *Id*. at 1291 (quoting *Brooks v. Kemp*, 762 F.2d 1383, 1403 (11th Cir. 1985) (*en banc*), *vacated on other grounds* 478 U.S. 1016 (1986), *reinstated* 809 F.2d 700 (11th Cir. 1987) (*en banc*)) (alteration supplied). The *Reese* Court added

---

[285] *Id*. (citing *Hutcherson v. State*, 727 So. 2d 846 (Ala. Crim. App. 1997)).

that "[t]he State has a legitimate interest in counteracting the mitigating evidence which the defendant is entitled to put in, by reminding the sentencer that just as the murderer should be considered as an individual, so too the victim is an individual whose death represents a unique loss to society and in particular to his family." *Id.* at 1292 (quoting *Payne v. Tennessee*, 501 U.S. 808, 825 (1991) (internal quotation marks omitted)(alteration supplied)).

Having reviewed the record, fairminded jurists could disagree with the findings of the Rule 32 circuit court. The prosecutor's comments would not have infected the proceedings with such unfairness as to result in a denial of due process. Consequently, any objections by defense counsel would have been meritless.[286] Furthermore, it was reasonable to conclude that James had not demonstrated *Strickland* prejudice. The trial court instructed the jurors to base their advisory sentencing verdict on the *evidence* that they had seen and heard,[287] and "[t]he jury is presumed to follow the instructions given by the trial court." *Hutcherson v. State*, 727 So. 2d 846, 854 (Ala. Crim. App. 1997) (citation omitted, alteration supplied). "To justify reversal because of an attorney's argument to the jury, [a] court must

---

[286] With regard to the prosecutor's comments about leaving a child parentless, *see e.g., Cargill v. Turpin*, 120 F.3d 1366, 1381 (11th Cir. 1997) (finding that a prosecutor's argument about "a bunch of little boys" thinking about their dead parents at Christmas was permissible).

[287] C.R. Vol. 4, Tab. 22, at 47.

conclude that substantial prejudice has resulted." *Twilley v. State*, 472 So. 2d 1130, 1139 (Ala. Crim. App. 1985) (alteration supplied).  James has not demonstrated that such prejudice occurred.

Finally, James also alleges that trial counsel was ineffective for failing to object to the prosecutor's reference to James's failure to testify (*e.g.*, "I haven't heard any testimony about [emotional disturbance]"), to his description of James as "mean," and his reference to facts not in evidence (*e.g.*, suggesting that James owned two guns, "a fact never proved at trial").[288]  The Rule 32 circuit court found that the prosecutor's statement that he had not heard any evidence about emotional disturbance, his description of James as "mean," and his comments about James having two guns, were "legitimate inference[s]" that *could* be drawn from the evidence that was presented at trial and, for that reason, permissible.[289]  "During closing argument, the prosecutor, as well as defense counsel, has a right to present his impressions from the evidence, if reasonable, and may argue every legitimate inference."  *Coral v. State*, 628 So. 2d 954, 985 (Ala. Crim. App. 1987) (citations omitted).  Moreover, it should be noted that the prosecutor's comment that he did not "hear" any evidence about emotional difficulties or mental problems merely was a reference to the lack of such

---

[288] Doc. no. 11 (Amended Habeas Petition),¶ 226, at 79.

[289] C.R. Vol. 32, Tab 78, at 101 (alteration supplied).

evidence, and not a comment on James's failure to testify.  In any event, the Rule 32 circuit court's determination that the prosecutor's comments were legitimate inferences based upon the evidence was not objectively unreasonable.  Therefore, because it was reasonable to conclude that the comments did not rise to the level of reversible error, it was also reasonable to determine that the failure of James's trial lawyers to object did not constitute *Strickland* error.  James has failed to provide grounds for *habeas* relief.  *See, e.g., Land v. Allen*, 573 F.3d 1211, 1220-21 (11th Cir. 2009).

### D.    Failing to Request Specific Penalty-Phase Jury Instructions[290]

James next contends that his trial lawyers provided constitutionally ineffective representation by failing to request:  an instruction addressing the jury's consideration of mitigating evidence; an instruction defining the type and scope of non-statutory mitigating factors that the jury could consider; and, an instruction prohibiting the jury from "double counting" the burglary.[291]

The last state court to issue a reasoned opinion on the various facets of this subclaim was the Alabama Court of Criminal Appeals.  The relevant portion of that Court's second opinion on collateral appeal, following remand from the Alabama

---

[290] Claim II.D:  *see* doc. no. 11 (Amended Habeas Petition), ¶¶ 228-231, at 79-80.

[291] *Id.,* ¶¶ 228-230, at 79-80.

Supreme Court, begins with a quote from the Rule 32 circuit court's opinion:

> "James claimed that his trial counsel were ineffective for failing to request specific jury instructions at the penalty phase. As an initial matter, the Court notes that James did not question either Mr. Warren or Judge Vinson about this claim or their failure to request certain jury instructions at the penalty phase . . . . James did not present any testimony or evidence at the evidentiary hearing that there is a reasonable probability that the outcome of the penalty phase would have been different had trial counsel requested certain jury instructions. As a result of his failure to question trial counsel or to present any evidence in support of this claim, James has failed to demonstrate that counsel's performance was deficient or that he was prejudiced. As such, these claims are denied."

(C.R. 153-54.) "The decision whether to request certain jury instructions is a matter of trial strategy." *Myhand v. State*, 981 So. 2d 988, 992 (Miss. App. 2007). *See also People v. Lemke*, 384 Ill. App. 3d 437, 450, 892 N.E.2d 1213, 1224, 323 Ill. Dec. 221, 232 (2008) ("'Counsel's decision as to what jury instructions to tender is one of several determinations widely recognized as matters of trial strategy that are generally immune from ineffective assistance claims. . . .'"); *State v. Griffie*, 74 Ohio St. 3d 332, 333, 658 N.E. 2d 764 (1996) ("Failure to request instructions on lesser-included offenses is a matter of trial strategy and does not establish ineffective assistance of counsel.").

In James's Rule 32 petition he alleged that counsel was ineffective for not requesting a jury instruction on what the jury should do if the aggravating circumstances and the mitigating circumstances were of equal weight, for failing to request an instruction prohibiting the double counting of burglary as both an element of an offense and as an aggravating circumstance, and for not requesting specific instructions on the type and scope of nonstatutory mitigating evidence that they could consider.

First, James appears to argue that the instructions violated the Supreme Court's decision in *Ex parte Bryant*, 951 So. 2d 724 (Ala. 2002), because the instructions failed to instruct the jury what to do if they found that the aggravating circumstances and the mitigating circumstances were equal in weight. In this case, the instructions in the penalty phase were not infected with the error that the Supreme Court found fatal in *Ex parte Bryant*. In discussing its holding in *Bryant*, the Supreme Court in *Ex parte McNabb*, 887 So. 2d 998 (Ala. 2004), stated:

> "The charge in this case was not infected with the peculiar error present in [*Ex parte*] *Bryant*, [951 So. 2d 724 (Ala. 2002),] that is, the jury in this case was not invited to recommend a sentence of death without finding any aggravating circumstance. It was that invitation in *Bryant* that caused the error in that case to rise to the level of plain error, rather than error reversible only by a proper objection. Thus, in this case, although the court did not specifically instruct the jury what to do if it found the mitigating and aggravating circumstances equally balanced, we cannot conclude, considering the charge in its entirety, that the error 'seriously affect[ed] the fairness, integrity or public reputation of [these] judicial proceedings,' *Ex parte Davis*, 718 So. 2d [1166,] 1173–74 [(Ala. 1998)], so as to require a reversal of the sentence."

887 So. 2d at 1004. Here, the jury was not instructed that it could recommend a death sentence without finding any aggravating circumstance.

Second, requesting an instruction that the jury could not count burglary as both an element of the capital offense and as an aggravating circumstance would be inconsistent with Alabama law. We have consistently upheld the practice of "double-counting" in Alabama. *See Morris v. State*, 60 So. 3d 326 (Ala. Crim. App. 2010); *Barber v. State*, 952 So. 2d 393 (Ala. Crim. App. 2005); *Coral v. State*, 628 So. 2d 954 (Ala. Crim. App. 1992).

Third, "[t]his Court has held that the trial court does not have to instruct the jury from a list of specific nonstatutory mitigating circumstances provided by the defendant." *Brown v. State*, 686 So. 2d 385, 403 (Ala. Crim. App. 1995), citing *Cochran v. State*, 500 So. 2d 1161 (Ala. Crim. App. 1984). The record shows that the jury was given the following instruction on nonstatutory mitigating evidence:

> "In addition to the mitigating circumstances previously specified, mitigating circumstances shall include any aspect of the defendant's character or record and any of the circumstances of the offense that the defendant offers as a basis for a sentence of life imprisonment without parole instead of death."

"[I]t is well settled that an attorney's failure to assert a futile objection provides no basis for a claim of ineffective assistance of counsel." *Kidd v. State*, 277 Ga. App. 29, 34, 625 S.E.2d 440 (2005). "Counsel cannot be held ineffective for failing to raise an issue that has no merit." *Smith v. State*, [Ms. CR-05-0561, Sept. 26, 2008] – So. 3d – (Ala. Crim. App. 2008). Accordingly, James was due no relief on these claims.

*James v. State*, 61 So. 3d 357, 378-80 (Ala. Crim. App. 2010) (alterations in original).

Although the trial court judge did not use the exact words that James now suggests when instructing the jury on the consideration of aggravating and mitigating circumstances, the jury *was instructed* that the question of whether a sentence of "death or life imprisonment without parole should be imposed on the defendant depends on, one, whether any aggravating circumstances exist[;] and, if so, *whether the aggravating circumstances outweigh the mitigating circumstances*."[292] Because

---

[292] C.R. Vol. 4, Tab 22, at 39-40 (alteration and emphasis supplied).

the jury was informed that any aggravating circumstances that were found to exist had to outweigh the mitigating circumstances, a further instruction on what to do if the two were balanced would not have provided any additional guidance to the jury. If fact, such an instruction might have confused the most important consideration: the aggravating circumstances (if any were found to exist) *had to outweigh* the mitigating circumstances.

James does not dispute that the trial judge's instructions substantially complied with Alabama law, and he has not offered clear and convincing evidence or authority demonstrating that the trial court was required by Alabama law to give the instruction he claims that his trial counsel should have insisted upon. For the foregoing reasons, therefore, this court finds that James has failed to establish that he is entitled under the *Strickland* standard to *habeas* relief from the state court's rejection of this facet of his subclaim.

As to the so-called "double counting" component of the subclaim, Alabama law clearly permits exactly that. Indeed, the Alabama Supreme Court has held that,

> when a defendant is found guilty of a capital offense, "any aggravating circumstance which the verdict convicting the defendant establishes beyond a reasonable doubt at trial shall be considered as proven beyond a reasonable doubt for purposes of the sentencing hearing." Ala. Code 1975, §13A-5-45(e); *see also* Ala. Code 1975, §13A-5-50 ("The fact that a particular capital offense as defined in Section §13A-5-40(a) necessarily includes one or more aggravating circumstances as specified

> in Section §13A-5-49 shall not be construed to preclude the finding and consideration of that relevant circumstance or circumstances in determining sentence."). *This is known as* "*double-counting*" *or* "overlap," and Alabama courts "have repeatedly upheld death sentences where the only aggravating circumstance supporting the death sentence overlaps with an element of the capital offense." *Ex parte Trawick*, 689 So. 2d 162, 178 (Ala. 1997); see also *Coral v. State*, 628 So. 2d 954, 965 (Ala. Crim. App. 1992).

*Ex parte Waldrop*, 859 So. 2d 1181, 1188 (Ala. 2002) (emphasis supplied). *See also Lowenfield v. Phelps*, 484 U.S. 231, 246 (1988) (stating that an aggravating circumstance may duplicate an element of the capital offense if the class of death-eligible defendants is sufficiently narrowed by the definition of the offense itself). Because any proposed instruction to the contrary would have been rejected by the trial court as contrary to Alabama law, counsel cannot be deemed to have been deficient for failing to request such an instruction.

Finally, when instructing the jury on the non-statutory mitigating circumstances that could be considered, the trial judge said: "In addition to the mitigating circumstances previously specified, mitigating circumstances shall include any aspect of the defendant's character or record[,] or any of the circumstances of the offense that the defendant offers as a basis for a sentence of life imprisonment without parole instead of death."[293] Because the jury *was instructed* that they could consider non-

---

[293] C.R. Vol. 4, Tab 22, at 45 (alteration supplied).

statutory mitigating circumstances, the failure of defense counsel to specifically request such an instruction could not have been prejudicial to James.

In sum, he has failed to show any basis for *habeas* relief from the state court's rejection of this aspect of the present subclaim.

## E.    Failing to Object to Use of the Presentence Investigation Report and Sentencing Order From the First Trial[294]

James next contends that his trial attorneys should have objected to the trial judge's failure to direct that "a new written sentencing order" be prepared:  *in other words*, James objects to the trial judge's reliance upon the presentence investigation report that had been prepared by a State Probation Officer at the conclusion of James's first, 1996 trial.  James contends that violated Alabama Code sections 13A-5-45 through 13A-5-53.  According to James, those statutory provisions required the trial judge to obtain a new presentence investigation report.[295]  James contends that he was prejudiced by his attorneys' failure to object to the use of the 1996 report, because a new presentence report would have reflected the good behavior he had exhibited while incarcerated during the period between the first and second trials: behavior that allegedly demonstrated that he "was not a danger to others in prison[,] and was unlikely to become a danger to others — a factor which argues powerfully

---

[294] Claim II.E:  *see* doc. no. 11 (Amended Habeas Petition), ¶¶ 232-236, at 80-81.

[295] *Id.,* ¶¶ 232-235, at 80-81.

against the need for imposition of the death penalty."[296]

Respondents contend that this same claim was raised in James's Rule 32 petition and on collateral appeal, but was denied on its merits by the Alabama Court of Criminal Appeals, and that James has not demonstrated that the ruling was contrary to, or involved an unreasonable application of, clearly established federal law, or that it was an unreasonable determination of the facts in light of the evidence presented in the state courts.[297]

The last state court to issue a reasoned opinion on this subclaim was the Alabama Court of Criminal Appeals. That Court began its discussion of this subclaim in its second opinion on collateral appeal by quoting from the findings of the Rule 32 circuit court:

> "James contends that trial counsel should have had the pre-sentence report reflect his good behavior while on death row at Holman Price. In his petition, James argued that[,] pursuant to *Skipper v. South Carolina*, 476 U.S. 1 (1986), 'a sentencer may not refuse to consider such evidence.' James is correct that a sentencer may not refuse to *consider* such evidence; *however*, *such evidence is not necessarily mitigating. Jenkins v. State*, [972 So. 2d 111 (Ala. Crim. App. 2004)]."

*James v. State,* 61 So. 3d 357, 380 (Ala. Crim. App. 2010) (alterations and emphasis supplied). The Alabama Court of Criminal Appeals then observed that the affidavit

---

[296] *Id.*, ¶ 234, at 81 (alteration supplied).

[297] Doc. no. 19 (Respondents' Answer), at 65-66.

submitted by James's lead defense attorney, Virginia Vinson, stated that:

> "As for the presentence report from the first trial, I did not believe it needed to be updated because the only change would have been his behavior while on death row, which I did not think was significant. Joe had not only been in a highly controlled environment, but was essentially isolated. So, even if he had shown 'good' behavior while on death row, I did not feel that would have influenced the court to reject the jury's unanimous death recommendation." (C.R. 1179–80.) [The other defense attorney, Gordon Herbert] Warren stated in his affidavit that "I did not think the presentence report needed to be updated since the first trial. He had been on death row the whole time in between trials. His behavior during that time was not significant because he had no opportunity to interact with others on death row. He was just there." (C.R. 1190.)

*Id*. at 381 (alteration supplied). The Alabama Court of Criminal Appeals concluded its analysis of this claim as follows:

> In this case, the State did not rely on James's future dangerousness to support a sentence of death. Also, the jury, like counsel and the circuit court, could have given this evidence little weight based on James's clear incentive to behave well while he was awaiting his second trial and sentencing. We cannot say that James suffered any prejudice by counsel's failure to present evidence that he had no prison disciplinary actions filed against him while he was on death row awaiting his second trial. *See Cole v. Roper*, 579 F. Supp. 2d [1246,] at 1283 [E.D. Mo. (2008).]

*Id*. at 382 (alterations supplied).

James fails to explain how the ruling of the state's intermediate appellate court is contrary to, or an unreasonable application of, clearly established federal law. Furthermore, and assuming for the sake of discussion that his trial attorneys erred in

not insisting upon preparation of a revised presentence investigation report, James still has not explained how that failure prejudiced him, as required by *Strickland.* Unlike the facts before the Supreme Court in *Skipper v. South Carolina*, 476 U. S. 1 (1986), James did not testify at the sentencing hearing that, if given a life imprisonment term, he would not cause difficulties while incarcerated, and would attempt to work in order to support his family.  *See id*. at 3.  In *Skipper*, the prosecutor had argued that the petitioner represented a danger to other prisoners in the future; hence, the trial judge erred in not allowing the petitioner to elicit the testimony of two jailers and one regular visitor as a mitigating factor.  In this case, however, danger to other prisoners if a life sentence were imposed upon James was not suggested as an aggravating factor.  Thus, his good behavior while incarcerated during the period between his first and second trials could not have been mitigating in that regard, as was such evidence in *Skipper*.

Similarly, even though James relies upon *Williams v. Taylor*, 529 U.S. 362 (2000), as support for the proposition that his trial attorneys' failure to insist upon the preparation of an updated presentence investigation requires *habeas* relief, the Court in *Williams* was considering trial counsel's failure to obtain prison records reflecting the defendant's "commendations for helping to crack a prison drug ring and for returning a guard's missing wallet, or the testimony of prison officials who described

Williams as among the inmates 'least likely to act in a violent, dangerous or provocative way.'"  *Id*. at 396.

In other words, the prosecutors in both *Skipper* and *Williams* had argued "future dangerousness" as an aggravating factor supporting a sentence of death. Consequently, the failure of trial counsel to present mitigating evidence of each defendant's conduct in custody, while awaiting trial, was deemed to be constitutionally ineffective assistance that mandated *habeas* relief.  Here, however, the only aggravating circumstances the jury could consider were:  (1) that James already was under a sentence of imprisonment on the date of murdering Faith Hall; and (2) that offense was committed while James was engaged in the commission of another felony, burglary.[298]  Thus, the disposition of this claim by the Alabama Court of Criminal Appeals was neither contrary to, nor an unreasonable application of clearly established federal law, as determined by the United States Supreme Court in the *Williams* and *Skipper* opinions.  There is no basis for *habeas* relief.

## F.  The Cumulative Effect of Trial Counsels' Penalty-Phase Errors Prejudiced James, Even If No Single Error, Standing Alone, Did So[299]

James again urges this court to find prejudice under *Strickland* based upon the

---

[298] C.R. Vol. 4, Tab 22, at 42.

[299] Claim II.F:  *see* doc. no. 11 (Amended Habeas Petition), ¶¶ 237-242, at 81-83.

totality of errors allegedly committed by his trial counsel during the penalty phase.[300]

Respondents assert that this claim was procedurally defaulted, because James abandoned it on collateral appeal (*i.e.*, failed to raise it) and, thereby, failed to exhaust his state remedies as required by § 2254(b)(1).[301]   James did not respond to that argument in his reply brief.  Consequently, the claim is barred in this court.

Even if this court were to disregard the procedural default and engage in a "merits" review, the present claim is not distinguishable from the one discussed in Part V.N of this opinion, *supra*:  *i.e.*, the contention that the cumulative effect of trial counsel's errors during the guilt phase of trial prejudiced James, even if no individual error standing alone, did so.[302]   For the same reasons discussed in that part of this opinion, this court finds the present argument to be equally unavailing.

## VII.  PETITIONER'S INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL CLAIMS[303]

James contends that several prejudicial errors were committed on direct appeal by his appellate attorney, George Babakitis of Montgomery, Alabama:  *e.g.*, (A) counsel failed to allege in his initial brief that the trial judge erroneously overruled

---

[300] *Id.* ¶¶ 237-239, at 81-82 (citing *United States v. Parker*, 997 F. 2d 219, 222 (6th Cir. 1993), and *United States v. Tory*, 52 F.3d 207, 211 (9th Cir. 1995)).

[301] Doc. no. 19 (Respondents' Answer), at 67.

[302] Doc. no. 11 (Amended Habeas Petition), ¶ 238, at 82.

[303] Claim IX: *see* doc. no.11 (Amended Habeas Petition),  ¶¶ 286-298, at 94-95.

the objection of defense counsel to the prosecutor's "addition of a new aggravating circumstance on the morning the sentencing phase was to begin";[304] (B) appellate counsel failed to raise some ineffective assistance of trial counsel claims in his opening brief;[305] (C) appellate counsel should have argued that the trial judge erred in failing to instruct the jurors in accordance with Alabama Rule of Criminal Procedure 19.3(b), prior to their separation at the end of each day;[306] and (D) appellate counsel failed to "federalize" the issues he did address in briefs.[307]

Respondents contend that, even though subclaims "A" and "C" were raised in James's Rule 32 petition and briefs on collateral review, each was denied on the merits by the Alabama Court of Criminal Appeals.[308] Respondents assert that subclaim "B" was procedurally defaulted, because the Alabama Court of Criminal Appeals dismissed it under an independent and adequate state procedural rule, Alabama Rule of Appellate Procedure 28(a)(10), and also because James failed to present it as a federal claim in state court.[309] In the alternative, respondents argue that subclaim "B" was raised in James's Rule 32 petition and denied on the merits.[310]

---

[304] *Id*, ¶¶ 288-290, at 94 (¶¶ 265-268 of James's Rule 32 Petition).

[305] *Id*., ¶ 291, at 94-95 (¶ 269 of James's Rule 32 Petition).

[306] *Id*., ¶ 292, at 95 (¶ 270 of James's Rule 32 Petition).

[307] *Id*., ¶ 293, at 95 (¶ 271 of James's Rule 32 Petition).

[308] Doc. no. 19 (Respondents' Answer), at 95.

[309] *Id*. at 98.

[310] *Id*. at 99.

Finally, respondents argue that subclaim "D" was procedurally defaulted, because the state court dismissed it for failing to comply with the pleading requirements of Alabama Rules of Criminal Procedure 32.3 and 32.6(b), and also because James did not fairly present is as a federal claim in the state courts.[311]

The last state court to issue a reasoned decision on the various facets of this claim was the Rule 32 circuit court, which dismissed subclaim "A" because it failed to present a material issue of law or fact, and subclaims "B," "C," and "D" on the ground that James had failed to comply with the specificity and full factual pleading requirements of Alabama Rules of Criminal Procedure 32.3 and 32.6(b).[312] That court also dismissed *all* subclaims (*i.e.*, "A," "B," "C," *and* "D") pursuant to Alabama Rule of Criminal Procedure 32.7(d), "because 'no material issue of fact or law exists which would entitle the petitioner to relief.'"[313]   Those rulings constitute decisions on the merits.  *See*, *e.g.*, *Borden v Allen*, 646 F.3d 785, 816, 822 n.44 (11th Cir. 2011), and the discussion in Part III.B.5.d of this opinion, *supra*.  Consequently, this court finds that, with the exception of contention "B" (and for the reasons discussed below), the sub-parts of this claim have not been procedurally defaulted.

---

[311] *Id*. at 101.

[312] *See* C.R. Vol. 32, Tab 78, at 23-25, 41-45.

[313] *Id*. at 41.

**A.** **Failing to Argue That the Trial Judge Erroneously Overruled Defense Counsel's Objection to the Prosecutor's Addition of a New Aggravating Circumstance**[314]

Claims of ineffective assistance of *appellate* counsel are, like those impugning the performance of *trial* attorneys, evaluated by the *Strickland* standard. *See*, *e.g.*, *Smith v. Robbins*, 528 U. S. 259, 285 (2000); *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991). As previously discussed, that standard requires a petitioner to establish both deficient performance by the attorney and resulting prejudice. *Strickland*, 466 U.S. at 687.

The present subclaim — the contention that appellate counsel provided constitutionally ineffective assistance by failing to allege in his initial brief on direct appeal that the trial judge erroneously overruled the objection of defense counsel to the prosecutor's "addition of a new aggravating circumstance on the morning the sentencing phase was to begin" — is nothing more than a mirror image of the substantive claim that will be addressed *infra*, in Part VIII.F.5 of this opinion (discussing James's assertion that the trial court violated his constitutional rights when it overruled his "objection to the lack of notice and an opportunity to defend against the aggravating factor that [he] had been under a sentence of imprisonment at the time of the offense": a consideration that was not introduced until the morning

---

[314] *See id.*, ¶¶ 286-290, at 94-95.

of the beginning of the penalty phase of trial).[315]  As discussed *infra*, the Rule 32 circuit court considered the substantive claim and found no violation of James's rights.  It determined that James had no right under state law to advance notice of the aggravating circumstances.

Indeed, the Alabama Court of Criminal Appeals has held that the list of aggravating circumstances enumerated in Alabama Code § 13A-5-49 "is exclusive[,] and puts the defendant charged with a capital felony on notice of those circumstances against which [he] may be required to defend.  This statutory notice satisfies constitutional requirements."  *Bush v. State*, 695 So. 2d 70, 87 (Ala. Crim. App. 1995), *aff'd*, 695 So. 2d 138 (Ala. 1997) (alterations supplied).  *See also*, *e.g.*, *Perkins v. State*, 808 So. 2d 1041, 1122 (Ala. Crim. App. 1999) (same); *Knotts v. State*, 686 So. 2d 431, 448 (Ala. Crim. App. 1995) (same).

The Due Process Clause of the Fourteenth Amendment also does not require a state to provide advance notice to a defendant of the aggravating circumstances upon which the prosecutor intends to rely.  *Cf. Gray v. Netherland*, 518 U.S. 152, 166-70 (1996); *see also*, *e.g.*, *Clark v. Dugger*, 834 F.2d 1561, 1566 (11th Cir. 1987) (holding that a defendant has "no right" under the Due Process Clause "to advance notice of the aggravating circumstances on which the state will rely" when the state's

---

[315] *See* doc. no. 11 (Amended Habeas Petition) ¶ 281, at 92.

268

"sentencing statute itself sufficiently particularized the aggravating circumstances in a capital case"); *Kelley v. State*, No. CR–10–0642, 2014 WL 994625, at *28 (Ala. Crim. App. Mar. 14, 2014) (holding that neither the Supreme Court's opinion in *Apprendi v. New Jersey,*[316] nor its subsequent holding in *Ring v. Arizona,*[317] required that an accused be provided with advance notice of all aggravating circumstances upon which the prosecutor intends to rely).[318]

For all of those reasons, therefore, the trial court committed no error under either state or federal law when it allowed jury consideration of the evidence offered by the State under Alabama Code § 13A-5-49(1).[319]  Accordingly, the Rule 32 circuit court held that appellate counsel did not render constitutionally ineffective assistance by failing to raise a meritless claim on direct appeal.[320]  *See*, *e.g.*, *Chandler v. Moore*, 240 F.3d 907, 917-18 (11th Cir. 2001) (holding that the petitioner's "appellate

---

[316] 530 U.S. 466 (2000).

[317] 536 U.S. 584 (2002).

[318] *Compare Dobard v. State*, 435 So. 2d 1338, 1347 (Ala. Crim. App. 1982), *aff'd*, 435 So. 2d 1351 (Ala. 1983) (holding that the "aggravating circumstances enumerated in § 13A–5–49 that may lead to the imposition of the death penalty in a capital case are not elements of the offense and are not required to be set forth in the indictment") *with Arthur v. State*, 711 So. 2d 1031 (Ala. Crim. App. 1996), *aff'd*, 711 So. 2d 1097 (Ala. 1997) (holding, consistently with the Supreme Court's later opinions in *Apprendi v. New Jersey* and *Ring v. Arizona*, that whenever an aggravating circumstance relied on by the State is an elements of the capital offense charged against the defendant, it must be alleged in the indictment and proven beyond a reasonable doubt).

[319] The statute cited in text provides that the fact that a "capital offense was committed by a person under sentence of imprisonment" *is* a statutory aggravating circumstance.  Ala. Code § 13A-5-49(1).

[320] C.R. Vol. 32, Tab. 78 at 41-42.

counsel was not ineffective for failing to raise a nonmeritorious issue" on direct appeal) (citing *United States v. Nyhuis,* 211 F.3d 1340, 1344 (11th Cir.2000)); *Bolender v. Singletary,* 16 F.3d 1547, 1573 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance.") (alteration supplied).

In summary, the state court's rejection of this subclaim was not contrary to, or an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court.

## B.   Failing to Raise Some Ineffective Assistance of Trial Counsel Claims in the Opening Brief on Direct Appeal[321]

James also asserts that appellate counsel addressed "only a handful of" the ineffective assistance of trial counsel claims in his initial brief on direct appeal, and "for some reason failed to raise the more meritorious claims included in the petition."[322]   The Rule 32 circuit court dismissed this subclaim for failure to raise a material issue of fact or law.[323]   The Alabama Court of Criminal Appeals dismissed it in its first opinion on collateral appeal, saying that James had failed to satisfy the

---

[321] *See* doc. no. 11 (Amended Habeas Petition), ¶¶ 291, at 95.

[322] *Id.*

[323] C.R. Vol. 32, Tab 78, at 42-43.

pleading requirements of Alabama Rule of Appellate Procedure 28(a)(10);[324] and, for

that reason, deemed the claim to have been waived.  *James v. State*, 61 So. 3d 332,

348 (Ala. Crim. App. 2006), *rev'd on other grounds sub nom. Ex parte James*, 61 So.

3d 352 (Ala. 2009).  The relevant discussion is found in Part V.B of the intermediate

appellate court's first opinion, reading as follows:

> Second, the appellant apparently contends that appellate counsel
> performed deficiently in raising, but not factually developing,
> ineffective-assistance-of-trial-counsel claims in his brief to this court on
> direct appeal.   His entire argument on this issue consists of the
> following: "Claim IX, Paragraph 269:  For reasons noted elsewhere, the
> court erred in dismissing paragraph 269 as well."  (Appellant's brief at
> p. 138.)   Because this one-sentence argument does not satisfy the
> requirements of Rule 28(a)(10), Ala. R. App.  P., we deem it waived.[FN7]
> As we explained in *Jennings v. State*, 965 So. 2d 1112, 1136 (Ala. Crim.
> App. 2006):
>
>> FN7.  Pages 156 and 157 of the appellant's brief also
>> make reference to Paragraph 269 of the petition.
>> However, those references also do not comply with
>> the requirements of Rule 28(a)(10), Ala. R. App.  P.
>
>> "Rule 28(a)(10), Ala. R. App.  P., requires that an
>> argument contain 'the contentions of the
>> appellant/petitioner with respect to the issues presented,
>> and the reasons therefor, with citations to the cases,
>> statutes, other authorities, and parts of the record relied
>> on.'   Further, '[a]uthority supporting only "general
>> propositions of law" does not constitute a sufficient
>> argument for reversal.'  *Beachcroft Props., LLP v. City of
>> Alabaster*, 901 So. 2d 703, 708 (Ala. 2004), quoting

---

[324] This rule is discussed in Part III.B.5.g, *supra*.  The predecessor of that rule, Ala. R. App.
P. 28(a)(1), is addressed in Part III.B.5.f, *supra*.

> *Geisenhoff v. Geisenhoff*, 693 So. 2d 489, 491 (Ala. Civ. App. 1997). *See also Connerly v. Connerly*, 523 So. 2d 461 (Ala. Civ. App. 1988) (appellant's citations to general propositions of law that were not specifically applicable to the issues presented by the appeal do not fulfill the requirements of Rule 28, Ala. R. App. P.).

> "... 'It is not the job of the appellate courts to do a party's legal research. . . .  Nor is it the function of the appellate courts to "make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument."' *Pileri Ind., Inc. v. Consolidated Ind., Inc.*, 740 So. 2d 1108, 1110 (Ala. Civ. App. 1999), quoting *Dykes v. Lane Trucking, Inc.*, 652 So. 2d 248, 251 (Ala. 1994).  Because Jennings has failed to present sufficient argument, authority, or citation to the facts in support of this issue, we conclude that he has failed to comply with Rule 28(a)(10), and that this issue is, therefore, deemed to be waived.  *See, e.g., Giles v. State*, 906 So. 2d 963 (Ala. Crim. App. 2004), and *Mumpfield v. State*, 872 So. 2d 205 (Ala. Crim. App. 2003)."

*James*, 61 So. 3d at 348, *rev'd on other grounds sub nom. Ex parte James*, 61 So. 3d 352 (Ala. 2009) (alteration and redactions in original).

Even though the foregoing decision by the Alabama Court of Criminal Appeals constitutes a procedural bar to consideration of this subclaim, this court alternatively finds that the *habeas* claim is not sufficiently pleaded.  James was required to describe the specific acts or omissions that, he contends, amounted to constitutionally ineffective assistance. *See Strickland*, 466 U.S. at 690.  He failed to do so, both in the

state courts below and here.  Consequently, the subclaim lacks merit.

## C. Failure to Argue That the Trial Judge Did Not Instruct the Jury as Required by Rule 19.3(b), Ala. R. Crim. P.[325]

This ineffective assistance of appellate counsel claim is a mirror image of the substantive claim that will be addressed *infra*, in Part VIII.F.4: *that is*, the contention that the trial court judge erroneously failed to instruct the jury at the end of each day as required by Alabama Rule of Criminal Procedure 19.3(b),[326] which provides that,

> [i]n all cases, the court shall admonish the jurors that they are not:
>
> (1)   to discuss among themselves any subject connected with the trial until the case is submitted to them for deliberation;
>
> (2)   to converse with anyone else on any subject connected with the trial, until they are discharged as jurors in the case;
>
> (3)   to knowingly expose themselves to outside comments or to news accounts of the proceedings, until they are discharged as jurors in the case; or
>
> (4)   to form or express any opinion on the case until it is submitted to them for deliberation.

If the jurors are permitted to separate, they may also be admonished not to view the place where the offense was allegedly committed.

Ala. R. Crim. P. 19.3(b) (alteration supplied).

---

[325] *See* doc. no. 11 (Amended Habeas Petition), ¶ 292, at 95.

[326] *Id.*, ¶ 280 at 92. James actually cites "Alabama Rule of Criminal Procedure Rule 19.3(d)." Such a subsection does not exist.  Instead, subsection (b) of that rule addresses the trial court's admonitions to jurors.

The substantive component of this subclaim was addressed by the Rule 32 circuit court, which held that, "[a]s long as [the trial] Court properly admonished the jury once pursuant to 19.3(b), it was not error for the court not to so admonish the jury every day."[327]   Indeed, a close reading of the rule establishes that it does not say that such admonitions are to be delivered *each* day of trial (even though that arguably might be the best practice), but only that "[i]n all cases, the court shall admonish the jurors that they are not . . . ."   In other words, while the trial judge's action was not ideal, it was not error.

As discussed in Part VIII.F.4, *infra*, James has not demonstrated that the state court's adjudication of the substantive merit of the issue underlying the present ineffective assistance of counsel subclaim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, *or* that it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.   *See* 28 U.S.C. § 2254(d).

It follows, therefore, that because the trial court did not commit error in this

---

[327] C.R. Vol. 32, Tab 78, at 40 (alteration supplied) (citing *Griffin v. State*, 790 So. 2d 267, 334 (Ala. Crim. App. 1999), *rev'd on other grounds*, 790 So. 2d 351 (Ala. 2000) ("Although the better practice would be for the trial court to admonish the jury at each break or recess, there is nothing in Rule 19.3(b), Ala. R. Crim. P., that requires it to do so . . . . Jurors are presumed to follow the instructions of the trial court.")).

regard, appellate counsel's failure to raise a meritless claim on direct appeal cannot satisfy either the deficient performance or resulting prejudice prongs of the *Strickland* standard. *See* 466 U.S. at 687. The Rule 32 circuit court so held.[328] Accordingly, James is not entitled to *habeas* relief either.

## D.   Failure to "Federalize" Claims[329]

James argues only one example of his appellate attorney's alleged failure to "federalize" claims argued on direct appeal: *i.e.*, counsel's failure to raise as a due process violation the trial court's admission of autopsy photographs.[330] However, as previously discussed in Part V.G.1 of this opinion, *supra,* and Part VII.F.2 *infra,* it was not error to admit those photographs. Therefore, as found by the Rule 32 circuit court,[331] appellate counsel's failure to raise a meritless claim as a violation of James's due process rights, or otherwise, cannot satisfy either the deficient performance or resulting prejudice prongs of the *Strickland* standard. *See* 466 U.S. at 687.

All sub-parts of petitioner's claim of ineffective assistance of appellate counsel fail because he has not shown that the state court unreasonably determined that his attorney's performance was not deficient, or that the outcome of the proceedings

---

[328] C.R. Vol. 32, Tab. 78, at 43-44.

[329] *See* doc. no. 11 (Amended Habeas Petition), ¶ 293, at 95.

[330] *Id.*

[331] C.R. Vo. 32, Tab. 78, at 44-45.

would not have been different, but for counsels' allegedly deficient performance.  *Id.*

## VIII.  PETITIONER'S SUBSTANTIVE CLAIMS

**A.     Petitioner Was Deprived of His Constitutional Right to the Assistance at Trial of a Competent Mental Health Professional**[332]

**B.     The Trial Judge Erred in Failing to Order, *sua sponte*, a Competency Evaluation of Petitioner**[333]

**C.     Petitioner Was Not Competent to Proceed to Trial**[334]

These three claims are materially similar and intertwined.  Consequently, they are addressed together.  In subclaim "A," James asserts that both the United States Constitution and Alabama law entitled him to the assistance of a competent psychiatric expert, but he was denied such assistance and, thus, denied a fair trial.[335] He alleges that, even though the trial judge *sua sponte* ordered a competency examination in 1996, prior to his first trial, "that evaluation was three years old at the time of [the second] trial in this case and therefore no longer valid."[336]  James also argues that the 1996 evaluation was conducted only to determine whether he was competent to stand trial, and did not address his other, alleged, mental issues.[337]  He

---

[332] Claim III:  *see* doc. no. 11 (Amended Habeas Petition), ¶¶ 243-247, at 83-84.

[333] Claim IV:  *see* doc. no. 11 (Amended Habeas Petition), ¶¶ 248-252, at 84-85.

[334] Claim V:  *see* doc. no. 11 (Amended Habeas Petition), ¶¶ 253-257, at 86-87.

[335] Doc. no. 11 (Amended Habeas Petition), ¶¶ 243-245, at 84 (citing Alabama Rule of Court 25.4; and *Blake v. Kemp*, 758 F. 2d. 523, 531 (11th Cir. 1985)).

[336] *Id.*, ¶ 244, at 83 (alteration supplied).

[337] *Id.*

claims that his need for a new psychological evaluation was obvious in view of his "bizarre" in court behavior, and that a psychological expert's evaluation could have assisted his defense in many ways.[338]

Subclaim "B" asserts that the trial court had a duty to *sua sponte* order a competency reevaluation before the second trial, because the court was on notice of James's "bizarre behavior, intellectual and emotional problems, and of the breakdown of the relationship between Mr. James and his counsel."[339]  According to James, his "irrational behavior" was best exemplified by his last-minute decision not to plead guilty, and, outbursts during trial.[340]

Subclaim "C" asserts that James's "confinement and sentence are illegal, unconstitutional and void . . . because he was mentally incompetent to understand the proceedings below or to aid and assist in his defense."[341]  In support of that contention, James alleges that he

> was clearly incompetent to stand trial.  In addition to the facts previously alleged pertaining to James's courtroom outbursts and bizarre behavior, James suffered from post-traumatic stress disorder, schizophrenia, and a myriad of other mental disorders which where exacerbated by an attempted sexual assault which occurred in the Jefferson County Jail on the night prior to trial.

---

[338] *Id.*, ¶¶ 244-245, at 83-84.

[339] *Id.*, ¶ 249, at 84-85.

[340] *Id.*, ¶ 250 , at 85.

[341] Doc. no. 11 (Amended Habeas Petition), ¶ 253, at 86.

Doc. no. 11 (Amended Habeas Petition), ¶ 253, at 86.

**1**.   *Procedural default*

Respondents contend that subclaims "A" and "B" were procedurally defaulted under Alabama Rule of Criminal Procedure 32.2(a)(3), because James did not raise either contention at trial or on direct appeal.[342]   In addition and alternatively, respondents note that, when James raised these claims in his Rule 32 petition, the circuit court judge did not reach the merits of either, but instead based his dismissal of both solely upon the ground that each was found that they were procedurally defaulted under Alabama Rules of Criminal Procedure 32.2(a)(3) *and* 32.2(a)(5).[343]

Because James did not raise subclaims "A" and "B" at trial or on direct appeal in the manner dictated by the procedural rules cited by respondents, the procedural default doctrine precludes him from raising them here, provided the state court's ruling was based on "adequate and independent state grounds."  *Ward v. Hall*, 592 F.3d 1144, 1156-57 (11th Cir. 2010).  As previously discussed at greater length in Part III.B.6, *supra*:

> If an Alabama court has denied post-conviction relief based on the petitioner's failure to raise a claim at trial or on direct appeal, a federal court cannot review that claim unless it determines either (1) that the petitioner had cause for his failure to raise the claim and suffered

---

[342] Doc. no. 19 (Respondents' Answer), at 69-72.

[343] *Id*. at 70 and 72.  *See* C.R. Vol. 32, Tab 78, at 3.

278

> prejudice as a result, or (2) that denying federal habeas review of the
> claim would result in a fundamental miscarriage of justice — namely the
> conviction and punishment of one who is actually innocent.

*Brownlee v. Haley*, 306 F.3d 1043, 1065-66 (11th Cir. 2002).  James has not argued

any exception to the procedural default doctrine.  Therefore, claims "A" and "B" were

procedurally defaulted and *habeas* relief is due to be denied on that basis.

Respondents also argue that subclaim "C" also was procedurally defaulted,

because the Rule 32 circuit court denied the claim on the basis of James's failure to

comply with the specificity and full factual pleading requirements of Alabama Rules

of Criminal Procedure 32.3 and 32.6(b).[344]  Respondents additionally claim that James

did not fairly present subclaim "C" as a federal claim in state court, thereby

prompting procedural default.[345]  As discussed in Part III.B.5.d, *supra*, however, a

state court's dismissal of a convict's claim on collateral appeal for failure to state a

claim upon which relief can be granted, or for failure to establish a material issue of

fact or law, are rulings "on the merits" and, as such, subject to review under

AEDPA's standards in a federal *habeas* proceeding.  *Borden v. Allen*, 646 F.3d 785,

816, 822 n.44 (11th Cir. 2011).  More importantly, however, "the procedural default

rule . . . does not operate to preclude a defendant who failed to request a competency

---

[344] Doc. no. 19 (Respondents' Answer), at 74.

[345] *Id.*

hearing at trial or pursue a claim of incompetency on direct appeal from contesting his competency to stand trial and be sentenced though post-conviction proceedings."[346]   *Adams v. Wainwright*, 764 F.2d 1356, 1359 (11th Cir. 1985) (citations omitted).  For both reasons, therefore, the merits of subclaim "C" must be addressed.

**2**.   *Merits*

James's claim that he was not competent to stand trial was addressed in three previous parts of this opinion:  *i.e.*, Part V.C.3 (discussing the allegation that trial counsel failed to investigate James's mental health); Part V.D.2 (addressing the contention that trial counsel failed to obtain necessary mental health experts); and Part V.E (discussing the claim that trial counsel failed to investigate or challenge James's competency to stand trial).  As noted in those discussions, the Alabama Court of Criminal Appeals considered James's competence to stand trial in its first opinion on collateral appeal.  *See James v. State,* 61 So. 2d 332 (Ala. Crim. App. 2006), *rev'd on other grounds sub nom. Ex parte James,* 61 So. 2d 352 (Ala. 2009).  This court quoted the relevant portions of the intermediate appellate court's opinion in the

---

[346]Although this aspect of his claim is not procedurally barred, James has not presented sufficient evidence to show entitlement to a post-conviction evidentiary hearing. As discussed herein, James's evidence of incompetency is insufficient to "positively, unequivocally, and clearly generate the [requisite] legitimate doubt" as to his competency at the time of trial. *Pardo v. Secretary, Florida Dept. of Corrections*  587 F.3d 1093, 1101 n.3 (11th Cir. 2009) (quoting *Medina v. Singletary*, 59 F.3d 1095, 1106 (11th Cir. 1995) (quotation marks and citation omitted, alteration in original)).

previous Parts of this opinion and, consequently, declines to reiterate those passages here.  The ultimate finding of the state's intermediate appellate court, however, was this:  "Despite his allegations to the contrary, there was not any indication that [James] was not competent at the time of his second trial.  Rather, . . . the records from his previous appeals directly refute his claim."  *Id*. at 346 (alterations and ellipsis supplied).

Given the lack of any evidence of mental incompetency, the trial court judge could not have erred in failing to order, *sua sponte*, a competency reevaluation of James prior to the second trial.  Indeed, the following Alabama Rule of Criminal Procedure states that "reasonable grounds" must exist before the trial court judge may order that a defendant be committed to the custody of the Commissioner of the Alabama Department of Mental Health and Mental Retardation for a competency evaluation:

> If the court on its own motion or on motion of either party determines that *reasonable grounds* exist for an examination *or for further examination* of the defendant by a mental health expert or experts, it *may order* the defendant committed to the custody of the commissioner for such examination.

Ala. R. Crim. P. 25.4 (emphasis supplied).  Similarly, an Alabama statute directs trial judges to order a mental health examination for a capital defendant when "there is reasonable ground to believe that such defendant may presently lack the capacity to

281

proceed or continue to trial . . . ."  Ala. Code § 15-16-22(a) (1975).

Admittedly, the Eleventh Circuit recognized in an opinion relied upon by James that a criminal defendant has a constitutional right "to at least one psychiatric examination and opinion developed in a manner reasonably calculated to allow adequate review of relevant, available information, and at such a time as [would] permit counsel reasonable opportunity to utilize the analysis in preparation and conduct of the defense."  *Blake v. Kemp*, 758 F. 2d 523, 529 (11th Cir. 1985) (alteration supplied).  The *Blake* panel held that the defendant's right to a psychiatric evaluation was violated when no reasonable efforts were made to determine his sanity at the time of the alleged crime.  *Id*. at 529-30.  That Court also held that, when particular statements or actions of a capital defendant "at least raise sufficient question [as to a defendant's] sanity[, then] . . . they should [be] presented to the psychiatrist early enough to allow adequate consideration of them in preparation of his evaluation."  *Id*. at 530 (alterations and ellipsis added).

The *Blake* panel relied on the Supreme Court's decision in *Ake v. Oklahoma*, 470 U.S. 68 (1985), which was summarized as follows:

> In *Ake* a defendant in a murder trial had demonstrated bizarre conduct on arraignment and the trial court had him sent to a state psychiatric hospital for a determination as to his ability to stand trial. He was placed on medication and sent back for trial after several months.  Thereupon Ake noted his defense to be that of insanity at the

282

> time of the commission of the killings.  At no time had any psychiatrist made any inquiry into Ake's sanity at the time of the acts he was charged with, although his counsel moved for appointment of a psychiatrist.

*Blake,* 758 F. 2d at 530.  The Eleventh Circuit panel then quoted the following passages from the *Ake* opinion:

> We therefore hold that when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the state must, *at a minimum,* assure the defendant access to a competent psychiatrist *who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense.* This is not to say, of course, that the indigent defendant has a constitutional right to choose a psychiatrist of his personal liking or to receive funds to hire his own.  Our concern is that the indigent defendant have access to a competent psychiatrist for the purpose we have discussed, and as in the case of the provision of counsel we leave to the states the decision on how to implement this right.

*Id.* at 530-531(quoting *Ake,* 470 U.S. at 83) (emphasis in *Blake*).

The *Blake* court was careful to state that its decision was based "solely *on the facts of this case*, in which the sanity of the defendant was fairly raised."  *Id.* at 531 n.8 (emphasis in original).

In contrast to *Ake* and *Blake*, however, James was evaluated by a psychologist in 1996, prior to his first trial, and found not to be suffering from a mental disease or defect at the time he shot and killed Faith Hall.  *See James v. State*, 61 So. 3d 357, 368 (Ala. Crim. App. 2010).  Moreover, James presented evidence at his Rule 32

hearing of a psychological evaluation conducted by Richard Holbrook, who concluded that James did *not* suffer from any significant mental health problems.[347] Similarly, while James introduced copies of two MMPI-2 tests that had been administered to him, he failed to present any evidence or testimony concerning the validity of those tests. Further, the conclusion that could be drawn from the test administrations was that James, at worst "*ma*y exhibit a thought disorder."[348]

The Supreme Court held in *Pate v. Robinson*, 383 U.S. 375 (1966), that a defendant's due process rights are presumptively violated when a state trial court fails to conduct, on its own initiative, a competency hearing in the face of circumstances creating a sufficient doubt about the defendant's competency. Since *Pate*, the Eleventh Circuit has crafted an objective standard stating that, in order to trigger the trial courts' obligation to order a competency hearing, the court must have information raising a "*bona fide* doubt" as to the defendant's competency. *See James v. Singletary*, 957 F.2d 1562, 1570 (11th Cir. 1992); *see also Fallada v. Dugger*, 819 F.2d 1564, 1568 (11th Cir. 1987). Relevant information may include evidence of a defendant's irrational behavior, demeanor at trial, or prior medical opinion, *but* "'[t]here are, of course, no fixed or immutable signs which invariably indicate the

---

[347] *See* C.R. Vol. 32, Tab 78, at 72-73.

[348] *Id*. at 73 (emphasis supplied).

284

need for further inquiry to determine fitness to proceed.'" *Watts v. Singletary*, 87 F.3d 1282, 1287 (11th Cir.1996) (quoting *Drope v. Missouri*, 420 U.S. 162, 180 (1975)) (alteration in original).

Although James categorizes his behavior during trial as "bizarre," the record does not support that characterization.  For example, even though James now labels his last minute rejection of a guilty plea in exchange for a life sentence as proof of incompetence, his explanation for his decision immediately prior to the second trial was reasoned, and indicative of rational, linear thinking into the future.  Further, none of the family members who testified at the Rule 32 hearing suggested that James suffered from any mental problems.  Even his outbursts at trial — which consisted of a running commentary on how the testimony of various witnesses was not correct on minute details — demonstrated that he was not suffering from a mental defect.

Indeed, a review of the transcript from the guilt phase of trial provides no evidence that James engaged in irrational, much less "bizarre" behavior, or that his demeanor was in any way remarkable.  The opinions of medical experts about James's competency concluded that he was, in fact, competent.  In short, the record does not support *bona fide* doubt regarding his competency.

> On a post-conviction incompetency claim, "the standard of proof is high":  the petitioner must present a preponderance of "clear and convincing evidence" of "positive [ ], unequivocal[ ], and clear[ ]" facts

"creating a real, substantial and legitimate doubt" as his competence. *Medina v. Singletary*, 59 F.3d 1095, 1106 (11th Cir. 1995). Evidence of incompetence "must indicate a present inability to assist counsel or understand the charges." *Id*. at 1107. Absent evidence of such an inability, evidence of low intelligence, mental deficiency, bizarre, volatile, or irrational behavior, or the use of anti-psychotic drugs is not sufficient to show incompetence to stand trial. *Id*.

*Pardo v. Secretary, Florida Dept. of Corrections*, 587 F.3d 1093, 1101 (11th Cir. 2009) (alterations in original).

Because James's post-conviction claims of incompetence fall short of clear and convincing evidence creating a substantial doubt about his competence on the dates of his second trial, the Alabama courts' decisions on these claims were not contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. They also were not based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. *See* 28 U.S.C. § 2254(d); *see also Wiggins*, 539 U.S. at 520–21; *Williams*, 529 U.S. at 379, 385. James also has not shown prejudice from the state courts' failure to *sua sponte* order a competency hearing.

For all of the foregoing reasons, James is not entitled to *habeas* relief on these intertwined claims.

286

**D.   The Prosecution Failed to Comply With Discovery Obligations Under** *Brady v. Maryland,* **and Committed Other Misconduct at Trial**[349]

James next asserts that the prosecution failed to provide him with "crucial exculpatory and impeachment evidence," such as evidence that Faith Hall had been previously arrested for domestic violence and assault, and that she had attacked James's girlfriend on two occasions.[350]  James claims that, if such evidence had been produced in response to his motion for production of documents, it would have supported his contention that Faith Hall charged him with a knife, and also would have undercut the prosecution's theory that James "stalked" her.[351]

James also alleges that the prosecutor failed to disclose "jail and prison records demonstrating his good conduct and lack of disciplinary actions while incarcerated." He contends that such evidence was mitigating, and would have helped his defense, because it demonstrated that he was not a danger to others in a prison environment.[352]

Finally, James argues in a logically unrelated claim that the prosecutor "engaged in a pattern of abusive misconduct in closing argument," including calling him derogatory names, arguing facts not in evidence, improperly appealing to the

---

[349] Claim VI:  *see* doc. no. 11 (Amended Habeas Petition), ¶¶ 258-267, at 87-89.

[350] Doc. no. 11 (Amended Habeas Petition), ¶ 260, at 87.

[351] *Id.*, ¶ 261, at 87-88.

[352] *Id.*, ¶ 263, at 88.

emotions and passions of the jury, and improperly referring to James's failure to testify.[353]

Respondents contend that these claims are procedurally defaulted because James failed to raise them either at trial or on direct appeal.[354]  They also argue that, when these claims were raised in the Rule 32 circuit court, they were found to be procedurally defaulted under Alabama Rules of Criminal Procedure 32.2(a)(3) and (5) for the precise reason that James had failed to raise them at trial and on direct appeal.[355]

**1**.     *Procedural default*

The last state court to issue a reasoned opinion on the claims addressed in this part of the opinion was the Rule 32 circuit court, which held, as respondents contend, that the claims had been procedurally defaulted under Rules 32.2(a)(3) and (a)(5).[356] Accordingly, the various facets of this claim are due to be dismissed pursuant to *Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) (finding claims to be "procedurally defaulted under Rules 32.2(a)(3) and (5) because they were not raised either at trial or on appeal").

---

[353] *Id*., ¶¶ 264-265, at 88-89.

[354] Doc. no. 19 (Respondents' Answer), at 77.

[355] *Id*. at 77-78.

[356] C.R. Vol. 32, Tab 78, at 6.

**2**.   *Merits*

The various parts of this claim also lack merit for the reasons discussed below, and are due to be denied on that basis as well.

The Supreme Court held in the seminal case of *Brady v. Maryland* that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  373 U.S. 83, 87 (1963).  The Supreme Court later held in *Kyles v. Whitley*, 514 U.S. 419 (1995), that "the state's obligation under *Brady v. Maryland* . . . to disclose evidence favorable to the defense turns on the cumulative effect of all such evidence suppressed by the government," and that, when "the net effect of the evidence withheld by the State in [the] case raises a reasonable probability that its disclosure would have produced a different result," the defendant is entitled to a new trial.  *Id*. at 421-22 (alteration supplied).

In order to prevail on a *Brady* claim, therefore, a *habeas* petitioner must satisfy five elements:  (1) the State possessed evidence favorable to him; (2) the *habeas* petitioner did not possess that evidence at trial, and could not have obtained it with reasonable diligence; (3) the State suppressed the favorable evidence; (4) the evidence was material; and (5) "the net effect of the evidence withheld by the State

289

in [the trial of the underlying] case raises a reasonable probability that its disclosure would have produced a different result." *Kyles*, 514 U.S. at 421-22 (alteration supplied); *Lamarca v. Secretary, Department of Corrections*, 568 F.3d 929, 941 (11th Cir. 2009) (authority for the first four elements of the foregoing *prima facie* case). Evidence would be "material" *if* "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles,* 514 U.S. at 433 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).

James does not allege that the prosecutor had information about Faith Hall's prior arrests and altercations with the other woman he was dating at the time of the offense. Assuming for the sake of discussion that the prosecutor actually possessed such evidence at the time of trial, James fails to assert that he could not have obtained the same evidence through the exercise of reasonable diligence, since it was public information. He also does not allege that "the government suppressed the favorable evidence." *Id.*

Even if James had been provided that evidence prior to trial, and even assuming that it was admissible,[357] his conclusion that evidence of Faith Hall's violent

---

[357]As this court has previously discussed, documents tending to show that the victim had a violent nature would likely not be admissible at trial. Thus, such documents are not material for *Brady* purposes. *See e.g., Ferguson v. Secretary for Deptpartment of Corrections*, 580 F.3d 1183,

nature would have supported his contention that she charged him with a knife simply does not follow.  James never told his trial attorneys that she had a knife, or that she attacked him.  The eye-witnesses also did not mention a knife in the victim's hand at the time she was shot.  Therefore, James failed to establish that the evidence was "material" as defined by *Brady* and its progeny.

James also argues that the "suppressed" evidence would have aided him during the penalty phase of the trial, because it would have prevented the prosecution from painting him in such an unsympathetic light.[358]  However, James's attorneys testified that he did not tell them that Hall had a knife, or suggest to them that he acted in self-defense.  Thus, the Alabama Court of Criminal Appeals concluded that "all the evidence showed that James was the aggressor and that he pushed his way into Sneed's apartment and shot Hall multiple times, even after she fell to the floor." *James v. State*, 61 So. 3d 357, 366-67 (Ala. Crim. App. 2010).

James next argues that the "suppressed" jail and prison records that allegedly confirmed his "good behavior" also would have helped him at the penalty phase.[359]  However, it is not likely that such evidence would have had a beneficial impact on the jury's decision, because *the State did not rely on James's potential dangerousness*

---

1206 (11th Cir. 2009).

[358] Doc. no. 11 (Amended Habeas Petition), ¶ 262, at 88.

[359] *Id.*, ¶ 263, at 88.

*in a prison environment to support a sentence of death*, as opposed to life imprisonment.  And, of course, James knew the character of his own prison records, and could have advised his attorneys.  Where, as in this instance, the defendant himself had knowledge of the alleged *Brady* material prior to trial, there can be no "suppression" by the government.  *See*, *e.g.*, *United States v. Griggs*, 713 F.2d 672, 674 (11th Cir. 1983) ("Irrespective of whether the statement[s] here [were] exculpatory evidence under *Brady*, a question we do not reach, there is no *Brady* violation when the accused or his counsel knows before trial about the allegedly exculpatory information .") (quoting *United States v. Cravero*, 545 F.2d 406, 420 (5th Cir. 1977)) (alterations in original).

James again asserts in an argument that is not logically related to the contentions discussed above that the prosecutor engaged in misconduct during closing argument.[360]   As noted when these contentions were addressed in Parts V.G.10 and VI.C, *supra*, the standard employed by courts in reviewing allegations of prosecutorial misconduct is "whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristofo*, 416 U.S. 637, 643 (1974)).  A prosecutor's comments do not rise to this level merely by being

---

[360] *Id.,* ¶¶  264-265, at 88-89.

"offensive" or "improper"; indeed, "it is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Id*. at 180-81 (internal quotation omitted). Instead, the standard is a "narrow one of due process, and not the broad exercise of supervisory powers." *Donnelly*, 416 U.S. at 642. When applying that standard, a court must examine the context of the prosecutor's remarks, as opposed to looking at each remark in isolation. *Cargill v. Turpin*, 120 F.3d 1366, 1379 (11th Cir. 1997).

> Inappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding. Instead, as *Lawn* [*v. United States* 355 U.S. 339, 359-60 and n.15 (1958),] teaches, the remarks must be examined within the context of the trial to determine whether the prosecutor's behavior amounted to prejudicial error. In other words, the Court must consider the probable effect the prosecutor's response would have on the jury's ability to judge the evidence fairly.

*United States v. Young*, 470 U.S. 1, 11-12 (1985) (alteration supplied, other citations omitted). After reviewing the prosecutor's statements in the context of a closing argument, and in the context of all the evidence presented at trial, this court finds that his remarks did not deprive James of a fair trial.

As discussed in Part V.G.10 of this opinion, *supra*, the prosecutor's suggestion that the victim might have prayed to God before she was shot, or the fact that the prosecutor called James a "clown," a "hambone," or a "cowboy," likely had less

impact on the jury's verdict than the eyewitness testimony to the commission of this crime.   Moreover, not all references to God in a criminal prosecution are impermissible.  *See Mitchell v. State*, 84 So. 3d 968, 983 (Ala. Crim. App. 2010).

The prosecutor's description of the victim's children as "motherless" constitutes permissible victim impact evidence under the Supreme Court's holding in *Payne v. Tennessee,* 501 U.S. 808 (1991), and the opinion of the Alabama Court of Criminal Appeals in *McNair v. State*, 653 So. 2d 320 (Ala. Crim App. 1992).  The *McNair* court followed *Payne'*s determination "that this type of evidence related to the harm done by the defendant and, consequently, was a valid consideration in determining the punishment to be imposed."  *Id*. at 331 (citing *Payne*, 501 U.S. at 823-25).

The prosecutor's comment that he did not "hear" any evidence about emotional difficulties or mental problems merely was a reference to the lack of such evidence, and not a reference to James's failure to testify.

Finally, the prosecutor's statement about the possibility that James owned two guns constituted a legitimate inference from the evidence and, for that reason, was permissible.  *See Coral  v. State*, 628 So. 2d 954, 985 (Ala. Crim. App. 1992) ("During closing argument, the prosecutor, as well as defense counsel, has a right to present his impressions from the evidence, if reasonable, and may argue every

294

legitimate inference.").

None of the aspects of this claim provide a basis for *habeas* relief.

**E.    Petitioner Was Deprived of His Right to an Impartial Jury, Due Process of Law, and a Reliable Determination of Guilt and the Penalty to be Imposed When He Was Tried by a Juror Who Suffered From a Mental Illness and Other Impairments**[361]

James next alleges that "[o]ne of the jurors in [his] case was undergoing treatment for mental illness and other impairments at the time of the trial and was not competent to understand the issues or to deliberate at the time of his jury service."[362] Thus, James argues, he was deprived of his due process right to mentally competent jurors.[363]

Respondents argue that this claim was procedurally defaulted because James failed to raise it at trial and on direct appeal.[364]  In addition, respondents contend the claim was procedurally defaulted pursuant to the Rule 32 circuit court's determination that James had failed to comply with the pleading requirements of Alabama Rule of Criminal Procedure 32.6(b).  Finally, respondents argue that the claim is conclusory in nature, and fails to state a valid claim for relief under 28 U.S.C. § 2254.[365]

---

[361] Claim VII:  *see* doc. no. 11 (Amended Habeas Petition), ¶¶ 268-272, at 89-90.

[362] Doc. no. 11 (Amended Habeas Petition), ¶¶ 268-270, at 89-90.

[363] *Id*. (citing *Jordan v. Massachusetts*, 225 U.S. 167, 176 (1912)).

[364] Doc. no. 19 (Respondents' Answer), at 79-80.

[365] *Id*. at 81.

The last state court to issue a reasoned opinion on this claim was the Rule 32 circuit court, which held that it was procedurally defaulted pursuant to Alabama Rules of Criminal Procedure 32.2(a)(3) and (a)(5), due to James's failure to raise it at trial and on direct appeal.[366]  That court also ruled that this claim was procedurally defaulted because James did not comply with the pleading requirements of Alabama Rules of Criminal Procedure 32.3 and 32.6(b):  that is, "James failed to identify which specific juror was mentally incompetent at the time of the trial."[367]

Fundamentally, however, this claim lacks merit.  As the Rule 32 circuit court noted, James did not identify the allegedly mentally incompetent juror, and he also failed to explain the nature of the mental disease or defect that allegedly afflicted the juror.  Without such evidence, James falls short of establishing that the alleged juror's presence on the jury violated his constitutional rights.  *See Jordan v. Massachusetts*, 225 U.S. 167, 174 (1912) (holding that "it was not essential that the sanity of the juror . . . be established by more than a fair preponderance of the evidence").

The Fourth Circuit Court of Appeals has suggested that a defendant must

---

[366] C.R. Vol. 32, Tab 78, at 6.

[367] *Id*. at 23 (citing *Brown v. State*, 807 So. 2d 1, 5-6 (Ala. Crim. App. 1999) (holding that, in order to meet the specificity of pleading requirements, a petitioner must identify by name which juror did not answer *voir dire* questions truthfully, and must connect the named juror to the specific *voir dire* question that allegedly was not truthfully answered)).

demonstrate by "clear and convincing evidence" that a juror was mentally incompetent to serve. *United States v. Hall*, 989 F.2d 711, 714 (4th Cir. 1993). The Second Circuit, after collecting authorities addressing this issue, concluded that those courts had

> refused to set aside a verdict, or even to make further inquiry, unless there be proof of an adjudication of insanity or mental incompetence closely in advance of the time of jury service. Only when proof of this nature has been offered, or proof of a closely contemporaneous and independent post-trial adjudication of incompetency, have courts conducted hearings to determine whether the disability in fact affected the juror at the time of trial.

*United States v. Dioguardi*, 492 F.2d 70, 80 (2nd Cir. 1974) (citations omitted).

James's vague allegations concerning an unspecified impairment by an unidentified juror do not amount to either "a fair preponderance," or "clear and convincing evidence" supporting a claim of juror incompetency. Consequently, James is not entitled to an evidentiary hearing on this issue. Further, the Rule 32 circuit court's opinion was neither contrary to, nor an unreasonable application of, clearly established federal law. It also did not result in a decision that was based upon an unreasonable determination of the facts in light of the "evidence" presented in the state court proceedings. Indeed, there as well as here, James failed to present specific allegations that, if supported by hard evidence at an evidentiary hearing, would entitle him to *habeas* relief. This claim is due to be dismissed.

297

**F.      The Trial Judge Committed Numerous Prejudicial Errors During the Guilt and Penalty Phases of Trial**[368]

James reiterates a tedious list of allegedly prejudicial errors committed by the trial court judge, including:  (1) failing to order a new presentence investigation report and, instead, relying on the report prepared following the first trial (*i.e.*, failing to strictly follow sentencing procedures specified in the Alabama Code);[369] (2) erroneously admitting "a number of irrelevant and extremely prejudicial autopsy photographs";[370] (3) "holding critical proceedings in James's absence";[371] (4) "failing to instruct the jury . . . prior to their separation at the end of each day's trial";[372] (5) "overruling the defense objection to the lack of notice and an opportunity to defend against the aggravating factor that Mr. James had been under sentence of imprisonment at the time of the offense";[373] and (6) "giving numerous improper jury instructions."[374]  James asserts that these errors violated "his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments, and particularly his right to due process

---

[368] Claim VIII:  *see* doc. no. 11 (Amended Habeas Petition), ¶¶ 273-285, at 90-93.

[369] Doc. no. 11 (Amended Habeas Petition), ¶¶ 274-276, at 90-92.

[370] *Id.*, ¶¶ 277-278, at 91.

[371] *Id.,* ¶ 279, at 92.

[372] *Id.,* ¶ 280, at 92.

[373] *Id.,* ¶¶ 281-283, at 92-93.

[374] *Id.,* ¶ 284, at 93.

298

of law.[375]

Respondents contend that all of these claims were procedurally barred by the Rule 32 circuit court's rulings based on Alabama Rules of Criminal Procedure 32.2(a)(3), (a)(5), 32.3, and 32.6(b).[376]   Alternatively, respondents argue that the claims are without merit.[377]

The last state court to issue a reasoned opinion on these claims was the Rule 32 circuit court, which held that all of them were procedurally defaulted pursuant to various provisions of the Alabama Rules of Criminal Procedure.[378]   That court also ruled that James's claim that the trial court judge failed to instruct the jury prior to their sequestration at the end of each day[379] was not sufficiently pled under Alabama Rules of Criminal Procedure 32.3 and 32.6(b).[380]   Finally, "as an alternative ruling," the Rule 32 circuit court dismissed all of the allegations pursuant to Alabama Rule of Criminal Procedure 32.7(d).[381]

The manner in which James states these claims in his amended *habeas* petition

---

[375] Doc. no. 11 (Amended Habeas Petition), ¶ 273, at 90.

[376] Doc. no. 19 (Respondents' Answer), at 82-94.

[377] *Id.*

[378] C.R. Vol. 32, Tab 78, at 6-7.

[379] Paragraph 258 in James's Rule 32 petition, and ¶ 280 in his amended *habeas* petition (doc. no. 11).

[380] C.R. Vol. 32, Tab 78, at 23.

[381] *Id.* at 37.

is virtually a verbatim reiteration of the allegations in his second amended Rule 32 petition.[382] James's reply brief does not respond to any of the respondents' procedural default arguments on the claims, other than to assert that the contention that the trial judge failed to instruct the jurors at the end of each day is not defaulted. James argues that the Rule 32 circuit court's dismissal of that subclaim was based upon Alabama Rule of Criminal Procedure 32.6(b), which constitutes a ruling on the merits under *Borden, supra.* James also argues that the contention that autopsy photos were erroneously admitted was raised on collateral appeal and, thus, is not procedurally foreclosed in this court.

This court finds that, due to the Rule 32 circuit court's dismissal of these claims under Rule 32.6, that constitutes a ruling on the merits for purposes of AEDPA. Thus, the claims were not procedurally defaulted, and the merits of each is addressed below.

**1**.     *Failing to order a new presentence investigation report*

The Rule 32 circuit court judge — who also was the judge who presided over both of James's trials — ruled that he had followed Alabama sentencing procedures by ordering and receiving a written presentence investigation report *at the conclusion*

---

[382] *Compare* doc. no. 11 (Amended Habeas Petition), ¶¶ 273-285 *with* C.R. Vol. 14, Tab 46, ¶¶ 251-262.

*of James's first trial.*[383]   Specifically, he wrote that:

> This Court properly ordered and received a pre-sentence report at the
> conclusion of James's first trial and used this report in making its
> sentencing determinations at the second trial, only three years later.
> Nothing in Alabama's capital sentencing statute requires an updated
> report, but merely that a report be ordered and received, which there was
> here.  Moreover, the report was only three years old; *and, this Court
> requested trial counsel to inform the court if there were any additions
> or changes that needed to be make in the earlier pre-sentence report.*
> In addition, this Court, contrary to James's claims, followed the
> procedures set forth in §§ 13A-5-47 through 13A-5-53 of the *Alabama
> Code*.  This Court entered specific written findings concerning the
> existence or nonexistence of each statutory aggravating and mitigating
> circumstance, as well as noted that there was nothing suggesting a basis
> for non-statutory mitigation, in its sentencing order "[b]ased upon the
> evidence presented at trial, the evidence presented during the sentence
> (sic) hearing, and the pre-sentence investigation report and any evidence
> submitted in connection with it."  Ala.Code § 13A-5-47(d) (1975).

C.R. Vol. 32, Tab 78, at 38 (citing C.R. Vol. 4, R. 53-54) (emphasis supplied).  The

Rule 32 circuit court judge then summarily dismissed this subclaim on that basis,

saying that "no material issue of fact or law exists which would entitle the petitioner

to relief."[384]

James does not provide even a hint as to how the Rule 32 court's holding was

contrary to, or an unreasonable application of, clearly established federal law, as

determined by the Supreme Court of the United States.  *See* 28 U.S.C. § 2254(d)(1).

---

[383] *See* C.R. Vol. 32, Tab 78, at 37-38.

[384] *Id.* at 38-39 (citing Ala. R. Crim. P. 32.7(d)).

Consequently, he failed to show any basis for *habeas* relief on this subclaim.

**2**.   *Admitting autopsy photographs*

James next claims that the trial court erroneously admitted "a number of irrelevant and extremely prejudicial autopsy photographs," thereby violating his rights to due process and a fair trial, and "inject[ing] arbitrary and prejudicial factors into the guilty and penalty phases of the trial, undermining the constitutionality of Mr. James's conviction and sentence."[385]  This claim lacks merit.  A federal district court

> review[s] state court evidentiary rulings on a petition for habeas corpus to determine only "'whether the error, if any, was of such magnitude as to deny petitioner his right to a fair trial.'" *Futch v. Dugger*, 874 F.2d at 1487 (quoting *Osborne v. Wainwright*, 720 F.2d 1237, 1238 (11th Cir. 1983)).   Erroneously admitted evidence deprives a defendant of fundamental fairness only if it was a "'crucial, critical, highly significant factor' in the [defendant's] conviction." *Williams v. Kemp*, 846 F.2d 1276, 1281 (11th Cir. 1988), cert. denied, 494 U.S. 1090, 110 S.Ct. 1836, 108 L.Ed.2d 965 (1990) (quoting *Jameson v. Wainwright*, 719 F.2d 1125, 1126-27 (11th Cir. 1983), cert. denied, 466 U.S. 975, 104 S.Ct. 2355, 80 L.Ed.2d 827 (1984)).   The introduction of graphic photographic evidence rarely renders a proceeding fundamentally unfair. *Futch v. Dugger*, 874 F.2d at 1487; *see also, e.g.*, *id.* (photograph of victim, nude, showing wounds made by gunshot); *Evans v. Thigpen*, 809 F.2d 239, 242 (5th Cir. 1987), *cert. denied*, 483 U.S. 1033, 107 S. Ct. 3278, 97 L. Ed. 2d 782 (1987) (nine color slides of homicide victim) (cited with approval in *Futch v. Dugger*, 874 F.2d at 1487).

*Jacobs v. Singletary,* 952 F.2d 1282, 1296 (11th Cir. 1992) (first alteration supplied, second alteration in original).

---

[385] Doc. no. 11 (Amended Habeas Petition), ¶ 278, at 91 (alteration supplied).

This court previously addressed the admission of the autopsy photographs, in the context of determining whether trial counsel had been ineffective for not objecting to their admission.  For many of the same reasons discussed in Parts V.G.1 and V.L of this opinion, *supra*, this court finds that the state court's determination that the admission of the contested photographs did not render James's second trial fundamentally unfair was not contrary to contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  28 U.S.C. § 2254(d)(1).  This subclaim provides no grounds for *habeas* relief.

**3**.    *Conducting court in James's absence*

James again argues the trial court conducted critical proceedings in his absence.  The Rule 32 circuit court held that the trial "record clearly refutes James's claim that a critical proceeding, the swearing of the first witness, was held in his absence.  Specifically, when James made this claim at trial, this Court stated, 'I swore them [the witnesses] all in your presence as well as the jurors.'"[386]   "[A] habeas petitioner is not entitled to an evidentiary hearing on a claim . . . where the record conclusively establishes that he is not entitled to relief on that claim."  *Davis v. Singletary*, 119 F.3d 1471, 1473 (11th Cir. 1997) (alteration and redaction supplied).  James provides no other legal or factual support for this contention, and no

---

[386] C.R. Vol. 32, Tab 78, at 39 (alteration supplied).

explanation of how he has shown the state court's holding was an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d)(2). This claim also is without merit.

**4**.    *Failing to instruct the jury at the end of each trial day*

A variation of this subclaim was previously discussed in Part VII.C, *supra*, in the context of James's contention that his appellate attorney had rendered constitutionally ineffective assistance by failing to argue on direct appeal that the trial court judge erred when failing to instruct the jury at the end of each day as required by Alabama Rule of Criminal Procedure 19.3(b).[387] This subclaim was included in

---

[387] *See* doc. no. 11 (Amended Habeas Petition), ¶ 280, at 92. As noted in a marginal note to the previous discussion, James cites "Alabama Rule of Criminal Procedure Rule 19.3(d)." Such a subsection does not exist, however. Instead, subsection (b) of that rule addresses the trial judge's admonitions to jurors, and it reads as follows:

> (b) **Admonitions to Jurors**. In all cases, the court shall admonish the jurors that they are not:
>
>> (1) to discuss among themselves any subject connected with the trial until the case is submitted to them for deliberation;
>>
>> (2) to converse with anyone else on any subject connected with the trial, until they are discharged as jurors in the case;
>>
>> (3) to knowingly expose themselves to outside comments or to news accounts of the proceedings, until they are discharged as jurors in the case; or
>>
>> (4) to form or express any opinion on the case until it is submitted to them for deliberation.
>
> If the jurors are permitted to separate, they may also be admonished not to view the

James's Rule 32 petition, and the Rule 32 circuit court held that, "[a]s long as [the trial] Court properly admonished the jury once pursuant to 19.3(b), it was not error for the court not to so admonish the jury every day."[388]

James does not allege in his *habeas* petition or briefs that any of the jurors were exposed to outside influences, or discussed the case prior to it being submitted for deliberation on verdicts.  Instead, he simply asserts that the failure to instruct "violated [his] rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments."[389] James provides no other legal or factual support for his naked contention, and no explanation of how he has shown the state court's holding was contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or an unreasonable determination of the facts in the light of the evidence presented in the state court proceedings.  Consequently, he is not entitled to *habeas* relief on this subclaim.

---

place where the offense was allegedly committed.

Ala. R. Crim. P. 19.3(b).

[388] C.R. Vol. 32, Tab 78, at 40 (alterations supplied) (citing *Griffin v. State*, 790 So. 2d 267, 334 (Ala. Crim. App. 1999), *rev'd on other grounds*, 790 So. 2d 351 (Ala. 2000) ("Although the better practice would be for the trial court to admonish the jury at each break or recess, there is nothing in Rule 19.3(b), Ala. R. Crim. P., that requires it to do so . . . . Jurors are presumed to follow the instructions of the trial court.")).

[389] Doc. no. 11 (Amended Habeas Petition), ¶ 280, at 92 (alteration supplied.

**5**.   *Overruling defense objections*

James also asserts that the trial judge violated his constitutional rights when he overruled the objection of his trial attorneys "to the lack of notice and an opportunity to defend against the aggravating factor that [he] had been under a sentence of imprisonment at the time of the offense":  a consideration that was not introduced until the morning of the beginning of the penalty phase.[390]  A variation of this same claim was discussed previously, *see* Part VII.A, *supra*, in the context of James's contention that his appellate attorney provided constitutionally ineffective assistance by failing to allege in his initial brief on direct appeal that the trial judge erroneously overruled his objection to the prosecutor's "addition of a new aggravating circumstance on the morning the sentencing phase was to begin."[391]

The Rule 32 circuit court considered this claim and found no violation of James's rights.  It held that James had no right to advance notice of the aggravating circumstances.  As noted in the discussion in Part VII.A, *supra*, the Alabama Court of Criminal Appeals has held that the list of aggravating circumstances enumerated in Alabama Code § 13A-5-49 "is exclusive and puts the defendant charged with a capital felony on notice of those circumstances against which [he] may be required

---

[390] *Id.*, ¶¶ 281-283, at 92-93 (alterations supplied).

[391] *See id.*, ¶¶ 288-290, at 94 (¶¶ 265-268 of James's Rule 32 Petition).

to defend. This statutory notice satisfies constitutional requirements." *Bush v. State*, 695 So. 2d 70, 87 (Ala. Crim. App. 1995), *aff'd*, 695 So. 2d 138 (Ala. 1997) (alteration supplied). *See also*, *e.g.*, *Perkins v. State*, 808 So. 2d 1041, 1122 (Ala. Crim. App. 1999) (same); *Knotts v. State*, 686 So. 2d 431, 448 (Ala. Crim. App. 1995) (same).

Moreover, the Due Process Clause of the Fourteenth Amendment does not require advance notice to a defendant of the aggravating circumstances upon which the State's prosecutor intends to rely. *Cf. Gray v. Netherland*, 518 U.S. 152, 166-70 (1996); *see also*, *e.g.*, *Clark v. Dugger*, 834 F.2d 1561, 1566 (11th Cir. 1987) (holding that a defendant has "no right" under the Due Process Clause "to advance notice of the aggravating circumstances on which the state will rely" when the state's "sentencing statute itself sufficiently particularized the aggravating circumstances in a capital case"); *Kelley v. State*, No. CR–10–0642, 2014 WL 994625, at *28 (Ala. Crim. App. Mar. 14, 2014) (holding that neither the Supreme Court's opinion in *Ring v. Arizona*, 536 U.S. 584 (2002), nor *Apprendi v. New Jersey*, 530 U.S. 466 (2000), requires that an accused be provided with advance notice of all aggravating circumstances upon which the State intends to rely).[392]

---

[392] *Compare Dobard v. State*, 435 So. 2d 1338, 1347 (Ala. Crim. App. 1982), *aff'd*, 435 So. 2d 1351 (Ala. 1983) (holding that the "aggravating circumstances enumerated in § 13A–5–49 that may lead to the imposition of the death penalty in a capital case are not elements of the offense and

Thus, the trial judge committed no error in allowing jury consideration of the evidence offered by the State under Alabama Code § 13A-5-49(1),[393] and the state court's rejection of the claim on collateral review was not an unreasonable application of clearly established federal law, as determined by the United States Supreme Court. James is not entitled to *habeas* relief on this claim.

**6**.    *Improper jury instructions*

James's final claim in this series — the contention that the trial judge gave improper jury instructions — was addressed previously as part of the discrete ineffective assistance of trial counsel claim in Part V.K, *supra*.  The United States Supreme Court has made clear that, in the context of jury instructions,

> [t]he only question for [this court] is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S. Ct. 396, 400-01, 38 L. Ed. 2d 368 (1973); see also *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S. Ct. 1730, 1736-37, 52 L. Ed. 2d 203 (1977); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S. Ct. 1868, 1871, 40 L. Ed. 2d 431 (1974) ("'[I]t must be established not merely that the instruction is undesirable, erroneous, or even "universally condemned," but that it

---

are not required to be set forth in the indictment") *with Arthur v. State*, 711 So. 2d 1031 (Ala. Crim. App. 1996), *aff'd*, 711 So. 2d 1097 (Ala. 1997) (holding, consistently with the Supreme Court's later opinions in *Apprendi v. New Jersey* and *Ring v. Arizona*, that whenever an aggravating circumstance relied on by the State is an elements of the capital offense charged against the defendant, it must be alleged in the indictment and proven beyond a reasonable doubt).

[393] Ala. Code § 13A-5-49(1) provides that one of the statutory aggravating circumstances includes the fact that "[t]he capital offense was committed by a person under sentence of imprisonment; . . . ." (alteration supplied).

violated some [constitutional right]'"). It is well established that the instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record. *Cupp v. Naughten*, *supra*, 414 U.S., at 147, 94 S. Ct., at 400-01. In addition, in reviewing an ambiguous instruction such as the one at issue here, we inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution. *Boyde v. California*, 494 U.S. 370, 380, 110 S. Ct. 1190, 1198, 108 L. Ed. 2d 316 (1990).[FN4]  And we also bear in mind our previous admonition that we "have defined the category of infractions that violate 'fundamental fairness' very narrowly." *Dowling v. United States*, 493 U.S. 342, 352, 110 S. Ct. 668, 674, 107 L. Ed. 2d 708 (1990).  "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation." *Ibid*.

> FN 4 . . . .  In *Boyde*, . . . we made it a point to settle on a single standard of review for jury instructions – the "reasonable likelihood" standard – after considering the many different phrasings that had previously been used by this Court.  494 U.S., at 379-380, 110 S. Ct., at 1197-1198 (considering and rejecting standards that required examination of either what a reasonable juror "could" have done or "would" have done).  So that we may once again speak with one voice on this issue, we now . . . reaffirm the standard set out in *Boyde.*

*Estelle v. McGuire*, 502 U.S. 62, 73 (1991) (all but the last two alterations, and the redaction to footnote 4, were supplied).  The foregoing standard, when taken into consideration with the discussion in Part V.K, *supra,* demonstrates that James is not entitled to *habeas* relief.

## G.    Petitioner Was Deprived of Due Process and Other Constitutional Rights Throughout the Rule 32 Proceedings in the State Circuit Court[394]

James is not entitled to *habeas* relief on any portion of this claim, because it

---

[394] Claim X:  *see* doc. no. 11 (Amended Habeas Petition), ¶¶ 296-298, at 96.

attacks the collateral appeal proceedings in the state court system, and not the legality

of either his conviction or sentence.  As the Eleventh Circuit recently explained:

> Under 28 U.S.C. § 2254, a petitioner can file a federal habeas challenge to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  The Supreme Court has commented that "habeas corpus is the appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement."  *Preiser v. Rodriguez*, 411 U.S. 475, 490, 93 S. Ct. 1927, 1836, 36 L. Ed. 2d 439 (1973).  Federal habeas relief is available to remedy defects in a defendant's conviction and sentence, *but* "*an alleged defect in a collateral proceeding does not state a basis for habeas relief.*"  *Quince v. Crosby* 360 F.3d 1259, 1262 (11th Cir. 2004); *see also Carroll v. Sec'y*, *DOC*, 574 F.3d 1354, 1365 (11th Cir. 2009) (collecting cases), *cert denied*, [558] U.S. [995], 130 S. Ct. 500, 175 L. Ed. 2d 355 (2009).  There is a valid reason behind this principle:  "[A] challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment — *i.e.*, the conviction itself — and thus habeas relief is not an appropriate remedy."  *Carroll*, 574 F.3d at 1365.  Furthermore, such challenges often involve issues of state law, and "[a] state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved."  *McCullough v. Singletary*, 967 F.2d 530. 535 (11th Cir. 1992).

*Alston v. Department of Corrections, Florida*, 610 F.3d 1318, 1325-26 (11th Cir.

2010 (first two alterations and emphasis supplied, all other alterations in original).

*See also Carroll v. Secretary, Department of Corrections*, 574 F.3d 1354, 1366 (11th

Cir. 2009) (holding that a *habeas* petitioner's claim that the state court violated his

due process rights when it summarily denied his post-conviction claim without an

evidentiary hearing did not state a claim on which federal habeas relief could be granted); *Anderson v. Secretary, Department of Corrections*, 462 F.3d 1319, 1330 (11th Cir. 2006) (same); *Quince v. Crosby*, 360 F.3d at 1262 (stating that, "while habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief"); *Spradley v. Dugger*, 825 F.2d 1566, 1568 (11th Cir. 1987) (holding that a *habeas* petitioner's claim that errors in collateral proceedings violated his right to due process did not state a basis for *habeas* relief, because the claim "addressed issues unrelated to the cause of the petitioner's detention").

Nevertheless, assuming for the sake of argument that the due process claims were cognizable in a *habeas* proceeding, James still fails to demonstrate any basis for relief, as discussed below.

1. *The circuit court's procedure of signing orders prepared by respondents, particularly the egregiously self-serving and clearly erroneous final order, denied petitioner of his federal constitutional rights to an impartial tribunal, due process, and a reliable proceeding under the Fifth, Sixth, Eighth, and Fourteenth Amendments, and international law*[395]

The contention that the Rule 32 circuit court judge denied James the constitutional rights listed in the heading of this subsection by his practice of

---

[395] Claim X.A:  *see* doc. no. 11 (Amended Habeas Petition), ¶¶ 299-322, at 96-103.

311

adopting and signing orders prepared by the State's prosecutor, each of which denied relief on claims asserted in James's Rule 32 petition, was addressed on its merits by the Alabama Court of Criminal Appeals in its original opinion on collateral appeal. The discussion of this issue began as follows:

> First, the appellant contends that the circuit court improperly adopted the State's proposed order denying relief.[FN3]

>> FN3.  To the extent the appellant may argue that the circuit court improperly adopted the State's other proposed orders, he has made only bare allegations, but he has not shown that the circuit court's actions were improper.  Therefore, he is not entitled to relief in this regard.

>> "'While the practice of adopting the State's proposed findings of fact and conclusions of law is subject to criticism, the general rule is that even when the court adopts proposed findings and conclusions verbatim, the findings are those of the court and may be reversed only if clearly erroneous. *Anderson v. City of Bessemer, N.C.*, 470 U.S. 564, 105 S. Ct. 1504, 84 L. Ed. 2d 518 (1985); *Hubbard v. State*, 584 So. 2d 895 (Ala. Cr. App. 1991); *Weeks v. State*, 568 So. 2d 864 (Ala. Cr. App. 1 989), *cert. denied*, 498 U.S. 882, 111 S. Ct. 230, 112 L. Ed. 2d 184 (1990); *Morrison v. State*, 551 So. 2d 435 (Ala. Cr. App. 1989), *cert. denied*, 495 U.S. 911, 110 S. Ct. 1938, 109 L. Ed. 2d 301 (1990).'

>> "*Wright v. State*, 593 So. 2d 111, 117–18 (Ala. Cr. App. 1991), *cert. denied*, [506] U.S. [844], 113 S. Ct. 132, 121 L. Ed. 2d 86 (1992)."

> *Holladay v. State*, 629 So. 2d 673, 687–88 (Ala. Crim. App. 1992).

Initially, *we note that the circuit court allowed both parties to submit proposed orders*.  Further, the record does not indicate that the circuit court's decision to deny the petition was clearly erroneous.  We do note that the circuit court's reliance on *Williams v. State*, 783 So. 2d 108 (Ala. Crim. App. 2000), is no longer valid.  However, the circuit court also gave additional or alternative grounds for denying the appellant's claims.  For the reasons set forth in this opinion, the circuit court properly denied the appellant's petition.  Therefore, even if some of the circuit court's findings or reasons were incorrect, reversal is not required.  *See Sumlin v. State*, 710 So. 2d 941 (Ala. Crim. App. 1998) (holding that we will affirm a circuit court's denial of a Rule 32 petition if it is correct for any reason).

*James v. State*, 61 So. 3d 332, 339-40 (Ala. Crim. App. 2006) (emphasis supplied, alterations in original), *rev'd on other grounds sub nom. Ex parte James*, 61 So. 3d 352 (Ala. 2009).

Following remand from the Alabama Supreme Court, the Alabama Court of Criminal Appeals again addressed these same contentions in its opinion on James's application for rehearing, saying:

James argues in his brief on rehearing that this Court should reverse the circuit court's order denying his Rule 32 petition because, he asserts, the circuit court erred in adopting the proposed order drafted by the State denying relief on James's Rule 32 petition.  On rehearing, James relies on the Alabama Supreme Court's recent opinion in *Ex parte Ingram*, 51 So. 3d 1119 (Ala. 2010), and the United States Supreme Court's decision in *Jefferson v. Upton*, [560] U.S. [284], 130 S. Ct. 2217, 176 L. Ed. 2d 1032 (2010).

Initially, we note that this issue was specifically addressed by this Court in our original opinion in 2006, affirming James's conviction, and we found no error.  See *James*, 61 So. 3d at 348.  On certiorari review

313

the Alabama Supreme Court did not modify our holding in regard to this issue.  The Supreme Court merely directed this Court to consider two claims — the ineffective-assistance-of-counsel claim and the in forma pauperis claim.  If we considered this issue we would be acting beyond the scope of the Supreme Court's instructions in its opinion remanding this case to this Court.  "On remand, the issues decided by a [reviewing court] become the law of the case, and the [lower court's] duty is to comply with the directions given by the reviewing court." *Ellis v. State*, 705 So. 2d 843, 847 (Ala. Crim. App. 1996).

Moreover, after reviewing the cases cited by James we conclude that they are factually distinguishable from and thus inapplicable to the present case.

First, the portions of the circuit court's order the Alabama Supreme Court found objectionable in *Ingram* were references that the judge in the Rule 32 proceedings had personally presided over Ingram's trial.  In *Ingram*, the judge who presided over the trial was not the same judge who presided over the Rule 32 proceedings.  The Supreme Court stated:

> "[A]ppellate courts must be careful to evaluate a claim that a prepared order drafted by the prevailing party and adopted by the trial court verbatim does not reflect the independent and impartial findings and conclusions of the trial court.  In *Bell v. State*, 593 So. 2d 123 (Ala. Crim. App. 1991) — the case the Court of Criminal Appeals quoted in *Ingram II* [, 51 So. 3d 1094 (Ala. Crim. App. 2006)] for the 'clearly erroneous' standard of review — the Court of Criminal Appeals observed:
>
> > "'The trial court did adopt verbatim the proposed order tendered by the state; however, from our review of the record, we are convinced that the findings and conclusions are those of the trial court.  The record reflects that the trial court was

314

thoroughly familiar with the case and gave the appellant considerable leeway in presenting evidence to support his claims.'

"*Bell*, 593 So. 2d at 126.  The undisputed facts in the present case obviously prevent a similar conclusion here.

"We are forced by the nature of the errors present in the June 8 order to reverse the judgment of the Court of Criminal Appeals.  In the simplest terms, the patently erroneous nature of the statements regarding the trial judge's 'personal knowledge' and observations of Ingram's capital-murder trial undermines any confidence that the trial court's findings of fact and conclusions of law are the product of the trial judge's independent judgment and that the June 8 order reflects the findings and conclusions of that judge."

*Ingram*, 51 So. 3d at 1124–25.

The main concerns the Supreme Court found objectionable in *Ingram* are not present in this case; here, the same judge presided over both James's trial and the Rule 32 proceedings.  Also, as we noted in our previous opinion in this case, the circuit court allowed both "parties to submit proposed orders."  *James*, 61 So. 3d at 339.

In *Jefferson v. Upton*, the United States Supreme Court remanded Jefferson's habeas corpus proceedings to the lower court for that court to determine whether the state court's factual findings warranted a presumption of correctness.  The Supreme Court in granting relief stated:

"Although we have stated that a court's 'verbatim adoption of findings of fact prepared by prevailing parties' should be treated as findings of the court, we have also criticized that practice. *Anderson* [*v. City of Bessemer*], 470 U.S. [564] at 572, 105 S. Ct. 1504 [(1985)].   And we have not

315

> considered the lawfulness of, nor the application of the habeas statute to, the use of such a practice where (1) a judge solicits the proposed findings ex parte, (2) does not provide the opposing party an opportunity to criticize the findings or to submit his own, or (3) adopts findings that contain internal evidence suggesting that the judge may not have read them. Cf. *id.*, at 568, 105 S. Ct. 1504; Ga. Code of Judicial Conduct, Canon 3(A)(4) (1993) (prohibiting ex parte judicial communications)."

[560] U.S. [284], 130 S. Ct. 2223.

> None of these circumstances are present in James's case.  The circuit court did not solicit proposed findings ex parte; indeed, both parties were given the opportunity to submit proposed orders.  Nothing in this case suggests that the trial court did not read the proposed order before signing it.

*James v. State*, 61 So. 3d 357, 384-86 (Ala. Crim. App. 2010) (first two and last two alterations supplied, other alterations in original).  When considering a similar argument, the Eleventh Circuit ruled that

> AEDPA mandates deferential review of any claim that a state court "adjudicated on the merits," 28 U.S.C. § 2254(d), and does not impose any specific requirements on how a state court should announce its decision.  Jones does not and cannot deny that his claims were adjudicated on the merits; the state court's order undeniably rejected Jones's *Strickland* claim on the merits, not on any procedural ground.  Indeed, the state court's order extensively analyzed his *Strickland* claim over the course of ninety pages.  Considering that a summary disposition of a *Strickland* claim qualifies as an adjudication on the merits, *see Ferrell v. Hall*, 640 F.3d 1199, 1224 (11th Cir. 2011); *Wright v. Sec'y, Dep't of Corr.*, 278 F.3d 1245, 1255 (11th Cir. 2002), we can discern no basis for saying that a state court's fuller explanation of its reasons – albeit reasons drafted for the court by the State — is not entitled to

AEDPA deference.

> We have considered and rejected similar arguments in the past. In *Rhode v. Hall*, for example, a habeas petitioner challenging his death sentence argued that the state court's habeas decision was not entitled to deference. *See* 582 F.3d 1273, 1281 (11th Cir. 2009). Like Jones, Rhode "complain[ed] that the state habeas court adopted verbatim the State's proposed order," and that the order "uncritically incorporate[d]" the State's evidence and "mischaracterizations of the evidentiary record." *Id.* Thus, by Rhode's lights, the order was not "a fair and impartial assessment of the facts and law," and its findings should have been rejected as unreasonable determinations of fact pursuant to § 2254(d)(2) and (e)(1). *Id.* A panel of this Court in *Rhode* rejected that claim, noting that "the record clearly reflects that both Rhode and the State had the opportunity to present the state habeas court with their version of the facts," and concluding that, "[d]espite the fact that the state habeas court adopted the State's facts verbatim, these findings of fact are still entitled to deference from this court." *Id.* at 1282.

*Jones v. GDCP Warden,* 753 F.3d 1171, 1183-84 (11th Cir. 2014) (alterations in original).

The same conclusion is warranted here. The Supreme Court and Eleventh Circuit have upheld the use of proposed orders adopted verbatim by trial judges, "as long as they were adopted after adequate evidentiary proceedings and are fully supported by the evidence." *Brownlee v. Haley*, 306 F.3d 1043, 1067 n.19 (11th Cir. 2002) (citations omitted). *See generally United States v. El Paso Natural Gas Co.*, 376 U.S. 651, 656 (1964) (holding that, where a district judge adopted verbatim proposed findings of fact and conclusions of law submitted by prevailing party after

317

trial, such findings were "not to be rejected out-of-hand, and they will stand if supported by evidence"); *Cf., e.g., In re Dixie Broadcasting, Inc.*, 871 F.2d 1023, 1030 (11th Cir. 1989) (holding that the practice of ghostwriting judicial opinions by a litigant is not *per se* invalid, and the resulting order "will be vacated only if a party can demonstrate that the process by which the judge arrived at [it] was fundamentally unfair") (citation and internal quotation marks omitted, alteration supplied); *State of Florida Board of Trustees of Internal Improvement Trust Fund v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 703 (5th Cir. 1975) (district court's practice of adopting party's proposed findings of fact and conclusions of law at the close of trial "is not reversible error," but is subject to "clearly erroneous" standard of review); *Federal Trade Commission v. Enforma Natural Products, Inc.*, 362 F.3d 1204, 1215 (9th Cir. 2004) ("verbatim adoption of a prevailing party's proposed findings is not automatically objectionable if the findings are supported by the record").

The Rule 32 circuit court requested proposed orders from both parties. Further, the state circuit court judge, after presiding over two jury trials of the case, as well as conducting the Rule 32 hearing, was intimately familiar with the underlying facts. James has failed to show that the Rule 32 circuit court's order demonstrates anything other than independent and impartial decisions based upon the judge's own assessment of the law and the facts before him. James also has failed to demonstrate

318

that any portion of the trial judge's Rule 32 Order was contrary to, or an unreasonable

application of, clearly established federal law, as determined by the Supreme Court

of the United States, or based upon an unreasonable determination of the facts in light

of the evidence presented in the state court proceedings.  *See* 28 U.S.C. § 2254(d).

Hence, James is not entitled to *habeas* relief.

> **2.**  *The circuit court further displayed its bias against James and deprived him of due process, equal protection, an impartial tribunal, and a reliable proceeding when it denied his Motion to Proceed* in forma pauperis.[396]

> **3.**  *The circuit court prevented petitioner from fully developing and presenting his claims by denying him leave to proceed* ex parte *in funding requests and funding for mental health experts and, in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments.*[397]

> **4.**  *The circuit court's denial of leave to proceed* ex parte *in funding requests prevented petitioner from fully developing and presenting his claims in violation of petitioner's constitutional rights to due process and a reliable capital proceeding.*[398]

> **5.**  *The circuit court's denial of funding for mental health experts prevented petitioner from developing and presenting his claims in violation of his constitutional rights.*[399]

> **6.**  *The circuit court's refusal to admit petitioner's proffer of evidence prevented him from fully developing and presenting his claims in*

---

[396] Claim X.B:  *see* doc. no. 11 (Amended Habeas Petition), ¶¶ 323-334, at 104-107.

[397] Claim X.C:  *see* doc. no. 11 (Amended Habeas Petition), ¶ 335, at 107.

[398] Claim X.C.I: *see* doc. no. 11 (Amended Habeas Petition), ¶¶ 336-343, at 107-109.

[399] Claim X.C.II: *see* doc. no. 11 (Amended Habeas Petition), ¶¶ 344-348, at 109-111.

> *violation of his constitutional rights to due process, equal protection, and a reliable capital proceeding.*[400]

**7.** *The circuit court prevented petitioner from fully developing and presenting his claims by denying him funding for investigators in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments.*[401]

These claims are redundant. Accordingly, they will be addressed together as one.

These claims were addressed on their merits by the Alabama Court of Criminal Appeals in its initial opinion on collateral appeal, finding that, even if the Rule 32 circuit court's initial denial of James's motion to proceed *in forma pauperis* was in error, the filing fee was, in fact, paid. *James v. State*, 61 So. 3d 322, 340 (Ala. Crim. App. 2006), *rev'd on other grounds sub nom. Ex parte James,* 61 So. 3d 352 (Ala. 2009). Thus, James was not denied access to the courts in contravention of the Sixth Amendment. Nevertheless, James alleges that he was unable to obtain a transcript of the record on appeal,[402] and that he was deprived of funding for investigators and mental health experts who were needed to make a complete showing of the prejudice he allegedly suffered as a result of trial counsel's incompetence.[403]

---

[400] Claim X.C.III: *see* doc. No. 11 (Amended Habeas Petition), ¶¶ 349-350, at 111-112.

[401] Claim X.D: *see* doc. No. 11 (Amended Habeas Petition), ¶¶ 351-357, at 112-113.

[402] Doc. no. 11 (Amended Habeas Petition), ¶ 333, at 106.

[403] *Id.*, ¶ 334.

The Alabama Court of Criminal Appeals also considered those claims and found that James was not entitled to proceed *ex parte* on his requests for funds. *James v. State*, 61 So. 3d at 340.  Thus, James could not establish prejudice from the circuit court's initial denial of the motion to proceed *in forma pauperis*.  The Court of Criminal Appeals also concluded that, even though post-trial and post-direct-appeal collateral review proceedings are commenced by filing a petition pursuant to Rule 32 of the Alabama Rules of *Criminal* Procedure, such actions are deemed to be *civil* in nature.  Hence, the Fourteenth Amendment's Due Process Clause does not require state trial courts to approve funds for experts in connection with such postconviction proceedings.  *James*, 61 So. 3d at 341 (citing *Hubbard v. State*, 584 So. 2d 895, 900 (Ala. Crim. App. 1991)).

Alabama case law clearly states that Rule 32 petitioners are not entitled to funds to hire experts to assist in postconviction litigation.  *See e.g., McGahee v. State*, 885 So. 2d 191, 229 (Ala. Crim. App. 2003) (holding that "the fundamental fairness mandated by the Due Process Clause does not require the trial court to approve funds for experts at a postconviction proceeding").

Because James has failed even to allege, much less establish, that the foregoing conclusions of the Alabama Court of Criminal Appeals are contrary to, or an

321

unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, he is not entitled to either an evidentiary hearing or *habeas* relief on these claims.

**H.   The Circuit Court's Denial of Petitioner's Requested Discovery and Motions for Continuance of the Evidentiary Hearing Deprived Petitioner of Due Process, a Fair Trial, and a Reliable Capital Proceeding Under the Fifth, Sixth, Eighth, and Fourteenth Amendments[404]**

By James's own account, the evidentiary hearing on the claims asserted in his Rule 32 petition was rescheduled at least three times, resulting in approximately six months of additional preparation time prior to the circuit judge's denial of his subsequent motions for a continuance.[405]   On collateral appeal, the Alabama Court of Criminal Appeals observed that a trial court is vested with "broad discretion in granting a continuance when the basis for the motion is that counsel has not had sufficient time to prepare or to develop his defense." *James v. State*, 61 So. 3d at 342 (quoting *Hart v. State*, 852 So. 2d 839, 843 (Ala. Crim. App. 2002), and citing *Ex parte Clark*, 728 So. 2d 1126, 1134 (Ala. 1998)) (other citations omitted). Furthermore, under Alabama law a "motion for a continuance due to a lack of time for adequate preparation is a matter entirely and exclusively within the sound discretion of the trial court and its ruling will not be reversed on appeal absent a . .

---

[404] Claim X.E:  *see* doc. no. 11 (Amended Habeas Petition), ¶¶ 358-368, at 113-117.

[405] *See* Doc. no. 11 (Amended Habeas Petition), ¶¶ 359-360, at 114.

. showing of abuse." *Id.* (quoting *Reynolds v. State*, 539 So. 2d 428, 429 (Ala. Crim. App. 1988), *cert. denied*, 539 So. 2d 428 (Ala. 1989)).   In addition, the Court of Criminal Appeals observed that James had lodged only

> vague, general allegations in his brief concerning the alleged denial of discovery and inability to develop his claims.  *At most, it appears from the allegations in his brief that the discovery about which he complains would have been relevant only to his argument that his trial counsel rendered ineffective assistance during the penalty phase of his trial.* However, for the reasons set forth in Part I of this opinion, his ineffective-assistance-of-trial-counsel claim is procedurally barred from review.   Thus, for the reasons set forth herein, the appellant is not entitled to relief in this regard.

*Id.* at 342 (emphasis supplied).   Finally, as previously noted, since the claims discussed in this Part of the opinion address only alleged defects in the collateral, post-conviction proceedings in state court, and not James's conviction or sentence, they fail to state a claim upon which *habeas* relief may be granted.  *See, e.g., Quince v. Crosby*, 360 F.3d 1259, 1262 (11th Cir. 2004) ("[W]hile habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief.") (alteration supplied) (citing *Spradley v. Dugger*, 825 F.2d 1566, 1568 (11th Cir. 1987) (holding that, when a petitioner's claim goes to issues unrelated to the cause of petitioner's detention, that claim does not state a basis for *habeas* relief)); *Franzen v. Brinkman*, 877 F.2d 26, 26 (9th Cir.1989) (agreeing with the majority view, and holding that "a

323

petition alleging errors in the state post-conviction review process is not addressable through habeas corpus proceedings").

For all of the foregoing reasons, these claims are due to be denied.

## I.  The Circuit Court's Refusal to Issue a Warrant to Compel Testimony of a Key Exculpatory and Mitigation Witness Prevented Petitioner From Presenting His Defense, in Violation of the Sixth, Eighth, and Fourteenth Amendments[406]

The last state court to address this claim was the Alabama Court of Criminal Appeals in its original opinion on collateral appeal.  The relevant portion of that Court's discussion began by quoting the following colloquy between James's attorney and the trial court judge:

> [APPELLANT'S COUNSEL]:  Your Honor, if I may bring one more matter, I apologize.  I have just learned that one of our witnesses has been subpoenaed and indicated that she will not be here.  I would like to ask for a warrant to be issued for her arrest.
>
> THE COURT:  Who is that?
>
> [APPELLANT'S COUNSEL]:  Her name is Mara Ruffin.
>
> THE COURT:  What would be the nature of her testimony?
>
> [APPELLANT'S COUNSEL]:  The nature of her testimony, Your Honor, deals with the relationship between my client, herself, and the victim Faith Hall, the fact that the victim was violent toward her and attacked her along with my client, cutting her in the face, threatened her life, threatened my client's children's life, threatened my client's life,

---

[406] Claim X.F.:  *see* doc. No. 11 (Amended Habeas Petition), ¶¶ 369-375, at 117-119.

and even threatened her grandmother.  There was a longstanding relationship of hostility between them that lasted for a couple of years.

   THE COURT:  I am not going to do that.

   [APPELLANT'S COUNSEL]:  In addition, Your Honor, she is the mother of my client's two children.  And her testimony would have been mitigating at the time of trial.  We submit that it was ineffective assistance of counsel for the attorneys not to speak with her and produce her to testify at the sentencing phase.  We believe that the fact that my client had two children and a girlfriend and a fiancee of longstanding was powerful mitigating evidence.

   THE COURT:  I don't think so.  I am not going to require her to be here.

*James v. State*, 61 So. 3d 332, 343 (Ala. Crim. App. 2006), *rev'd on other grounds*

*sub nom. Ex parte James*, 61 So. 3d 352 (Ala. 2009) (alterations supplied).

   James argued in the brief filed in the Alabama Court of Criminal Appeals that Mara Ruffin's testimony "'was vital to prove [his] claims [of] ineffective assistance of counsel in both the guilt and penalty phase of his criminal trial.'"  *Id*. (quoting Appellant's brief at 112) (alterations in original).  Nevertheless, that Court affirmed the Rule 32 trial judge's decision to not issue a bench warrant, noting that it previously had determined James's ineffective-assistance-of-trial-counsel claims to be procedurally barred.  *Id*.  *See also James v. State*, 61 So. 3d 357, 367 n.6 (Ala. Crim. App. 2010) (observing that the intermediate appellate court had "specifically addressed this issue in our previous opinion in this case and found no error.  *James*,

61 So. 3d at 343.  On *certiorari* review the Alabama Supreme Court did not modify

our holding in regard to this issue.").

Moreover, and even though this consideration was not specifically addressed

in the opinion of the Alabama Court of Criminal Appeals, that Court subsequently

determined that James's claim that his trial attorneys had been ineffective for failing

to establish the allegedly violent nature of his relationship with Faith Hall was wholly

refuted by the eyewitness testimony of the events that occurred on the date and at the

place of the homicide.  *James v. State*, 61 So. 3d at 365-367.  This court has found

that the state court's determination passes muster under § 2254(d).  *See* Part V.C.1,

*supra*.  Therefore, it matters little that the trial court refused to secure Ms. Ruffin as

a witness.

**J.**   **The Circuit Judge Deprived Petitioner of His Rights to Due Process and a Reliable Capital Decision-Making Process When He Denied Petitioner's Motion to Reopen His *Brady* Claim**[407]

The Alabama Court of Criminal Appeals was the last court to issue a reasoned

opinion on this claim.  The relevant portions of its original opinion on collateral

appeal read as follows:

> [T]he appellant contends that the circuit court erred in denying his
> motion to reopen his *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10
> L. Ed. 2d 215 (1963), claim, which it had previously dismissed, because

---

[407] Claim X.G: *see* doc. no. 11 (Amended Habeas Petition), ¶¶ 376-384, at 119-121.

326

of newly discovered evidence.  At the beginning of the evidentiary hearing, the following occurred:

> "[APPELLANT'S COUNSEL]: Your Honor, we move to reopen our Claim 6.  Claim 6 was our *Brady* claim.
> "THE COURT: It was what claim?
>
> "[APPELLANT'S COUNSEL]: It was a *Brady* claim, Your Honor—a claim under *Brady v. Maryland*, where the people withheld information from the defense.
>
> "We make that motion, Your Honor, in view of the discovery of new evidence we have received as a result of the disclosure that Your Honor ordered; in particular, Your Honor, the police reports of an incident in Brighton in which the victim of the crime was arrested for assaulting the defendant/James Mr. James and his girlfriend and the mother of his children, Ms. Mara Ruffin, by smashing the window of their pickup truck with a jack handle and causing cuts to Ms. Ruffin's face.  That, we believe, Your Honor, was material that should have been turned over by the prosecution.
>
> "In addition, Your Honor, in the records of the Department of Corrections in Holman Prison, we have discovered psychological tests administered to my client which would have been relevant in the penalty phase and the sentencing phase as mitigating evidence and would have led counsel, we believe, to retain a psychiatrist and/or a psychologist in order to develop further mitigating evidence in the sentencing phase.
>
> "On that ground, Your Honor, we move to reopen our *Brady* claim."

(R. 10-12).

"Three elements must be proven in order to establish a violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).  These elements include 1) the prosecution's suppression of evidence; 2) the favorable character of the suppressed evidence for the defense; and 3) the materiality of the suppressed evidence. *Brady*, 373 U.S. at 87, 83 S. Ct. at 1196-97."

*Hendrix v. State*, 589 So. 2d 769, 770 (Ala. Crim. App. 1991).

"'There is no *Brady* violation where the information in question could have been obtained by the defense through its own efforts.' *Johnson* [*v. State*], 612 So. 2d [1288] at 1294 [ ( Ala. Crim. App. 1992) ]; see also *Jackson v. State*, 674 So. 2d 1318 (Ala. Cr. App. 1993), *aff'd in part and rev'd in part on other grounds*, 674 So. 2d 1365 (Ala. 1995).  "Evidence is not 'suppressed' if the defendant either knew . . . or should have known . . . of the essential facts permitting him to take advantage of any exculpatory evidence." *United States v. LeRoy*, 687 F. 2d 610, 618 (2d Cir. 1982)[, cert. denied, 459 U.S. 1174, 103 S. Ct. 823, 74 L. Ed. 2d 1019 (1983)].' *Carr v. State*, 505 So. 2d 1294, 1297 (Ala. Cr. App. 1987) (noting, 'The statement the appellant contends was suppressed in this case was his own, and no reason was set forth to explain why he should not have been aware of it.').  Where there is no suppression of evidence, there is no *Brady* violation. *Carr*, 505 So. 2d at 1297."

*Freeman v. State*, 722 So. 2d 806, 810-11 (Ala. Crim. App. 1998).

The police report the appellant alleges was suppressed was information that was within his own knowledge or information he could have obtained by the exercise of due diligence.  Therefore, there was not a *Brady* violation with regard to the police report.

328

In his brief to this court, the appellant alleges:

"Evidence of [his] mental illness in the possession of the Department of Corrections was also exculpatory in nature, undermined the mental elements of the charged offense, and was also important mitigation evidence at the sentencing phase."

(Appellant's brief at pp. 115-16.) This allegation does not comply with the requirements of Rule 28(a)(10), Ala. R. App. P. Moreover, the appellant's bare assertions during the evidentiary hearing and in his brief to this court fall far short of establishing a *Brady* violation.

For these reasons, the circuit court did not err in refusing to allow the appellant to reopen his *Brady* claim.

*James v. State,* 61 So. 3d 332, 343-45 (Ala. Crim. App. 2006), *rev'd on other grounds sub nom. Ex parte James*, 61 So.3d 352 (Ala. 2009) (first alteration supplied, other alterations in original).

This court also finds no basis for *habeas* relief. The prosecution did not wrongfully withhold any evidence under *Brady*. Therefore, the Rule 32 circuit court's failure to allow this claim to be reopened did not violate James's rights. The decision of the Rule 32 circuit court was not contrary to, nor an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1).

**K**.   **Alabama's Capital Sentencing Procedures, Both Facially and As Applied, Run Afoul of the Fourteenth Amendment's Due Process Clause and the**

### Sixth Amendment's Jury Trial Requirement[408]

James argues that Alabama's capital sentencing procedure, whereby the jury returns an advisory verdict, but the trial judge makes the ultimate sentencing decision, is unconstitutional.[409]  He cites *Apprendi v. United States*, 530 U.S. 466, 488-90 (2000), for the proposition that "any fact that increases the penalty of the crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt," as well as *Ring v. Arizona*, 536 U.S. 584, 587 (2002), for the requirement that the jury in capital cases must determine all sentencing factors beyond a reasonable doubt.  Then James asserts:

> Under Alabama law, the maximum penalty authorized by the jury's verdict that a defendant is guilty of capital murder is life imprisonment without parole — a defendant "does not become death eligible until the state proves an aggravating circumstance in the punishment phase." *Ex parte Woodard*, 631 So. 2d 1065, 1071 (Ala. Crim. App. 1993); see also Ala. Code, §13A-5-46(e)(1).  However, the fact finding required for imposition of the death penalty — an increase over the maximum otherwise authorized — is made not by the jury but by a judge.

Doc. no. 11 (Amended Habeas Petition), ¶ 386, at 122.

In addition, James argues that "Alabama's capital sentencing system violates due process and jury trial guarantees because the indictment did not set forth the

---

[408] Claim XI:  *see* doc. no. 11 (Amended Habeas Petition), ¶¶ 385-392, at 121-123.  The corresponding claim in James's Rule 32 petition was numbered Claim X.

[409] Doc. no. 11 (Amended Habeas Petition), ¶¶ 385-392, at 121-23.

aggravating factors which must be found true for the death penalty to be imposed."[410]

Respondents contend that this claim is procedurally defaulted because James could have, but did not, raise it either at trial or on direct appeal.[411]  The Rule 32 circuit court held that the claim was procedurally barred pursuant to Alabama Rule of Criminal Procedure 32.2(a)(3) and (a)(5).[412]  That court also dismissed the claim pursuant to Rule 32.7(d), on the theory that *Ring v. Arizona* did not apply retroactively to James's 1999 conviction and sentence.[413]

Respondents alternatively assert that this claim was raised by James in his Rule 32 petition and on collateral appeal and it was denied on the merits, and that James cannot demonstrate that those rulings were either contrary to, or involved an unreasonable application of clearly established federal law, or that the rulings were based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.[414]

This claim is procedurally defaulted because the state court clearly found it to

---

[410] Doc. no. 11 (Amended Habeas Petition), ¶ 389, at 123 (quoting *Jones v. United States*, 526 U.S. 227, 243, n.6 (1999) ("Under the due process clauses of the Fifth and Fourteenth Amendments and the Sixth Amendment notice and jury trial guarantees, 'any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.'").

[411] Doc. no. 19 (Respondents' Answer), at 108.

[412] C.R. Vol. 32, Tab 78, at 45.

[413] *Id*. at 45-46.

[414] Doc. no. 19 (Respondents' Answer), at 109.

be barred under adequate and independent state procedural rules.  Even if the claim were not procedurally defaulted, it still is without merit.  A state court may state, in the alternative, a merits ruling without sacrificing the primacy of a procedural bar finding under those rules.  As noted by the Rule 32 circuit court, the Supreme Court's holding in *Ring* is not applicable to James's case, because it was decided after James's conviction and sentence had become final, and *Ring* is not retroactively applicable to death penalty convictions and sentences that were final on the date that opinion was announced.  *Schriro v. Summerlin*, 542 U.S. 348, 358 (2004).  *See also Sibley v. Culliver*, 377 F.3d 1196, 1208 (11th Cir. 2004).  James was convicted and sentenced in 1999, and both were affirmed in 2000.  *Ring* was decided in 2002. Therefore, a *Ring* claim is not available to James as a matter of clearly established Supreme Court jurisprudence.

Even if the *Ring* holding was applicable to James's claim, the Eleventh Circuit has held that "the Sixth Amendment does not prohibit a hybrid sentencing system in which findings authorizing a death sentence are implicit in the advisory jury verdict recommending that sentence."  *Grim v. Secretary, Florida Department of Corrections*, 705 F.3d 1284, 1287 (11th Cir. 2013) (holding that a Sixth Amendment violation had not occurred in a capital case where the jury, after finding that the aggravating circumstances outweighed mitigating circumstances, recommended the

332

imposition of a death sentence, and the trial court judge imposed the sentence recommended by the jury).  That is precisely what occurred in this case, and what Alabama law sanctions.  *See* Ala. Code § 13A-5-45(e) ("any aggravating circumstance which the verdict convicting the defendant establishes was proven beyond a reasonable doubt at trial shall be considered as proven beyond a reasonable doubt for purposes of the sentence hearing"); Ala. Code § 13A-5-50 ("the aggravating circumstance specified in Section 13A-5-49(4) shall be found and considered in determining sentence in every case in which a defendant is convicted of the capital offenses defined in subdivisions (1) through (4) of subsection (a) of Section 13A-5-40").

Similarly, the Alabama Supreme Court has held that the requirements of *Ring* are satisfied in such circumstances.  That Court's decision in *Ex parte Waldrop*, 859 So. 2d 1181 (Ala. 2002), held that, "when a defendant is found guilty of a capital offense, 'any aggravating circumstance which the verdict convicting the defendant establishes was proven beyond a reasonable doubt at trial shall be considered as proven beyond a reasonable doubt for purposes of the sentencing hearing.'" *Id.* at 1188 (quoting Ala. Code § 13A-5-45(e)). Therefore, "the findings reflected in the jury's verdict alone exposed [the defendant] to a range of punishment that had at its maximum the death penalty. This is all *Ring* and *Apprendi* require." *Id.* (alteration

supplied).   Comparing *Waldrop's* case to that of James, the Rule 32 circuit court held:

> Likewise, James's jury found all of the facts required when it found him guilty of capital murder during a burglary, which has a corresponding aggravator under Ala. Code §13A-5-49(4) (1975).   Moreover, James was also rendered death-eligible because of the jury's unanimous death recommendation because this Court had instructed the jury it could not even vote on whether to sentence James to death unless the jury unanimously and beyond a reasonable doubt found at least one aggravator to exist. Thus, the recommendation means that the jury necessarily found at least one aggravating circumstance unanimously and beyond a reasonable doubt. *See*, *e.g.*, *Moody v. State*, 2003 WL 1900599, *59 (Ala. Crim. App. App. 18, 2003).

C.R. Vol. 32, Tab 78, at 47 (internal citations omitted).

The other theories argued by James in connection with this claim are devoid of legal support.   As previously stated, James was not due advance notice of the aggravating circumstances the State intended to prove.   Thus, his due process rights could not have been abridged by the state's failure to specify the aggravating circumstances in the indictment.   James's virtually identical argument that his indictment unconstitutionally failed to set forth the aggravating circumstances with which he was ultimately charged is also without merit.   Again, James takes issue with the fact that the aggravating circumstance that he was under a sentence of imprisonment on the date of the offense was not disclosed until the day on which the

334

penalty phase began.[415]   Even so, for the reasons stated in Part VIII.F.5 of this

opinion, *supra*, a defendant has no right under state law to advance notice of the

aggravating circumstances upon which the state intends to rely.  *See Knotts v. State*,

686 So. 2d 431, 448 (Ala. Crim. App. 1995).  In short, this claim presents no basis for

*habeas* relief.

**L.    The Jury Was Unconstitutionally Permitted to "Double Count" the Fact of Burglary, Both as the Predicate for the Capital Charge, and, as an Aggravating Circumstance[416]**

James also contends that, even though Alabama courts have held that "double

counting" does not offend the State Constitution (citing *Ex parte Kennedy*, 472 So.

2d 1106, 1108 (Ala. 1985)),

> the use of burglary as an elevator in the guilt-phase and as an aggravator
> in the penalty-phase [of his case] failed to narrow the class of cases
> eligible for the death penalty because it was the only theory legitimately
> before the jury.  An aggravating circumstance which fails adequately to
> narrow the class of defendants eligible for death results in the arbitrary
> imposition of the death penalty, and violates the Eighth and Fourteenth
> Amendments. *See*, *e.g.*, *Gregg v. Georgia*, 428 U.S. at 197; *Zant v.
> Stephens*, 462 U.S. at 877.

Doc. no. 11 (Amended Habeas Petition),¶ 395, at 124 (alteration supplied).  James

also argues that this "double-counting" subjected him to two punishments as a result

---

[415] Doc. no. 11 (Amended Habeas Petition), ¶ 390, at 123.

[416] Claim XII:  *see* doc. no. 11 (Amended Habeas Petition), ¶¶ 393-398, at 123-124.  (This claim was numbered "XI" in James's Rule 32 petition.)

of being convicted of a single criminal charge, in violation of the Double Jeopardy Clause of the Fifth Amendment. *Id.*, ¶ 396.

Respondents argue that James's failure to raise these claims at trial or on direct appeal constitutes a procedural default barring consideration in this court.[417] Respondents alternatively state that James raised this claim in his Rule 32 petition and on collateral appeal, and the Rule 32 circuit court found it was procedurally barred from review pursuant to Alabama Rules of Criminal Procedure 32.2(a)(3) and (a)(5).[418]

The last state court to issue a reasoned opinion on this claim was the Rule 32 circuit court, which dismissed the claim pursuant to Alabama Rules of Criminal Procedure cited by respondents, due to James's failure to raise it at trial or on direct appeal.[419]   That court also ruled, in the alternative, that the claim was due to be dismissed under Alabama Rule of Criminal Procedure 32.7(d) for failure to raise a material issue of law or fact, saying "Alabama courts have repeatedly upheld death sentences where the only aggravating circumstance supporting the death sentence overlaps with an element of the capital offense."[420]

---

[417] Doc. no. 19 (Respondents' Answer), at 111.

[418] *Id.* at 112.

[419] C.R. Vol. 32, Tab 78, at 7.

[420] *Id.* at 48 (citing *Ex parte Trawick*, 698 So. 2d 162, 178 (Ala. 1997)).

This claim is procedurally defaulted because the state court clearly found it to be barred under adequate and independent state procedural rules.  Again, a state court may conduct an alternate merits ruling without sacrificing the primacy of a procedural bar finding under those rules.

Even assuming that this claim had not been procedurally defaulted, it still provides no basis for *habeas* relief.  As explained in Part VI.D of this opinion, *supra,* the practice of "double-counting" has repeatedly been upheld by Alabama courts. The Alabama Supreme Court considered an argument identical to the one asserted by James in *Ex parte Trawick,* 698 So. 2d 162 (Ala. 1997), which held as follows:

> Trawick next argues that the jury impermissibly "double-counted" the kidnapping charge against Trawick as both an element of the capital offense and as an aggravating circumstance.  We have previously addressed this issue in other cases and have held that the fact that a particular capital offense necessarily includes one or more aggravating circumstances as specified in Ala. Code 1975, § 13A-5-49, shall not preclude the finding and consideration of that relevant circumstance or those circumstances in determining the sentence.  *Ex parte Kennedy*, 472 So. 2d 1106 (Ala.), *cert. denied*, 474 U.S. 975, 106 S. Ct. 340, 88 L. Ed. 2d 325 (1985); *Smith v. State*, 698 So. 2d 189 (Ala. Cr. App. 1996).  Furthermore, Alabama courts have repeatedly upheld death sentences where the only aggravating circumstance supporting the death sentence overlaps with an element of the capital offense.  *Smith v. State, supra*; *Heath v. State*, 455 So. 2d 898 (Ala. Cr. App. 1983), *affirmed*, 455 So. 2d 905 (Ala. 1984), *affirmed,* 474 U.S. 82, 106 S. Ct. 433, 88 L. Ed. 2d 387 (1985); *Jenkins v. State*, 627 So. 2d 1034 (Ala. Cr. App. 1992), *affirmed*, 627 So. 2d 1054 (Ala. 1993), *cert. denied*, 511 U.S. 1012, 114 S. Ct. 1388, 128 L. Ed. 2d 63 (1994). We find no merit in Trawick's arguments as to this issue.

337

*Ex parte Trawick,* 698 So. 2d at 178.

When considering this same claim in the context of James's contention that his trial attorneys had provided ineffective assistance, the Alabama Court of Criminal Appeals held, in its second opinion on collateral appeal, following remand from the Alabama Supreme Court, that a defense request for

> an instruction that the jury could not count burglary as both an element of the capital offense and as an aggravating circumstance would be inconsistent with Alabama law. We have consistently upheld the practice of "double-counting" in Alabama. *See Morris v. State*, 60 So. 3d 326 (Ala. Crim. App.2010); *Barber v. State*, 952 So. 2d 393 (Ala. Crim. App. 2005); *Coral v. State*, 628 So. 2d 954 (Ala. Crim. App. 1992).

*James*, 61 So. 3d at 379-80.

Furthermore, the Alabama Court of Criminal Appeals has repeatedly held that a claim that "double counting" *burglary* as both an element of a capital offense *and* as an aggravating circumstance "does not implicate the Double Jeopardy Clause because it does not punish a defendant twice for the same offense." *Stewart v. State*, 730 So. 2d 1203, 1226 (Ala. Crim. App. 1996) (citing *Burton v. State*, 651 So. 2d 641 (Ala. Crim. App. 1993), *aff'd*, 651 So. 2d 659 (Ala. 1994), *cert. denied*, 514 U.S. 1115 (1995)).

James has failed to demonstrate that the rulings of the Rule 32 circuit court and the State's intermediate appellate court were contrary to, or involved an unreasonable

338

application of, clearly established federal law, as determined by the Supreme Court of the United States.  28 U.S.C. § 2254(d)(1).  The cases cited by the James lend no support to his argument.  For example, in *Gregg v. Georgia*, 428 U.S. 153, 207 (1976), the Supreme Court upheld the constitutionality of a sentencing scheme similar to that of Alabama, and did not discuss the issue of "double counting."  James also cites *Zant v. Stephens*, 462 U.S. 862 (1983), which held that "an aggravating circumstance must genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder."  *Id.* at 877.  However the *Zant* court did not discuss "double counting" or double jeopardy.

Finally, *North Carolina v. Pearce*, 395 U.S. 711 (1969), *overruled on other grounds* by *Alabama v. Smith*, 490 U.S. 794 (1989), states that the Fifth Amendment protects against multiple punishments for the same offense,[421] but did not address the use of an element of the underlying crime as an aggravating circumstance.

In summary, James has failed to present an argument establishing this claim as a basis for *habeas* relief.

---

[421] More specifically, *Pearce* held that upon the overturning of a conviction and retrial for that offense, any sentence imposed for the second conviction must subtract time already served for the first conviction.  395 U.S. at 718-719.  This holding has no bearing on capital punishment.

**M.**     **Alabama's Statutory Limitations on Compensation of Appointed Counsel and Other Resources in Death Penalty Cases Violates the Federal Constitution**[422]

James argues that his court-appointed trial lawyers were provided with "constitutionally insufficient funds" for the preparation and trial of a capital case, and that the failure of the State to provide adequate funding "curtailed his most fundamental right to the effective assistance of counsel, as well as his rights to due process, equal protection, and reliable guilt and sentencing determinations."[423] Specifically, James claims that the State's statutory limits on compensation limited his attorneys' ability to investigate and gather the evidence and mitigation information needed for his trial and sentencing, as well as deprived him of the ability to retain certain experts needed for his defense, including a mental health expert.[424] In addition, James asserts that the

> severe compensation limitations pose an unconstitutional taking of private property by denying just compensation, violate the separation of powers doctrine, discriminatorily deny indigent capital defendants their constitutional right to effective assistance of counsel, and violate the Equal Protection Clause.[425]

---

[422] Claim XIII:  *see* doc. no. 11 (Amended Habeas Petition), ¶¶ 399-409, at 125-127.  (This claim was numbered as Claim XII in James's Rule 32 petition.)

[423] Doc. no. 11 (Amended Habeas Petition), ¶¶ 400, 402, at 125.  This claim is in essence a restatement of the subclaim in Part V.A, *supra*, asserting that trial counsel provided ineffective assistance due to the statutory caps on compensation in capital cases.

[424] *Id*. ¶ 403, at 126.

[425] *Id*. ¶ 407, at 127.

Respondents contend this claim is procedurally defaulted due to James's failure to raise it at trial or on direct appeal. The Rule 32 circuit court ruled that this claim was procedurally barred pursuant to Alabama Rules of Criminal Procedure 32.2(a)(3) and (a)(5).[426] In the alternative, the Rule 32 circuit court also dismissed this claim pursuant to Rule 32.7(d).[427]

The Alabama Court of Criminal Appeals' opinion in *Bui v. State*, 717 So. 2d 6 (Ala. Crim. App. 1997), addresses Alabama's statutory compensation limitations caps for capital counsel of indigent defendants as they existed prior to June 10, 1999. That court considered Alabama Code § 15-12-21(d) — providing, in pertinent part, that "[i]n cases where the original case involves a capital offense or a charge which carries a possible sentence of life without parole, the limits shall be $1,000 for out-of-court work, plus payment for all in-court work" — and held that:

> Alabama courts have consistently upheld § 15-12-21(d) against constitutional challenges. *See Ex parte Smith*, 698 So. 2d 219 (Ala. 1997); *Ex parte Grayson*, 479 So. 2d 76 (Ala.), *cert. denied*, 474 U.S. 865, 106 S. Ct. 189, 88 L. Ed. 2d 157 (1985); *McNair v. State*, 706 So. 2d 828 (Ala. Cr. App. 1997); *May v. State*, 672 So. 2d 1307 (Ala. Cr. App. 1993), *writ quashed*, 672 So. 2d 1310 (Ala. 1995); *Hallford*, 629 So. 2d at 11-12. In *Ex parte Grayson*, the Alabama Supreme Court rejected a claim that Alabama's method of compensating attorneys in capital cases denied the defendant the right to effective assistance of counsel, stating:

---

[426] C.R. Vol. 32, Tab 78, at 48.

[427] *Id.*, at 49.

"These contentions are made on the premise that lawyers will not provide effective assistance unless paid a certain amount of money. But the legal profession requires its members to give their best effort in 'advancing the "undivided interest of [their] client[s]."' *Polk County v. Dodson*, 454 U.S. 312, 318-19, 102 S. Ct. 445, 449-50, 70 L. Ed. 2d 509 (1981). This Court, in *Sparks v. Parker*, 368 So. 2d 528, 530 (Ala. 1979), quoted the New Jersey Supreme Court as follows:

> "'We know of no data to support a claim than an assigned attorney fails or shirks in the least the full measure of an attorney's obligations to a client. Our own experience, both at the bar and on the bench, runs the other way. A lawyer needs no motivation beyond his sense of duty and pride. [*State v. Rush*, 46 N.J. 399, 405-06, 217 A.2d 441, 444-45 (1966).]'"

479 So. 2d at 78-80.

Thus, we reject the notion that Alabama's statutory scheme for compensating attorneys in capital cases, in and of itself, denies a defendant effective representation.

*Bui,* 717 So. 2d at 15. On June 10, 1999, the Alabama Legislature enacted the "Investment in Justice Act of 1999," which amended § 15–12–21.

Under the new Act, the rate of compensation for attorneys representing indigent criminal defendants [was] increased to $50 per hour for in-court time and $30 per hour for out-of-court time, with no limit on compensation for an attorney in a case involving a capital offense.

McWhorter v. State, 781 So. 2d 257, 306 (Ala. Crim. App. 1999) (alteration supplied).

342

Therefore, while James's defense attorneys were subject to a compensation cap prior to his jury trial, that cap faded away as of June 10, 1999. Moreover, both before and after June 9, 1999, "court-appointed attorneys [were reimbursed] for office-overhead expenses reasonably incurred in the defense of an indigent defendant" pursuant to Alabama Code § 15-21-21. *Wright v. Childree*, 972 So. 2d 771, 780 (Ala. 2006).

Even though it is clear that James believes his trial attorneys failed to conduct a sufficient investigation, and failed to present important mitigation evidence, he has not demonstrated a link between that alleged conduct and a lack of state funding. His conclusory arguments fail to indicate how, in rejecting these claims, the state court's determination was contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. *See* Part V.A, *supra*. James also has not directed this court to any case in which a court held Alabama's statutory limits on the amount of compensation paid to court-appointed counsel to be unconstitutional. Therefore, this court finds no error in the state court's determinations, which are supported by a significant line of precedent. Indeed, "Alabama courts have repeatedly held that caps on attorney's fees for indigent defendants do not violate the separation of powers doctrine, do not constitute a taking without just compensation, do not deprive indigent capital defendants of the effective

343

assistance of counsel, and do not deny equal protection." *Williams v. State*, 782 So. 2d 811, 841 (Ala. Crim. App. 2000) (citations omitted). *See also McGowan v. State,* 990 So. 2d 931, 1001 (Ala.Crim.App. 2003) ("The Alabama Supreme Court, as well as this court, has addressed these same contentions in a number of previous cases and has consistently rejected them.") (citations omitted). This claim does not provide a basis for *habeas* relief.

**N. The Selective Prosecution of the Death Penalty Violated Petitioner's Rights to Due Process, Equal Protection, Freedom From Cruel and Unusual Punishment, and, a Fundamentally Fair Trial[428]**

James asserts that "[t]he decision to seek death in this case was based on an arbitrary classification beyond the scope of the prosecution's charging discretion."[429] Specifically, James states that he "was selected for capital prosecution, convicted, and sentenced based on arbitrary, constitutionally irrelevant, impermissible, and discriminatory factors, including, but not limited to, prosecutorial vindictiveness, class, ethnicity, gender, racial considerations, and political and financial factors."[430]

Respondents contend that this claim is procedurally defaulted due to James's failure to raise it at trial or on direct appeal.[431]

---

[428] Claim XIV: *see* doc. no. 11 (Amended Habeas Petition), ¶¶ 410-418, at 127-130. (This claim was numbered as Claim "XIII" in James's Rule 32 petition.)

[429] Doc. no. 11 (Amended Habeas Petition), ¶ 410, at 127.

[430] *Id*. at 128.

[431] Doc. no. 19 (Respondents' Answer), at 115-16.

344

The Rule 32 circuit court ruled that a procedural default had occurred pursuant to Alabama Rules of Criminal Procedure 32.2(a)(3) and (a)(5).[432]  The circuit court additionally ruled that the portion of the claim that raised a contention of ineffective assistance of counsel (presumably because of James's invocation of the Sixth Amendment) failed to comply with the pleading requirements of Alabama Rules of Criminal Procedure 32.3 and 32.6(b).[433]

Laying aside those portions of this claim that assert ineffective assistance of counsel, the remainder was procedurally defaulted under Alabama law.

> If an Alabama court has denied post-conviction relief based on the petitioner's failure to raise a claim at trial or on direct appeal, a federal court cannot review that claim unless it determines either (1) that the petitioner had cause for his failure to raise the claim and suffered prejudice as a result, or (2) that denying federal habeas review of the claim would result in a fundamental miscarriage of justice — namely the conviction and punishment of one who is actually innocent.

*Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002).

In the alternative, and regardless of the issue of procedural default, this claim lacks merit.  James asserts that he was "singled out" for prosecution because he is an African American.[434]  He cites statistics purporting to show disparate treatment of African-Americans in Alabama's capital sentencing system, as well as the high level

---

[432] C.R. Vol. 32, Tab 78, at 8.

[433] *Id*. at 25-26.

[434] Doc. no. 11 (Amended Habeas Petition), ¶¶ 414-416, at 129.

345

of discretion accorded to the district attorney in deciding whether to seek capital punishment.[435]  In *Ogler v. Boles*, 368 U.S. 448 (1962), a case relied upon by James, the United States Supreme Court held that

> the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation.  Even though the statistics in this case might imply a policy of selective enforcement, it was not stated that the selection was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.  Therefore grounds supporting a denial of equal protection were not alleged.

*Id*. at 456.

Despite the statistics cited by James, he has presented no facts establishing that the district attorney's decision to charge him with a capital offense was based upon his race, or any other arbitrary classification.[436]  The facts presented at James's trial overwhelmingly indicated both his guilt and the existence of aggravating factors supporting the death penalty, regardless of his race.  James alleges that the district attorney chose not to prosecute other cases with facts similar to his own, but provides no evidence to support that assertion.

---

[435] *Id*.

[436] Alabama Code § 13A-5-53(b)(3) requires the Alabama Court of Criminal Appeals to consider whether a sentence of death in a particular case was disproportionate to the penalties imposed in similar cases.  The Court of Criminal Appeals undertook just such a review on direct appeal and found the sentence was neither disproportionate nor excessive.  *James v. State*, 788 So. 2d 185, 198 (Ala. Crim. App. 2000).  James offers no evidence that non-African-Americans convicted of murder during the course of a burglary have received lesser sentences.

James has not demonstrated that the ruling of the state court was contrary to, or involved an unreasonable application of, clearly established federal law. Additionally, although James seeks an evidentiary hearing on this claim, he has not alleged that it is based on a new rule of constitutional law, made retroactive to cases on collateral review, or a factual predicate that could not have been previously discovered through the exercise of due diligence. Thus, he has not met the requirements of 28 U.S.C. § 2254(e)(2) to justify an evidentiary hearing.

## O. Execution by Means of Lethal Injection is a Cruel and Unusual Punishment in Violation of the Eighth Amendment[437]

James contends that lethal injection, "like electrocution," is a cruel and unusual punishment that violates the Eighth Amendment because it "would inflict torture or a lingering death or involve the wanton infliction of pain."[438]  He argues that "the Eighth Amendment proscribes punishment that would inflict torture or a lingering death or involve the wanton infliction of pain."[439]  He also alleges that Alabama's "lack of comprehensive standards" governing the administration of the State's lethal

---

[437] Claim XV:  *see* doc. no. 11 (Amended Habeas Petition), ¶¶ 418-437, at 130-135.

[438] Doc. no. 11 (Amended Habeas Petition), ¶ 419-420, at 130.  Alabama Code § 15-18-1 (1975) changed the method of execution used in Alabama from the electric chair to lethal injection, effective July 1, 2002.  Thus, although James was sentenced to death by electric chair, his execution will be under Alabama's current law, death by lethal injection.

[439] *Id.*, ¶ 420 (citing *Hudson v. McMillian*, 503 U.S. 1 (1992); *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *In re Kemmler*, 136 U.S. 436, 447 (1890)).

injection cocktail "fails to protect condemned prisoners from unnecessary pain and suffering," thereby enhancing the risk of cruel and unusual punishment.[440]

Respondents contend that this claim is not cognizable under the *habeas* statute.[441]  They argue that so-called *manner of execution claims* may properly be addressed only in an action brought under 42 U.S.C. § 1983, and not in the context of a *habeas* proceeding under 28 U.S.C. § 2254.[442]  In the alternative, respondents argue that this claim is procedurally defaulted, because the Rule 32 circuit court dismissed it pursuant to independent and adequate state procedural rules:  namely, Alabama Rules of Criminal Procedure 32.3 and 32.6(b).[443]  Finally, and regardless of how this court might rule on the issue of procedural default, respondents contend that this claim lacks cognizable merit.[444]

Respondents are correct when asserting that claims challenging lethal injection protocols as cruel and unusual punishments proscribed by the Eighth Amendment to the United States Constitution are properly brought in actions bottomed upon 42 U.S.C. § 1983, rather than as an independent claim within a *habeas* petition.  *See*

---

[440] *Id.*, ¶ 433, at 34.

[441] Doc. no. 19 (Respondents' Answer), at 117.

[442] *Id.* at 117-18 (citing *Hill v. McDonough*, 547 U.S. 573, 579-80 (2006)).

[443] *Id.* at 118.

[444] *Id.* at 119-20 (citing *Baze v. Rees*, 553 U.S. 35, 51-63 (2008); *Ex parte Belisle*, 11 So. 3d 323, 339 (Ala. 2008)).

*e.g.,Tompkins v. Secretary, Department of Corrections*, 557 F.3d 1257, 1261 (11th Cir. 2009) (*per curiam*) (holding that a suit under 42 U.S.C. § 1983, and "not a habeas proceeding, is the proper way to challenge lethal injection procedures") (citing *Hill v. McDonough*, 547 U.S. 573, 579-83 (2006)).

By challenging lethal injection as Alabama's primary *method of execution*, James is challenging a circumstance of his confinement, as opposed to *the validity of his conviction or sentence*, thereby making the claim one that is not cognizable in a § 2254 *habeas* proceeding. *See McNabb v. Commissioner Alabama Department of Corrections*, 727 F.3d 1334, 1344 (11th Cir. 2013) ("A claim is properly raised under § 1983 when an inmate challenges the circumstances of his confinement but not the validity of his conviction and/or sentence.").

On the other hand, to the extent that it can be argued plausibly that James's challenge to Alabama's lethal injection protocols actually is an attack upon a condition of his sentence, then such a claim would be cognizable in a *habeas* proceeding. *Hill v. McDonough*, 547 U.S. at 579.

Therefore, assuming — but expressly not deciding — that James actually challenges the lawfulness of a condition of his sentence, this court holds, nevertheless, that such an attack is foreclosed by cases upholding the constitutionality of lethal injection. *See, e.g., Baze v. Rees*, 553 U.S. 35, 54-55 (2008); *DeYoung v.*

349

*Owens*, 646 F.3d 1319, 1326-27 (11th Cir. 2011).

The last state court to issue a reasoned opinion on this claim was the Rule 32 circuit court, which dismissed it under Alabama Rules of Criminal Procedure 32.3 and 32.6(b), saying that "James did not plead facts [establishing] that lethal injection as administered in Alabama constitutes cruel and unusual punishment."[445]   In addition, that court dismissed the claim pursuant to Alabama Rule of Criminal Procedure 32.7(d), holding that, because "lethal injection has never been found to be cruel and unusual punishment," James had failed "to state a claim upon which relief can be granted."[446]   The Rule 32 circuit court's disposition of this claim on that basis does not prompt procedural default.  *See Borden v. Allen*, 646 F.3d 785, 816 and 822 n.44 (11th Cir. 2011) (holding that a state court's dismissal for failure to state a claim upon which relief can be granted or for failure to establish a material issue of fact or law, are rulings upon the merits that are subject to review under AEDPA in a *habeas* proceeding).  Therefore, this court turns to the merits of this claim.

In *Baze v. Rees*, *supra*, the Supreme Court affirmed the denial of an action brought by a death row inmate claiming that Kentucky's use of a three-drug lethal injection execution scheme posed an unacceptable risk of significant pain and,

---

[445] C.R. Vol. 32, Tab 78, at 26 (alteration supplied).

[446] *Id*. at 51.

therefore, constituted cruel and unusual punishment proscribed by the Eighth Amendment.  The Court stated that, "[s]imply because an execution method may result in pain, either by accident or as an inescapable consequence of death, does not establish the sort of 'objectively intolerable risk of harm' that qualifies as cruel and unusual."  553 U.S. at 50 (alteration supplied).  Moreover, an Eighth Amendment violation may not be established by a showing of a marginally safer alternative to a method of execution, because such an approach would "transform courts into boards of inquiry charged with determining 'best practices' for executions, with each ruling supplanted by another round of litigation touting a new and improved methodology."  *Id*. at 51.    The Alabama Supreme Court considered a similar claim from a death row inmate in the case of *Ex parte Belisle*, 11 So. 3d 323 (Ala. 2008).  Belisle argued that the State of Alabama, which uses the same three-drug protocol as a majority of the states, lacked the procedures to guard against the "risk of unnecessary pain and suffering" that could result in the administration of these drugs.  *Id*. at 338.

The Alabama Supreme Court rejected the contention that the State's lethal injection scheme violated the Eighth Amendment, and quoted the statement of the United States Supreme Court in *Baze*, observing that "[a] State with a lethal injection protocol substantially similar to the protocol we uphold today would not create a risk that meets this standard."  *Id*. at 339 (quoting *Baze*, 553 U.S. at 61) (alteration in

*Belisle*).

For all of the reasons discussed above, James is not entitled to *habeas* relief on this claim.

**P.  Execution Following Lengthy Confinement Under Sentence of Death Constitutes Cruel and Unusual Punishment in Violation of Petitioner's State and Federal Constitutional Rights, as well as International Law[447]**

James next argues that, through no fault of his own, his confinement on death row has been "excessive."[448]  He was originally sentenced to death on November 4, 1996, following his first trial.[449]  His original *habeas* petition was filed in this court on December 31, 2010.[450]  It now is September 30, 2014 — nearly eighteen years from the date on which he fist was sentenced to death.  James contends that such lengthy confinements violate international norms and various treaties, including the United Nations' "Torture Convention."[451]  In addition, James contends that he "has been, and will continue to be, subjected to unlawful pain and suffering due to his prolonged, uncertain confinement on death row."[452]  He argues that his death sentence

---

[447] Claim XVI:  *see* doc. no. 11 (Amended Habeas Petition), ¶¶ 438-451, at 135-137.

[448] Doc. no. 11 (Amended Habeas Petition), ¶ 441, at 135.

[449] *Id*., ¶ 439.

[450] *See* doc. no. 1.

[451] Doc. no. 11 (Amended Habeas Petition), ¶ 446, at 136.

[452] *Id*.,¶ 447, at 137.

must either be vacated, or a stay of execution entered.[453]

Respondents contend that this claim is procedurally defaulted because James failed to raise it at trial or on direct appeal,[454] and that the Rule 32 circuit court dismissed it as procedurally barred.[455]

The last state court to issue a reasoned opinion on this claim was the Rule 32 circuit court, which dismissed it pursuant to Alabama Rules of Criminal Procedure 32.2(a)(3) and (a)(5).[456]  As an "alternative ruling," that court also dismissed this claim pursuant to Rule 32.7(d), holding "[t]here is no material issue of fact or law [raised by this claim] because the argument that a delay in execution results in cruel and unusual punishment has been repeatedly rejected by both the Court of Criminal Appeals and the Alabama Supreme Court." C.R. Vol. 32, Tab 78, at 52-53 (alteration supplied) (citing *Ex parte Bush*, 695 So. 2d 138, 139-40 (Ala. 1997); *Tomlin v. State*, No. CR-98-2126, 2002 WL 1136439, at *48-50 (Ala. Crim. App. May 31, 2002)).

Regardless of the issue of procedural default, this claim lacks merit.  James has not demonstrated that the state court's denial of this claim was contrary to, or involved an unreasonable application of, clearly established Federal law, as

---

[453] *Id*., ¶ 449.

[454] Doc. no. 19 (Respondents' Answer), at 122.

[455] *Id*. at 122-23.

[456] C.R. Vol. 32, Tab 78, at 8.

determined by the Supreme Court of the United States.

Further, as the Alabama Supreme Court noted in *Ex parte Bush*, 695 So. 2d 138, 140 (Ala. 1997), a lengthy appeals process is, in fact, part of the Eighth Amendment's protection for those sentenced to death.  Accordingly, that Court found "no merit" in the argument of the petition in *Bush* that "the same constitutional protections that have kept him from being executed for the past 16 years are simultaneously violating his constitutional rights." *Id.* at 140.  This court agrees with the rationale of the Alabama Supreme Court.  This court is not aware of

> any support in the American constitutional tradition or in [the United States Supreme] Court's precedent for the proposition that a defendant can avail himself of the panoply of appellate and collateral procedures and then complain when his execution is delayed.  Indeed, were there any such support in [the Supreme Court's] jurisprudence, it would be unnecessary for proponents of the claim to rely on the European Court of Human Rights, the Supreme Court of Zimbabwe, the Supreme Court of India, or the Privy Council.

*Knight v. Florida,* 528 U.S. 990 (1999) (Thomas, J., concurring in denial of *certiorari*) (alterations supplied, footnote omitted).  This claim lacks merit and cannot provide a basis for *habeas* relief.

## Q.   In View of Petitioner's Profound Mental and Emotional Impairments, and the Supreme Court's Decision in *Atkins v. Virginia*, It Would Be Unconstitutional To Execute Him[457]

James asserts that he "is mentally impaired to such an extent that his execution

---

[457] Claim XVII:  *see* doc. no. 11 (Amended Habeas Petition), ¶¶452-456, at 137-139.

is prohibited by the Eighth Amendment," because his "profound emotional and mental impairments deprive him of the level of moral culpability requisite for execution."[458]  He argues that, "like mentally retarded defendants such as those in *Atkins*," he "lacks the ability to meaningfully assist counsel in his defense."[459]

Respondents point out that James raised this claim in his Rule 32 petition, and that it was denied on the merits by the Rule 32 circuit court.[460]  Respondents contend that he cannot demonstrate that the state court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, or that it was an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.[461]

The last state court to issue a reasoned decision on this claim was, as respondents noted, the Rule 32 circuit court, which dismissed it pursuant to Alabama Rules of Criminal Procedure 32.3 and 32.6(b) based upon James's failure "to even make a bare allegation that he is in fact mentally retarded."[462]  That court also entered an alternative holding, dismissing the claim pursuant to Rule 32.7(d), because it did

---

[458] Doc. no. 11 (Amended Habeas Petition), ¶ 452, at 137-138.

[459] *Id*. ¶ 454, at 138.

[460] Doc. no. 19 (Respondents' Answer), at 124.

[461] *Id*.

[462] C. R. Vol. 32, Tab 78, at 26-27.

not present a material issue of fact or law.[463]  The Rule 32 circuit court held:

> Contrary to James's claim, *Atkins* does not apply to him because James is clearly not mentally retarded.  The Supreme Court did not define a standard for mental retardation in *Atkins* and the Alabama Legislature has yet to respond to *Atkins* by statutorily defining a standard.  However, under any standard that has been adopted by any state in the Union, James is not mentally retarded.  Moreover, James does not meet the clinical definition of mental retardation promulgated by the American Association of Mental Retardation or the American Psychiatric Association.

C. R. Vol. 32, Tab 78, at 53.

The Supreme Court's opinion in *Atkins v. Virginia*, 536 U.S. 304 (2002), announced a new, substantive rule of constitutional law:[464]  *i.e.*, "death is not a suitable punishment for a mentally retarded criminal."  *Id*. at 321.  The *Atkins* opinion observed that, due to "disabilities in the areas of reasoning, judgment, and control of their impulses," mentally retarded persons did "not act with the level of moral culpability that characterizes the most serious adult criminal conduct."  *Id*. at 306.  Accordingly, the Court was

---

[463] *Id*. at 53.

[464] *In re Holladay*, 331 F.3d 1169, 1172 (11th Cir. 2003) (holding that the *Atkins* holding should be "made retroactive to cases on collateral review").  *See also Penry v. Lynaugh*, 492 U.S. at 330 (stating that, "if we held, as a substantive matter, that the Eighth Amendment prohibits the execution of mentally retarded persons . . . regardless of the procedures followed, such a rule would fall under the first exception to the general rule of non-retroactivity [discussed in *Teague v. Lane*, 489 U.S. 288, 301 (1989),] and would be applicable to defendants on collateral review") (O'Connor, J., unanimous opinion); *In re Hill*, 437 F.3d 1080, 1082 (11th Cir. 2006) (holding that the new rule of constitutional law announced in *Atkins* "meets the requirement of 28 U.S.C. § 2244(b)(2)(A)" and, therefore, is retroactive to cases on collateral review); *In re Hicks*, 375 F.3d 1237, 1239 (11th Cir. 2004) (same).

> not persuaded that the execution of mentally retarded criminals will measurably advance the deterrent or the retributive purpose of the death penalty.  Construing and applying the Eighth Amendment in the light of our evolving standards of decency, we therefore conclude that such punishment is excessive and that the Constitution places a substantive restriction on the State's power to take the life of a mentally retarded offender.

*Id*. at 321 (citation and internal quotation marks omitted).

Even so, the *Atkins* Court did not dictate a national standard for determining whether a criminal defendant is mentally retarded and, for that reason, not subject to the ultimate sanction of the law.  Instead, the Court left to the states "the task of developing appropriate ways to enforce the constitutional restriction" upon the execution of mentally retarded convicts, but noted that such state guidelines should "generally conform" to the "clinical definitions" of the American Association on Mental Retardation ("AAMR"),[465] and the American Psychiatric Association ("APA").  *Id*. at 317 and n.22.[466]

---

[465] The American Association on Mental Retardation is now known as the "American Association on Intellectual and Developmental Disabilities" (AAIDD).

[466] The Court summarized the clinical standards in effect on the date of its decision in *Atkins* in the following manner:

> The American Association on Mental Retardation (AAMR) defines mental retardation as follows: "*Mental retardation* refers to substantial limitations in present functioning.  It is characterized by significantly subaverage intellectual functioning, existing concurrently with related limitations in two or more of the following applicable adaptive skill areas:  communication, self-care, home living, social skills, community use, self-direction, health and safety, functional academics, leisure, and work.  Mental retardation manifests before age 18." Mental Retardation: Definition, Classification, and Systems of Supports 5 (9th ed. 1992).

The Rule 32 circuit court found that James had failed to provide evidence that he met any part of either mental retardation standard.[467]  On the other hand, the State provided evidence that, in 1995, James achieved a verbal IQ score of 102 on the Wechsler Adult Intelligence Scale – Revised ("WAIS-R"), thereby placing him in the "average range" of cognitive functioning.[468]

The Rule 32 circuit court also considered James's work history, the fact that he had earned a GED high-school equivalency diploma, his relationships with members of his family and his alleged girlfriend, Mara Ruffin, and concluded on the basis of all such considerations that, "even under the broadest definition of mental retardation, [James] is not mentally retarded."[469]

---

The American Psychiatric Association's definition is similar: "The essential feature of Mental Retardation is significantly subaverage general intellectual functioning (Criterion A) that is accompanied by significant limitations in adaptive functioning in at least two of the following skill areas:  communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety (Criterion B).  The onset must occur before age 18 years (Criterion C).  Mental Retardation has many different etiologies and may be seen as a final common pathway of various pathological processes that affect the functioning of the central nervous system."  Diagnostic and Statistical Manual of Mental Disorders 41 (4th ed. 2000).  "Mild" mental retardation is typically used to describe people with an IQ level of 50-55 to approximately 70. *Id*., at 42-43.

*Atkins*, 536 U.S. at 309 n.3 (emphasis in original).

[467] C.R. Vol. 32, Tab 78, 54.

[468] *Id.* at 54-55.

[469] *Id*. at 55 (quoting *Ex parte Perkins*, 851 So. 2d 453, 455 (Ala. 2002)) (alteration supplied)..

358

James does not assert that the Rule 32 circuit court's denial of relief on this claim was the result of a decision that was either contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1). He also does not contend that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Id*. § 2254(d)(2). Instead, he asserts that his mental impairments make him "*functionally indistinguishable* from mentally retarded persons."[470] James does not provide any legal support for this argument, however. On the other hand, as the Rule 32 circuit court observed, the Supreme Court's holding in *Atkins* does not extend to those who are (as James contends he is) "functionally undistinguishable from" the mentally retarded.[471]

This claim provides no basis for *habeas* relief.

**R.**  **Petitioner's Conviction and Death Sentence Must Be Vacated Because of the Cumulative Effect of All of the Errors and Constitutional Violations Alleged in this Petition**[472]

James also alleges in his amended *habeas* petition that his

convictions, sentence, and confinement were obtained as the result of literally dozens of errors constituting multiple violations of his fundamental constitutional rights at every phase of his trial, from the

---

[470] Doc. no. 11 (Amended Habeas Petition), ¶ 454, at 138 (emphasis supplied).

[471] C. R. Vol. 32, Tab 78, at 26-27.

[472] Claim XVIII:  *see* doc. no. 11 (Amended Habeas Petition), ¶¶ 457-463, at 139-140.

unfair and discriminatory decision to charge and prosecute him, through the selection of a biased and death-prone jury, jury misconduct, the presentation of inaccurate, incomplete and unreliable evidence in the guilt and penalty phases, gross prosecutorial misconduct at the penalty phase, serious instructional error and interference with the jury's deliberations at the penalty phase, and an unfair appeal in which Mr. James has been denied a full and adequate record. Through it all, Mr. James's counsel was so ineffective that they consistently provided grossly incompetent representation and at many critical stages — particularly the investigation — they provided no representation at all.

Doc. no. 11 (Amended Habeas Petition), ¶ 457, at 139.

Respondents observe that this claim was raised in James's Rule 32 petition and on collateral appeal, and that it was denied on the merits.[473] They argue that James cannot demonstrate that the state courts' denial of this claim was contrary to, or involved an unreasonable application of, clearly established federal law, or that it was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.[474]

The last state court to issue a reasoned opinion on this claim was the Rule 32 circuit court, which dismissed it pursuant to Alabama Rules of Criminal Procedure 32.2(a)(3) and (a)(5), due to James's failure to raise the claim at trial or on direct appeal.[475]   That court entered an alternative decision, however, and summarily

---

[473] Doc. no. 19 (Respondents' Answer), at 126.

[474] *Id.*

[475] C.R. Vol. 32, Tab 78, at 8.

360

dismissed the claim pursuant to Rule 32.7(d) "because, as a matter of law, this claim cannot be evaluated under *Strickland v. Washington*, 466 U.S. 668, 690 (1984)."[476] In essence, the Rule 32 circuit court held that a petitioner's reliance upon the "cumulative effect" of alleged attorney errors necessarily failed to "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."[477]

Assuming for the sake of discussion, but without deciding, that this claim was not procedurally defaulted, it lacks merit. The Alabama Court of Criminal Appeals stated in its original opinion on collateral appeal that it had "considered each of the allegations of error individually, and we have not found that any of those allegations of error require reversal. *We have also considered the allegations of error cumulatively, and we do not find that they require reversal*." *James v. State*, 61 So. 2d 332, 351-52 (Ala. Crim. App. 2006) (emphasis supplied), *rev'd on other grounds sub nom. Ex parte James,* 61 So. 3d 352 (Ala. 2009). Similarly, this court has evaluated and denied James's cumulative error claim when it was asserted in the guise of an ineffective assistance of trial counsel claim. *See* Parts V.N and VI.F of this opinion, *supra*.

---

[476] *Id.* at 56-57.

[477] *Id.* at 57.

To the extent that James is stating a distinct "cumulative error" claim, he provides no support for his implicit argument that the state court's denial of this claim was contrary to, or involved an unreasonable application of, clearly established Supreme Court law. *See* 28 U.S.C. § 2254(d)(1). James's bare citation to several cases from United States Circuit Courts of Appeal outside the Eleventh Circuit is not sufficient under the AEDPA to support a claim of *habeas* relief.

Furthermore, the majority of the errors that, James alleges, had a *cumulative* prejudicial effect were *individually* evaluated and denied by this court in previous parts of this opinion. James provides no legal support for his contention that he is entitled to *habeas* relief by virtue of the cumulative prejudicial effect of those errors, even if none individually entitle him to relief.

This claim is due to be dismissed for failure to state a claim upon which relief can be granted.

**S.    Petitioner Was Convicted and Sentenced to Death as a Result of a Process Tainted by Racial Bias**[478]

James next asserts that "[r]acial bias infected the trial," and that "[t]he jurors, prosecutor, defense counsel, and court actors were biased against [him] because he is African American."[479] James states that "[r]acial discrimination in jury selection

---

[478] Claim XIX: *see* doc. no. 11 (Amended Habeas Petition), ¶¶ 464-467, at 140-141.

[479] *Id.,* ¶ 464, at 140 (alterations supplied).

in Alabama is commonplace," and he then cites several statistics that allegedly support his assertion.[480]   James contends that "[a]t least one juror was racially biased against Mr. James,"[481] but he does not identify that juror by name.   Finally, James again asserts, as he did in Claim XIV of his *habeas* petition, that racial bias in Alabama's capital punishment scheme is widespread.[482]

Respondents point out that James failed to raise this claim at trial, on direct appeal, in his Rule 32 petition, or on collateral appeal.[483]

This court finds that this claim has been procedurally defaulted due to James's failure to raise it at any point during the proceedings in the state court system, and only now asserts it in his *habeas* petition.   Indeed, it is axiomatic that a federal court may not grant *habeas* relief to a state prisoner who has not exhausted his available state remedies.   *See* 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court *shall not be granted* unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." (Emphasis supplied.)).

Even if this claim had not been procedurally defaulted, it lacks merit.   The

---

[480] *Id.*, ¶ 465, at 140-141(alteration supplied). The court notes these statistics concern Houston County, Dallas County, and Tuscaloosa County, Alabama, but none of those venues was the location of James's trial.

[481] *Id.* ¶ 466, at 141 (alteration supplied).

[482] *Id.*

[483] Doc. no. 19 (Respondents' Answer), at 128.

issue of race in jury selection and the prosecution of James has been discussed by this court in Parts V.F.2.h and VIII.S of this opinion, *supra*. Further, James failed to provide the name of the juror who allegedly harbored a bias against him because of his race, or any other factual details to support such a contention. Finally, as previously noted, James fails to even assert what the racial composition of the jury was. This claim provides no basis for *habeas* relief.

**T.    Petitioner Was Deprived of His Federal Constitutional Right to Compulsory Process At the Evidentiary Hearing in State Court**[484]

James's final substantive claim, and the allegations contained in it, are identical to those discussed in Part VIII.I of this opinion, *supra*. As there, and again here, James asserts his right to compulsory process was violated by the circuit court's refusal to issue a bench warrant to compel the attendance at the Rule 32 evidentiary hearing of Mara Ruffin, his alleged fiancee and the mother of his two children.[485] As this court stated in its previous discussion of this issue, James is not entitled to federal *habeas* relief on this claim, because it constitutes an attack upon the State's collateral proceedings, and not the legality of James's conviction or sentence. *See Alston v. Department of Corrections, Florida*, 610 F.3d 1318, 1325-26 (11th Cir. 2010).

---

[484] Claim XX:  *see* doc. no. 11 (Amended Habeas Petition), ¶¶ 468-475, at 142-143.

[485] *Id.*, ¶¶ 469-470, at 142.

## IX. CONCLUSION AND ORDERS

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id*. (citing *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998) (affirming the denial of an evidentiary hearing where the applicant's factual allegations "fl[ew] in the face of logic in light of . . . [the applicant's] deliberate acts which are easily discernible from the record")) (alterations in original).

As the discussion of each of petitioner's *habeas* claims has demonstrated, the material facts were fully developed in the record presented to this court. As a result, this court was able to "adequately assess [James's] claim[s] without further factual development," *Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003) (alterations supplied), and there is no need for an evidentiary hearing on any issue.

Accordingly, and based upon this court's consideration of James's amended *habeas* petition, the pleadings, the trial and appellate court records, and the briefs of counsel, it is ORDERED, ADJUDGED, and DECREED that all claims be, and they

hereby are, denied and DISMISSED.  Because the court finds that all claims alleged in the *habeas* petition are due to be dismissed, it also is ORDERED that petitioner's motion for an evidentiary hearing (doc. no. 26) is DENIED.[486]

Finally, pursuant to Rule 11(a) of the *Rules Governing Section 2254 Cases in the United States District Courts*, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the *habeas* petitioner.  This Court may issue a certificate of appealability "only if the applicant has a made a substantial showing of the denial of a constitutional right."  28 U.S.C. 2253(c)(2).  To make such a showing, James must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Slack v.*

---

[486] The holding in *Cullen v. Pinholster*, — U.S —, 131 S. Ct. 1388 (2011), permits this court to look no farther than the record before the state court at the time the state court made its decision. *Id*. at 1398.  The *Cullen* Court held "that evidence introduced in federal court has no bearing on § 2254(d)(1) review." *Id*. at 1400.  Furthermore, to the extent that James's claims are brought pursuant to § 2254(d)(2), he has no more right to an evidentiary hearing than under § 2254(d)(1).  Unlike § 2254(d)(1), § 2254(d)(2) overtly requires federal *habeas* courts to look at a state court's decision "in light of the evidence presented in the State court proceedings."  *See id*. at 1400 n.7; *Blue v. Thaler*, 665 F.3d 647, 656 n.26 (5th Cir. 2011).  In other words, James is not entitled to another opportunity in this forum to develop facts that were not before the state courts.

James argued in his motion for evidentiary hearing (doc. no. 26), which was denied without prejudice on March 12, 2013, that he was entitled to an evidentiary hearing on several of his ineffective assistance of guilt and penalty phase counsel claims and his *Brady* claims.  *Id*. at 9-40.  He argued that 28 U.S.C. § 2254(e) did not prohibit a hearing because, despite his due diligence in attempting to develop the full factual basis for the claims, he was unable to do so due to the procedural rulings of the Rule 32 circuit court. *Id*. at 7-41.  However, as set out in the discussion of each of the claims for which James contends that he was deprived of an opportunity for full factual development, the claims were either refuted by the record and/or the state court record as it stands was fully developed with regard to the material facts upon which the claims were rejected.  (*See* the claims addressed in this Memorandum Opinion at Parts VIII.G through VIII.J, *supra*.).

*McDaniel*, 529 U.S. 473, 484 (2000), or that "the issues presented were adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003) (citation and internal quotation marks omitted).  This court finds that James's claims do not satisfy either standard.

  **DONE** and **ORDERED** this 30th day of September, 2014.

                _____
            United States District Judge